David B. Rosenbaum, Atty. No. 009819
Dawn L. Dauphine, Atty. No. 010833
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, AZ 85012-2794
Telephone: (602) 640-9000
drosenbaum@omlaw.com
ddauphine@omlaw.com

Michael L. Banks, *Pro Hac Vice*
William J. Delany, *Pro Hac Vice*
Azeez Hayne, *Pro Hac Vice*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
mbanks@morganlewis.com
wdelany@morganlewis.com
ahayne@morganlewis.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Allen, Richard Dippold, Melvin Jones, Donald McCarty, Richard Scates and Walter G. West, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Honeywell Retirement Earnings Plan, Honeywell Secured Benefit Plan, Plan Administrator of Honeywell Retirement Earnings Plan, and Plan Administrator of Honeywell Secured Benefit Plan, <br><br> Defendants. | No. CV04-0424 PHX ROS <br><br><br> DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION <br><br> (ORAL ARGUMENT REQUESTED) |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................2

    A.    Class Certification Standards ....................................................................... 2

    B.    Plaintiffs' Anti-Cutback and Benefit Claims Do Not Satisfy The Typicality
        Requirement of Fed. R. Civ. P. 23(a) ...................................................... 3

        1.    Individualized issues relating to Defendants' statute of
            limitations defense render Plaintiffs' claims atypical.......................4

            a.    Plaintiffs' anti-cutback claims are not typical of the
                class they seek to represent .....................................................4

            b.    Plaintiffs' claims for benefits under the terms of the
                Plans are not typical of the class ...........................................13

        2.    Individualized issues relating to the equitable defense of
            laches render Plaintiffs' claims atypical of the putative class.........15

    C.    Plaintiffs' Reporting And Disclosure Claims Are Neither Common Nor
        Typical. ...................................................................................................... 20

    D.    Plaintiffs Cannot Adequately Represent The Putative Class............................. 21

    E.    This Action Cannot Be Certified Under Either Rule 23(b)(2) or 23(b)(3).......... 22

        1.    Certification under Rule 23(b)(3) is improper because
            individual issues predominate over common issues, and the
            class action device is not a superior method for adjudicating
            this dispute. ........................................................................................22

            a.    Highly individualized questions predominate over
                 common questions .................................................................22

            b.    Class treatment is a far inferior method by which to
                 litigate this case ...................................................................23

        2.    The nature and substance of the claims for relief preclude
            certification under Rule 23(b)(2) .......................................................23

            a.    Certification under Rule 23(b)(2) is improper because
                 Plaintiffs are seeking primarily money damages .................23

            b.    Without an opportunity to opt-out, class certification
                 under Rule 23(b)(2) could violate the due process rights
                 of absent class members .......................................................25

    F.    Plaintiffs' Class Definition Improperly Includes Individuals Who Lack
        Standing To Sue And Whose Claims Are Barred. ............................................. 28

III.  CONCLUSION .......................................................................................................28

# TABLE OF AUTHORITIES

*Alaska v. Suburban Propane Gas Co.*, 123 F.3d 1317 (9th Cir. 1997)..................22

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)....................................22

*Barnes v. America Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ...............................3

*Bennett v. Federated Mutual Insurance Co.*, 141 F.3d 837 (8th Cir. 1998) ..........15

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) ..................................................16

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)................................................................................................................3, 16

*Brown v. Cont'l Can Co.*, 765 F.2d 810 (9th Cir. 1985) ........................................17

*Brown v. Utilicorp United, Inc.*, No. 97-1277, 1998 WL. 166593 (D. Kan. Feb. 24, 1998)....................................................................................................21

*Burkhalter Travel Agency v. MacFarms Int'l Inc.*, 141 F.R.D. 144 (N.D. Cal. 1991) .................................................................................................................2

*Burrey v. Pac. Gas & Electric Co.*, 159 F.3d 388 (9th Cir. 1998) .........................5

*Cameron v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976) ..............................2

*Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005)...............................2

*Daly v. Harris*, 209 F.R.D. 180 (D. Haw. 2002)....................................................4

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) ....................... 16, 17, 18

*Doninger v. Pacific N.W. Bell, Inc.*, 564 F.2d 1304 (9th Cir. 1997).......................2

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ....................................................18

*General Telegraph Co. of S.W. v. Falcon*, 457 U.S. 147 (1982)............................2

*Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 202 (2002) .......25

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .....................2, 3, 22

*Hansberry v. Lee*, 311 U.S. 32 (1940)..................................................................26

*Henry v. Associates Home Equity Services, Inc.*, 272 B.R. 266 (C.D. Cal. 2002)................................................................................................................23

*Holmberg v. Ambrecht*, 327 U.S. 392 (1946) .......................................................16

*Hulteen v. AT&T Corp.*, __ F.3d __, 2006 WL. 549099 (9th Cir. March 8, 2006)..................................................................................................................7

*International Shoe Co. v. Washington*, 326 U.S. 310  (1945) .........................27, 28

*Jackson v. Axton*, 25 F.3d 884 (9th Cir. 1994) ....................................................18

*LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985) ..............................................21

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) .................25

*Martin v. Construction Laborer's Pension Trust For S. Cal.*, 947 F.2d 1381 (9th Cir. 1991) .......................................................................................................15

*Meagher v. International Associate of Machinists and Aerospace Workers Pension Plan*, 856 F.2d 1418 (1988) .................................................. 6, 9, 10, 11

*Miele v. Pension Plan of New York State Teamsters Conference Pension & Retirement Fund*, 72 F. Supp. 2d 88 (E.D.N.Y. 1999) ........................................9

*Mogck v. Unum Life Insurance Co. of America*, 292 F.3d 1025 (9th Cir. 2002) ......................................................................................................... 14, 15

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .................................. 24, 25, 26, 27

*In re N. District of Cal. Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847 (9th Cir. 1982) ...........................................................................3

*Navellier v. Sletten*, 262 F.3d 923 (9th Cir. 2001) ...............................................22

*O'Connor v. Boeing N. America, Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000) ..........3, 23

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ..................................................27

*Patterson v. Alaska Airlines, Inc.*, 756 F. Supp. 476 (W.D. Wash. 1990) .........4, 22

*In re Paxil Litigation*, 218 F.R.D. 242 (C.D. Cal. 2003) ........................................2

*Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064 (9th Cir. 2005) ............................18

*Phillips Petrol. Co. v. Shutts*, 472 U.S. 797 (1985) ........................................26, 27

*Phillips v. Alaska Hotel and Restaurant Employees Pension Fund*, 944 F.2d 509 (9th Cir. 1991) ....................................................................... 9, 10, 11

*Pisciotta v. Teledyne Industrial, Inc.*, 91 F.3d 1326 (9th Cir. 1996) 5, 7, 8, 9, 10 ,11

*Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 165 (2001) .................25

*Romero v. Allstate Corp.*, 404 F.3d 212 (3d Cir. 2005) ............................... 7, 9, 14

*Shouse v. Pierce County*, 559 F.2d 1142 (9th Cir. 1977) .....................................16

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ....................3, 20

*Telink Inc. v. U.S.*, 24 F.3d 42 (9th Cir. 1994) .....................................................16

*Ticor Title Insurance Co. v. Brown*, 511 U.S. 117 (1994) ...................................27

*Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325 (8th Cir. 1998) ..........................15

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996)...................................2

*Williams v. Sinclair*, 529 F.2d 1383 (9th Cir. 1976) ...............................................2

*Zinser v. Accufix Research Institute Inc.*, 253 F.3d 1180 (9th Cir.),
    *amended*, 273 F.3d 1266 (9th Cir. 2001) ..........................................................23

## FEDERAL STATUTES AND CODES

29 U.S.C. § 1113 ......................................................................................................9

29 U.S.C. 1054(h)...................................................................................................18

29 U.S.C. §1132(c) .................................................................................................21

Fed. R. Civ. P. 23 .............................................................................................*passim*

## I.    __INTRODUCTION__

The lawsuit that Plaintiffs seek to assert on a class-wide basis presents the paradigm of an unmanageable action.  Were a class certified, the discovery into, and trial of, individual issues would overwhelm any questions common to the class.  A six-plaintiff case that now focuses on manageable and narrow issues would mushroom into ten thousand trials on individual questions concerning the knowledge, actions and inactions of each class member.

Plaintiffs seek to assert decades-old claims on behalf of a class that they say has at least ten thousand members.  Plaintiffs contend that certain pension plan amendments adopted in 1983 and 1993 violated ERISA and the terms of Honeywell's pension plans.  But Plaintiffs did not file suit until 2004, more than twenty years after Honeywell adopted the first set of amendments.  Over that period, participants received information about the challenged amendments and the effects of those amendments on their benefits from a wide array of sources.  Throughout that same period, many of the Plaintiffs, and the putative class members they seek to represent, retired and began receiving benefits – in many cases for 10 or 15 or 20 years – without ever contending that any aspects of their pension benefit formula were improperly reduced.  Meanwhile, they enjoyed net increases in their accrued benefits, notwithstanding their claim that a component of the pension formula was reduced.

Given the passage of time and the divergent circumstances among plan participants, it should come as no surprise that issues related to the statute of limitations and laches defenses will dominate the prosecution of this action.  The individual inquiries attendant to these defenses permeate every aspect of this litigation and take Plaintiffs' claims outside of Rule 23's ambit.

Thus, for the reasons described in more detail below, Defendants respectfully request that this Court deny Plaintiffs' motion for class certification.

## II.    ARGUMENT

### A.    Class Certification Standards

The party seeking class certification bears the burden of demonstrating that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).  A court must conduct an independent and "*rigorous analysis*" of the moving party's claims – probing "behind the pleadings" – to confirm "actual, not presumed, conformance" with the applicable rules.  *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982) (emphasis added); *see also In re Paxil Litig.*, 218 F.R.D. 242, 245 (C.D. Cal. 2003).  To that end, a "superficial recitation of the factors" is insufficient to warrant class treatment of any or all claims, *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 968 (9th Cir. 2005), and the Court need not accept a moving party's conclusory or general allegations regarding the suitability of the litigation for class treatment.  *See Burkhalter Travel Agency v. MacFarms Int'l Inc.*, 141 F.R.D. 144, 152 (N.D. Cal. 1991); *see also Doninger v. Pacific N.W. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977) (plaintiffs seeking class certification must do more than assert that Rule 23 is satisfied; they must provide facts). Furthermore, courts are permitted to consider whatever evidence is necessary to conduct that rigorous analysis, "even though [such evidence] may also relate to the underlying merits of the case."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

In some cases involving statute of limitations defenses (*e.g.* where the defense will not likely apply to many putative class member's claims), courts have held that individualized issues may not "*compel* a finding that individual issues predominate." *Williams v. Sinclair*, 529 F.2d 1383, 1387 (9th Cir. 1976) (en banc) (emphasis added) (individualized issues regarding statute of limitations defense did not bar class certification where complaint was filed less than 3 years after alleged fraudulent act); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (statute of limitations issues would not bar class certification where complaint was filed, at the latest, only 3 years after the alleged illegal acts).  On the other hand, when affirmative defenses may

1  dominate the case and require "substantial litigation" over individualized issues to

2  determine if a putative class member can participate in the lawsuit, such defenses preclude

3  class certification. *See O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 413-14 (C.D.

4  Cal. 2000).

5      In this case, Plaintiffs filed suit 10 and 20 years after the alleged breaches occurred,

6  and long after they learned of the amendments that they now challenge. One of the

7  critical questions will be when each of them learned of the amendments and the

8  amendments' impact on their benefits. The individual issues related to the statute of

9  limitations defense, therefore, will necessarily overwhelm common issues, precluding a

10  finding that Plaintiffs' claims are typical. Thus, as described in more detail below,

11  Plaintiffs cannot satisfy the requirements of either Rule 23(a) or (b), and class certification

12  is improper.

13      **B.    Plaintiffs' Anti-Cutback and Benefit Claims Do Not Satisfy The
              Typicality Requirement of Fed.R.Civ.P. 23(a).**

14

15      "The purpose of the typicality requirement is to assure that the interest of the

16  named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. As

17  such, the typicality analysis necessarily must look to the *actual* nature of the claims or

18  defenses of the class representatives, not merely whether the facts from which those

19  claims arose or the relief sought are similar. *Id.* The "premise of the typicality

20  requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of

21  the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). Rule

22  23(a)'s typicality requirement, therefore, cannot be met, and class certification is

23  improper, when the named plaintiffs and/or the putative class members are subject to

24  affirmative defenses, such as the statute of limitations, that "depend on facts peculiar to

25  each plaintiff's case." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342

26  (4th Cir. 1998) (citing *In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693

27  F.2d 847, 853 (9th Cir. 1982)); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 149 (3d Cir.

28  1998) (same); *O'Connor*, 197 F.R.D. at 412-413 (finding that no class representative's

claims could be typical "given the individualized focus of the statute of limitations defense in this case").[1]

In this case, Defendants' affirmative defenses, including their statute of limitations and laches defenses, lie at the heart of this matter. As a result, Plaintiffs' claims can be resolved only after individualized inquiries into each Plaintiff's knowledge of the relevant facts over a 20 year period, the circumstances surrounding each Plaintiff's delay in filing suit, and the prejudice the delay caused Defendants. As in *Broussard*, *Barnes*, and *O'Connor*, therefore, Plaintiffs' claims are atypical and class certification is inappropriate because each Plaintiff's – and each putative class member's – claims will rise or fall based on the facts peculiar to that individual rather than facts subject to class wide proof. Indeed, based on the facts adduced at each of their depositions, *see* discussion *infra* at pp. 8-13, it is clear that Plaintiffs' claims are barred, and their claims are necessarily atypical of the putative class' claims. *E.g. Patterson v. Alaska Airlines, Inc.*, 756 F. Supp. 476, 478 (W.D. Wash. 1990) ("Plaintiffs cannot expect to participate in a class action suit in any capacity when their claims are time-barred").

1.    **Individualized issues relating to Defendants' statute of limitations defense render Plaintiffs' claims atypical.**

Plaintiffs' remaining claims essentially fall into three categories: (1) anti-cutback claims contending that certain components of a multi-tiered pension formula were reduced, (2) claims for benefits pursuant to the terms of the plans, and (3) reporting and disclosure claims. Plaintiffs erroneously seek class certification on all of these claims. None of Plaintiffs' claims are typical of the class they seek to represent.

a.    **Plaintiffs' anti-cutback claims are not typical of the class they seek to represent**

Plaintiffs seek class certification on their claims that the 1983 and 1993 plan amendments improperly cutback their accrued benefits by increasing the interest rate used

---

[1]    *See also Daly v. Harris*, 209 F.R.D. 180, 197 (D. Haw. 2002) (rejecting class certification and noting the significant problems with class treatment created by the potential for "SOL-susceptible" class members).

4

1    to calculate the Secured Benefit Account ("SBA") offset, adding a Social Security offset,

2    adding an SBA offset to the Minimum Benefit formula, and eliminating the fractional

3    SBA offset for participants with more than 35 years of service.  This Court has already

4    recognized that the challenged amendments increased pension benefits for plan

5    participants, and that Plaintiffs are contesting only those component changes in the

6    formula that were unfavorable.  (July 19, 2005 Order at 13.)

7            The statute of limitations for these claims accrued for each Plaintiff, or putative

8    class member, when he or she first learned of the injury giving rise to the claim.  *See*

9    *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996).  Determining each

10   Plaintiff's knowledge will depend on the specific documents, communications,

11   conversations, and investigations he or she received, participated in or conducted over the

12   twenty year period between the first challenged amendment and the institution of this

13   action.  As demonstrated by certain named Plaintiffs' deposition testimony,[2] this inquiry

14   will vary widely depending on each Plaintiff's specific circumstances.  For this reason,

15   Plaintiffs' claims are not typical of the putative class and class certification is improper.

16           Plaintiffs' claims are barred as early as three years, or at most six years, from their

17   respective discoveries of the alleged breach.  It is not settled in the Ninth Circuit which

18   statute of limitations applies to Plaintiffs' anti-cutback claims.  On its face, ERISA does

19   not supply a statute of limitations for anti-cutback claims under section 204(g), 29 U.S.C.

20   § 1054(g).  Ordinarily, therefore, the most analogous state statute of limitations would

21   govern Plaintiffs' anti-cutback claims.  *See, e.g.*, *Burrey v. Pac. Gas & Elec. Co.*, 159

22   F.3d 388, 396 (9th Cir. 1998).  Although the Ninth Circuit has not decided which state

23   statute of limitations is most analogous to an anti-cutback claim, the longest state statute

24   which could apply is Arizona's six year statute of limitations for "[a]n action for debt

25   where indebtedness is evidenced by or founded upon a contract in writing executed within

26

27   _____

28   [2]        Plaintiff West has not yet been deposed.

1    the state."  ARS § 12-548.[3]

2        While it is not clear what limitations *period* governs Plaintiffs' claims, it is clear

3    that the determination of when Plaintiffs' claims accrued, which triggers the statutory

4    limitation period, can only be accomplished by reviewing facts that are unique to each

5    Plaintiff.  For ERISA claims that borrow the most analogous state statute of limitations, "a

6    cause of action accrues when the plaintiff knows or has reason to know of the injury that

7    is the basis of the action."  *Pisciotta*, 91 F.3d at 1331.[4]  Similarly, when ERISA section

8    413 provides the governing statute of limitations for breach of fiduciary duty claims, a

9    plaintiff's claim accrues upon the earlier of "six years after . . . the date of the last action

10   which constituted a part of the breach or violation" or "three years after the earliest date

11   on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. §

12   1113.  Regardless of which statute of limitations governs Plaintiffs' claims, the crucial

13   inquiry will be when each Plaintiff or putative class member had knowledge of the injury

14   or "breach or violation" that is the basis for his or her claim.

15       Plaintiffs allege that the 1983 and 1993 amendments violated ERISA and reduced

16   certain components of their benefit formula.  In determining when the statute of

17   limitations accrues, the "'proper focus is upon the time of the [illegal] *acts*, not upon the

18   time at which the *consequences* of the acts become most painful.'"  *Hulteen v. AT&T*

19   *Corp.*, __ F.3d __, No. 04-16087, 2006 WL 549099 at 7 (9th Cir. March 8, 2006).

20   Because the statute of limitations is triggered by each putative class member's knowledge

21   of the breach or violation, the statutory period began to run, at the latest, when each

22   participant obtained actual knowledge of the application of the challenged amendments to

23   [3]     In a unique set of circumstances, however, the Ninth Circuit has applied ERISA's 3
24   and 6 year statute of limitations for breaches of fiduciary duty to an anti-cutback claim.
     *Meagher v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 856 F.2d
25   1418, 1422-23 (1988).  As discussed below, *Meagher* has been superseded, and the
     circumstances under which it arose are distinguishable.  *See* discussion at p. 8 *infra*.

26
27   [4]     It is widely accepted that this federal "discovery rule" applies to ERISA cases, and
     the Third Circuit has expressly applied it to an ERISA anti-cutback claim.  *See Romero v.*
28   *Allstate Corp.*, 404 F.3d 212, 222-23 (3d Cir. 2005) (collecting cases).

1    his or her benefit accrual.  *See Pisciotta*, 91 F.3d at 1332 (statute of limitations on ERISA

2    claim began to run from the date plaintiffs knew that a benefit freeze had been

3    implemented and applied to their benefits).  Thus, in this case, the controlling question

4    will be when each Plaintiff knew that the challenged amendments would be applied to his

5    or her benefits.

6         The Ninth Circuit has already established the end point of this inquiry.  At the

7    latest, a participant definitively obtains "actual knowledge" of the "application" of the

8    challenged amendment to his benefits upon his receipt of a benefit check calculated based

9    on the challenged amendment.  *Meagher*, 856 F.2d at 1422-23.  Furthermore, once the

10   statute of limitations has run based on a participant's knowledge of one such benefit

11   check, his claims are barred with respect to every benefit payment calculated under the

12   challenged amendment.  *See Phillips v. Alaska Hotel and Rest. Employees Pension Fund*,

13   944 F.2d 509, 521 (9th Cir. 1991) ("A continuous series of breaches may allow a plaintiff

14   to argue that a new cause of action accrues with each new breach.  But if the breaches are

15   of the same kind and nature and the plaintiff had actual knowledge of one of them more

16   than three years before commencing suit, §[413] bars the action."); *Pisciotta*, 91 F.3d at

17   1332 (holding that *Phillips* applies to ERISA claims where the statute of limitations is

18   borrowed from state law).  In other words, the fact that a plaintiff may suffer continuing or

19   periodic harm resulting from an initial breach will not extend the statute of limitations.

20        Indeed, the Ninth Circuit reaffirmed this rule just last month in *Hulteen*, when it

21   had to determine how to apply the statute of limitations to claims involving pension

22   benefit determinations for employees who had taken pregnancy-related leaves of absence

23   before the Pregnancy Discrimination Act was adopted in 1979.  The employees argued

24   that there were continuing violations with each new application of the challenged vesting

25   rules.  The court held that the claims were time barred.  The holding was based on a

26   different statute (Title VII), but it answered the same question that is raised in the instant

27   case:  whether the statute of limitations began to run when the challenged plan provision

28   was adopted more than 20 years ago, or when each new pension check is issued.

1    *Hulteen*'s logic applies equally in the ERISA context, in which courts have rejected

2    attempts to circumvent the statute of limitations by transforming ongoing benefit

3    payments into continuing violations.  *See, e.g.*, *Phillips,* 944 F.2d at 520-21 (holding that

4    plaintiffs' knowledge of the failure to conform the plan to ERISA barred the claims

5    notwithstanding arguments that the failure was continuing); *Pisciotta,* 91 F.3d at 1332 (in

6    connection with claims that imposition of cap on benefits violated ERISA, deciding that

7    statute of limitations began to run when plaintiffs first obtained knowledge that the cap

8    would be applied to their benefits, not each time they were allegedly entitled to an

9    uncapped benefit).[5]

10    In this case, Plaintiffs' and the putative class members' claims accrued, *at the*

11    *latest*, upon their receipt of a benefit payment calculated pursuant to the challenged

12    amendments.  Their claims likely accrued much earlier, however, since most, if not all of

13    them, would have learned of the amendments to the benefit formula anywhere from ten to

14    twenty years before the Complaint was filed.  As demonstrated by the named Plaintiffs'

15    experiences, as discussed below, this inquiry is highly individualized and not suitable for

16    class treatment.

17    Some Plaintiffs' claims are unambiguously barred based on the dates they began

18    receiving benefits calculated under the challenged amendments.  For example, Plaintiff

19    _____

20    [5]    These cases effectively superseded *Meagher* (although without citing the *Meagher*
      decision), insofar as *Meagher* held that each benefit check that was issued to a retiree was

21    a separate breach.  *Phillips,* 944 F.2d at 520-21; *Pisciotta,* 91 F.3d at 1332; *see also, Miele*
      *v. Pension Plan of New York State Teamsters Conference Pension & Retirement Fund*, 72

22    F. Supp. 2d 88, 101-2 (E.D.N.Y. 1999) (noting that *Pisciotta* calls into question the
      viability of *Meagher*'s "continuing claims" theory).  Not only is *Meagher* no longer good

23    law on this point, but it is factually distinguishable.  In *Meagher,* the issue was not
      whether the plan amendment effected an impermissible cutback of pension benefits, but

24    whether the fiduciaries breached their duties by failing to comply with a prior holding in
      another case that had definitively resolved the anti-cutback question against the plan.

25    That is why the court in *Meagher* applied the ERISA limitations period for breaches of
      fiduciary duties, ERISA § 413, 29 U.S.C. § 1113, as opposed to the most analogous state

26    statute of limitations that would ordinarily apply to a 204(g) anti-cutback claim.  *See, e.g.*,

27    *Romero*, 404 F.3d at 224.

28

1    Donald McCarty retired and began receiving benefits on January 31, 1985.  (McCarty

2    Decl. ¶ 3; Declaration of Dawn L. Dauphine ("Dauphine Decl."), attaching McCarty Dep.

3    at 20.)  He also received a final benefit calculation from Honeywell in February 1985.

4    (Dauphine Decl., attaching McCarty Dep. at 30-32 & Honeywell Deposition Exhibit 1[6].)

5    This final benefit calculation provided Mr. McCarty with all of the information necessary

6    to determine precisely how any piece of his retirement benefit (including the offsets) was

7    calculated.  Likewise, Plaintiffs Richard Scates, Melvin Jones, and Walter West retired

8    and began receiving benefits calculated pursuant to the challenged amendments more than

9    six years before they filed suit.  (*Id.*, attaching Scates Dep. at 10, Scates began receiving

10   pension benefits in July 1991; Jones Decl. ¶ 3; Dauphine Decl., attaching Jones Dep. at

11   10, Jones retired in October 1993; West Decl. ¶ 3, West retired in September 1995).  Each

12   of them also received final benefits calculations that disclosed fully the manner in which

13   the challenged offsets were applied to their retirement benefits.  (Dauphine Decl.,

14   attaching Scates Dep. at 66-67, HDE 67, Jones Dep. at 58-62, HDE 47, & Ex. F,

15   document WW00001-00007).  Messrs. Jones, McCarty, Scates, and West's claims,

16   therefore, are barred regardless of which limitations period this Court applies.[7]

17            By contrast, other Plaintiffs' claims are not necessarily barred solely based on the

18   date they began receiving pension benefits, but are barred based on other events that gave

19   them knowledge of the alleged violations at issue in this case.  For example, Plaintiff

20   Barbara Allen did not retire and begin receiving benefits checks until September or

21   October 2000.  (Allen Decl. ¶ 3; Dauphine Decl., attaching Allen Dep. at 8-9.)  Ms.

22   Allen's deposition testimony, however, establishes that she had knowledge of the

23   violations at issue in this litigation well before September 2000.

24            Between 1984 and her retirement in 2000, Ms. Allen received a number of widely

25   [6]      Hereafter, cited as "HDE __."

26   [7]      In addition, Ms. Allen's claims would be barred based on the date she received her
     first benefit check if this Court applies ERISA's three-year actual knowledge standard to
27   Plaintiffs' anti-cutback claim.  *Meagher*, 856 F.2d at 1422-23; *See Phillips*, 944 F.2d at
     521; *Pisciotta*, 91 F.3d at 1332.
28

distributed communications that disclosed the application of the challenged amendments to participants' benefits.  In particular, Ms. Allen received a letter in January 1984 that enclosed two brochures describing the merger of the Garrett and Signal plans.  (Dauphine Decl., attaching Allen Dep. at 17, 20 & HDE 3.)  One of the enclosed brochures contained a sample calculation demonstrating that the SBA offset would be calculated based on the full value of a participant's SBA with interest at 12.3%.  (*Id.*, attaching HDE 3 at BA0372.)  In 1990, Ms. Allen received an AlliedSignal Retirement Plan SPD.  (*Id.*, attaching Allen Dep. at 22-23.)  This SPD disclosed the amended benefit formula, including the Social Security offset Plaintiffs now challenge.  (*Id.*, attaching HDE 7 at BA0397.)

Ms. Allen also received a number of personalized communications that disclosed the precise effect of the challenged amendments on her benefits.  In 1984, Ms. Allen received a personal benefit statement that stated the amount of the retirement plan benefit she had accrued with and without the SBA offset.  (*Id.*, attaching Allen Dep. at 33 & HDE 10 at BA0609.)  In addition, Ms. Allen requested and received several pension estimates at regular intervals, including estimates given to her in 1997 and 1999.  (*Id.*, attaching Allen Dep. at 58-61, 70-71, 76-77, 85 & HDE 16, 17, 18, 23.)  In particular, like the 1984 personal benefits statement, the 1997 pension estimates disclosed the exact amount by which the SBA offset reduced Ms. Allen's Retirement Plan benefits.  (*Id.*, attaching HDE 17 at BA0614-15 & HDE 18 at BA0620.)  Indeed, Ms. Allen testified that the estimate she received in 1997 led her to believe that her pension benefits were being calculated incorrectly.  (*Id.*, attaching Allen Dep. at 116.)  All of these individualized communications disclosed to Ms. Allen the same information that a benefit check would have disclosed:  the effect of the challenged amendment on her retirement plan benefits.  Ms. Allen, therefore, received actual knowledge of the violation underlying her present claims well outside of any possible statute of limitations period.  *See Meagher*, 856 F.2d at 1423 (participant obtained actual knowledge of violation from receipt of benefit check); *Phillips*, 944 F.2d at 521 (knowledge of one of a series of related breaches triggers the

1    statute of limitations as to all such breaches); *Pisciotta*, 91 F.3d at 1332 (same).

2         This type of exhaustive analysis must be undertaken for any putative class member

3    who did not begin receiving benefits outside of the relevant limitations period.  Plainly,

4    this monumental task cannot be accomplished based on class wide proof, nor in any

5    formulaic fashion.  It will, instead, require individualized discovery and motion practice

6    or hearings for any one of the more than 10,000 putative class members who began

7    receiving benefits within the statutory period.  Moreover, Plaintiffs' deposition testimony

8    reveals that many of the putative class members may have obtained knowledge of the

9    alleged violations underlying this lawsuit well outside of the limitations period.

10         In fact, many of these putative class members may have received their knowledge

11   from a variety of disparate oral communications – evidence that is quintessentially

12   inappropriate for class wide treatment.  For example, Ms. Allen testified that she spoke

13   with many fellow employees about their concern that their pension benefits were being

14   calculated improperly.  (Dauphine Decl., attaching Allen Dep. at 84-88, 95-97, 110-114).

15   In 1999, Ms. Allen actually helped two other participants, Paul Bielert and Jack Gilmore,

16   investigate the alleged violations at issue in this litigation and construct a ***500 page***

17   submission to the Department of Labor.  (*Id.*, attaching Allen Dep. at 87-89 & HDE 46.)

18   Putative class members like Messrs. Bielert and Gilmore may have obtained knowledge of

19   the alleged violations outside of the relevant time period based on their own independent

20   investigations.

21         The testimony of other named Plaintiffs further underscores the number of

22   disparate, individual communications from which putative class members might have

23   obtained knowledge of their claims.  Mr. McCarty testified that as early as 1989, he and

24   other former employees discussed their belief that Honeywell incorrectly calculated their

25   retirement benefits.  (*Id.*, attaching McCarty Dep. at 20-22).  Similarly, Mr. Scates

26   testified that he was present during meetings as early as 1999 in which an individual made

27   a presentation to a group of Garrett employees about the Company's use of an incorrect

28   formula to calculate SBA offsets.  (*Id.*, attaching Scates Dep. at 15-20).  Mr. Scates

11

1   continued to have conversations with other former Garrett employees about their belief

2   that Honeywell was calculating the offsets incorrectly, culminating with a meeting with

3   their present counsel to discuss potential claims in the fall of 2000 or winter of 2001.  (*Id.*,

4   attaching Scates Dep. at 21-31).  Prior to that meeting with counsel, Mr. Scates and

5   approximately 100 to 125 other former Garrett Honeywell retirees had formed a group of

6   individuals who "felt like the offsets at that time were completely wrong."  (*Id.,* attaching

7   Scates Dep. at 43-45).  Other putative class members undoubtedly obtained knowledge of

8   their claims outside of the limitations period through participation in groups and meetings

9   like the ones about which Messrs. McCarty and Scates testified.  Such information cannot

10  be obtained and adjudicated, however, without individualized discovery directed to each

11  participant on behalf of whom a claim is asserted.

12       Still other putative class members may have developed knowledge of the alleged

13  violations outside of the limitations period through their involvement in focus groups

14  geared to answering participants' concerns about the SBA offset.  By way of example,

15  Ms. Allen received from another employee an October 25, 1995 letter from the "Engine

16  Secured Benefit Account (SBA) focus group" to the president of AlliedSignal Aerospace.

17  (*Id.*, attaching Allen Dep. at 160 & HDE 36.)  This letter, signed by 10 employees,

18  specifically challenged the use of a 7.5% interest projection rate for calculating the SBA

19  offset, and stated that the "SBA surplus balance should be treated with the same rules as

20  the basic balance, at a 3.5 percent interest rate in the offset calculation."  (*Id.*, attaching

21  HDE 36 at BA0210.)  Putative class members who served on this or other focus groups, or

22  who spoke to members of such a focus group likely obtained knowledge of the alleged

23  violations at issue in this case well outside of the limitations period.

24       Other putative class members may have obtained knowledge of the alleged vio-

25  lations by attending seminars Defendants held, for example, in 1995 designed to answer

26  participants' questions about the SBA offset.  (*Id.*, attaching HDE 35, memorandum to all

27  Phoenix and Tempe Aerospace employees describing meetings to discuss employees'

28  concerns regarding the SBA offset).  Ms. Allen and her husband attended such a seminar

1   in 1995, at which time Ms. Allen was "concerned" about the size of the SBA offset.  (*Id.,*

2   attaching Allen Dep. at 138-149; see also *Id.*, attaching HDE 31).  Indeed, the seminar

3   was attended by a "large group" of other employees who were also concerned that their

4   SBA offsets were "so high."  (*Id.*, attaching Allen Dep. at 143-144, 149.)

5       Still other putative class members may have obtained knowledge that the

6   challenged amendments were being applied to them through individual meetings with

7   human resources or benefits representatives while employed with the Company, during

8   exit interviews, or after they exited.  For example, Ms. Allen asked someone at the

9   company, perhaps from human resources, about how the offset to the pension was

10  calculated.  (*Id.*, attaching Allen Dep. at 155-56.)  Mr. Jones, who retired in May of 1993,

11  testified that he believed, based on his exit interview, that the Company was calculating

12  his pension incorrectly as a result of the SBA offset.  (*Id.*, attaching Jones Dep. at 21-22).

13  Undoubtedly, some of the putative class members also had exit interviews or sought out

14  information from human resources and benefits personnel on their own.  Determining

15  whether the putative class members did so, and whether and when they received

16  knowledge of their claims from those discussions, cannot be accomplished on a class wide

17  basis.  In sum, the individualized inquiries necessary to decide Plaintiffs' claims are more

18  than theoretical, they lie at the heart of this matter and preclude class certification.

19              b.    **Plaintiffs' claims for benefits under the terms of the Plans**
20                    **are not typical of the class.**

21      Similarly, Plaintiffs' claims for benefits under the terms of the Plans are not typical

22  of the class.  Like the anti-cutback claims they mirror, liability under Plaintiffs' benefit

23  claims can be established only after resolving the statute of limitations defense; that

24  defense, moreover, can be adjudicated only on an individualized basis.  A claim for

25  benefits under ERISA § 502(a)(1)(B) is governed by the most analogous state statute of

26  limitations; in this case, Arizona's six year statute of limitations for contract actions.

27  *Mogck v. Unum Life Ins. Co. of Am.*, 292 F.3d 1025, 1028 (9th Cir. 2002) (noting that a

28  claim for benefits is governed by the state statute of limitations for suits on written

13

1   contracts).

2          Like federal claims generally, ERISA claims for benefits allegedly owed under a

3   pension plan accrue when the plaintiff discovers, or with due diligence should have

4   discovered, the injury that forms that basis for his claim.  *See, e.g. Romero*, 404 F.3d at

5   221-23 (equating the "clear repudiation" standard with the federal discovery rule).  A

6   claim for benefits under an ERISA plan accrues, at the latest, therefore, when the claim is

7   formally denied.  *Mogck*, 292 F.3d at 1028 (claim for benefits accrues when claim is

8   denied, or plaintiff has reason to know the claim has been denied).  Consistent with the

9   federal discovery rule, however, a benefit claim can also accrue before a claim is denied

10  and, indeed, before a claim is filed when "a clear and continuing repudiation of rights

11  under the pension plan is made known to the beneficiary."  *Martin v. Constr. Laborer's*

12  *Pension Trust For S. Cal.*, 947 F.2d 1381, 1384 (9th Cir. 1991); *Union Pac. R.R. Co. v.*

13  *Beckham*, 138 F.3d 325, 330 (8th Cir. 1998) (noting that a clear repudiation can occur

14  before a claim for benefits is filed); *Bennett v. Federated Mut. Ins. Co.*, 141 F.3d 837, 839

15  (8th Cir. 1998) (finding that a "clear repudiation" occurred when plaintiff knew or should

16  have known that he had forfeited benefits under the plan).

17         The clear repudiation standard cannot be evaluated on a class wide basis.  Rather,

18  as described in detail above, adjudicating the statute of limitations defense under this

19  standard will require the Court to examine the mix of communications each participant

20  received to determine whether and when he or she received a "clear repudiation" of his or

21  her alleged rights.

22         Some individuals may have received a "clear repudiation" of their alleged right to

23  lower offsets when they received a final benefit calculation that disclosed the precise

24  amount and calculation method for the offsets to their pension benefits.  (*E.g.*  Dauphine

25  Decl., attaching Jones Dep. at 20-21 & HDE 47 at MJ0014, Jones first believed his

26  pension was calculated improperly when he received a final pension calculation disclosing

27  the offsets during his exit interview in 1993).  Other putative class members may have

28  received clear repudiations of their interpretation of the plan by participating in focus

14

1    groups specifically designed to address the calculation of the SBA offset.  (*Id.*, attaching

2    HDE 36, letter signed by 10 participants complaining that offset should be calculated

3    using a 3.5% interest projection rate, rather than a 7.5% projection rate), or by attending

4    seminars that explained the calculation of the SBA offset.  (*E.g. id.*, attaching HDE 34,

5    letter announcing seminars designed to explain the SBA offset); *see also id.*, attaching

6    HDE 31, seminar materials describing the SBA offset).  Thus, because each participant's

7    claims will stand or fall based solely on the particular facts surrounding that claim,

8    Plaintiffs' claims are not typical.

9           2.    **Individualized issues relating to the equitable defense of laches**

10                **render Plaintiffs' claims atypical of the putative class.**

11          In addition to the statute of limitations defenses discussed above, Plaintiffs' claims

12   are subject to the equitable defense of laches.  Like the limitations defenses, evaluating

13   whether Plaintiffs' – and potentially some of the putative class members' – claims are

14   barred by the doctrine of laches will require individualized inquiries not suitable for class

15   treatment.  These diverse individual fact questions preclude a finding that Plaintiffs'

16   claims are typical of the putative class.  *See, e.g., Broussard*, 155 F.3d at 342 (claims are

17   not typical when the named plaintiffs and/or the putative class members are subject to

18   affirmative defenses that "depend on facts peculiar to each plaintiff's case.").

19          In order to establish the laches defense, the defendant must show that the plaintiff

20   unreasonably delayed in filing suit, and that the delay prejudiced the defendant.  *See*

21   *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-54 (9th Cir. 2001).  The Ninth Circuit also

22   has recognized that, in rare circumstances, laches may be justified even before the

23   expiration of the statute of limitations.  *See Telink Inc. v. U.S.*, 24 F.3d 42, 45 (9th Cir.

24   1994).  ("If the defendant can show harm from the delay, the court may, in extraordinary

25   circumstances, defeat the claim based on laches, though a claim is within the analogous

26

27

28

1     limitations period.")  *Id.* at 45 n.5.[8]

2         Here, the laches defense cannot be adjudicated on a class wide basis.  Indeed, as an

3 equitable defense, the individual circumstances relating to each Plaintiff or putative class

4 member's delay in filing suit must be evaluated separately to determine whether their

5 claims are barred.  Obviously, this searching inquiry cannot be conducted on a class wide

6 basis.

7         To determine whether a plaintiff has delayed inexcusably in filing claims, the court

8 first must determine when the plaintiff knew or should have known of the allegedly

9 unlawful conduct, and then the date on which the lawsuit is finally filed.  *Danjaq*, 263

10 F.3d at 953.  As discussed above, detailed individual inquiries would be necessary to

11 ascertain when each Plaintiff and putative class member knew or should have known of

12 the allegedly unlawful conduct.  *See* Section III(B)(1), *supra*.  The need for this inquiry

13 alone precludes class certification.

14         Moreover, whether a plaintiff's delay in bringing suit is unreasonable depends on

15 his or her individual circumstances.  *See, e.g.*, *Brown v. Cont'l Can Co.*, 765 F.2d 810,

16 814 (9th Cir. 1985) ("Laches is an equitable doctrine.  Its application depends upon the

17 facts of the particular case.").  These circumstances, obviously, cannot be ascertained in

18 any class wide fashion.  In fact, as evidenced by the Plaintiffs' depositions, the relevant

19 circumstances can only be determined after individualized discovery.  In their depositions,

20 the Plaintiffs admitted to a lack of diligence in investigating and pursuing their rights.

21 Plaintiff McCarty, for example, testified:

22

23    [8]     *Accord Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946) ("Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief. . . . A

24 federal court may not be bound by a statute of limitation and . . . may dismiss a suit where the plaintiffs' lack of diligence is wholly unexcused. . . . A suit in equity may fail though

25 not barred by the act of limitations."); *Bouman v. Block*, 940 F.2d 1211, 1227 (9th Cir. 1991) (laches may be effectively invoked in rare cases before the statute of limitations has

26 run); *Shouse v. Pierce County*, 559 F. 2d 1142, 1147 (9th Cir. 1977) (laches may be applicable before expiration of limitations period where there is "proof of prejudice

27 caused by the delay in filing suit").

28

1
2
3

> What I'm trying to tell you is they probably changed the formula in 1984. Okay? ***They may have notified us. I'm not saying they didn't. But if they did, we didn't pay any attention to it.***

4  (Dauphine Decl., attaching McCarty Dep. at 24-25) (emphasis added.)  Plaintiff Jones first

5  suspected that his pension was being calculated improperly in his exit interview in May

6  1993 when Gwen Barden pointed out the SBA and Social Security offsets to him.  (*Id.*,

7  attaching Jones Dep. at 20-23.)  Nonetheless, Jones "didn't really even think any more

8  about it" for *six years* until he spoke with a group of retirees about the issue in the summer

9  of 1999.  (*Id.*, attaching Jones Dep. at 23-24.)  Plaintiff Scates retired in 1991 and received

10  a detailed final pension calculation at that time.  (*Id.*, attaching Scates Dep. at 63-66 &

11  HDE 67.)  Mr. Scates, however, chose not to even read it for *nine years* until he did so in

12  2000 at another retiree's prompting.  (*Id.,* attaching Scates Dep. at 66-67.)  Even though

13  Plaintiff Allen was "concerned" about the size of the SBA offset to her pension in 1995,

14  and concluded that her pension was not being calculated correctly in 1997, she did not file

15  suit until 2004 – *seven years* later.  (*Id.*, attaching Allen Dep. at 116-17, 143-44.)  While

16  each of the named Plaintiffs' claims should clearly fail, these determinations cannot be

17  evaluated or adjudicated on a class wide basis.  Similarly, the reasons why none of the

18  putative class members filed suit cannot be ascertained or adjudicated on a class wide

19  basis either.

20  Finally, it is clear that Defendants have been prejudiced by the delay in bringing

21  this action, though not all of the prejudice can be evaluated on a class wide basis.  Courts

22  have recognized two forms of prejudice in the laches context – evidentiary and

23  expectations-based.  *Danjaq*, 263 F.3d at 955.  "Evidentiary prejudice includes such

24  things as lost, stale, or degraded evidence, or witnesses whose memories have faded or

25  who have died." *Jackson v. Axton*, 25 F.3d 884, 889-90 (9th Cir. 1994).[9]  Expectations-

26  based prejudice (also known as "economic" prejudice) results when a defendant can show

27
28

---

[9]     *Jackson* was later abrogated on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

1    that it took actions or suffered consequences that it would not have had the plaintiffs

2    brought suit promptly. *Danjaq*, 263 F.3d at 955.

3         Plaintiffs' twenty-year delay in filing this suit unquestionably caused Defendants

4    expectations-based prejudice.  Had Plaintiffs timely challenged the amendments at issue

5    in this case, Defendants could have taken any number of actions to mitigate or eliminate

6    their potential damages.  For example, Defendants could have reduced the interest rate

7    used to compute the SBA offset (as Plaintiffs contend ERISA requires) while amending

8    the Plan to decrease or eliminate future benefit accruals to defray the cost of this change.

9    *See, e.g.*, 29 U.S.C. 1054(h) (plan may be amended to reduce future benefit accruals with

10   sufficient notice).  Similarly, Defendants could have terminated the Plans to limit the costs

11   associated with Plaintiffs' conception of the anti-cutback rule.  *See, e.g.*, *Peralta v.*

12   *Hispanic Bus., Inc.*, 419 F.3d 1064, 1070 (9th Cir. 2005) ("It is indisputable that an

13   employer has a right to eliminate an ERISA-governed benefit plan.").  Even if Defendants

14   had determined that they were willing to bear the increased cost associated with Plaintiffs'

15   interpretation of ERISA's requirements, Defendants would have funded this increased

16   cost over the intervening 20 years, harnessing the time-value of money and dramatically

17   reducing the severe financial impact that such an unintended benefit increase could have

18   on Honeywell and the funding status of the plan.  Plaintiffs' delay in challenging the

19   amendments, however, deprived Defendants of the ability to evaluate and potentially

20   adopt one or more of these and other financial mitigating measures.

21        Plaintiffs' delay has also caused Defendants evidentiary prejudice as well.  As

22   demonstrated by Plaintiffs' deposition testimony, moreover, evidentiary prejudice simply

23   cannot be determined on a class wide basis.  Given the enormous delay between the time

24   the relevant events happened and the time Plaintiffs filed suit, some of the Plaintiffs'

25   memories have faded substantially.  For example, Plaintiff Allen could not remember

26   whether she read statements detailing the difference in her retirement benefits with and

27   without the SBA offset because, "You're going back to '84.  I can't remember that."

28   (Dauphine Decl., attaching Allen Dep. at 40.)  Nor could Ms. Allen remember the names

of other employees who, like her, "knew that our pension was figured wrong." (*Id.*, attaching Allen Dep. at 110-114.) Likewise, Plaintiff Scates could not answer questions at his deposition about his knowledge of the plans because of the passage of time: "Well, I really don't know how to answer that because I do not recall the verbiage. You know that's been since – how many years ago? '96? No, it wasn't. It was '99. I do not recall the exact verbiage." (*Id.*, attaching Scates Dep. at 20.) Plaintiff McCarty, moreover, could not remember what his understanding at the time of his retirement was concerning the effect on his pension of transferring the SBA into the pension and does not remember the May 1984 SPD. As he explained, "I don't recall, no. In all honest, I don't. . . .You're going back 22 years." (*Id.*, attaching McCarty Dep. at 57.) Obviously, it is not possible to probe the putative class members' memories of relevant facts on a class wide basis. Rather, the inquiry is necessarily individualized.

Other forms of evidentiary prejudice must also be evaluated individually. For example, Plaintiff Jones testified that he spoke with Gwen Barden during his exit inter-view in 1993 about the SBA offset to the pension. Based on this conversation, Mr. Jones believed that the Company was calculating his pension incorrectly as a result of the SBA offset. (*Id.*, attaching Jones Dep. at 21-22.) Likewise, in 1991, Mr. Scates spoke with Elizabeth Bennett concerning the impact of transferring his SBA to the Retirement Plan. (*Id.*, attaching Scates Dep. at 43-44.) Undoubtedly, many putative class members raised similar concerns with human resources or benefits employees, seminar presenters, focus groups, etc. It would be impossible to identify on a class wide basis all of the witnesses relevant to each putative class member. Moreover, even if the Court could do so, it could not evaluate based on class-wide proof whether those witnesses were unavailable as a result of Plaintiffs' delay. Finally, the Court cannot determine whether documents specific to each putative class member (*e.g.* their final benefit calculations, personal statements of benefits, etc.) have been lost or destroyed due to their delay in filing suit on a class wide basis. Thus, the application of the laches defense to the putative class presents insurmountable individualized issues that make class treatment inappropriate.

19

C.    **Plaintiffs' Reporting And Disclosure Claims Are Neither Common Nor Typical.**

Plaintiffs seek to certify a class on their claim for statutory penalties under ERISA § 502(c) for the Plan Administrator's alleged failure to produce plan documents upon request. There are no common issues regarding this claim, nor is it typical of the class. Accordingly, class certification on this claim is also improper.

Rule 23(a) requires that there be "questions of law or fact common to the class." Fed. R. Civ. Pro. 23(a)(2). Not every common question will suffice, however:

> at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation.

*Sprague*, 133 F.3d at 397. Moreover, "if material variations exist as to the law or facts involved with individual class member injuries, then the commonality requirement [cannot] be met." *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985).

In this case, there are *no* common questions regarding Plaintiffs' section 502(c) claim for penalties. To prevail on a section 502(c) claim, a plaintiff must demonstrate that:

(1) he made a request for documents, (2) which ERISA requires a plan administrator to provide to participants, and (3) the administrator failed to provide the participant the requested documents within 30 days of his request. 29 U.S.C. § 1132(c). None of these elements are common to the class.

Plaintiffs make no allegation (nor could they) that each of the putative class members made a request for documents, much less that they made a request for the same documents, or made requests at the same time. In fact, Plaintiffs allege only that they requested documents in a June 21, 2001 letter. (Amended Compl. ¶ 47.) This letter, however, was sent on behalf of only *three* individuals, one of whom is a named Plaintiff. (Dauphine Decl., Exh. V, document HWAL004353-4354). Moreover, Plaintiffs' claims would not be common or typical even assuming that each of the putative class members

made a request for documents.  To adjudicate the putative class' section 502(c) claims, the Court would be required to conduct a mini-trial for each putative class-member to determine:  (1) whether he made a request for documents, (2) if so, when the request was made, (3) which documents he requested, (4) whether ERISA requires the administrator to produce these specific documents, (5) when the plan administrator responded to the request, (6) when he knew or should have known that the administrator had failed to respond to the request in a timely fashion, and (7) whether he filed suit within the applicable statute of limitations.  Not one of these issues can be decided on a class wide basis.  *See Brown v. Utilicorp United, Inc.*, No. 97-1277, 1998 WL 166593 at *3 fn.1 (D. Kan. Feb. 24, 1998) (refusing to grant certification of ERISA § 502(c) claim because "that count would likely require individualized proof concerning various members' requests (or lack thereof) for Plan information.").  Thus, Plaintiffs' ERISA § 502(c) claims are neither common nor typical of the putative class, and cannot be certified as a class claim.

### D.     Plaintiffs Cannot Adequately Represent The Putative Class.

Plaintiffs are not adequate class representatives.  The applicable statutes of limitation and the doctrine of laches bar Plaintiffs' claims.  A named plaintiff cannot represent a putative class if his or her claims are barred.  *Patterson*, 756 F. Supp. at 478 (time-barred plaintiffs could not serve as class representatives).[10]  Thus, Plaintiffs cannot satisfy the adequacy of representation prong of Rule 23(a) and class certification is inappropriate.

---

[10]     *See also Alaska v. Suburban Propane Gas Co.*, 123 F.3d 1317, 1321 (9th Cir. 1997) (where "named plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts properly exercise their discretion in denying class certification."); *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001) (affirming district court's denial of class certification for lack of typicality where the named plaintiff's claims were subject to unique defenses); *Hanon*, 976 F.2d at 508 (where there is "a danger that absent class members will suffer if their representation is preoccupied with defenses unique to [the named plaintiffs]," class certification should be denied).

**E.    This Action Cannot Be Certified Under Either Rule 23(b)(2) or 23(b)(3).**

      1.    **Certification under Rule 23(b)(3) is improper because individual issues predominate over common issues, and the class action device is not a superior method for adjudicating this dispute.**.

A court may certify a class under Rule 23(b)(3) only if it finds that (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiffs cannot satisfy either prong of this analysis.

      a.    **Highly individualized questions predominate over common questions**.

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Common issues will not predominate where – as here – liability cannot be established on a class-wide, as opposed to individualized, basis.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) ("[g]iven the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions, any overarching dispute about the health consequences of asbestos exposure cannot satisfy the Rule 23(b)(3) predominance standard"); *see also Henry v. Assocs. Home Equity Servs., Inc.*, 272 B.R. 266, 277 (C.D. Cal. 2002), *aff'd,* 69 Fed. Appx. 394, 395 (9th Cir. 2003) (concluding that common issues did not predominate because of the need to evaluate individual oral communications).

In this case, as discussed above, individual issues relating to each putative class member's knowledge of the relevant facts, the reasons for his or her delay in filing suit, and the resulting prejudice to Defendants will predominate over any common issues.  As described in Sections III(B)(1) and (2) above, no liability determination can be made for any putative class member without a searching inquiry into his or her peculiar circumstances.  Thus, "[b]ased on the individualized, fact-intensive nature of the

necessary inquiry in this case, the statute of limitations issues preclude a finding that common issues predominate over individual issues." *O'Connor*, 197 F.R.D. at 414. The same is true here.

### b. Class treatment is a far inferior method by which to litigate this case.

As the Committee Notes state, "[s]ubdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort and expense, and promote uniformity of decision as persons similarly situated without sacrificing procedural fairness or bringing about undesirable results." Committee Notes to Federal Rule of Civil Procedure 23(b)(3). By contrast, if this action were certified for class treatment, the result would, in fact, sacrifice procedural fairness and bring about undesirable results. The countless individual determinations necessary simply to establish liability for each putative class render the class device inferior. *See Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1192 (9th Cir.), *amended*, 273 F.3d 1266 (9th Cir. 2001) ("If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"). In short, the facts and circumstances of this case clearly demonstrate that class treatment not only would be improper as a matter of law, but also would be inequitable and patently inferior to individual pursuit of claims.

### 2. The nature and substance of the claims for relief preclude certification under Rule 23(b)(2).

### a. Certification under Rule 23(b)(2) is improper because Plaintiffs are seeking primarily money damages.

Due process requires "certain minimal procedural safeguards, such as notice and the right to opt out," if absent class members may be bound when "substantial" money damages are involved. *Molski v. Gleich*, 318 F.3d 937, 947-48 (9th Cir. 2003). Because Rule 23(b)(2) does not allow for notice or the right to opt out, therefore, class certification under Rule 23(b)(2) is proper only when a claim for money damages is "secondary" to a

1  claim for injunctive or declaratory relief.  *Id.*  This case cannot be certified under Rule

2  23(b)(2) because money damages predominates over the relief requested.

3        Class certification is appropriate under Rule 23(b)(2) only where plaintiffs satisfy

4  all of the prerequisites of Rule 23(a) and "the party opposing the class has acted or refused

5  to act on grounds generally applicable to the class, thereby making appropriate final

6  injunctive relief or corresponding declaratory relief with respect to the class as a whole."

7  Fed. R. Civ. P. 23(b)(2).  Although Rule 23(b)(2) is silent on whether monetary relief can

8  be recovered on behalf of putative class members, the Committee Notes state that Rule

9  23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively

10  or predominantly to money damages."  Committee Notes to Feed R. Civ. P. 23(b)(2).

11        The Ninth Circuit has declined to adopt a rule that class actions seeking monetary

12  damages are *per se* un-certifiable under Rule 23(b)(2).  Instead, it has required a careful

13  consideration of the facts of each case to ensure that a class certified under Rule 23(b)(2)

14  is primarily seeking injunctive relief.  *Molski,* 318 F.3d at 949-50.  The Ninth Circuit has

15  stated that this inquiry is "similar" to the Second Circuit's test, which it described as

16  follows:

> Although the assessment of whether injunctive or declaratory
> relief predominates will require an ad hoc balancing that will
> vary from case to case, before allowing (b)(2) certification a
> district court should, at a minimum, satisfy itself of the
> following: (1) even in the absence of a possible monetary
> recovery, reasonable plaintiffs would bring the suit to obtain
> the injunctive or declaratory relief sought; and (2) the
> injunctive or declaratory relief sought would be both
> reasonably necessary and appropriate were the plaintiffs to
> succeed on the merits.  Insignificant or sham requests for
> injunctive relief should not provide cover for (b)(2)
> certification of claims that are brought essentially for
> monetary recovery.

26  *Molski*, 218 F.3d at 950 fn. 15 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267

27  F.3d 147, 165 (2d Cir. 2001)).  Thus, the Ninth Circuit calls for consideration of the

28  "specific facts and circumstances of each case" and the "intent of the plaintiffs in bringing

24

suit" to determine whether injunctive relief predominates over any incidental damages claims. *Molski*, 318 F.3d at 949-50.

There can be no question that Plaintiffs' requests for money damages predominate over any injunctive relief they also seek. First, Plaintiffs allege that they "have been damaged . . . and deprived of benefits under the Plans totaling *hundreds of millions* of dollars." (Amended Compl. ¶ 82) (emphasis added). It strains credulity for Plaintiffs to assert that their claim for damages totaling into the *hundreds of millions of dollars* is merely incidental to the injunctive relief they seek. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1240 (9th Cir. 1998) (comparing value of injunctive and monetary relief to determine which predominated); *Robinson*, 267 F.3d at 165 (holding that district court must assure itself that a reasonable plaintiff would bring the suit for injunctive relief in the absence of any possible monetary recovery.) Indeed, even Plaintiffs' requests for "injunctive" relief are really nothing more than thinly disguised attempts to receive payments of money. Plaintiffs seek a declaratory judgment and injunction *only* to force Defendants to pay them a larger retirement benefit – *i.e.* money. Though couched in equitable terms, fundamentally, this is a claim for money damages. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty.").

In short, despite Plaintiffs' efforts to recast the remedy as primarily injunctive, monetary damages are and will remain the dominant focus, and, therefore, certification under Rule 23(b)(2) would be improper.

> b.    **Without an opportunity to opt-out, class certification under Rule 23(b)(2) could violate the due process rights of absent class members.**

There is growing recognition that Rule 23(b)(2) is not an appropriate vehicle for

class certification when there are individualized claims for monetary relief. *See Molski*, 318 F.3d at 948 ("[W]e recognize the Court's growing concerns regarding the certification of mandatory classes when monetary damages are involved."). The Due Process Clause of the Fifth Amendment (incorporated by reference in the Fourteenth Amendment) states that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. In recent years, the United States Supreme Court has recognized that Rule 23(b)(2) class actions seeking monetary relief present serious due process concerns.

When the 1966 Amendments to the Federal Rules of Civil Procedure were drafted, the prevailing view was that Due Process simply required "adequate" representation as discussed in *Hansberry v. Lee*, 311 U.S. 32 (1940). However, the Supreme Court has observed on numerous occasions for more than twenty years that where procedural Due Process concerns arise in civil litigation – *i.e.*, where either a constitutionally protected property interest is at stake (the "property thread") or where parties would be forced to litigate in distant forum (the "liberty thread") – more than "adequate" representation is required. Even notice and an opportunity to appear, without an opportunity to opt-out, will not always be sufficient to satisfy the demands of Due Process relative to putative class members. *See, e.g.*, *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-14 (1985) (holding that Due Process precludes out-of-state class plaintiffs from being bound to a judgment rendered in state court unless they are given an opportunity to opt-out). Over the past several years, the Supreme Court has signaled that the requirements of Due Process will not be met unless class members can opt-out.

In dismissing the writ of certiorari in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994), the Court's *per curiam* opinion noted that there was "at least a substantial possibility" that "in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3), which permits opt-out." *Ticor*, 511 U.S. at 121. *Ticor* was a precursor to the Supreme Court's opinion five years later in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). Describing its opinions in *Shutts*, the Court in *Ortiz* observed as follows:

1
2
3
4
5

> [W]e also saw [in *Shutts*] that before an absent class member's right of action [for monetary relief] was extinguishable due process required that the member "receive notice plus an opportunity to be heard and participate in the litigation," and we said that "at a minimum . . . an absent plaintiff [must] be provided with an opportunity to remove himself from the class."

6  *Id.* at 848 (citations omitted).

7      The suggestion of *Ortiz* has not gone unnoticed.  In *Molski*, the Ninth Circuit Court
8  of Appeals explicitly recognized that "[i]ndividualized claims for damages in the class
9  action setting present due process concerns, particularly in the context of no-notice, no-
10  opt-out classes."  *Molski*, 318 F.3d at 947-48.  As a result, the Ninth Circuit has held that
11  "certain minimal procedural safeguards, such as notice and the right to opt out, must be
12  provided to bind absent class members when substantial monetary damages are involved."
13  *Id.*

14      Plaintiffs' proposed Rule 23(b)(2) class definition – which includes former
15  Honeywell employees who worked in states other than Arizona – also implicates the
16  "liberty thread" of the Due Process clause.  In *Shutts*, the Supreme Court held that
17  unnamed, out-of-state class members cannot be bound to a class judgment for dollars
18  unless they are given an opportunity to opt-out.  *Shutts*, 472 U.S. at 811-13.  Referencing
19  the "minimum contacts" standard of *International Shoe Co. v. Washington*, 326 U.S. 310
20  (1945), the *Shutts* Court reasoned that under the Due Process clause of the Fourteenth
21  Amendment, unnamed class members must have the right to opt-out of any class action
22  seeking dollars on their behalf where the presiding court could not exercise personal
23  jurisdiction over them.  *See id.* at 812-13.  Under *Shutts*, therefore, any certification of
24  claims for dollars in a non-opt-out class would require a presumptively unconstitutional
25  exercise of personal jurisdiction over non-Arizona residents.

26      In short, because unnamed members of classes certified under Rule 23(b)(2) cannot
27  opt out, Due Process – under both the "property" and "liberty" threads – precludes class
28  certification of Plaintiffs' proposed claims for monetary relief under Rule 23(b)(2).

**F.     Plaintiffs' Class Definition Improperly Includes Individuals Who Lack Standing To Sue And Whose Claims Are Barred.**

Plaintiffs' class definition improperly includes large groups off individuals who lack standing to sue and whose claims are barred.  For example, the applicable statutes of limitation bar the claims of any participant who began receiving benefits checks outside of the limitations period.  Similarly, the class definition encompasses many participants who signed releases, either for severance or to terminate unrelated litigation, and, therefore, cannot participate in this action.  Furthermore, Plaintiffs' class definition includes individuals who terminated employment with no vested Retirement Plan benefit but held a vested SBA balance.  Such individuals could never have experienced one of the challenged offsets and lack Article III standing to sue.  These individuals, and perhaps other employees (*e.g.* who took lump sum distributions and thus have no expectation of returning to covered employment or of receiving vested benefits), are not "participants" and lack ERISA standing to sue.  Should the Court choose to certify a class, these individuals must either be excluded from the class definition, or segregated into sub-classes so that the sufficiency of their claims may be tested.

## III.   CONCLUSION

For the reasons discussed above, Defendants respectfully request that this Court deny Plaintiff's Motion for Class Certification.

1      Respectfully submitted this 3rd day of April, 2006.

2                      OSBORN MALEDON, P.A.

3                 By:  /s/ David B. Rosenbaum_____

4                    David B. Rosenbaum

5                    Dawn L. Dauphine
                      Osborn Maledon, P.A.

6                    2929 North Central Avenue, Suite 2100
                    Phoenix, AZ  85012-2794

7

8                    Michael L. Banks *(Pro Hac Vice)*
                    William J. Delany *(Pro Hac Vice)*

9                    Azeez Hayne *(Pro Hac Vice)*
                    MORGAN, LEWIS & BOCKIUS LLP

10                  1701 Market Street
                    Philadelphia, PA 19103

11

12                    Attorneys for Defendants

13                 <u>CERTIFICATE OF SERVICE</u>

14      I do certify that on April 3, 2006, I electronically transmitted the attached

15  document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

16  Notice of Electronic Filing to the following CM/ECF registrants:

17

18          Susan Martin
           Martin & Bonnett P.L.L.C.

19          3300 N. Central Avenue, Suite 1720
           Phoenix, Arizona 85012-2517

20          Attorney for Plaintiff

21                             /s/ David B. Rosenbaum

22                             David B. Rosenbaum

23

24

25

26

27

28

29