1  David B. Rosenbaum, Atty. No. 009819
   Dawn L. Dauphine, Atty. No. 010833
2  OSBORN MALEDON, P.A.
   2929 North Central Avenue, Suite 2100
3  Phoenix, AZ   85012-2794
   Telephone: (602) 640-9000
4  drosenbaum@omlaw.com
   ddauphine@omlaw.com
5
   Michael L. Banks, *Pro Hac Vice*            Amy Covert, *Pro Hac Vice*
6  Azeez Hayne, *Pro Hac Vice*                 PROSKAUER ROSE LLP
   MORGAN, LEWIS & BOCKIUS LLP                 One Newark Center, 18th Floor
7  1701 Market Street                          Newark, NJ   07102
   Philadelphia, PA   19103                    Telephone: (973) 274-3258
8  Telephone: (215) 963-5000                   acovert@proskauer.com
   mbanks@morganlewis.com
9  ahayne@morganlewis.com

10 Howard Shapiro, *Pro Hac Vice*              Christopher Landau, P.C., *Pro Hac Vice*
   PROSKAUER ROSE LLP                          Craig S. Primis, P.C., *Pro Hac Vice*
11 909 Poydras Street, Suite 1100              Eleanor R. Barrett, *Pro Hac Vice*
   New Orleans, LA   70112-4017                KIRKLAND & ELLIS LLP
12 Telephone: (504) 310-4088                   655 Fifteenth Street, N.W.
   howshapiro@proskauer.com                    Washington, DC   20005-5793
13                                             Telephone: (202) 879-5000
                                               clandau@kirkland.com
14                                             cprimis@kirkland.com
                                               ebarrett@kirkland.com
15

16 Attorneys for Defendants

17              IN THE UNITED STATES DISTRICT COURT

18               FOR THE DISTRICT OF ARIZONA

19 Barbara Allen, Richard Dippold,          No.  CV04-0424 PHX ROS
   Melvin Jones, Donald McCarty,
20 Richard Scates and Walter G. West,
   individually and on behalf of all others
21 similarly situated,
                                            **DEFENDANTS' OPPOSITION
22             Plaintiffs,                   TO PLAINTIFFS' MOTION FOR
                                             SUMMARY JUDGMENT ON
23        vs.                                STATUTE OF LIMITATIONS
                                             DEFENSE**
24 Honeywell Retirement Earnings Plan,       Oral argument requested
   Honeywell Secured Benefit Plan,
25 Plan Administrator of Honeywell
   Retirement Earnings Plan, and Plan
26 Administrator of Honeywell Secured
   Benefit Plan,
27
               Defendants.
28

Plaintiffs' motion for summary judgment on the statute of limitations tries to obscure the key point here: plaintiffs' three remaining claims arise out of amendments to the Signal Plan that took effect on January 1, 1984, but plaintiffs failed to bring these claims until twenty years later.   According to plaintiffs, those amendments impermissibly reduced individual components of their benefit formula (the Social Security Offset Claim and the SBA Offset Claim), and eliminated the SBA Offset applicable to their minimum benefits (the Minimum Benefits Claim).  *See* Am. Class Action Compl. ¶¶ 19-53 (Docket #47).  Plaintiffs succeeded in persuading this Court to accept these theories in granting them summary judgment on a classwide basis on these claims.  *See Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1149-59, 1162-64 (D. Ariz. 2005).

Plaintiffs are the masters of their complaint, and they were certainly free to bring broad-based classwide claims arising out of the plan amendments.  But they cannot now turn around and, with respect to the accrual of the statute of limitations, characterize their claims as challenges to individual denials of benefits that do not accrue until each individual plan participant's claim for benefits is denied.  This is not a case about an individual denial of benefits; it is a class action about plan amendments and the application of those amendments to all plan participants across the board.  Accordingly, plaintiffs' claims accrued when they knew or should have known of the facts underlying their claims, regardless of whether or when the plan denied any individual claim for benefits.  Here, as defendants explained in their motion for summary judgment on the statute of limitations, there is no question that plaintiffs knew or should have known about such facts well beyond any conceivable limitations period.  Accordingly, this Court not only should deny plaintiffs' motion for summary judgment on statute of limitations grounds, but should grant defendants' corresponding motion.

**ARGUMENT**

**I.    Plaintiffs' Claims Accrued When They Knew Or Had Reason To Know Of Those Claims.**

The key issue here, on which the parties sharply disagree, is when plaintiffs' claims accrued, and hence the statute of limitations on those claims began to run. Plaintiffs contend that their claims did not accrue "until Plaintiffs' claims were formally denied in October 2003 under the Plan's claims and appeals procedures," *regardless* of what plaintiffs previously knew or should have known about the relevant plan amendments.  Pls.' Mot. 7 (Docket #343).  Defendants contend that the claims accrued when plaintiffs knew or should have known of their claims.  *See* Defs.' Mot. 5-9 (Docket #340).  For the reasons explained in defendants' motion, plaintiffs are wrong.

Plaintiffs insist that ERISA claims do not accrue until a "'formal and final denial of benefits.'"  Pls.' Mot. 7 (quoting ABA Section of Labor & Employment Law *Employee Benefits Law* 889 (2d ed. 2000)).  But that assertion is far too broad.  Under ERISA, as under many statutes, a claim accrues when a plaintiff knew or should have known of the facts underlying his claim.  *See, e.g., Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331-32 (9th Cir. 1996) (*per curiam*); *Northern Cal. Retail Clerks Union & Food Emp'rs Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir. 1990).  Indeed, this Court has already recognized that the "know or should have known" standard, which is also "[k]nown as the federal discovery rule," applies to plaintiffs' ERISA claims here.  Order (9/6/06), at 11 (Docket #226).

The point at which a plaintiff knew or should have known of the facts underlying a particular claim, of course, depends on the nature of the claim.  If a claim challenges the application of an ERISA plan to circumstances particular to an individual plaintiff, then it is entirely possible that the plaintiff had no reason to know about such facts until the plan administrator actually applied the plan in the plaintiff's case.  *See, e.g., Chuck v. Hewlett Packard Co.*, 455 F.3d 1026 (9th Cir. 2006); *Martin v. Constr. Laborer's Pension Trust for S. Cal.*, 947 F.2d 1381 (9th Cir. 1991).  But if a claim challenges the

effect of plan amendments on *all* plan participants across the board, then it is hard to see how an individual denial of benefits has anything to do with when a class of plaintiffs knew or should have known of that claim. *See, e.g.*, *Pisciotta*, 91 F.3d at 1332; *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 331 (8th Cir. 1998); *Hirt v. Equitable Ret. Plan for Employees*, 450 F. Supp. 2d 331, 333 (S.D.N.Y. 2006). Put differently, where a claim involves the application of plan language to a particular set of facts, a plaintiff may not know or have reason to know about that claim until the plan administrator actually applies the plan, but where (as here) a claim challenges plan terms that apply uniformly to all plan participants, a plaintiff can be on notice of that claim long before an individual denial of benefits.

The "clear repudiation" rule developed in cases addressing the accrual of statutes of limitations for ERISA purposes is not an alternative to the generally applicable federal discovery rule. Rather, it is nothing more than a "refinement" of that rule in this context, *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521 (3d Cir. 2007): a plaintiff knows or should know about an ERISA claim when the defendant clearly repudiates the alleged entitlement to benefits that forms the basis for the claim. If the claim challenges a plan amendment across the board, a "clear repudiation" occurs when "plaintiffs knew or should have known of the effect" that a plan amendment "would have on their benefits." *Romero v. Allstate Corp.*, 404 F.3d 212, 225 (3d Cir. 2005). The "clear repudiation" rule, in other words, "does not *require* a formal denial to trigger the statute of limitations." *Miller*, 475 F.3d at 521 (emphasis in original). "To the contrary, the rule includes other forms of repudiation when a beneficiary knows or should know he has a cause of action." *Id.*

Plaintiffs cannot, and do not, dispute this point. Rather, they concede that "it is possible in a given case to conclude that a repudiation sufficient to trigger the statute of limitations could arise before a final determination of the administrative appeal," but simply assert that "this is not one of" such cases. Pls.' Mot. 8. Plaintiffs provide no support for that assertion, and make no attempt to explain why a claim accrues upon an

1    individualized determination of benefits in some cases but not others.  Indeed, each of

2    the cases cited by plaintiffs for the alleged "general rule" that the denial of an individual

3    claim for benefits is required to trigger the statute of limitations, *see* Pls.' Mot. 7-8,

4    affirmatively rejects that alleged "rule," and makes clear that "[a] participant need *not*

5    file a formal application for benefits before having 'reason to know' that his claim has

6    been finally denied."  *Chuck*, 455 F.3d at 1031; *see also Wetzel v. Lou Ehlers Cadillac*

7    *Group Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000) (*en banc*)

8    ("[A]n ERISA cause of action accrues *either* at the time benefits are actually denied, *or*

9    when the insured has reason to know that the claim has been denied.") (emphasis added);

10   *Martin*, 947 F.2d at 1384-86 (rejecting plaintiff's argument that "until he actually applies

11   for pension benefits, and his application is denied, his cause of action under the plan has

12   not accrued and the statute of limitations has not begun to run").  The real "general rule"

13   in this context, thus, is that an ERISA claim, like virtually every other federal statutory

14   claim, accrues when a plaintiff knew or should have known of the facts underlying a

15   claim, which may be at the time that benefits are denied or may be earlier.

16         Here, as explained below, there can be no question that plaintiffs' claims

17   challenging plan amendments effective January 1, 1984 accrued long before any

18   individual denial of benefits.  Indeed, plaintiffs' argument that their claims did not

19   accrue "until Plaintiffs' claims were formally denied in October 2003 under the Plan's

20   claims and appeals procedures," Pls.' Mot. 7, fails on its own terms.  The only

21   "Plaintiffs" whose claims were formally denied in October 2003 were "several hundred"

22   retired plan participants on whose behalf plaintiffs' counsel filed those claims, Letter

23   from S. Martin to Plan Administrators of AlliedSignal, Inc., Retirement Plan,

24   AlliedSignal Secured Benefit Plan, Honeywell Retirement Plans and Honeywell

25   Retirement Earnings Plan (7/26/02), at HW 446 (Docket #16, Ex. I) ("7/26/02 Claim

26   Letter"), rather than each and every one of the approximately 16,500 plaintiffs in the

27   class.  *See* Letter from K. Mathis to S. Martin (1/24/03), at HW 464 (Docket #16, Ex. K)

28   ("*[T]he Retirees you represent* are not entitled to any of the additional benefits or

4

1  remedies that they claim.") (emphasis added); Letter from B. Marcotte to S. Martin
2  (10/29/03), at HW 515 (Docket #16, Ex. O) ("I have determined … that the benefits paid
3  *to your clients* have been correctly determined under the Garrett Plans and their
4  successor plans ….") (emphasis added).  Plaintiffs do not suggest that any besides the
5  "several hundred" individuals represented by plaintiffs' counsel in 2003 actually made a
6  specific claim for retirement benefits that was denied.

7       Under plaintiffs' analysis, in other words, the claims of the vast majority of class
8  members have not accrued even to this day, because there has been no "formal and final"
9  denial of benefits as to those class members.  If that is true, of course, then those
10  plaintiffs' claims are premature as a matter of law, because if a plaintiff's "cause of
11  action has not accrued, then his claim is not yet ripe for review."  *Martin*, 947 F.2d at
12  1385 & n.7 (citing *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1205-06 (10th
13  Cir. 1990)).  Thus, accepting plaintiffs' argument that the statute of limitations does not
14  accrue until a "formal and final" denial of benefits "would require dismissal of [the vast
15  majority of class members' claims] as premature."  *Id.*  Needless to say, it makes no
16  sense to suppose that, even though plaintiffs waited for over two decades to bring these
17  claims arising out of generally applicable plan amendments, those claims are still
18  premature.  *Cf. Chuck*, 455 F.3d at 1034 ("[T]he 'policy of finality and repose' has
19  particular traction against allowing ERISA claims after potentially extreme delays, given
20  their increased 'negative effects on the availability of witnesses and evidence.'")
21  (quoting *Martin*, 947 F.2d at 1385).  In fact, just the opposite is true: the claims are
22  untimely.

23       Indeed, plaintiffs' counsel's own words and deeds in the claims administration
24  process belie plaintiffs' current position that their claims did not accrue until October
25  2003.  In a July 26, 2002 letter asserting administrative claims on behalf of some class
26  members, plaintiffs' counsel asserted that she was "not required to bring the Retirees'
27  legal claims for violations of ERISA to your attention before filing suit."  7/26/02 Claim
28  Letter, at HW 447; *see also, e.g.*, *Chuck*, 455 F.3d at 1035 (noting that "exhaustion of

1    internal dispute procedures would not be required" for a claim for a statutory ERISA

2    violation under 29 U.S.C. § 1132(a)(3)).  If plaintiffs could have brought these claims

3    without even *starting* the administrative claims process, it cannot be that their claims did

4    not accrue until after that process was *finished*.  Moreover, if plaintiffs' claims did not

5    accrue until October 2003, there would have been no need for plaintiffs to enter into a

6    tolling agreement with defendants effective *nine months earlier*, on January 24, 2003.

7    *See* Defs.' Separate Statement of Facts ¶¶ 12-14 (Docket #341).

8        The bottom line here is that plaintiffs' claims challenging the plan amendments

9    effective on January 1, 1984 accrued when they knew or should have known about the

10   effect of those amendments on their benefits.  *See* Defs.' Mot. 5-9.  Not surprisingly,

11   plaintiffs themselves implicitly recognize that point by devoting the bulk of their motion

12   to arguing that they did not know, nor should have known, about the facts underlying

13   any of their three remaining claims beyond the limitations period.  *See* Pls.' Mot. 8-16.

14   As explained below, they are wrong with respect to each of those claims.

15   **II.    Plaintiffs' Three Remaining Claims Are Time-Barred.**

16       Plaintiffs' various arguments that they neither knew nor should have known about

17   any of their three remaining claims beyond the limitations period, Pls.' Mot. 8-16, are all

18   predicated on a fundamental misunderstanding of the "know or have reason to know"

19   standard.  A plaintiff has "reason to know" about a claim even without knowing every

20   last detail of the claim.  *See, e.g.*, *United States v. Kubrick*, 444 U.S. 111, 122-23 (1979).

21   A plaintiff, in other words, need not know *everything* about a claim; rather, a plaintiff

22   need only know *enough* to know that investigation of the matter is warranted.  *See, e.g.*,

23   *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1092 (9th Cir. 2006) ("Accrual

24   does not wait until the injured party has access to or constructive knowledge of all the

25   facts required to support its claim. … Rather, once a plaintiff has [inquiry] notice [of its

26   claim], it bears the responsibility of making diligent inquiries to uncover the remaining

27   facts needed to support its claim.") (alterations in original; internal quotation and

28   citations omitted); *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) (in case

1    applying federal discovery rule, statute of limitations was triggered once plaintiff "had

2    enough information … which, if reasonably diligent, would have led to discovery" of its

3    claims).

4           Under plaintiffs' view, however, a plaintiff would *never* know about a claim

5    unless and until a defendant affirmatively conceded its validity.  *See* Pls.' Mot. 8-9

6    ("Defendants never disclosed, much less repudiated, *the violation of the minimum*

7    *benefits provisions of the plan* by application of an SBA offset.") (emphasis added); *id.*

8    at 10 ("At no time did Defendants ever disclose to class members that their *benefits were*

9    *reduced* by an amendment to the Plan changing the projection interest rate used to

10   calculate the SBA offset from date of termination until age 65 from the 3.5% 'Credited

11   Interest' rate required under the terms of the Garrett Plan to the 7.5% provided under the

12   Signal Plan.") (emphasis added).   But that approach makes no sense: defendants

13   maintain even now that plaintiffs' three remaining claims fail on the merits.  A defendant

14   is not required to concede liability to mount a statute of limitations defense.

15          As explained in each of the three subsections below, plaintiffs were at least on

16   inquiry notice of each of their three remaining claims well beyond any conceivably

17   applicable limitations period, and therefore (as also explained in defendants' cross-

18   motion for summary judgment on statute of limitations grounds) defendants are entitled

19   to summary judgment on each of those claims.  But even if this Court were to conclude

20   that *defendants* are not entitled to summary judgment, under no circumstances are

21   *plaintiffs* entitled to summary judgment on the statute of limitations.   To be more

22   specific, if this Court were to conclude that the undisputed record regarding classwide

23   communications does not establish that plaintiffs were on inquiry notice of their claims

24   beyond the limitation period, at the very least defendants would be entitled to develop a

25   factual record to show that plaintiffs knew or should have of their claims beyond that

26   period.  *See* Defs.' Request for Denial or Continuance of Pls.' S. J. Motion Under Rule

27   56(f) & Decl. of Eleanor R. Barrett (filed herewith).

28

**A.     Social Security Offset Claim**

Plaintiffs' entire argument on the accrual of the Social Security Offset Claim is premised on the unsupported assertion that "Defendants never disclosed that the Social Security offset was going to be applied retroactively to benefits of Garrett employees attributable to service before adoption of the Social Security offset." Pls.' Mot. 15.  But, as defendants have explained, the undisputed record belies that assertion.  The record shows that defendants clearly and repeatedly notified plaintiffs well beyond any applicable limitations period that the years of service they had worked under the old Garrett plan *would* be included in the calculation of their benefits under a new Signal plan formula that included a Social Security offset.  *See* Defs.' Mot. 10-14; *see also* Decl. of Eleanor R. Barrett, Ex. A, at HW 8548 (Docket #340-2) (defining "credited service" to include "service under your prior retirement plan" and illustrating benefit formula, based on "credited service," that included a deduction based on Social Security); *id.* at HW8543 (explaining that "past service" under Garrett plan would carry forward into Signal plan and showing calculation of benefits under new Signal plan based on credited service).  Indeed, it is difficult to imagine (and plaintiffs certainly have not explained) how defendants could have conveyed this message any more explicitly than they did in a January 1984 plan brochure, which states: "*All past credited service accrued under the Garrett Plan will be carried forward into the Signal Plan.*"  *Id.* at HW8543 (emphasis added).  Accordingly, plaintiffs cannot possibly establish as a matter of law or undisputed fact that they did not at least have "reason to know" of the Social Security Offset claim beyond any conceivably applicable limitations period, and hence are not entitled to summary judgment on that score.

**B.     SBA Offset Claim**

Plaintiffs first contend that the statute of limitations on their SBA Offset Claim never accrued because defendants never disclosed the interest rates used to calculate the SBA offset.  *See* Pls.' Mot. 10.  But this Court has already considered this precise argument, and held that it has "no merit."  *Allen*, 382 F. Supp. 2d at 1170.  As this Court

8

explained, "[t]he SPDs," and, in particular, the 1984 SPD, "adequately alerted Plaintiffs to the offset." *Id.*; *see also id.* (1984 SPD was "'sufficiently accurate and comprehensive' to inform participants of their rights and obligations under the plan" with respect to the SBA Offset Claim) (quoting 29 U.S.C. § 1022(a)).    Moreover, as the Court observed, any "participant who was concerned or curious about the mechanics of the Secured Benefit Account offset" after reviewing the 1984 SPD "had an opportunity to obtain or review more detailed information." *Id.* (citing 29 U.S.C. § 1024(b)(2) & (b)(4)).

Plaintiffs next argue that defendants "affirmatively denied the possibility of the existence of" the SBA Offset Claim. Pls.' Mot. 10.  But the sole document on which they base this "affirmative denial" theory is a *1995* presentation that explained how the SBA offset works, provided examples of SBA offset calculations (including one for a participant who retired early), and laid out participants' full range of SBA options at retirement.  *See* Decl. of Craig Chapman, Ex. 3, at HW19487-94 (Docket #188).   If anything, thus, the 1995 presentation actually supports *defendants'* position on their statute of limitations defense: it provides yet another example of a plan communication explaining the SBA offset's effects on participants' benefits, and is further evidence that, well beyond any conceivably applicable limitations period, plan participants had sufficient facts at their disposal to inquire into the details surrounding the SBA offset. *See id.* at HW19486 (noting that the 1995 presentation was prompted in part by "questions regarding the SBA").  The 1995 presentation to "approximately 1,000 … active employees working in the Phoenix area," Pls.' Mot. 10, did not address, much less "affirmatively deny," plaintiffs' specific interest-rate projection claims.  And, in any event, plaintiffs do not explain how or why a purported "affirmative denial" of their claims to some plan participants in *1995* would affect the statute of limitations analysis in light of the information that all plan participants were provided in *1984.*

Finally, plaintiffs argue that it is "not plausible to assert that class members were or should have been on clear notice of the SBA offset claim" because they did not

receive one of the Garrett plan documents ("Exhibit B") until June 2003. *See* Pls.' Mot.

11-12; Pls.' Statement of Material Facts ¶ 9 (Docket #344). But plaintiffs were fully

capable of developing their SBA Offset Claim before they had that document. Indeed,

plaintiffs' counsel presented the SBA Offset Claim to the plan administrators almost *a*

*full year earlier*, in July 2002, on behalf of a group of class members. *See* 7/26/02 Claim

Letter, at HW 450 (asserting that "amending the Plan to provide that a 7.5% interest rate

be used from termination of employment to the Normal Retirement Date for the 'excess'

severance account offset calculation, violates the anticutback rules" and that "the

Secured Benefit Plan offset should be recalculated utilizing only a 3.5% interest rate for

the entire account balance"). Not surprisingly, plaintiffs do not even acknowledge,

much less provide an answer for, this flaw in their logic. The upshot here is that

plaintiffs cannot possibly establish as a matter of law or undisputed fact that they did not

at least have "reason to know" of the SBA Offset claim beyond any conceivably

applicable limitations period, and hence are not entitled to summary judgment on that

score.

       **C.    Minimum Benefits Claim**

       Plaintiffs' argument on the Minimum Benefits Claim does not go beyond their

initial, incorrect assertion that the statute of limitations was never triggered because

defendants never disclosed that they purportedly violated the plan terms. *See* Pls.' Mot.

8-9. Specifically, plaintiffs assert that the statute of limitations could not have accrued

until defendants "disclosed to Plaintiffs that the terms of the official Plan documents did

not provide for an SBA offset" and "they clearly made known their position that

notwithstanding the absence of the SBA offset, Plaintiffs' claims that the Plan was being

violated were denied." *Id.* at 9. As discussed above, no such showing is required. The

key point here is that plaintiffs do not dispute that the 1984 plan communications clearly

*did* disclose the impact on plaintiffs' benefits that forms the basis for the Minimum

Benefits Claim—that the SBA offset applied equally to benefits calculated under the

minimum benefits formula. *See* Defs.' Mot. 16-17; *see also Allen*, 382 F. Supp. 2d at

1    1172 (dismissing plaintiffs' inadequate disclosure claim because the 1984 SPD

2    "sufficiently disclosed" the SBA offset to the minimum benefit formulas).  Under the

3    relevant law, as discussed above, that was more than sufficient to put plaintiffs at least

4    on inquiry notice of their Minimum Benefits Claim.

5        Plaintiffs' failure to look into these issues in a timely manner is particularly

6    inexcusable in light of ERISA's "elaborate scheme … for enabling beneficiaries to learn

7    their rights and obligations at any time."  *Curtiss-Wright Corp. v. Schoonejongen*, 514

8    U.S. 73, 83 (1995).  That scheme "requires that every plan administrator make available

9    for inspection in the administrator's 'principal office' and other designated locations a

10   set of all currently operative, governing plan documents."  *Id.* at 84 (citing 29 U.S.C.

11   § 1024(b)(2) & (b)(4)).  Thus, to receive additional information about any of the issues

12   that is the subject of this suit, all plaintiffs had to do was ask.

13       Plaintiffs, however, waited until 2001, *seventeen years* after the challenged 1984

14   amendment, to request the applicable plan documents.  *See* Pls.' Mot. 2.  Tellingly,

15   plaintiffs do not explain what information available to them in 2001, but not in 1984,

16   prompted them to finally request the plan documents seventeen years after the

17   challenged amendment took effect.  Plaintiffs' discussion of the difficulties that

18   defendants encountered in locating twenty-year-old plan documents when plaintiffs

19   finally got around to requesting them in 2001, *see, e.g.*, Pls.' Mot. 2-3; 11-12, is

20   irrelevant.  Any difficulty in locating documents was a symptom, not a cause, of

21   plaintiffs' delay in pursuing their alleged rights, and underscores the fact that dismissal

22   of their claims would vindicate one of the important policies underlying statutes of

23   limitations.  *See, e.g.*, *Kubrick*, 444 U.S. at 117.

24       The question here is when plaintiffs had sufficient facts at their disposal to put

25   them on inquiry notice of their claims, not when defendants responded to plaintiffs'

26   requests for information.  Had plaintiffs requested the documents within any conceivable

27   limitations period, they might be able to argue that the limitations period should have

28   been tolled while, in the exercise of due diligence, they legitimately worked to discover

the basis for their claims.  But they did not, and the fact that they did not receive some plan documents requested in 2001 until 2003 plainly did not preclude them from developing their claims.  Accordingly, plaintiffs cannot possibly establish as a matter of law or undisputed fact that they did not at least have reason to know of the Minimum Benefit Claim beyond any conceivably applicable limitations period, and hence are not entitled to summary judgment on that score.

**III.    Delaware's One-Year Statute of Limitations for Employee Benefits Claims, Not Arizona's Six-Year Statute of Limitations for Actions on a Debt, Applies To Plaintiffs' Claims.**

As a threshold matter, this Court need not decide whether (as defendants contend) Delaware law provides the applicable statute of limitations or (as plaintiffs contend) Arizona law does so.  Even accepting plaintiffs' argument about the applicable statute of limitations at face value, their claims are manifestly untimely.  In particular, plaintiffs propose Arizona's six year statute of limitations for "[a]n action for debt where indebtedness is evidenced by or founded upon a contract in writing executed within the state," Ariz. Rev. Stat. § 12-548.  *See* Pls.' Mot. 5-7.  That means that, even under plaintiffs' approach, their claims are untimely if they knew or should have known about them prior to January 24, 1997—six years prior to their tolling agreement with defendants on January 24, 2003.  Because plaintiffs already knew enough about their claims prior to January 24, 1997 to put them at least on inquiry notice, this motion should not turn on which State's statute of limitations governs, so this Court need not address this issue.

In the event that the Court does address the issue, however, plaintiffs are clearly wrong.  As explained in defendants' motion for summary judgment, plaintiffs' three remaining claims are governed by "the most analogous state statute of limitations," *Wetzel*, 222 F.3d at 646, which here is Delaware's one-year statute of limitations for employee benefits claims, Del. Code Ann. tit. 10, § 8111, given that Delaware law governs claims under the Honeywell Plan.  *See* Defs.' Mot. 4 (citing *Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128-29 (9th Cir. 1993) ("Where a choice of law provision is

made by an ERISA contract, it should be followed, if not unreasonable or fundamentally unfair.")).  The rule that plaintiffs propose—that "the forum state's law should apply," Pls.' Mot. 6—makes sense in cases (unlike this one) where no party is urging the court to apply a plan's choice-of-law provision, *see*, *e.g.*, *Wetzel*, 222 F.3d 643; *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167 (9th Cir. 1999).  Thus, in a recent case, the Ninth Circuit reversed and remanded a summary-judgment decision on an ERISA claim because the district court improperly declined to apply Rhode Island law, as specified in the terms of the plan, and instead applied the law of California, the forum state.  *Fenberg v. Cowden Auto. Long Term Disability Plan*, Nos. 05-17192, 06-15132, 2007 WL 4386126, at *1 (9th Cir. Dec. 17, 2007) (*mem.*).

But even if Arizona law were to apply, plaintiffs are invoking the wrong Arizona statute of limitations.  Plaintiffs make no attempt to justify their choice of statute—they simply cite one sentence from a footnote in a Ninth Circuit decision to support their statement that "Arizona's six year contract statute of limitations" is "appropriate."  Pls.' Mot. 5-6 (citing *McElwaine*, 176 F.3d at 1170 n.4).  But the appropriate statute of limitations was not contested by the defendant in that case, and hence the Ninth Circuit never considered whether another statute of limitations was more appropriate than the one suggested by the plaintiff.  Under these circumstances, of course, the Ninth Circuit's unexamined reliance on the six-year statute of limitations advanced by the *McElwaine* plaintiff is not binding.  *See, e.g.*, *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985).

In any event, the provision plaintiffs suggest is plainly inappropriate here because plaintiffs' three remaining claims under ERISA are not "most analogous" to "[a]n action for debt."  *See Wetzel*, 222 F.3d at 646 (directing courts to "look to the most analogous state statute of limitations" for non-fiduciary ERISA claims).  Instead, plaintiffs' claims would be governed by Arizona's one-year statute of limitations for "breach of an oral or written employment contract," Ariz. Rev. Stat. § 12-541(3), under the principle that statutes of limitations that cover employment disputes specifically, not general contract

statutes of limitations, provide the "best fit" for plaintiffs' ERISA claims. *Syed v. Hercules, Inc.*, 214 F.3d 155, 161 (3d Cir. 2000); *see also W.J. Kroeger Co. v. Travelers Indem. Co.*, 541 P.2d 385, 387 (Ariz. 1975) ("The time limit set by [Ariz. Rev. Stat.] § 12-548 is a general one for a written contract on a debt.  If a more specific time limit is established by a statute applicable to the particular contract at issue, the more specific provision governs.").

Moreover, the Arizona statute upon which plaintiffs rely applies by its terms only to claims under a written contract "executed within" Arizona.  Ariz. Rev. Stat. § 12-548. But plaintiffs have offered no evidence to suggest that they are bringing claims under a written contract "executed within" Arizona.  To the contrary, plaintiffs are bringing claims under the Honeywell Retirement Earnings Plan, *see* Defs.' Separate Statement of Facts ¶ 16, and plaintiffs have not cited any evidence to suggest that this Plan was executed in Arizona.  And their argument that the *Garrett* Retirement Plan "became a binding contract within this State by virtue of named Plaintiffs' employment in Arizona," Pls.' Mot. 6, fails on its own terms.  For one thing, plaintiffs are not bringing claims under the Garrett Plan.   In any event, there is no reason to assume that employment in Arizona is sufficient to establish that the Garrett Plan was "executed" in Arizona, *cf. Moore v. Diamond Dry Goods Co.*, 54 P.2d 553, 554 (Ariz. 1936) (predecessor to Ariz. Rev. Stat. § 12-548 did not apply where writing purportedly evidencing debt was written and mailed in California)), especially because not every member of the class works in Arizona, *cf.* Pls.' Mot. to Certify Class5 (Docket #84) ("Garrett had manufacturing facilities in several states and class members are geographically dispersed.") (citing Decl. of Richard Scates ¶ 5 (Docket#89)).

## IV.    No Procedural Rule Bars Defendants' Statute of Limitations Defense.

Finally, plaintiffs raise two purported procedural obstacles to the court's consideration of defendants' statute of limitations defense.  Neither has merit.

*First*, plaintiffs incorrectly imply that this Court has already decided how the federal discovery rule applies to plaintiffs' claims and that defendants' classwide

1    communications cannot meet that standard. *See* Pls.' Mot. 1-2, 8, 13-14 (quoting

2    Court's order on class certification). But the parties' motions for summary judgment on

3    statute of limitations present these issues squarely for the first time. The only question

4    before the Court at the class certification stage was whether the defendants' statute of

5    limitations defense gave rise to individualized questions that defeated commonality or

6    typicality among members of the class. *See* Order (9/7/06), at 12-15. Accordingly, the

7    Court has not previously considered the impact of classwide communications on the

8    statute of limitations analysis. And, although it determined that the federal discovery

9    rule governs the accrual of plaintiffs' claims, it expressly declined to decide "what the

10    applicable statute of limitations is, when it accrued, and whether it applies." *Id.* at 11-12.

11    Plaintiffs also argue (for at least the third time) that defendants waived their right

12    to assert the statute of limitations defense as against the named plaintiffs by failing to

13    assert it in response to plaintiffs' initial motion for summary judgment. But this Court

14    has already considered, and rejected, this very argument. In opposition to defendants'

15    motion for clarification of the Court's initial summary judgment ruling, plaintiffs argued:

16    "Defendants' failure to prove any defenses or establish the existence of any genuine

17    issue of material fact" in response to plaintiffs' summary judgment motion "bars them

18    from doing so now." Pls.' Resp. to Mot. for Recons. 15 (Docket #102). But the Court

19    nevertheless ruled that defendants' understanding that the Court did not intend "to

20    foreclose Defendants from ... asserting affirmative defenses related to individual

21    putative class members' claims" was "correct." Order (11/18/05) (Docket #138), at 14.

22    Because plaintiffs have neither moved for reconsideration nor explained why such

23    reconsideration would be warranted, the Court's prior order should end the analysis.

## CONCLUSION

25    For the foregoing reasons, defendants respectfully request this Court to deny

26    plaintiffs' motion for summary judgment and to grant defendants motion for summary

27    judgment on the statute of limitations defense. In the alternative, defendants respectfully

28

1   request this Court to grant defendants' request for a denial or continuance of plaintiffs'

2   motion for summary judgment under Rule 56(f).

3        Respectfully submitted this 11th day of January, 2008.

4

5                       OSBORN MALEDON

6

7              By:   /s/David B. Rosenbaum

8                 David B. Rosenbaum
              Dawn L. Dauphine

9                 Osborn Maledon, P.A.
              2929 North Central Avenue, Suite 2100

10                Phoenix, AZ   85012-2794

11                Michael L. Banks
              Azeez Hayne

12                MORGAN, LEWIS & BOCKIUS LLP
              1701 Market Street

13                Philadelphia,   PA 19103

14                Howard Shapiro
              PROSKAUER ROSE LLP

15                909 Poydras Street, Suite 1100
              New Orleans, LA   70112-4017

16                Amy Covert
              PROSKAUER ROSE LLP

17                One Newark Center, 18th Floor
              Newark, NJ   07102-5211

18

19                Christopher Landau, P.C.
              Craig S. Primis, P.C.

20                Eleanor R. Barrett
              KIRKLAND & ELLIS LLP

21                655 Fifteenth Street, N.W.
              Washington, DC   20005-5793

22

23                Attorneys for Defendants

24

25

26

27

28

**CERTIFICATE OF SERVICE**

    I do certify that on January 11, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

                                          s/Kelly Dourlein