1 **SUSAN MARTIN (AZ#014226)**
**DANIEL L. BONNETT (AZ#014127)**
2 **JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
3 3300 N. Central Avenue, Suite 1720
Phoenix, Arizona 85012-2517
4 Telephone: (602) 240-6900
smartin@martinbonnett.com
5 dbonnett@martinbonnett.com
jkroll@martinbonnett.com
6

7 Attorneys for Plaintiffs

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE DISTRICT OF ARIZONA**

10 Barbara Allen, Richard Dippold, Melvin Jones,   )
   Donald McCarty, Richard Scates and Walter G.   )
11 West, individually and on behalf of all others   )    No. CV04-0424 PHX ROS
   similarly situated,                            )
12                            Plaintiffs,          )
                                                  )
13                                                 )
                                                  )
14    vs.                                          )    **PLAINTIFFS' OPPOSITION TO**
                                                  )    **DEFENDANTS' MOTION FOR**
15 Honeywell Retirement Earnings Plan,             )    **SUMMARY JUDGMENT ON**
   Honeywell Secured Benefit Plan, Plan            )    **STATUTE OF LIMITATIONS**
16 Administrator of Honeywell Retirement           )
   Earnings Plan and Plan Administrator of         )
17 Honeywell Secured Benefit Plan,                 )
                            Defendants.            )
18 _____        )

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Setting aside Defendants' sweeping generalizations, the following is clear: the facts of this case do not support a claim that Defendants' communications regarding the plan amendments put class members on notice that their benefits were being reduced.  The law does not support Defendants' efforts to provide a "knew or should have known" accrual standard divorced from the requirement that the accrual be triggered by a clear and unmistakable repudiation of the Plaintiffs' claims. However, neither prong of the standard was satisfied by the 1984 brochure, the 1984 SPD or the 1996 SPD, the only documents upon which Defendants rely. The 1984 brochure not only failed to trigger the running of the statute of limitations, it conclusively establishes the timeliness of Plaintiffs' claims. Because Defendants devote so much of their brief to a document that negates their statute of limitations defense, Plaintiffs address this so-called triggering communication first.

**I.     THE 1984 BROCHURE'S PROMISE THAT THERE WOULD BE NO LOSS OF PENSION BENEFITS NEGATES ANY POSSIBILITY THAT THE STATUTE OF LIMITATIONS WAS TRIGGERED**

Far from triggering the accrual of Plaintiffs' claims, the 1984 brochure affirmatively reassured class members  that their benefits at the time of retirement would not be less than the benefits they would have received under the Garrett Plan had it continued. In clear and unambiguous terms, the brochure promised that there would be no benefit decrease resulting from the plan amendments:

> The merger, which occurred on December 31, 1983, will result in several positive changes for Garrett employees.
> These will include:
>
> \*\*\*
>
> #      At the time of your retirement two formulas will be used to calculate your retirement benefit under the Signal Plan.  The dual calculation will ensure that you will not receive a lesser pension benefit under the new Signal Plan than you would have received from the Garrett Retirement Plan.

(Doc.340, Exh. A, at  Exhibit A at HW0008543.)  Following the quoted text, the brochure gave

1

1   an example of an employee "*who will be retiring* at age 65" and compared such employee's

2   future benefits under both the old Garrett calculation with his future benefits under the Signal

3   Plan (*Id.* at Exhibit A at HW0008543-44) (emphasis supplied). After the example, the

4   brochure emphasized that the examples provided showed that "the dual formula approach

5   under the new Signal Plan will ensure no loss of pension benefit." (*Id.* at Exhibit A at

6   HW0008544.) The 1984 brochure also advised that "for virtually all employees, the benefits

7   and overall features of the new plan will be better than their 'old' plans." (*Id.* at HW0008547.)

8
9        Given these assurances, there was no reason for class members to know or suspect they

    could be harmed by the Signal Plan changes. This is a far cry from constituting a trigger of the

10   statute of limitations. The 1984 brochure lays to rest any possible assertion that the statute of

11   limitations accrued based on that brochure.[1]  Class members reading this communication

12   reasonably would have believed that the Garrett Plan, including the provision that Social

13   Security offsets would not be applied, would be utilized to the extent necessary to ensure that

14   at the time of retirement no participant would "receive a lesser pension benefit under the new

15   Signal Plan than" they "would have received from the Garrett Retirement Plan." Given that the

16   Garrett Plan prohibited the offset of Social Security benefits, it was not only reasonable to

17   reach such conclusion, it would have been unreasonable to reach any other conclusion.  Garrett

18   Plan participants were advised that they were completely protected from a reduction in their

19   accrued benefits.  Because Defendants promised that the 1984 plan changes would cause no

20   harm and because Defendants never disavowed that promise, the statute of limitations did not

21
22

23        [1]Despite this Court's final orders that the Social Security offset violates Section
24   204(g) of ERISA, Defendants, without authorization, continue to argue the merits of this
    claim. (p. 10, lines 6-17.)  Plaintiffs should not be called upon to repeatedly defend this
25   unsanctioned re-argument and this paragraph should be stricken pursuant to L.R. Civ. 7.2(m)
26   and this Court's rules that absent express approval of the Court, only one motion for
    summary judgment may be filed on an issue. *Cf.* Fed. R. Civ. P. 12(f) (court may strike
27   redundant matter from a pleading).

28

1    begin to run, at any time prior to  2003 when Plaintiffs' claims in this case were finally denied.

2    Absent a retraction  of the assurances  made in the 1984 brochure, the mere presence of the

3    Social Security offset in the 1984 and 1996 SPDs could not serve to repudiate the claims in this

4    case.   In addition, because the 1984 brochure and the two cited SPDs[2] each promise that

5    benefits are based on the higher of the results obtained "by using two different formulas," none

6    of these documents standing alone could  trigger the running of the statute of limitations

7    because the  higher benefit cannot be determined until  retirement.[3]  This is consistent with

8    other cases involving plan amendments in which the statute of limitations was not found to run

9    until the impact of the plan amendment on the participant's benefit rights became clear. *See,*

10   *e.g., Meagher v. International Ass'n of Machinists and Aerospace Workers Pension Plan* 856

11   F.2d 1418, 1422 ( 9th Cir.1988) ("Meagher was harmed only by the wrongful *application* of

12   the amendment. Only then were his accrued benefits *decreased.")* (emphasis in original);

13   *Romero v. Allstate*, 404 F.3d 212, 223 (3d Cir. 2005) ("when an ERISA plan is amended but

14   the fact that the amendment actually affects a particular employee or group of employees

15

16

17

18       [2]Defendants do not even claim that retirees were ever given SPDs.  *(See* Doc. 341,
     Exh. 2 ¶ 7 (noting that in 1996, the company customarily mailed an SPD to the home of the
19   affected employee); Doc. 341, Exh. 1 ¶ 7 (stating that the 1984 summary plan description
     was distributed to employees)).  Neither declaration claims that SPDs were sent to retirees.
20   This comports with the evidence previously presented.  (Declaration of Richard Scates, Doc.
     211, ¶ 5; Declaration of Melvin Jones, Doc. 212, ¶ 5.)   There are also  genuine issues of
21   material fact regarding the Plan's distribution of summary plan descriptions and plan
     communications that Defendants rely upon.  *See Leyda v. AlliedSignal, Inc*. 322 F.3d 199,
22   204 (2d   Cir. 2003)(affirming the lower court's finding that: "it was 'unlikely that
     AlliedSignal's methods would result in full distribution' and that 'its methods were not
23   reasonably calculated to result in actual receipt...'" of the SPDs at issue in that case).
24

25       [3]Defendants make no claim on this motion for summary judgment that the statute of
     limitations was triggered at the time of retirement in apparent recognition that their attempts
26   to rely on the benefit calculation worksheets would fail based on the obvious deficiencies in
     those documents.
27

28

1    cannot be known until some later event, the cause of action of the employee will not accrue

2    until such time as the employee knew or should have known that the amendment has brought

3    about a clear repudiation of certain rights that the employee believed he or she had under the

4    plan."). Like *Meagher* and *Romero*, mere knowledge of the existence of the Social Security

5    offset formula in this case did not put Plaintiffs on notice that it would be applied retroactively

6    to reduce their accrued benefits.

7        In *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d

8    643, 650 (9th Cir. 2000), an *en banc* panel of the court found that the contract statute of

9    limitations applied and held that Wetzel's cause of action did not accrue in 1992 or at any time

10   prior to the "clear rejection of his claim for benefits in October 1993" despite the fact that he

11   was informed in August 1992 that his benefits would be limited. The court held that the plan's

12   1992 notification to Wetzel that his disability benefits would only last for 24 months did not

13   trigger the running of the statute of limitations even though he sued outside of what otherwise

14   would have been outside the applicable limitations:

15

16       Because this August 1992 letter stated that the decision to limit benefits to
         twenty-four months was based on the status of Wetzel's file at that time, and
17       invited Wetzel to furnish further information, Wetzel could have reasonably
         believed his benefits had not been finally denied, particularly in view of the fact
18       that he was still receiving benefit payments at that time.

19   *Id.* (citing *Martin v. Constr. Laborer's Pension trust for S. Cal.*, 947 F.2d 1381, 1385 (9th Cir.

20   1991)).

21       Under Defendants' articulation of the accrual standard, Wetzel's claim would have been

22   barred because he was told in 1992 about the policy provision that would be used to deny his

23   benefits even though, as is the case here, notice of the application of the limitation to him

24   required further clarification and did not constitute a clear repudiation. In short, like Plaintiffs

25   here, "Wetzel could have reasonably believed his benefits had not been finally denied." *Id.*

26       Like *Wetzel*, *Meagher* and *Romero*, even if class members had not been affirmatively

27

28                                           4

1    told that their benefits would not be reduced, or even if they had reason to believe that the

2    Social Security offset would be applied retroactively notwithstanding that promise, class

3    members had no reason to challenge the change in the formula that might never be applicable

4    to them.  Indeed to  do so might have raised issues of standing and ripeness.  *See, e.g.*, *Menhorn*

5    *v. Firestone Tire & Rubber Co.*,   738 F.2d 1496, 1501 (9th Cir.1984) ("We accept the

6    proposition that an ERISA cause of action based on a denial of benefits accrues at the time the

7    benefits are denied. This rule reflects a concern that it would be burdensome and unfair to

8    require lay participants and beneficiaries to be constantly alert for possible errors or abuses that

9    might give rise to a claim and start the statute of limitations running. It also seeks to avoid the

10    burden on the judicial system of multiple actions, some of which might be premature.") (citing

11   

12    *Morgan v. Laborers Pension Trust Fund For Northern California,*  433 F.Supp. 518, 522 n.5

13    (N.D. Cal. 1977)).

14    **Plaintiffs' SBA Offset and  Minimum Benefits Claim**s **are Timely**

15         The three paragraphs Defendants devote to the SBA offset and the two  they devote to

16    the Minimum Benefits claims do not provide grounds to dismiss those claims based on a statute

17    of limitations defense.   There was no notice or repudiation of either claim. As Plaintiffs

18    detailed in their moving papers, it was nearly impossible to even obtain copies of plan

19    documents disclosing how the SBA offset was supposed to be calculated and Defendants'

20    defended the minimum benefits claim by asserting  they were entitled to do what they were

21    doing.  Given these undisputed facts, any assertion that Plaintiffs' claims on these issues are

22   
23    barred by the statute of limitations is frivolous.

24         Defendants' SBA Offset argument is limited to an attempt to conflate the Court's

25    dismissal of Count V of the Amended Complaint, (which alleged that Defendants violated

26    ERISA's minimum disclosure requirements by failing to advise Plaintiffs of the existence of

27    *any* SBA offset),  with knowledge that Defendants reduced accrued benefits by changing the

28    
5

1
2
3
4
5
6
7
8
9
10
11
12
13

interest rates. The mere compliance with ERISA's SPD regulations does not represent the kind of clear and unmistakable repudiation necessary to trigger the running of the statute of limitations. There was no notice by Defendants in 1984 or at any relevant time that Defendants changed the interest rate used to calculate the offset from 3.5% to 7.5%.  Absent notice that Defendants amended the plan to change the interest rates used to calculate the offset, the statute of limitations did not accrue.  The Court found that the Defendants were not required to disclose in SPDs "an explanation of the interest rates used to calculate the offset. ....No case has ever held that a mere failure to include the specific methodology used to calculate a benefit is an ERISA violation."  *Allen v. Honeywell Ret. Earnings Plan*, 382 F.Supp.2d 1139,1170 (D. Ariz. 2005).  The Court's holding dismissing the alleged disclosure violation is certainly not the same as  a finding that Defendants put Plaintiffs on notice of the amendment reducing their accrued benefits. Nor does it amount to a finding of a repudiation of that claim.

14
15
16
17
18
19
20
21
22

     Likewise, it is simply not relevant to argue that because the SBA offset was larger, a fact that the 1984 brochure makes clear was effectuated  under the Garrett Plan,[4]  gave any clue much less a comprehensive communication that the interest rate used to project the offset after termination of employment until age 65 had been changed from 3.5% to 7.5%.   The Court has already specifically rejected this claim. *See Allen,* 382 F.Supp.2d at 1171 (The 1984 "brochure describes the retirement-age interest conversion factor used to convert a participant's Secured Benefit Account into an annuity, not the "Credited Interest" rate used to project the value of the Account to retirement.").

23

24
25
26
27

     [4]The 1984 brochure makes clear that the increase in the SBA accounts were the result of actions taken with regard to the Garrett Severance Plan before its termination and transfer of assets to the Signal Savings and Stock Ownership Plan. See Doc.340, Exh. A, at HW000854. Since the increase in the Severance Plan accounts occurred before the Plan was transferred to the Signal Companies Plan, there was no reason to divine the existence of a plan amendment changing the interest rate used to project the offset.

28
6

1    Defendants make no other arguments addressed to the SBA Offset claim.  Because there

2    was no notice that Defendants amended the Plan to increase the interest rate used to project the

3    offset and because Defendants never repudiated the claim until  2003, the claim is timely.

4    The sum total of Defendants' argument regarding the Minimum Benefits claims is that

5    Plaintiffs were told there was an offset to the minimum benefit formula in the SPD.  This is

6    nonsensical.  The Court found that  despite  inclusion of the offset to the Minimum Benefits

7    formula in the SPD, the official plan document did not permit the Defendants to apply an SBA

8    offset to the Minimum Benefits. Defendants argued in opposition to Plaintiffs' summary

9    judgment motion, that the Plan did allow them to apply such an offset.  In order for the statute

10   of limitations to be triggered, Defendants would have to show that they disclosed to Plaintiffs

11   that the terms of the official  Plan documents did not provide for an SBA offset and that they

12   clearly  made  known  their  position  that  notwithstanding  the  absence  of  the  SBA  offset,

13   Plaintiffs' claims that the Plan was being violated were denied.  There was no such notice and,

14   given Defendants' posture, there was clearly no repudiation. Defendants have also made no

15   argument  that  Plaintiffs'  ERISA  Section204(g)  and  204(h)  claims  regarding  the  1993

16   amendments of the Plan which imposed SBA offsets on the minimum benefits formula could

17   be barred by the statute of limitations.[5]  Because they have not even raised this issue, there is

18   nothing for Plaintiffs to refute.

19

20   **II.    PLAINTIFFS HAD NO REASON TO BELIEVE THAT THEIR CLAIMS WERE**
21   **       FINALLY DENIED UNTIL OCTOBER 2003**

22       In deciding this motion, the Court does not write on a blank slate.  Ruling that

23   Defendants did not meet their burden to show that class certification would be inappropriate

24   based on a statute of limitations defense, the Court found that Defendants' proffered evidence

25

26   _____

27       [5]In any event *Romero* lays to rest an assertion that Plaintiffs' ERISA Section 204(h)
     notice claims could be barred. 404 F.3d  at 225.

28                                          7

1   was inadequate and rejected Defendants' attempts to rely on *Chuck v. Hewlett Packard Co.*,

2   455 F.3d 1026, 1031 (9th Cir. 2006).  The Court  noted that in the *Chuck*:

3        Based on the[ ] "unusual" facts, the Court reluctantly determined that there was
    "a clear and continuing repudiation" of a claimant's rights under the plan such

4       that his claims were barred. *Id.* at 8305-06.

5   (Doc. 226, pp. 14-15.) The Court rejected Defendants' attempted comparison of this case with

6   the facts in *Chuck*, finding "In the present case, we have no such compelling facts." (*Id.* at 15.)

7   The Court continued:

8       At oral argument, Defendants contended that unlike the defendant in *Williams*,
    529 F.2d at 1388, they presented evidence that some plan participants know or

9       should have known of the violation.  However, as Plaintiffs stated at oral
    argument, courts have been clear that the repudiation must be "unequivocal" or

10      "unmistakable." *Chuck*, No. 04-36094 at *8309. Much of Defendants' evidence

11      is based on speculation, and they are largely in possession of the evidence that
    the statute of limitations will defeat the class action.  Thus, Defendants have not

12      established a threshold that the documents presented triggered the statute of
    limitations.

13

14  (*Id.*) Defendants' motion for summary judgment on the statute of limitations relies on the same

15  inadequate evidence and offers nothing new.

16        In *Johnson v. Georgia-Pacific Corp.,* 2007 WL 4533476, at *2 (9th Cir. 2007), the

17  Ninth Circuit once again had occasion to apply the federal discovery rule in an ERISA case.

18  The court reaffirmed that absent unusual circumstances of the kind noted in *Chuck*, the statute

19  of limitations will not begin to run until a claim has been finally denied and a plaintiff "'could

20  not have reasonably believed but that his claim had been finally denied.'" *Id.* at *2 (quoting

21  *Chuck*, 455 F.3d 1026, at 1038).   In *Johnson*, the suit, which commenced in 2004, sought

22  pension service credit earned prior to 1947.  The participant there admitted that he had asked

23  for the credited service in the 1970s (thirty years before suit) and then again around 1990

24  (fourteen years before suit) and had been told no. *Id.*  Because there was no evidence that the

25  plan administrator had made a "clear and continuing repudiation" of Johnson's claim such that

26  he "could not have reasonably believed" that the plan had not finally denied his claim, the court

27

28

8

1  rejected the statute of limitations defense:

2         Absent evidence that the claim was finally denied prior to 2001, Johnson's
       complaint, filed in 2004, falls within the six-year limitations period.
3  *Id.*

4         Defendants attempt to limit the clear repudiation standard by half quoting it and

5  focusing only on the "knew or should have known" component of the federal discovery rule

6  – without defining what it is that a claimant should have known, *i.e.*, that he had a claim and

7  that such claim was clearly and continuously repudiated by the plan. *In Martin v. Constr.*

8  *Laborer's Pension trust for S. Cal.*, 947 F.2d 1381, 1384 (9th Cir. 1991) (citations omitted),

9  the court, citing several cases, confirmed:

10        A suit to enforce rights under a pension plan accrues, and the statute of
       limitations begins to run, when there has been a clear and continuing
11       repudiation of rights under the pension plan which is made known to the
       beneficiary.
12
Defendants' attempt to draw distinctions between plan amendment cases  and other types of
13
ERISA cases is unpersuasive.   There is simply no basis to draw a distinction based on whether
14
the claim involves a plan amendment where as here, the existence of the claims for violations
15
of the terms of the Plan and ERISA Sections 204(g) and (h) were never disclosed.
16

17        Aside from its direct conflict with the test for accrual of a claim under ERISA in this

18  Circuit, the cases relied on by Defendants for their argument that plan amendments  somehow

19  require a lesser showing than an individual benefit determination to trigger the running of the

20  statute of limitations do not help them.  In *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326,

21  1331-32 (9th Cir. 1996), (Doc. 340, Defs Br. pp. 7-8), there was no suggestion that the

22  plaintiffs were not aware that the amendments at question froze the company's Medicare

23  reimbursements at a certain level and that the plaintiffs were going to be injured by the freeze.

24   In fact, the plaintiffs in that case alleged that they knew they were injured immediately after

25  they were notified that the amendment was adopted in December 1987 because they began

26  incurring un-reimbursed Medicare Part B premiums in January 1988. *See Pisciotta* defendants-

27

28                                        9

1    appellees' Reply Brief, 1994 WL 16014668 at *32.

2         Unlike Defendants here, the defendants in *Pisciotta* did not attempt to portray the

3    Medicare reimbursement freeze as a benefit increase. Nor was there any suggestion that the

4    freeze might not apply to all employees.  There was nothing indefinite or speculative about it

5    and there was no question about what the amendment meant nor how it would be applied.

6    Nothing was kept secret from the plaintiffs in *Pisciotta* in contrast to the amendments here that

7    either were never disclosed or were portrayed as benefit increases or as not reducing benefits

8    under the Garrett Plan. Similarly, *Hirt v. Equitable Retirement Plan for Employees*, 450

9    F.Supp.2d 331, 333 (S.D.N.Y. 2006), (Defs. Br. pp. 7-8), provides no basis for comparison

10   because  the court was clear that the plaintiffs knew that "many of those who might still be

11   entitled to grandfathering rights had been de-grandfathered."[6] In contrast here,  Defendants

12   reassured plan participants that their benefits at the time of retirement would not be less than

13   the benefits they would have received under the Garrett Plan.

14

15        Contrary to Defendants' cited plan amendment cases, the statute of limitations was

16   found not to run in plan amendment cases more closely analogous than the ones cited by

17   Defendants.  For example, in *Meagher v. International Ass'n of Machinists and Aerospace*

18   *Workers Pension Plan* 856 F.2d 1418, 1422 (9thCir. 1988), a case involving the defendant's

19   refusal to implement the Ninth Circuit's ruling in *Shaw v. Int'l. Assoc. of Machinist &*

20   *Aerospace Workers Pension Plan*, 750 F.2d 1458 (9th Cir. 1985), ( that an amendment violated

21   ERISA Section 204(g)), the court reversed a district court's dismissal on statute of limitations

22   grounds of the plaintiff's claim brought following the decision in *Shaw*.  The court found that

23

24   _____

25        [6]Likewise, in the Eighth Circuit decision in *Union Pac. R.R. Co. v. Beckham*, 138 F.3d
26   325, 331 (8th Cir. 1998), (Defs. Br. pp. 7-8), there was no question at the time participants
     were first advised of the plan changes regarding what the plan changes meant or that they
27   would be applied to the detriment of the plaintiffs.

28

1    neither passage nor knowledge of an amendment constituted the accrual date. Instead, the

2    court found that the statute of limitations did not accrue until the application of the amendment

3    to the plaintiff: "Meagher was harmed only by the wrongful *application* of the amendment.

4    Only then were his accrued benefits *decreased.*" *Id.* (emphasis in original). *See Romero v.*

5    *Allstate*, 404 F.3d 212 (3d Cir. 2005) (statute of limitations under ERISA Sections 204(g) and

6    (h) did not accrue where the impact of the amendments on a particular group of employees was

7    not known). *See also Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d

8    424 (4th Cir. 1990) (plaintiff's cause of action did not accrue until he learned by attending

9
     deposition that he would have been entitled to collect benefits while working for related

10   entity); *DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F.Supp. 258, 265

11   (S.D.N.Y. 1997) (refusing to find ERISA challenge to pension benefit calculation time barred

12   in 1990 case about formula that had been in place since 1976); *Laurenzano v. Blue Cross and*

13   *Blue Shield of Massachusetts, Inc. Retirement Income Trust*,134 F.Supp.2d 189, 209 (D.Mass.

14   2001) (finding challenge to lump sum distribution timely even though lump sum option had

15
     been in place since 1976). As the Second Circuit stated when addressing a similar issue:

16

17
              Although the 1995 Benefits Update may have provided notice that the plaintiffs'
18            benefits would be lower than they expected, it certainly did not inform the
              plaintiffs that the phantom account was being applied in contravention of the
19            Plan's terms. Thus, while the Benefits Update may have heightened the plaintiffs'
              concerns regarding their expected benefits, "it is not enough that [plaintiffs] had
20            notice that something was awry; [plaintiffs] must have had specific knowledge
              of the actual breach of duty upon which [they sued]." Such knowledge of an
21            actual breach could only come with disclosure of the fact that the defendants
              misrepresented the terms of the Plan in justifying the usage of the phantom
22            account.

23   *Frommert v. Conkright*, 433 F.3d 254, 272 -73 (2d Cir. 2006) (quoting *Caputo v.*

24   *Pfizer, Inc.,* 267 F.3d 181, 193 (2d Cir. 2001)). *See also Northern Cal. Retail Clerks Unions*

25   *and Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371 (9th Cir.

26   1990) (finding that defendants failed to comply with fiduciary obligations in disclosing their

27

28
                                                    11

1    under-reporting and that the statute of limitations could not begin to run in the face of this

2    fiduciary duty to disclose).

3    **III.    ARIZONA'S SIX YEAR CONTRACT STATUTE OF LIMITATIONS APPLIES**

4

5        Although Plaintiffs have shown that the cause of action is timely under any statute of

6    limitations,[7] it has been the well-established law in this circuit that the court looks to the most

7    analogous state statute of limitations where the claim for benefits arose. *Wetzel v. Lou Ehlers*

8    *Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 646 -47 (9th Cir. 2000) (en

9    banc) ("Because Wetzel's claim for benefits arose in California, we look to California law for

10   the most analogous statute of limitations."). The claims here arose in Arizona. Defendants'

11   argument that the Arizona statute of limitations on contracts is inapplicable because the

12   contract is not "an action for debt" is directly contrary to Ninth Circuit precedent for cases

13   arising in Arizona.  *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1170 (9th Cir. 1999) ("The

14   statute of limitations for an ERISA benefits action is based on the applicable statute of

15   limitations for a contract claim in the forum state.  Arizona, the forum state, has a six year

16   statute of limitations.")(citing Ariz. Rev. Stat. § 12-548. ). *See Wang Laboratories, Inc. v.*

17   *Kagan*, 990 F.2d 1126 (9th Cir. 1993) ("In an ERISA case, we ordinarily borrow the form

18   state's statute of limitations so long as application of the state statute's time period would not

19

20

21

22        [7]As Plaintiffs established in their reply in support of their motion for class certification

23   which they incorporate herein by reference, (*see* Doc. 168, pp. 13-17), the statute of
     limitations was also equitably and actually tolled and/or Defendants are equitably estopped

24   by virtue of the following conduct:1) Defendants' affirmative representations that Plaintiffs'
     benefits will not be decreased; 2) Defendants'  failure to notify Plaintiffs of their right to

25   appeal or file a civil action; 3)  Defendants' failure to provide plan documents that were

26   necessary to evaluate the claims in this case: 4) during the pendency of the claim and appeal
     process, and 5) by virtue of a written tolling agreement tolling the statute of limitations from

27   January 24, 2003 through March 1, 2004.

28
                                              12

1    impede effectuation of federal policy."); *Chung v. Pomona Valley Community Hospital*, 667

2    F.2d 788, 791 (9th Cir. 1982).

3         The use of Arizona's contract statute of limitations is also applied under choice of law

4    principles:

5

6         The forum will apply its own statute of limitations permitting a claim unless:
          (a) maintenance of the claim would serve no substantial interest of the forum;
7         and

8         (b) the claim would be barred under the statute of limitations of a state having
          a more significant relationship to the parties and the occurrence.

9

10   *Restatement (Second) of Conflict of Laws* § 142(2). *See Bassidji v. Goe* 413 F.3d 928, 933 (9th

11   Cir. 2005) (federal courts applyfederal choice-of-law principles, and federal common law

12   follows the Restatement (Second) of Conflict of Laws").  For the first time, nearly four years

13   into the lawsuit, and after repeatedly citing various Arizona statutes of limitation, Defendants

14   now assert that a provision in what is alleged to be a year 2000 plan document referencing

15   Delaware law should make Delaware's statute of limitations applicable in this case.

16        Defendants offer no rationale for application of Delaware law.  Delaware clearly has

17   no connection to this lawsuit and law cannot be applied based on nothing other than what

18   appears to be the fact that the Company is now incorporated there. *See Huynh v. Chase*

19   *Manhattan Bank*,  465 F.3d 992 (9th Cir. 2006) (Under federal choice of law rules, California

20   statute of limitations did not apply to putative class action brought by Vietnamese bank

21   depositors to recover their deposits in branches of American banks located in Vietnam, which

22   were closed at the end of the Vietnam War where California lacked substantial interest in the

23   action and only one named plaintiff was California resident at time the action accrued). *See*

24   *Steward v. Atlantic Nat. Bank of Boston*, 27 F.2d 224, 225-27 (9th Cir. 1928) (interpreting

25   predecessor to Ariz. Rev. Stat. §12-548 and finding that Arizona statute of limitations for

26

27

28

1    contracts executed within the state applied where notes executed in blank outside the State

2    became a binding contract when they were delivered and signed in Arizona); *Hendricks v.*

3    *Smartvideo Technologies, Inc.*, 511 F.Supp.2d 1219, 1226 (M.D. Fla. 2007). *See also Etienne*

4    *v. Wolverine Tube, Inc.,* 12 F.Supp.2d 1173, 1183 n.7 (D.Kan. 1998); *Davis v. Connecticut*

5    *General Life Ins. Co.,* 743 F.Supp. 1273, 1278 (M.D.Tenn. 1990).

6

7         Because Arizona's contract statute of limitations applies and named Plaintiffs accepted

8    employment within this state, Defendants' arguments that another statute of limitations applies

9    is  contrary to the Ninth Circuit's holding. *McElwaine* clearly established that "The statute of

10   limitations for an ERISA benefits action is based on the applicable statute of limitations for a

11   contract claim in the forum state. Arizona, the forum state, has a six year statute of limitations."

12   176 F.3d at 1170 (citing Ariz. Rev. Stat. § 12-548). Defendants' argument that Ariz. Rev. Stat.

13   § 12-548 does not apply because Ariz. Rev. Stat. § 12-541(3) somehow is more appropriate ,

14   is in direct conflict with *McElwaine* and is otherwise without merit. The most analogous statute

15   is clearly one for a written contract evidencing a debt*. See, e.g., Woodward v. Chirco Const.*

16   *Co.*, Inc.687 P.2d 1275 (Ariz.App.,1984).  Further,  Ariz. Rev. Stat. § 12-541(3) could not be

17   applicable because the Plan is not a  written employment contract.  To the contrary, each of the

18   plan documents *expressly disavows* that they are contracts of employment.  (Doc. 16, Exhibit

19   P, at HW0000610 Section 16.06, Exh. Q, at HW000732; Exh. E, at HW0000372-73.)

20

21        Defendants' purported choice of law provision is completely inapplicable.[8]   The

22   question of what statute of limitations applies is not governed by a choice of law provisions of

23   a 2000 Plan not directly at issue in this case. In *Des Brisay v. Goldfield Corp.,* 637 F.2d 680,

24

25   _____

26        [8]It states only that  Delaware law applies to "determine all questions with respect to
     the provisions of this Plan, except to the extent Federal statute supersedes Delaware law."
27   (Doc. 16, Exh. P, at HW0000611.)

28                                          14

1    682 (9th Cir. 1981), the court held that a similar clause did not apply to the choice of a statute

2    of limitations.  The court held:

3

4        [T]he Exchange Agreement makes no mention of statutes of limitation, but
        rather is a standard choice of law clause for application to the substantive
5        interpretation of a contract. Such clauses generally do not contemplate
        application to statutes of limitation. Limitations periods are usually considered
6        to be related to judicial administration and thus governed by the rules of local
        law, even if the substantive law of another jurisdiction applies. Restatement
7        (Second) of Conflict of Laws, s 122, comment (a). Thus, we believe the
        intention of the parties to contractually agree upon a limitations period should
8        be clearly expressed before we will consider whether it is permissible to do so
        in a federal securities case.

9    *Id. See also Trustees of Operative Plasterers' and Cement Masons' Local Union Officers &*

10   *Employees Pension Fund v. Journeyman Plasterers' Protective*, 794 F.2d 1217, 1221 n. 8 (8th

11   Cir. 1986) ("Additionally, we note that the pension plan's choice of law provision, which

12   indicates that the District of Columbia's substantive law is to be used in construing the plan, is

13   irrelevant when considering which statute of limitation is to be used by the district court.");

14   *Kerry v. Southwire Co. & Affiliates Employee Benefit Plan*, 324 F.Supp.2d 1225 (D. Utah

15   2004). In *Wang*, the sole case relied on by Defendants, the parties never argued whether the

16   clearly different choice of law provision in that case applied to the statute of limitations.[9]

17   *Wang*, 990 F.2d at 1129.

18

19       Moreover, even if the provision did apply on its face, choice of law provisions are not

20   enforced if they are "unreasonable or fundamentally unfair." *See Wang*, 990 F.2d at 1128.  In

21   *Wang*, the Ninth Circuit concluded that the choice of Massachusetts law, which had a six year

22   statute of limitations on contract actions, was not unreasonable where "Wang was

23

24   ──────────────

25       [9]In contrast to the choice of law provision cited by Defendants in the 2000 plan
     document, the choice of law provision in *Wang* stated that "the rights and obligations of the
26   parties were to be governed by the law of Massachusetts, and all questions pertaining to the
     validity and construction of such rights and obligations shall be determined in accordance
27   with such law." *Wang*, 990 F.2d at 1128.

28
                                                    15

1   headquartered in Massachusetts and most of the employees covered by the Plan are in

2   Massachusetts, so viewed from the time when the contract was made, when a particular

3   individual could not know whether he would be a litigant..." *Id.* This is clearly not the case

4   here. Each of the named Plaintiffs worked for Honeywell or its predecessor companies in

5   Arizona. (SOF ¶13.). Arizona law therefore supplies the appropriate statute of limitations,

6   which is six years.

7

8   　　　The 2000 plan is also inapplicable because  Plaintiffs' rights to benefits vested under

9   earlier versions of the Plan and under those prior plan versions, either California law or New

10  Jersey law applies. *See Allen*, 382 F.Supp.2d at 1161 (noting that "Defendants do not contest

11  that Plaintiffs' benefits vested under prior iterations of the Plan...."). For these reasons, choice

12  of law provisions, if applicable at all, would have to be those  in the earlier plan documents.

13  Accordingly, Arizona's six year contract statute of limitations applies. Even if another state's

14  statute of limitations applies, it would not be Delaware's and would have to be either

15  California's four year California contract statute of limitations, *see Wetzel*, *supra*, or New

16  Jersey's six year statute of limitations.　　*See* N.J. Stat. 2A:14-1. (Doc. 16, Exh. E, at

17  HW0000377, Exh. Q, at HW000072.)

18

19  <center>**CONCLUSION**</center>

20  　　　For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion for

21  summary be denied. Plaintiffs request such further relief as is equitable and just.

22  　　　Respectfully submitted this 11[h] day of January, 2008.

23  　　　　　　　　　　　　　　　　　　**MARTIN & BONNETT, P.L.L.C.**

24

25  　　　　　　　　　　　　　　　　　By:  s/Susan Martin

26  　　　　　　　　　　　　　　　　　Susan Martin
27  　　　　　　　　　　　　　　　　　Daniel L. Bonnett
    　　　　　　　　　　　　　　　　　Jennifer L. Kroll

28

<center>16</center>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3300 North Central Avenue, Suite 1720
Phoenix, AZ 85012-2517

(602) 240-6900

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the Following CM/ECF registrants:

David B. Rosenbaum

Dawn L. Dauphine

Osborn Maledon, P.A.

2929 North Central Ave., Suite 2100

Phoenix, AZ 85012-2794


Michael Banks

Azeez Hayne

Morgan Lewis & Bockius LLP

1701 Market Street

Philadelphia, PA 19103


Howard Shapiro

Proskauer Rose LLP

909 Poydras Street, Suite 1100

New Orleans, LA 70112


Amy Covert

Proskauer Rose LLP

One Newark Center, 18th Floor

Newark , NJ 07102-5211


Christopher Landau

Eleanor R. Barrett

Kirkland & Ellis LLP

655 Fifteenth Street, N.W.

Washington, D.C. 20005

18

1   Attorneys for the Defendants

2

3   s/.J. Kroll

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19