1

2   **SUSAN MARTIN (AZ#014226)**
    **DANIEL L. BONNETT (AZ#014127)**

3   **JENNIFER KROLL (AZ#019859)**
    **MARTIN & BONNETT, P.L.L.C.**

4   1850 N. Central Avenue, Suite 2010
    Phoenix, Arizona 85004

5   Telephone: (602) 240-6900
    smartin@martinbonnett.com

6   dbonnett@martinbonnett.com
    jkroll@martinbonnett.com

7   Attorneys for Plaintiffs

8

9

10

11              **IN THE UNITED STATES DISTRICT COURT**

12              **FOR THE DISTRICT OF ARIZONA**

13

14  Barbara Allen; Richard Dippold; Melvin Jones; )
    Donald McCarty; Richard Scates and Walter G. )
15  West, individually and on behalf of all others )    No. CV04-0424 PHX ROS
    similarly situated,                          )
16                                               )    **PLAINTIFFS' OPPOSITION TO**
                          Plaintiffs,            )    **DEFENDANTS' MOTION FOR**
17                                               )    **PARTIAL SUMMARY JUDGMENT**
            vs.                                  )    **ON MINIMUM BENEFITS CLAIM**
18                                               )
    Honeywell Retirement Earnings Plan;          )
19  Honeywell Secured Benefit Plan; Plan         )
    Administrator of Honeywell Retirement        )
20  Earnings Plan; and Plan Administrator of     )
    Honeywell Secured Benefit Plan,              )
21                                               )
                          Defendants.            )
22  ─────────────────────────────────────────── )

23

24

25

26

27

28

# INTRODUCTION

Plaintiffs oppose Defendants' motion for summary judgment, (Doc. 510), which purports to address the remedies available to Plaintiffs on the Minimum Benefits Claim, but in reality seeks merely to re-litigate and avoid  liability under the Court's 2005 summary judgment ruling.  Defendants' attempt to re-argue the meaning of Plan Section 4.2 is nothing but a new spin on arguments that were or  should have been asserted in opposition to Plaintiffs' motion for partial summary judgment or plead as affirmative defenses or counterclaims and should be rejected. This Court already ruled against Defendants on essentially the same Plan interpretation proffered here: that whenever a participant fails to transfer his Secured Benefit Account balance to the Plan, there *must* be a Secured Benefit Account Offset applied to the benefits.  As the Court stated:

> According to Defendants, the benefit payable under the Retirement Plan *must* be offset by the value of a participant's Secured Benefit Account whenever the participant elects not to transfer the balance of his Account into the Retirement Plan. The Plan, however, states otherwise.

*Allen v. Honeywell Retirement Earnings Plan*, 382 F.Supp.2d 1139, 1163 (D.Ariz. 2005) (emphasis supplied).  While only the second half of Defendants' motion actually admits that Defendants seek reconsideration,[1] Defendants' entire motion merely reargues the meaning of the same Plan provisions that were squarely at issue in the summary judgment ruling.

It is far too late in the day for Defendants to assert that they can avoid liability to Plaintiffs for unlawfully applying an SBA offset in the calculation of Plaintiffs' Minimum Benefits by now asserting for the first time, that under the Court's ruling, Defendants never should have paid Plaintiffs their Minimum Benefits in the first place. Defendants' motion goes to the heart of the merits of Plaintiffs' summary judgment motion  and the Court's ruling that Defendants' unlawfully calculated Plaintiffs' Minimum Benefits with an SBA offset. If the Court finds that Defendants arguments are not merely a variation on the

---

[1] Pursuant to Local Rule 7.2(g), Plaintiffs do not address Defendants' alternative third motion for reconsideration. (Doc. 510 pp. 10-16.) In the event the Court determines to consider it, Plaintiffs request an opportunity to respond.

1  arguments already rejected under the Court's summary judgment ruling, then Defendants
2  arguments should now be rejected for not having been presented in opposition to Plaintiffs'
3  motion. Although the Court held, that because the ruling on Defendants' Motion to Dismiss
4  and Plaintiffs cross motion for summary judgment was entered before the Class was certified,
5  its ruling did not foreclose Defendants from "asserting affirmative defenses related to
6  individual putative class members' claims," (Doc. 124 p.15), Defendants were obviously
7  required to actually assert such defenses.  Yet Defendants failed to assert the affirmative
8  defense raised here - that under the Court's ruling, Defendants paid Plaintiffs Minimum
9  Benefits  under the Plan through unilateral mistake or that Defendants can avoid or
10 effectively offset payment of benefits to Plaintiffs because they are not really entitled to any
11 Minimum Benefits and have been overpaid, in effect claiming recoupment or offset.[2]
12 Defendants' failure to assert affirmative defenses and/or counterclaims  in their Answer to
13 the Amended Complaint filed in August 2005 is fatal and bars Defendants from raising these
14 defenses at this late date.

15      The Court granted Plaintiffs' summary judgment motion finding Defendants
16 unlawfully applied an SBA Offset to Plaintiffs' Minimum Benefits. *Allen*, 382 F. Supp. at
17 1161-64. Defendants argue that there should be no liability because Defendants never should
18 have paid Plaintiffs any Minimum Benefits at all.  But that argument seeks to undo the
19 Court's ruling.  The Court could not have found that Defendants wrongfully applied an SBA
20 Offset to Plaintiffs' Minimum Benefits if, as Defendants now assert, Plaintiffs had no

21 _____

22      [2]It is not Plaintiffs' duty to deconstruct and properly characterize Defendants' unplead
23 affirmative defenses or counterclaims. With regard to the issue of whether Defendants
   waived their defense, it makes no difference whether the unarticulated basis of Defendants'
24 proffered but meritless grounds for avoidance should  have been plead as  unilateral mistake,
   recoupment, set-off or the like or whether Defendants should have raised their arguments by
25 way of counterclaim or  affirmative defense. The result is the same: four years after their
26 answer was filed and having failed to comply with the requirements of Fed. R. Civ. P. 8 (b)
   and (c) and 13(a), Defendants do not get to litigate "any matter constituting an avoidance or
27 affirmative defense" that was never plead and that would operate as a bar, offset or
28 avoidance of Plaintiffs' rights to recover their Minimum Benefits without an SBA offset.

entitlement to such benefits.  Defendants' motion is nothing more than a thinly veiled attempt to escape liability through unplead affirmative defenses and/or unasserted compulsory counterclaims and through yet another round of argument regarding the meaning of the Plan that was already argued or should have been argued more than four years ago.

Despite two prior motions for reconsideration (Doc. 79, 323),  denial of Defendants' petition for an interlocutory appeal, (Doc. 142), and denial of Defendants' motion to amend their Answer (which never raised this defense), (Doc. 306), Defendants now purport to assert a new unplead affirmative defense that despite 25 years of providing Minimum Benefits to Plaintiffs, the Plan does not afford the right to receive Minimum Benefits without an SBA offset and therefore Plaintiffs' benefits should not be  re-calculated without an SBA offset. Defendants' arguments, (advanced by the  fourth law firm to appear for Defendants in this litigation), are written as though Defendants are writing on a clean slate.  Defendants' motion is in conflict with the facts  that: 1) in opposing summary judgment, Defendants failed to argue that liability should not attach because Plaintiffs had no right to Minimum Benefits and repeatedly conceded that the Plan does afford a right to Minimum Benefits, (Doc. 31); 2) Defendants failed to introduce any admissible evidence regarding the intent of Section 4.2 and the Court struck the only proffered evidence on this subject, (Doc.72, pp. 3-4); 3) Defendants expressly disavowed any right to seek reconsideration on the Minimum Benefits Claim in 2005, (Doc.79, p. 1 n.1) (yet without advancing any grounds for nullifying that disavowal or justifying a four year delay, ask for reconsideration); 4) Defendants failed to assert these affirmative defenses or counterclaims in their answer, (Doc. 78), and 5) Defendants did not even assert this belated defense in their motion to amend the  answer, (which was denied, (Doc. 255, p. 306)).  Indeed, at no time during the pendency of this case or Plaintiffs' administrative claims filed in 2002 did Defendants ever assert that payment of Minimum Benefits under the Plan was all a big mistake or that Defendants should be relieved of the obligation to provide Plaintiffs with their Minimum Benefits without an SBA offset because Plaintiffs were never entitled to those benefits in the first place.

# SUMMARY OF ARGUMENT

Defendants' motion is in conflict with the clear language and structure of the Plan and established principles of contract interpretation. Defendants' motion should be denied and the Court should rule that Plaintiffs are entitled to calculation of their Minimum Benefits under the Plan without an SBA offset and with Interest and attorneys' fees as provided in the Partial Settlement Agreement, (Doc. 312, Exh. A, because:

> 1. Defendants' proffered interpretation is barred by Defendants' contrary admissions;

> 2. Defendants are barred or waived their rights to argue their proffered interpretation of Plan § 4.2 by rejection of that interpretation in the Court's summary judgment ruling or by failing to assert their proffered interpretation in opposition to Plaintiffs' motion for summary judgment;

> 3. Defendants waived their rights to claim that Plaintiffs are not entitled to their Minimum Benefits under the Plan by failing to plead these grounds for avoidance, unilateral mistake, recoupment or set-off as affirmative defenses/counterclaims in their Answer. The deadline for amendment of the Answer has long since passed and Defendants' actual motion to amend their Answer (which failed to assert these affirmative defenses) was denied in August 2007 (Doc. 306) and not renewed. Such defenses are, in any event, meritless;

> 4. Defendants also failed to raise these defenses or assert their belated interpretation of the Plan in the administrative claims process as a basis for denying Plaintiffs' claims. Courts require plan administrators to set forth every reason for denial of a claim so that participants can be fully informed and make a reasonable determination about whether to appeal the claim or whether to pursue claims that are denied. Courts will not consider issues outside of the administrative record nor credit the litigating positions of counsel as proxies for interpretations of the plan by the plan administrator;

> 5. Consideration of these affirmative defenses/counterclaims now would be extremely prejudicial to Plaintiffs;

> 6. In the event the Court is inclined to consider the merits of Defendants' motion, it should be denied as it fails under the plain language of the Plan and under established principles of contract interpretation.

**The Court's Minimum Benefits Ruling**

In its opinion dated July 24, 2005 the Court ruled in Plaintiffs' favor that :

The unambiguous terms of the Signal Retirement Plan do not permit a Secured Benefit Account offset to the minimum benefit formulas contained in § 4.2(c). The Court will therefore grant Plaintiffs' request for partial summary judgment on this ground and deny Defendants' Motion to Dismiss.

4

*Allen v. Honeywell Retirement Earnings Plan,* 382 F.Supp.2d 1139, 1164 (D.Ariz. 2005). The Court's holding was based on a careful analysis of the language of the Plan. At several points in its opinion, the Court found that (like Defendants' unsupported and conclusory assertions on this motion), Defendants had failed to support their claims regarding the meaning of the Plan.[3] Defendants do not get a do-over on the meaning of Plan § 4.2 under the guise of remedy. Defendants' new motion presents no grounds to revisit the Court's well-reasoned decision on the Minimum Benefits Claim, is highly prejudicial to Plaintiffs and constitutes a colossal waste of judicial resources.

## I. DEFENDANTS HAVE ADMITTED PLAINTIFFS ARE ENTITLED TO MINIMUM BENEFITS

The Plan provides both Minimum Benefits and Basic Benefits and Defendants have always calculated Plaintiffs' benefits under both formulas and have applied the greater of the two. (*See* Doc. 31, p.4.) The Minimum Benefits Formula incorporates the old Garrett benefits formula, (Doc. 351 ¶ 21), and provides two formulas for a floor or minimum level of benefits.

Defendants have admitted that Plaintiffs are entitled to the greater of the Basic Formula or the Minimum Benefits Formula under the Plan. Defendants repeatedly asserted that benefits are first calculated under § 4.2(b) (the Basic Formula) and then a second calculation is made under § 4.2(c) (the Minimum Benefit Formula) and that retirees receive the greater of the benefits calculated under the two formulas:

> The "minimum benefit" formula refers to an alternative benefit formula in the Retirement Plan that provides a minimum annuity at retirement. Again an explanation is in order.
> Generally, a participant's Retirement Plan benefit is calculated under one of two main formulas. Pension benefits are first calculated under § 4.2(b) of the Retirement Plan, which provides a relatively generous formula, but which also contains an offset (i.e., a reduction) for estimated Social Security benefits (the

---

[3]The Court found, *inter alia*, that Defendants "have not identified any alleged ambiguity." *Allen*, 382 F. Supp. 2d at 1162, that Defendants made "unsupported assertions regarding the intent of the Plan cannot overcome the clear language of the Plan"; *id.* at 1163, and that Defendants "have produced no evidence" that Plaintiffs' interpretation of § 4.2(e)(i)(b) would defeat "the purpose of the Minimum Benefit." *Id.*

"basic formula"). (Dec. Ex. E § 4.2(b) at HW0000336). However, the calculation does not stop there. A second, alternative calculation is then made under § 4.2(c), which provides a less generous formula, but which does not contain a Social Security offset (the "minimum formula"). ( *Id.* at §4.2(c).) The minimum formula generally, but not always, yields a smaller net annuity than the basic formula. ***Retirees receive the greater of the minimum formula benefit or the benefit calculated using the basic formula*** . ( *Id.* at § 4.2 at HW0000336-340.)

Defendants' Motion to Dismiss, (Doc. 15, p 21, emphasis supplied.) In opposing Plaintiffs'

motion for summary judgment on Plaintiffs' claim that Defendants' application of an SBA

Offset to the Minimum Benefits Formula was in conflict with the Plan, Defendants again

explicitly admitted:

the Retirement Plan calculates a participant's benefit under one of two main formulas: the "basic formula" described in Section 4.2(b) of the Retirement Plan and the "minimum formula" described in Section 4.2(c). ***Retirees receive the greater of the basic formula benefit or the minimum formula benefit***.

(Defendants' Opp. to MSJ, Reply on Motion to Dismiss, Doc. 31, p. 24, emphasis supplied.)

Defendants made the same admission in the administrative claims process. (*See* Doc. 16,

Exh. K p. 8, at HW000471.) Defendants made the same admission in the administrative

claims process and in the denial of Plaintiffs' administrative appeal. (*Id*, Exh. K p. 8, at

HW0000471.)[4]

Defendants made these admissions with full knowledge since 2002 (when Plaintiffs

filed their administrative claim) that Plaintiffs seek their Minimum Benefits calculated

without an SBA Offset. (*See*, e.g. Doc. 16, Exh. I, p. 2.) Defendants never asserted that if

Plaintiffs' claims were successful, Defendants could avoid liability by challenging Plaintiffs'

rights to receive their Minimum Benefits. In light of these admissions, Defendants cannot

argue that Plaintiffs are not entitled to Minimum Benefits under the terms of the Plan.

---

[4]Defendants also argued that the 1993 revision was merely a clarification of the earlier Plan and that the Minimum Benefits Formula was always intended to apply regardless of whether the participant transfers his SBA to the Plan. (Doc. 31, p. 28 n.23.) Defendants' 1993 Plan revision confirms that the Plan was never intended to deprive participants who failed to transfer their SBA balances to the Plan of the right to receive Minimum Benefits. Indeed

1  *Gospel Missions of America v. City of Los Angeles,* 328 F.3d 548, 557 (9th Cir. 2003)

2  (recognizing statements of counsel as judicial admissions).  *See* 10A C. Wright, A. Miller &

3  M. Kane, *Federal Practice and Procedure* § 2723, pp. 64-66 (1983); *Kosen v. Ruffing*, 2009

4  WL 56040, at * 8 (S.D.Cal.  Jan. 7, 2009) (representation as to the amount in controversy

5  held to be enforceable judicial admission on the issue of amount in controversy at time of

6  removal).

7  **II.    DEFENDANTS' FAILURE TO PLEAD THIS DEFENSE OR RAISE IT IN
         OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
8        BARS DEFENDANTS FROM ASSERTING IT**

9        Defendants seek to avoid payment of the difference between Plaintiffs'  Minimum

10  Benefits calculated with an SBA Offset and the Minimum Benefits Defendants actually paid

11  based on unplead affirmative defenses or a heretofore rejected or un-argued interpretation

12  that "participants who retain their SBAs are not entitled to § 4.2(c) benefits to begin with."

13  (Doc. 510 p. 4.)  Defendants misstate the Court's ruling by asserting that "under the Court's

14  analysis, participants who retained their SBAs never should have received their Normal

15  Retirement Benefit calculated under § 4.2(c)."  The Court said nothing of the kind.[5]  To the

16  contrary, the Court rejected Defendants' argument that "the benefit payable under the

17  Retirement Plan *must*  be offset by the value of a participant's Secured Benefit Account

18  *whenever* the participant elects not to transfer the balance of his account into the Retirement

19  Plan," (Doc. 31), and held "[t]he Plan however states otherwise."

20        Defendants' argument is nothing but a thinly veiled attempt to litigate an unplead

21  affirmative defense: that under the Court's interpretation Defendants mistakenly paid

22  Minimum Benefits to Plaintiffs in the first place.  Such defense (or counterclaim) cannot

23  _____

24        [5] Defendants' argument that the Court's ruling creates a "windfall," (Doc. 510 p. 4),
    is baseless, and like their opposition to Plaintiffs' motion for summary judgment,
25  is unsupported by a scintilla of evidence. Further, as the Court already noted, the Minimum
    Benefits formula has smaller multipliers than the Basic Formula. In any event, it is not a
26  "windfall" for Plaintiffs to receive benefits in accordance with written provisions of the Plan.
27  *Call v. Ameritech Management Pension Plan,* 475 F.3d 816, 822-23 (7th Cir. 2007) (*cert.
    denied* 128 S.Ct. 2900 (2008).

28

succeed because Defendants have never plead it.  Rule 8 of the Federal Rules of Civil Procedure provides in no uncertain terms that "In responding to a pleading, a party must affirmatively state *any* avoidance or affirmative defense"(emphasis supplied).[6]  Such defenses are affirmative defenses or counterclaims that must be plead.  Defendants' failure to do so resulted in waiver of that defense:

> Generally speaking, the rule's reference to 'an avoidance or affirmative defense' encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer.

Wright & Miller, 5 *Federal Practice and Procedure* § 1271.Defendants' proposed new defense fits squarely within the definition of affirmative defense, which was waived when Defendants failed to plead it: " It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case." Wright & Miller, 5 *Federal Practice and Procedure* § 1278.  *See, e.g.*, *Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260, 1266 (9th Cir. 1996) ("Failure to raise an affirmative defense below results in waiver.").  Richard A. Lord, 27 *Williston on Contracts* § 70:15 (4th ed.) ("Where applicable, mistake must be raised immediately as an affirmative defense in a defendant's answer to a complaint, such as pleading fraud 'or any other matter constituting an avoidance or affirmative defense.'...In all cases, the failure to raise an affirmative defense in answer to a complaint may serve to waive that defense. "); CJS Contracts § 676 ("The defense of a mistake of law cannot be asserted in a breach of contract action where it is not pled.") .

Similarly, Rule 13 of the Federal Rules of Civil Procedure provides:

**(a) Compulsory Counterclaim.**
**(1) *In General.*** A pleading must state as a counterclaim any claim that--at the time of its service--the pleader has against an opposing party if the claim:

---

[6]Defendants even failed to raise this defense in their proposed amended answer, (Doc. 255), which the Court denied nearly two years ago.  (Doc. 306.)

(**A**) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(**B**) does not require adding another party over whom the court cannot acquire jurisdiction.

*See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1409 (2d ed. 1987) (discussing, as a compulsory counterclaim, a "counterclaim interposed solely to defeat or diminish plaintiff's recovery [which] is analogous to the common law claim for recoupment." ).

In *Shah v. General Motors Corp.,* 2008 WL 4585237, at * 5 (E.D.Mich. Oct. 14, 2008), for example, an ERISA case, the court refused to entertain the defendant's claim that in the event the plaintiff was found to be entitled to benefits, the plan was entitled to recoup money it claimed that it had overpaid, because the defendant plan never plead such defense or asserted a counterclaim: "The Court will not analyze this argument until Defendant properly asserts a claim against Plaintiff." *Id.* at *5. *See also Robbins Hardwood Flooring, Inc. v. Bolick Distributor Corp.*, 2003 WL 22427097, at * 2 (5th Cir. 2003) ("Nor has Bolick provided any reason why its claim was not pleaded or attempted to show that amendment would not be prejudicial to Robbins. Bolick has never even requested that it be allowed to amend its pleadings. In light of this, we find it clear that the trial court did not abuse its discretion in refusing to allow amendment of Bolick's pleading to allege a counterclaim of setoff or recoupment."); *Buder v. U.S.* 436 F.3d 936, 938 (8th Cir. 2006) ("Equitable recoupment is an affirmative defense; it is an equity-based remedy available to [the Government] here only to prevent Plaintiffs' unjust enrichment."); *United States v. Munoz*, 746 F.2d 1389, 1390 (9th Cir .1984) (refusing to consider unplead defense of recoupment).

In 2006, Defendants belatedly recognized that they failed to plead all their defenses and moved to amend the Answer. (Doc. 255.) However, even that tardy motion which the Court denied, made no reference whatsoever to the defense being asserted here although Defendants claimed that at least two of their "proposed new defenses acknowledge the Court's ruling and address possible remedies in light of that ruling." (Doc. 263 p. 3.) Two

of Defendants' proposed amendments were expressly addressed to the Court's Minimum

Benefits ruling:

> **EIGHTH AFFIRMATIVE DEFENSE**
> ...In its July 19, 2005 Opinion, the Court found that the "provided in subparagraph (b)" language of §4.2(e)(i)(b) of the Signal Retirement Plan unambiguously excludes the Minimum Benefit formula. To the extent that the Plan is so construed, that construction creates a scrivener's error, and the relevant plan provision should be reformed to conform to the settlor's original intent.
>
> **NINTH AFFIRMATIVE DEFENSE**
> ...In its July 19, 2005 Opinion, the Court found that the "provided in subparagraph (b)" language of §4.2(e)(i)(b) of the Signal Retirement Plan unambiguously excludes the Minimum Benefit formula. To the extent that the Plan is soconstrued, that construction renders that provision *ultra vires* and unenforceable, and the relevant plan provision should be reformed to strike the unauthorized plan terms.

(Doc. 265 p. 24.)    Plaintiffs opposed the motion and on August 1, 2007, the Court denied

the motion, stating that if settlement could not be reached Defendants could renew their

motion.  (Doc. 306.)  Defendants never renewed their motion.

    Against this backdrop, allowing Defendants to litigate an uplead affirmative defense

or counterclaim  at this point would be beyond any semblance of reason.  The deadline for

amending the Answer was December 11, 2006.  Since that date, Defendants, either on their

own or jointly with Plaintiffs, submitted  5 proposed Scheduling Orders, each of which

maintained the December 11, 2006 deadline on motions to amend the Answer. (Doc. 278,

290, 310, 466, 483.)  A written stipulation of partial settlement was filed on October 26,

2007, (Doc. 312), which was preliminarily approved by the Court on November 6, 2007,

(Doc. 319), and finally approved on February 8, 2008.  (Doc. 402.)  That settlement provided,

*inter alia,* for dismissal of several claims and that the parties would litigate the Three

Remaining claims with a cap on damages.  Following preliminary approval of the Partial

Settlement, on November 16, 2007, Defendants moved for reconsideration of the ERISA §

204(g) claims, (Doc. 323), never asking for reconsideration of the Minimum Benefits Claim

and  never  attempting  to  renew  the  motion  to  amend  the  Answer.

    In the unlikely event Defendants are permitted to litigate  their unplead avoidance

defenses or counterclaims, Defendants' motion should still be denied. There was no evidence

on summary judgment and no evidence on this motion that Defendants were mistaken as to any of the contract terms such that Defendants could avoid having to make Plaintiffs whole for their Minimum Benefits without an offset. *See, e.g, Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 299 F.3d 769, 783 -84 (9th Cir. 2002) ("In this case, Kyocera cannot reasonably be considered as having made a mistake of fact. There was no inadvertent clerical error, and Kyocera did not misapprehend a term in the contract through unconscious ignorance or forgetfulness of a material fact. Rather, ...Kyocera had actual knowledge of the term at issue."). Even if there were, Defendants cannot renege on their promise to participants to provide the greater of the Basic Formula or the Minimum Benefits Formula based on their own unilateral mistake.  *See Bianchi v. Perry*, 140 F.3d 1294, 1298-99 (9th Cir. 1997).  ("If the government mistakenly overlooked its rights (and it may not have), then its own negligent error does not entitle it to renege on its commitment.") *(citing Restatement of Restitution § 12* ( unilateral mistake not grounds for restitution). Defendants can only recover on a theory of mistake if they did not bear the risk or if there is some sort of unconscionability. *Restatement (Second) of Contracts* § 153.

## III.    DEFENDANTS WAIVED THEIR DEFENSES BY FAILING TO INCLUDE THEM AS A BASIS FOR DENIAL OF PLAINTIFFS' CLAIMS IN THE ADMINISTRATIVE CLAIMS PROCESS

Defendants are also barred from arguing their defense because it was  never advanced by the Plan Administrator when it denied Plaintiffs' administrative claims and appeal. A plan administrator is required to state all the reasons for denying a participant's claims. This is so because a participant is entitled to evaluate whether to appeal the decision or whether to file suit after an appeal is denied.  Surely, if Defendants believed that as a result of Plaintiffs' claims to have their benefits calculated without an SBA offset, Defendants would be able to claim that they had forfeited their right to receive Minimum Benefits altogether, such basis for denying Plaintiffs' claims should have been clearly articulated in the administrative

11

claims process.[7]  *Blair v. Metropolitan Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir. 1992) (where treatment was provided by dentist, but policy provision requiring treatment by "physician or surgeon" not raised in denial, there was "a tacit admission by MetLife that it construed its own policy . . . to include dentists").  *See  Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006) ("in general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion...").  *See, e.g., Reich v. Ladish Co., Inc.*, 306 F.3d 519, 524 n. 1 (7th Cir. 2002) ("Ladish was required to give Reich every reason for its denial of benefits at the time of the denial.");  29 U.S.C. § 1133 (plan administrator must state "specific reasons" for denial of claim);  *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 23 EB Cases 2689 (6th Cir. 2000) (one administrative committee member's testimony cannot "shore-up" inadequate denial letter); *Skretvedt v. E. I. Dupont de Nemours & Co.*, 268 F.3d 167 (3d Cir. 2001);  *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) (argument regarding interpretation of SPD rejected because it was not a contention made by Plan Committee in its claim denial letter); *Peruzzi v Summa Medical Plan*, 137 F3d 431, 435 (6th Cir. 1998) ("We are doubtful that Peruzzi may properly raise this argument now because it is unclear that he presented it to the plan administrator"); *Shelden v. Barre Belt Granite*, 25 F.3d 74 (2d Cir. 1994) (district court cannot affirm denial of benefits by ascribing to plan a reason for denial other than one proffered to claimant); *Matuszak v. Torrington C.*, 927 F.2d 320, 322-23 (7th Cir. 1991) ("post hoc" reasons advanced by counsel are not entitled to abuse of discretion review); *Sandoval v. Aetna Life*, 967 F.2d 377 (10th Cir. 1992) (refused to consider "arguments" not advanced to the trustees, as "a curtain falls when the fiduciary completes its review"); *Doe v. Group Hospitalization*, 3 F.3d 80 (4th Cir. 1993) (refused to consider "reasons" not given to the participant).

---

[7]Defendants have not indicated how they Plan to treat Plaintiffs' rights to future Minimum Benefits under the Plan, including for participants who have not yet retired.  To suggest that these rights could be eviscerated on the remedies stage of this case with no notice,  pleading or discovery defies logic.

Plaintiffs' administrative claims were filed in 2002. Plaintiffs asked that their benefits be recalculated without an SBA offset. Defendants cannot seven years after denial of Plaintiffs' claims, five years after the Complaint was filed and almost four years after summary judgment was granted assert that yet another basis exists to deny Plaintiffs' claims to have their Minimum Benefits calculated without an SBA Offset.

## IV.    ALLOWING DEFENDANTS TO LITIGATE THEIR DEFENSE IS HIGHLY PREJUDICIAL TO PLAINTIFFS

Allowing Defendants to assert an affirmative defense or counterclaim at this point, would be extremely prejudicial. Defendants never raised it in the administrative claims process and never raised it in its Answer. The deadline for a motion to amend the Answer was more than two years ago. (*See, e.g.*, Doc. 484, p. 1 ¶ C.) To summarize, Plaintiffs submitted expert reports in this case nearly a year ago, and Defendants have deposed Plaintiffs' expert twice. (SOF Exh. A ¶ 2-3; Doc. 436.) The current Scheduling Order provides for a period of only 60 days to complete discovery following the ruling on Plaintiffs' pending motion to compel, as to which Magistrate Duncan was appointed SpecialMaster on February 3, 2009. Raising the defense at this juncture, five years after the case was filed, more than three years after the Court's summary judgment ruling, a year after Plaintiffs' expert disclosures were made and with very little time to conduct any discovery on the new defense would be highly prejudicial. Defendants should not now be allowed to assert a new defense. *See Kontrick v. Ryan*, 540 U.S. 443, 460 (2004) (affirming denial of leave to amend to assert statute of limitations defenses after summary judgment ruling: "No reasonable construction of complaint-processing rules, in sum, would allow a litigant situated as Kontrick is to defeat a claim, as filed too late, after the party has litigated and lost the case on the merits."). Raising this defense now would effectively launch a new lawsuit. As one court stated:

> No party, plaintiff or defendant, is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest in a subsequent proceeding, and thus evade the bar of the former judgment. Therefore, we cannot authorize a plaintiff to launch a new lawsuit through amendment after a final decision on summary judgment nor can we permit a defendant to utilize

a new defense following a ruling on summary judgment in plaintiff's favor as to liability.

*McDaniel v. City of Griffin*, 636 S.E.2d 62, 65 (Ga. App. 2006) (citations omitted). *See Singh v. City of Oakland*, 295 Fed.Appx. 118, 122 (9th Cir. Sept. 3, 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990); *Frazier v. Boomsma,* 2008 WL 3073150, at * 2 (D.Ariz. Aug. 4, 2008) (parties "wholly unjustified delay in reversing her position would defeat a motion to amend her answer, if a motion had been filed. Her delay would weigh similarly against abandoning the schedule set out in the case management order.") (citations omitted); *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004); *Diersen v. Chicago Car Exchange*, 110 F.3d 481, 489 (7th Cir. 1997).

## V.    DEFENDANTS' PROFFERED INTERPRETATION IS CONTRADICTED BY THE PLAIN LANGUAGE OF THE PLAN

Even if the Court were to consider Defendants' arguments on the merits, Defendants' motion should be denied as the argued for interpretation is unsupported by the language of the Plan and established principles of contract interpretation. The Court will search in vain in Defendants' motion for any analysis of how § 4.2(e), the SBA offset provision, somehow overrides or negates § 4.2(c), the Minimum Benefits provision, or  for that matter, any analysis of the interplay between the relevant sections. In fact, Defendants' proffered interpretation would effectively read § 4.2(c) out of the Plan in its entirety along with the first sentence of § 4.2(b), which provides that the Basic Formula needs to take into account the Minimum Benefits Formula, the adjustment contained in § 4.2(e) and the other provisions of §4.2.  However, § 4.2(b) is expressly conditioned on subsections 4.2(c) through (k):

> (b) Except as provided in subsections (c) through (k), his Normal Retirement Benefit shall be:
> (i) 1.5% of his Average Final Compensation multiplied by his Credited Service, minus
> (ii) 1.5% of his Primary Social Security Benefit multiplied by his Credited Service (not in excess of 33 1/3 years)...

(Doc. 16, Exh. H, § 4.2(b), at HW0000336.)

14

The Minimum Benefits Formula, § 4.2(c), guarantees that the benefits for a former participant in the Garrett Plan, shall not be lower than the minimum set forth in that provision "except as provided in subsections (d) through (k)." Subsection (e), which contains the SBA offset provision, does not, as the Court determined, apply to § 4.2(c).  Section 4.2(c) provides:

> c) A Participant's Normal Retirement Benefit **shall not**
> (i) in the case of a Participant who had his Separation from the Service at the time he was employed by The Signal Companies, Inc., Signal Properties, Inc, Signal Landmark, Inc., The Garrett Corporation, or Industrial Turbines International, Inc. and except as provided in subsections (d) through (k), be less than the greater of (a) $20.00 times his Credited Service, or (b) 1% of his Average Final Compensation multiplied by his Credited Service...

(Doc. 16, Ex. E, at HW 0000336 (emphasis supplied).)

Section 4.2(e) provides:

> (e) The Normal Retirement Benefit of a Participant employed by a Company specified below shall be adjusted as follows:
>
> (i) In the case of a Participant who holds or has held an account in the Garrett Secured Benefit Account in The Signal Companies, Inc. Savings and Stock Purchase Plan (the "Savings Plan"), his Normal Retirement Benefit shall be,
>
> (a) in the case of a Participant who elects pursuant to the Savings Plan to transfer his entire account balance held in the Garrett Secured Benefit Account to this Plan, the Normal Retirement Benefit provided hereunder without regard to this subparagraph (e) and
>
> (b) in the case of a Participant who elects pursuant to the Savings Plan not to transfer his account balance in the Garrett Secured Benefit Account to this Plan, the Normal Retirement Benefit provided under subparagraph (b) of this Section 4.2, offset by the value of the account balance not transferred (the "Offset"). ...

(Doc. 16, Ex. E, at HW 0000337.)

Under the unambiguous terms of the Plan, the Basic Formula, (§ 4.2(b)), is expressly subject to Subsections (c) and (e). Section 4.2(e) begins with "The Normal Retirement Benefit of a Participant employed by a Company specified below shall be    *adjusted* as follows..." and that sentence continues and does not end until after the provision in §

15

4.2(e)(i)(b) providing that the Normal Retirement Benefit under § 4.2(b) (but not § 4.2(c)) is to be offset. Defendants' motion omits the introductory clause of § 4.2(e), which places the entire provision in context as setting forth ***adjustments***. Defendants read out the word "adjustment" from the sentence and thereby mischaracterize the meaning and import of § 4.2(e). The focus of the provision is on the various offsets and adjustments to some or all of the benefit formulas and how and whether they are to be applied. [8] In conflict with that, Defendants address only two words in isolation, the "shall be" in § 4.2(e)(i) without any acknowledgment or reference to the fact that § 4.2(e)(i) is part of the same sentence that follows the words "shall be adjusted" in § 4.2(e). Defendants' argument and selective quotation of § 4.2(e)(i), as limiting the formula available to a participant who does not transfer his SBA, rather than merely providing for the type and scope of the adjustment, distorts the meaning of that section, which, with respect to Garrett Plan participants, provides for an SBA offset adjustment to the Basic Formula but does not limit nor does it purport to limit application of the formula under § 4.2(c). The Minimum Benefits formula under § 4.2(c) always follows the computation of the benefit in § 4.2(b). Nothing in § 4.2(e) changes that result.

Defendants' argument that benefits for participants in the Garrett Plan are to be only the benefits under § 4.2(b) with an SBA Offset, also fails to offer any rationale for why § 4.2(c) should be effectively written out of the Plan when, under the Basic Formula of § 4.2(b), both §§ 4.2(c) and 4.2(e) apply and nothing in § 4.2(e) purports to modify or eliminate application of subsection (c). Defendants have not even attempted to explain why, after calculating the benefits under § 4.2(b) with an SBA offset, § 4.2(c), the Minimum Benefits Formula, would not continue to apply, as directed by the express terms of Basic Formula itself. In other words, Defendants have not shown, nor could they, that § 4.2(e)'s adjustment

---

[8]See, for example, § 4.2(e)(ii), (Ampex Corporation employee's "Normal Retirement Benefit shall be offset..."); § 4.2(e)(iii) (Equity Plan participants' "Normal Retirement Benefit shall be increased by the greater of...."). (Doc. 16, Exh. E, at HW0000338.)

and offset somewhat overrides and eliminates the Minimum Benefit Formula under § 4.2(c). Given that the Basic Formula spells out that it is subject to both §§ 4.2(c) and (e) and that the Minimum Benefits Formula is unaffected by § 4.2(e), it is simply not plausible to argue that § 4.2(e), the adjustment provision, somehow negates the important protections contained in § 4.2(c).

In fact, Defendants' argument would eviscerate not only § 4.2(c) but other provisions of § 4.2 as well. For example, Defendants' strained interpretation would also nullify § 4.2(h). Section 4.2(h) expressly modifies § 4.2(c)(i) and (c)(ii) by directing that a participant who is transferred from a (c)(i) (former Garrett Plan) company to a (c)(ii) company shall have his benefit calculated as though the employee had at all times been employed by his employer on the date of his separation from service. Under Defendants' argument, a Garrett employee would never be accorded the rights provided under § 4.2(h) because, according to Defendants, their benefits "must" only be determined under § 4.2(b). But that is not what the Plan says.[9] Each section contains parallel mandatory language: one dictating that benefits "shall not" be less than the stated minimum and one directing that benefits "shall be *adjusted*" as outlined in the provision. Both apply with specificity to Garrett Plan participants and neither modifies or is modified by the other. Given that Defendants offer no analysis nor legal support for any claim that § 4.2(e) could somehow trump § 4.2(c) and other provisions that follow, Defendants' motion should be denied.[10]

------

[9]In opposition to Plaintiffs' summary judgment motion, Defendants asserted that the offset formulas applied to all the provisions of § 4.2(b) through (k). As in the Court's summary judgment ruling, reference to the remaining subsections 4.2 buttress the conclusion that § 4.2(e) does not invalidate Section 4.2(c) or any of the other subparagraphs. The Plan's argument runs counter to the well-established principle that contracts should be interpreted in a manner so as to give effect to each of its provisions and not in a manner that leads to absurd or nonsensical results. *State Police Ass'n of Mass. v. Commissioner*, 125 F.3d 1, 4 (1st Cir. 1997); *FutureSource, LLC v. Reuters, Ltd.*, 312 F.3d 281, 284-85 (7th Cir. 2002).

[10]Defendants' attempt to cast blame on Plaintiffs for purportedly offering a shorthand quotation of the Plan is absurd. (Doc. 510, pp. 8-9.) Notwithstanding the fact that Defendants offer absolutely no justification for making this argument nearly four years after the Court's

Giving meaning to the Minimum Benefits Formula and to § 4.2(e)'s SBA offset to the Basic Formula as co-extensive provisions with neither one negating nor modifying the other is not only consistent with the plain reading of the Plan and the Court's summary judgment ruling but is compelled by fundamental principles of contract interpretation as well. *Restatement (Second) of Contracts* § 203(a) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."); *Richardson v. Pension Plan of Bethlehem Steel Corp..* 112 F.3d 982, 985 (9th Cir. 1997) ("Each provision in an agreement should be construed consistently with the entire document such that no provision is rendered nugatory."); *Dewitt v. Penn-Del Directory Corp.,* 106 F.3d 514, 520 (3d Cir. 1997) (plan administrator "may not controvert the plain language of the document").

Defendants' proffered Plan interpretation would effectively nullify the Plan's Minimum Benefits Formulas and other subsections including §4.2(h). Defendants' proffered argument should also be rejected because it would result in a further unlawful and significant reduction in accrued benefits for participants in violation of ERISA § 204(g) and the Internal Revenue Code counterpart § 411(d)(6). *See Restatement (Second) of Contracts* § 203(a) (preferred interpretation is one that renders the plan legal). "It is a well-settled principle that

---

summary judgment ruling, the fact is that Plaintiffs quoted § 4.2(e) in full both in their brief in support of their motion for summary judgment, at pp. 29-30, (Doc. 23.), and in their statement of facts, ¶ 24. (Doc. 24.) Relevant pages of these pleadings, which pre-date the Court's ECF system, are attached hereto as Exh. A for the Court's convenience. Defendants also put the entire Plan into evidence in support of their motion to dismiss. (Doc. 16, Exh. E.) To suggest that the Court was somehow misled by a shortened, bracketed discussion of the full section under these circumstances is merely a smokescreen for Defendants' repeated efforts to reargue, reconsider and re-litigate every issue in this case *ad nauseum.* Further, as demonstrated herein, the quote is neither inaccurate nor misleading. Rather, it is Defendants who have failed to consider§ 4.2(e) in its entirety, which says the Basic Formula shall be adjusted, and who completely disregard the same mandatory language in § 4.2(c), which directs that benefits "shall not" be less than the floor contained in that Section unless modified by the subparagraphs of § 4.2 that follow it.

ambiguously worded contracts should not be interpreted to render them illegal if a legal construction is plausible." *United States  v. Sacramento Municipal Utility Dist.*, 652 F.2d 1341, 1346 (9th Cir. 1981); *Guthart v. White,* 263 F.3d 1099, 1104 (9th Cir. 2001). Such a result is also contrary to the Plan itself which provides that "The Plan and Trust shall be interpreted, administered and enforced in accordance with the Internal Revenue Code and ERISA and the rights of Participants [and] Former Participants... shall be determined in accordance therewith." (Decl. of Amy Promislo, Doc. 16, Exh. E, at HW 0000377.)

If Defendants' newly proffered Plan interpretation were correct, *i.e.*, that no participant could receive the minimum benefits if they did not transfer their SBA balance to the Retirement Plan, 74% of Garrett Plan participants would have suffered an illegal reduction in their accrued benefits, effective January 1, 1984.[11] This reduction can be demonstrated using simple logic. Practically no participants transferred their SBA to the Plan. (Plaintiffs' SOF ¶ 9 & Exh. A, showing that only 50 out of 8,792 retirees transferred their SBA to the Retirement Plan.). In fact, Defendants encouraged participants not to transfer their SBA to the Retirement Plan. (*See, e.g.,* Doc. 16, Exh. G, at HW0000426.) As set forth in the Declaration of Claude Poulin, the  introduction of a Social Security offset by Signal to years of service worked prior to introduction of that offset was one of the main reasons the Social Security Offset formula worked to reduce benefits because it has the impact of lowering benefits for lower paid participants. (Doc. 353 ¶ 23.) In apparent recognition of that fact, the Signal Plan had an identical Minimum Benefits formula to the Garrett Plan Normal Retirement Benefits Formula for any participant whose final average compensation was under the Social Security wage base maximum. (Doc. 353  ¶ 21.) Defendants also

---

[11]Defendants have now admitted that they do not know when the Plan was amended or adopted but believe it was well after the February 4, 1984 date on the Plan document: "And as best we can tell, the February 4, 1984 date is probably a mistake that was put in by the person who is now deceased, because there are clearly unexecuted, unfinished drafts, lawyer drafts, being exchanged with clients after that date." (Transcript of Status Conference dated February 26, 2009 before the Hon. David K. Duncan, Doc. 507, p. 39.)

applied an increased SBA offset to the Basic Formula.  By eliminating the availability of the Minimum Benefits  formula for participants, the Plan would have reduced benefits for 74% of participants.

Although this Court found the language clear and unambiguous, in the unlikely event the Court should finds the language is ambiguous, Defendants' arguments would still fail. In cases such as this, where the Plan does not afford discretion, Plaintiffs' reasonable construction of the Plan should be accepted based on the doctrine of *contra preferentem* and based on the  principle that ambiguities in a contract are to be resolved against the drafter. *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 539 (9th Cir. 1990);  Richard A. Lord, 11 *Williston on Contracts* § 32:12 (4th ed.) ("it is a generally accepted principle that any ambiguity in [contract]language will be interpreted against the drafter"). *See also Alexander Mfg., Inc. Employee Stock Ownership Plan and Trust v. Illinois Union Ins. Co.,* __ F.3d ___, 2009 WL 764561, at * 5 (9th Cir. March 25, 2009) (construing ambiguity in contract against the drafter).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants Motion be denied.  Plaintiffs request such further relief as is equitable and just.

Respectfully submitted this 13th day of April, 2009

MARTIN & BONNETT, P.L.L.C.

By:   s/Susan Martin
       Susan Martin
       Daniel L. Bonnett
       Jennifer L. Kroll
       1850 North Central Avenue, Suite 2010
       Phoenix, AZ 85004
       (602) 240-6900

Attorneys for Plaintiffs

1

## CERTIFICATE OF SERVICE

2

3      I hereby certify that on April 13, 2009,  I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5    David B. Rosenbaum
     Dawn L. Dauphine
6    Osborn Maledon, P.A.
7    2929 North Central Ave., Suite 2100
     Phoenix, AZ 85012-2794
8

9    Michael Banks
10   Azeez Hayne
     Morgan Lewis & Bockius LLP
11   1701 Market Street
12   Philadelphia, PA 19103

13   Howard Shapiro
14   Robert W. Rachal
15   Proskauer Rose LLP
     909 Poydras Street, Suite 1100
16   New Orleans, LA 70112

17
     Amy Covert
18   Proskauer Rose LLP
19   One Newark Center, 18th Floor
     Newark , NJ 07102-5211
20

21   Eunnice H. Eun
22   Padraic Fennelly
     Craig Primis
23   Michael Williams
24   Christopher Landau
     Leila K. Thompson
25   Kirkland & Ellis LLP
26   655 Fifteenth Street, N.W.
     Washington, D.C. 20005
27   Attorneys for the Defendants
28

1    s/Jennifer Kroll

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28