1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   Barbara Allen, et al.,                )   No. CV-04-0424-PHX-ROS
                                           )
10              Plaintiffs,                )   **OPINION**
                                           )
11  vs.                                    )
                                           )
12                                         )
    Honeywell Retirement Earnings Plan, et )
13  al.,                                   )
                                           )
14              Defendants.                )
                                           )
15  _____   )

16

17

18         Similar to Justice Frankfurter's three rules of statutory interpretation,[1] the three rules

19  of ERISA litigation should be (1) read the plan; (2) read the plan; (3) read the plan. These

20  were apparently not followed during the early years of this litigation.  Now, five years after

21  this litigation began and four years after this Court ruled on a related dispositive issue,

22  Defendants point out that the language of the plan cannot support Plaintiffs' proposed

23  construction.  Plaintiffs object to Defendants' argument, primarily claiming the argument is

24  too late.  The Court is left in the unenviable position of having to decide an issue based on

25  an argument that should have been made long ago.  Based on the parties' filings, and the

26  statements made during oral argument, Defendants are entitled to summary judgment.

27

28         [1] "(1) Read the statute; (2) read the statute; (3) read the statute!"  *In re England*, 375
    F.3d 1169, 1182 (D.C. Cir. 2004) (quoting Henry Friendly, *Benchmarks* 202 (1967)).

# FACTUAL BACKGROUND

Plaintiffs are former employees of the Garrett Corporation, now part of Honeywell International, Inc.  Prior to December 31, 1983, Garrett employees accrued benefits under the Garrett Retirement Plan and the Garrett Severance Plan.  The Garrett Retirement Plan was a defined benefit plan while the Garrett Severance Plan was similar to a defined contribution plan.  The Garrett Severance Plan provided for an individual account (a Secured Benefit Account or "SBA") for each participant.   On December 31, 1983, the Garrett Retirement Plan was merged into the Signal Companies Inc. Retirement Plan ("Signal Plan") and the Garrett Severance Plan was merged into the Signal Companies, Inc. Savings and Stock Purchase Plan.  After these mergers, all benefits that were to be paid by the Garrett Retirement Plan would be paid under the Signal Plan.

The Signal Plan granted an initial accrued benefit to Garrett Retirement Plan participants at least equal in value to their accrued benefit under the Garrett Retirement Plan. Thus, after the merger, all benefits previously payable under the Garrett Retirement Plan became payable under the Signal Plan.  (Apparently this merger worked to the advantage of many participants as the Signal Plan often provided more generous benefits.)  As for the Signal Companies, Inc. Savings and Stock Purchase Plan, the final benefit accrual date was December 31, 1983 and the account balances as of that date were placed in guaranteed investment contracts.  As a result of the plan merger, participants had to choose whether to transfer their SBAs to the Signal Plan.

Section 4.2 of the Signal Plan provides the benefit formulas relevant to the current motion.  According to 4.2(b), a participant's Normal Retirement Benefit will be calculated based on a certain formula "[e]xcept as provided in subsections (c) through (k)."  Section 4.2(c) provides an alternative–and allegedly more generous–formula.  And 4.2(e) provides that "[t]he Normal Retirement Benefit of a Participant . . . shall be adjusted" based on whether the participant transferred his or her SBA balance to the Signal Plan.  If the participant elected not to transfer his SBA to the Signal Plan, the participant's Normal

1    Retirement Benefit "shall be . . . the Normal Retirement Benefit provided under

2    subparagraph (b) of this Section 4.2, offset by the value of the [SBA] not transferred."

3         The Signal Plan has always been interpreted such that participants who did not

4    transfer their SBAs are eligible for the more generous formula under 4.2(b) or 4.2(c), offset

5    by the value of the SBAs. This interpretation is the result of 4.2(e) requiring payment of the

6    "Normal Retirement Benefit under subparagraph (b)" and 4.2(b) being expressly subject to

7    "subsections (c) through (k)." Thus, for participants who did not transfer their SBAs, 4.2(e)

8    requires calculation of the benefit under 4.2(b) but 4.2(b) requires calculation of the benefit

9    under 4.2(c) if 4.2(c) provided a greater benefit than 4.2(b). The Signal Plan has also always

10    been interpreted as requiring an SBA offset to benefits under 4.2(b) or 4.2(c).[2]

11    <center>**PROCEDURAL BACKGROUND**</center>

12         Early in the case, Plaintiffs sought summary judgment that the language in 4.2(e)

13    regarding the offset did not apply to benefit calculations under 4.2(c). The Court agreed with

14    this argument, finding that the offset "applies only to the Normal Retirement Benefit

15    provided [under § 4.2(b)]." (Doc. 73 at 32). This ruling was based on 4.2(e) referring only

16    to the "Normal Retirement Benefit provided under subparagraph (b)" and the "fundamental

17    principle of contract interpretation that the expression of one thing is the exclusion of

18    another." (*Id.*). The parties did not argue, and the Court did not address, whether Plaintiffs

19    were entitled to benefits under 4.2(c) in the event the Court adopted Plaintiffs' construction.

20         In motions filed in 2004, the parties argued whether the *de novo* or abuse of discretion

21    standard of review should apply regarding Defendants' interpretation of the Signal Plan.

22    Plaintiffs argued the Court should apply the *de novo* standard while Defendants argued that

23    abuse of discretion was the proper standard. Defendants' arguments in support of the abuse

24    of discretion standard were based on language in a plan put in place long after Plaintiffs

25

26        [2] During oral argument, Plaintiffs took issue with the statements regarding the method
in which the Signal Plan has been interpreted. These statements are not meant to reflect that
27    the plan administrator proffered such interpretations in a formal setting. Rather, the
statements merely refer to the manner in which benefits were paid.
28

<center>- 3 -</center>

1   began accruing benefits. The Court construed Defendants' argument as a concession that the

2   1984 Signal Plan did not contain language conferring discretion. (Doc. 73 at 30). Based in

3   part on this concession, the Court ruled the *de novo* standard would apply.

4   Defendants now argue the 1984 Signal Plan *does* contain discretionary language.[3]

5   Defendants have not explained why they waited until after the summary judgment briefing

6   to argue this point. Fortunately, the Court need not resolve this issue because Defendants are

7   entitled to summary judgment under the *de novo* standard of review.

8   **ANALYSIS**

9   **A. Interpretation of 4.2(e)**

10   The initial issue is whether the Court should revisit its prior ruling that the offset

11   referenced in 4.2(e) applies only to benefits calculated under 4.2(b). Defendants maintain

12   that the Court's original ruling was in error and that the offset of 4.2(e) applies to *all* benefit

13   calculations. As evidence of this, Defendants point out that the reading adopted by the Court

14   requires a finding that Plaintiffs are not entitled to receive benefits under the formula in

15   4.2(c). Defendants' argument presents Plaintiffs with a "Morton's Fork–a choice between

16   two equally unpleasant alternatives." *Moore v. Czerniak*, 574 F.3d 1092, 1161 (9th Cir.

17   2009) (Callahan, J. dissenting). Plaintiffs must either 1) defend the Court's prior

18   ruling–which, as set forth below, requires granting summary judgment to Defendants–or 2)

19   concede that reconsideration should be granted–which would require granting summary

20   judgment to Defendants. Plaintiffs opted for the former and the Court agrees that

21   reconsideration is not appropriate.

22   Local Rule of Civil Procedure 7.2 requires a motion for reconsideration contain "a

23   showing of manifest error or a showing of new facts or legal authority." The motion must

24   also be filed no later than ten days after the filing of the order at issue. Defendants make no

25

26   _____

   [3] According to the Signal Plan, 7.1(c), the Plan Administrator "shall have all the
27   necessary power and authority . . . [t]o adopt any rules for the administration, interpretation
   and application of the Plan." Also, 7.1(a) grants the Plan Administrator the power "[t]o
28   determine questions of eligibility" and "[t]o interpret the Plan."

serious effort to meet these requirements.  Accordingly, the request for reconsideration of the Court's prior ruling will be denied.  The Court will continue to interpret the offset referenced in 4.2(e) as applying only to benefits calculated under 4.2(b).

### B. Plaintiffs' Non-Merits Based Argument Are Not Convincing

Because reconsideration will not be granted, the issue is whether Defendants are entitled to summary judgment based on the Court's interpretation of the Signal Plan. Plaintiffs present a number of arguments meant to prevent a resolution of this issue on its merits.  The arguments are not convincing.

### 1. Defendants Have Not Admitted Plaintiffs Are Entitled To 4.2(c) Benefits *Without* An Offset

Plaintiffs claim "Defendants have admitted that Plaintiffs are entitled" to benefits calculated under 4.2(c).  (Doc. 524 at 5).  Thus, Plaintiffs believe that Defendants should be prevented from arguing that the Signal Plan's language does not grant these benefits. Plaintiffs are correct that Defendants have conceded their entitlement to 4.2(c) benefits. This concession, however, does not resolve the current controversy.

All the statements cited by Plaintiffs were in the context of Defendants' claim that Plaintiffs were entitled to 4.2(c) benefits *with an offset*.[4]  Plaintiffs do not cite any instance

_____

[4] The summary plan description ("SPD") for the Signal Plan states that Plaintiffs are entitled to 4.2(c) benefits with an offset.  Defendants readily concede that regardless of the Signal Plan's language, the SPD requires payment of such benefits.  *See Bergt v. Ret. Plan for Pilots Employed by MarkAir*, 293 F.3d 1139, 1145 (9th Cir. 2002) (requiring enforcement of more generous language in plan or summary plan description).  Thus, there is no scenario where Plaintiffs will be entitled to less than 4.2(c) benefits with an offset.

1   where Defendants admitted Plaintiffs were entitled to 4.2(c) benefits *without* an offset.[5]

2   Thus, there is no admission for the Court to enforce.

3       **2.    Defendants' Argument Is Not An Affirmative Defense Or A**

4       **Counterclaim**

5       Plaintiffs claim that Defendants' argument regarding plan interpretation is an "unplead

6   affirmative defense" that the Court should deem waived. (Doc. 524 at 7). Even if the Court

7   were to conclude that Defendants' current argument qualifies as an affirmative defense–a

8   dubious conclusion in these circumstances–this would not prevent the current motion for

9   summary judgment. "[A]bsent prejudice to the plaintiff an affirmative defense may be plead

10  for the first time in a motion for summary judgment." *Ledo Fin. Corp. v. Summers*, 122 F.3d

11  825, 827 (9th Cir. 1997). Plaintiffs point to "no tangible way in which [they were]

12  prejudiced" by the late assertion of an alleged affirmative defense. *Id.* Defendants'

13  argument does not require any additional discovery nor will the argument require Plaintiffs

14  "incur substantial additional litigation expenses." *Owens v. Kaiser Foundation Health Plan,*

15  *Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Having failed to establish they will suffer prejudice,

16  Defendants are permitted to present the argument in their motion for summary judgment even

17  if that argument is an affirmative defense.[6]

18      Plaintiffs also claim that Defendants' argument is a prohibited counterclaim.

19  Defendants are not seeking any recovery from Plaintiffs. Accordingly, Defendants'

20  argument is, at the most basic level, not a counterclaim. *See Fed. R. Civ. P.* 13 (defining

21  counterclaim as "any claim that–at the time of its service–the pleader has against an opposing

22

23      [5]  Plaintiffs claimed during oral argument that Defendants admitted that 4.2(c)

24  establishes a "floor." The statements were made when Defendants believed 4.2(e) referred
    to all benefits, *i.e.* that 4.2(e)'s reference to 4.2(b) permitted a 4.2(c) benefit. Given the

25  Court's finding that 4.2(e) *does not* refer to all benefits, the fundamental premise of
    Defendants' statement was incorrect. Thus, the statement does not qualify as an admission

26  that Plaintiffs are entitled to 4.2(c) benefits.

27      [6] Plaintiffs may suffer prejudice in the form of the alleged affirmative defense having

28  merit, but this is not the type of prejudice at issue.

1   party"); *Black's Law Dictionary* 353 ("counterclaim, n.  A claim for relief asserted against

2   an opposing party after an original claim has been made.").

3               **3.  Defendants Have Not Waived Their Argument By Failing To Assert It**

4               **In The Administrative Proceedings**

5               According to Plaintiffs, Defendants should be "barred from arguing their defense

6   because it was never advanced by the Plan Administrator when it denied Plaintiff's

7   administrative claim and appeal."  (Doc. 524 at 11).  Defendants did not respond to this

8   argument but the Court's decision to retain *de novo* review of the benefit claim resolves the

9   issue.

10              It is undisputed that Plaintiffs, as required, made an administrative claim asserting

11  they are entitled to 4.2(c) benefits without an offset.[7]  In denying that claim, Defendants

12  relied on the plan interpretation rejected by the Court.  That is, the administrative claim was

13  denied based on the belief that the offset authorized by 4.2(e) applied to 4.2(c) benefits.  The

14  rejection of Plaintiffs' administrative claim did not go on to point out that under Plaintiffs'

15  interpretation of the Signal Plan, Plaintiffs would not be entitled to 4.2(c) benefits at all.

16              The Court is not aware of any Ninth Circuit authority holding that when a court is

17  reviewing a plan administrator's actions under the *de novo* standard, the plan administrator

18  is limited to the arguments presented during the administrative proceeding.[8]  When a court

19  is reviewing a decision for an abuse of discretion, it is conceivable that an administrator will

20

21              [7] "[A]n ERISA plaintiff whose claim is governed by the contractual terms of the
22  benefit plan . . . must first exhaust the administrative dispute-resolution mechanisms of the
    benefit plan's claims procedures." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 724 (9th Cir.
23  2000).

24              [8]  In the related context, the Ninth Circuit has held that individuals seeking benefits
25  need not present every basis upon which they seek benefits during the administrative
    proceeding stage. *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620 (9th
26  Cir. 2008).  The rationale of that case seems to hint that plan administrators need not present
    every basis for rejecting a claim for benefits.  *See id.* at 632 (observing "ERISA and its
27  implementing regulations create an inquisitorial, rather than an adversarial process" which
28  weighs against a requirement that every argument be presented).

1    be limited to the rationales advanced in the administrative proceeding.  *See Flinders v.*

2    *Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir.

3    2007) *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008)

4    (holding court "may only consider the evidence and arguments that appear in the

5    administrative record").  But it seems nonsensical to argue that a court, when conducting a

6    *de novo* review of the issues, is limited to the rationales advanced by the plan administrator.

7    "De novo review means that the reviewing court do[es] not defer to the lower court's ruling

8    but freely consider[s] the matter anew, *as if no decision had been rendered below*."  *Dawson*

9    *v. Marshall*, 561 F.3d 930, 933 (9th Cir. 2009) (quoting *United States v. Silverman*, 861 F.2d

10   571, 576 (9th Cir. 1988)) (emphasis added).[9]  Thus, having adopted the *de novo* standard of

11   review, the rationales set forth in the administrative proceeding are irrelevant for present

12   purposes.  Defendants are free to raise an argument not presented in the administrative

13   proceeding.

14          **C.  Merits of Defendants' Argument**

15          There being no obstacle to consideration of Defendants' argument on the merits, it

16   must be determined whether the Court's construction of the Signal Plan's language requires

17   summary judgment in Defendants' favor.  It does.

18          Plaintiffs characterize 4.2 as setting out a "roadmap" for the calculation of benefits.

19   (10/7/09 Oral Argument).  According to Plaintiffs, 4.2(b) sets forth the "basic formula, which

20   is modified, adjusted, augmented in certain cases, and reduced in certain cases."  Thus, a

21   participant begins with the benefit provided by 4.2(b).  Next, the participant goes to 4.2(c)

22   to see the "minimum benefit" that subsection provides.  Eventually the participant reaches

23   4.2(e).  It is the interpretation and application of 4.2(e) at issue.

24

25

26          [9] *See also Lake v. Metro. Life Ins. Co.*, 73 F.3d 1372, 1377 (6th Cir. 1996) (quoting

27   *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989)) ("When applying the de
     novo standard of review, a court must interpret the terms of the plan 'without deferring to
28   either party's interpretation.'").

Section 4.2(e) states the Normal Retirement Benefit of a participant who chose not to transfer his or her SBA "shall be . . . the Normal Retirement Benefit provided under subparagraph (b) . . . offset by the value of the [SBA]." The Court's prior summary judgment order interpreted this language as allowing an offset only to the benefits identified in 4.2(b). The reasoning was relatively straightforward: the offset provision refers only to "subsection (b)," meaning a participant's benefit calculated under any other subsection was not subject to the offset. Thus, by implication, the offset did not apply to benefits payable under 4.2(c). Plaintiffs seek to preserve this interpretation, but also wish for an interpretation allowing them to receive 4.2(c) benefits.

Plaintiffs argue that 4.2(e) requires calculation of the "normal retirement benefit adjusted by the offset" but also "requires you to continue on the journey" through the remaining subsections. (Oral Argument). Thus, Plaintiffs believe that upon reaching 4.2(e), a participant must refer back to 4.2(b) and then take an offset from that amount. After taking the offset, the participant must move on to 4.2(c). Because the benefit under 4.2(c) would provide a bigger benefit, that is the benefit the participant would receive. The Signal Plan could have been drafted in this manner but it was not.

The plain language of 4.2(e) requires two steps: first, determine the "Normal Retirement Benefit provided under subparagraph (b)"; second, apply the offset to that benefit. The Court previously ruled that the first step referred *only* to 4.2(b). Thus, under the terms of the Court's prior ruling, 4.2(e) *does not* refer to benefits under 4.2(c). Plaintiffs' current argument, while claiming otherwise, actually seeks a reversal of that ruling.

Plaintiffs claim that 4.2(e)'s reference to "subparagraph (b)" is a reference to "subparagraph (b) as modified by other subsections." That is the argument advanced by Defendants and rejected by the Court in the prior ruling. Defendants have consistently argued that 4.2(e)'s reference to the Normal Retirement Benefit of 4.2(b) incorporates the other sections as well. This is based on Defendants' belief that 4.2(e)'s reference to 4.2(b) means 4.2(b) *as modified by other subsections*. Plaintiffs now state that "[u]nder the unambiguous terms of the Plan, [4.2(b)] is expressly subject to Subsections (c) through (e)."

(Doc. 524 at 16). Thus, Plaintiffs concede that for purposes of calculating their benefits, the reference in 4.2(e) to the "Normal Retirement Benefit provided under subparagraph (b)" must mean "the benefit under 4.2(b), as modified by the other subsections." (*See* Doc. 524 at 17 "[U]nder the Basic Formula of § 4.2(b), both §§ 4.2(c) and 4.2(e) apply and nothing in § 4.2(e) purports to modify or eliminate application of subsection (c)."). This construction would allow Plaintiffs to receive benefits under 4.2(c). But this construction would also require the offset be applied to those benefits.

Plaintiffs have not set forth a *textual* basis for their argument that 4.2(e) refers solely to 4.2(b) for purposes of determining the propriety of an offset but that 4.2(e) refers to 4.2(b) and all other subsections for purposes of determining a participant's benefit. The reference in 4.2(e) to 4.2(b) must either be to 4.2(b) alone–the interpretation adopted by the Court pursuant to Plaintiffs' request–or to 4.2(b) as modified by other sections. Under either construction, Plaintiffs are not entitled to benefits under 4.2(c) without an offset.[10]

[10] Plaintiffs make three additional arguments that are worthy of comment. First, Plaintiffs claim that 4.2(e) is only an "adjustment" to the Normal Retirement Benefit. Presumably Plaintiffs mean that 4.2(e) must be read as aimed solely at "adjusting" the Normal Retirement Benefit contained elsewhere in the Signal Plan and that the "adjustment" cannot consist of redefining the Normal Retirement Benefit. Plaintiffs do not, however, identify any basis for the Court to conclude that the "adjustment" performed by 4.2(e) is improper; 4.2(e) "adjusts" the Normal Retirement Benefit of 4.2(b), as modified by 4.2(c), to the Normal Retirement Benefit of 4.2(b), as not modified by 4.2(c). Second, Plaintiffs assert that the construction argued by Defendants would "nullify § 4.2(h)" because 4.2(h) "expressly modifies § 4.2(c)(i) and (c)(ii)." (Doc. 524 at 18). It appears Plaintiffs have misread 4.2(h). That section makes no effort to "modify" 4.2(c). Instead, it merely references the companies identified in 4.2(c) and requires that an employee who transferred between companies have his benefits calculated "as though the Employee had, at all times, been employed" by the company to which he transferred. Plaintiffs attempted to clarify this point during oral argument, but it remains inaccurate to state that 4.2(h) is "nullified" by the interpretation argued by Defendants. And third, Plaintiffs claim that "at best there's an ambiguity" in how to interpret 4.2(e). As found by the Court in its prior order, 4.2(e) is not ambiguous. Section 4.2(e)'s reference to 4.2(b) is straightforward and easy to apply, even though it leads to a conclusion Plaintiffs wish to avoid. The alleged ambiguity is the result of Plaintiffs' own success in convincing the Court to adopt their arguments. Plaintiffs cannot argue that the language is straightforward to avoid application of the offset but then that the language is ambiguous to preserve their entitlement to more benefits.

1    Accordingly,

2    **IT IS ORDERED** the Motion for Summary Judgment (Doc. 510) is **GRANTED**.

3

4    DATED this 9th day of October, 2009.

5

6

7    _____

8    Roslyn O. Silver
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28