OSBORN
MALEDON

A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2793

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone      602.640.9000
Facsimile      602.640.9050

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David B. Rosenbaum, Atty. No. 009819
Dawn L. Dauphine, Atty. No. 010833
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, AZ 85012-2794
Telephone: (602) 640-9000
drosenbaum@omlaw.com
ddauphine@omlaw.com

Amy Covert, *Pro Hac Vice*
PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, NJ 07102
Telephone: (973) 274-3258
acovert@proskauer.com

Michael L. Banks, *Pro Hac Vice*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
mbanks@morganlewis.com

Christopher Landau, P.C., *Pro Hac Vice*
Craig S. Primis, P.C., *Pro Hac Vice*
Abigail Diaz-Pedrosa, *Pro Hac Vice*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Telephone: (202) 879-5000
clandau@kirkland.com
cprimis@kirkland.com
adiaz-pedrosa@kirkland.com

Howard Shapiro, *Pro Hac Vice*
Robert Rachal, *Pro Hac Vice*
PROSKAUER ROSE LLP
909 Poydras Street, Suite 1100
New Orleans, LA 70112-4017
Telephone: (504) 310-4088
howshapiro@proskauer.com
rrachal@proskauer.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Barbara Allen, Richard Dippold,
Melvin Jones, Donald McCarty,
Richard Scates and Walter G. West,
individually and on behalf of all others
similarly situated,

Plaintiffs,

vs.

Honeywell Retirement Earnings Plan,
Honeywell Secured Benefit Plan,
Plan Administrator of Honeywell
Retirement Earnings Plan, and Plan
Administrator of Honeywell Secured
Benefit Plan,

Defendants.

No. CV04-0424 PHX ROS

**DEFENDANTS' RESPONSE TO
PLAINTIFFS' SEPARATE
STATEMENT OF FACTS**

**- AND -**

**DEFENDANTS' STATEMENT OF
ADDITIONAL FACTS PRECLUDING
JUDGMENT FOR PLAINTIFFS**

Pursuant to LRCiv 56.1(b), Defendants set forth the following Response to Plaintiffs' Separate Statement of Facts in Support of Plaintiffs' Motion for Summary Judgment. *See* Doc. 679, 681, 683.

This Response is divided into three sections: 1) Defendants' responses to each of Plaintiffs' statement of facts ("PSOF"); (2) Defendants' statement of additional facts precluding judgment for Plaintiffs ("DSAF"); and (3) Defendants' arguments supporting their requests to strike certain portions of Plaintiffs' submissions pursuant to LRCiv. 7.2(m)(2).

## I.     Defendants' Responses To PSOF ("DR-PSOF")

**PSOF 1 RESPONSE:** Paragraph 1 is disputed in part. That the Garrett Corporation Severance Plan was restated effective January 1, 1976 is undisputed. That as of December 31, 1983 the Garrett Severance Plan was "intended to be a defined contribution plan" is disputed insofar as the Internal Revenue Service determined that the Garrett Severance Plan *was* a defined contribution plan, (*see, e.g.*, DSOF ¶ 3),[1] which Mr. Covert's deposition testimony, as cited by Plaintiffs, confirms.

**PSOF 2 RESPONSE:** Contrary to LRCiv 56.1(a), Plaintiffs assert multiple facts that purport to be material within paragraph 2. Defendants respond to each purported "material fact" in turn.

Plaintiffs' assertions regarding Company contributions to the Garrett Severance Plan are disputed in part. That the "Company," (*see* Doc. 16, Ex. B, attached hereto at Tab 69 ("Garrett Severance Plan"), at § 1.3 at HW0000226)[2] would contribute to the Garrett Severance Plan "as of each Benefit Accrual Date [June 30 and December 31 of each calendar year] beginning with June 30, 1960, an amount equal to the sum of the

---

[1] Citations to "DSOF" are citations to the numbered paragraph of Defendants' Statement Of Facts In Support Of Defendants' Motion For Summary Judgment On All Remaining Claims. *See* Doc. 677.

[2] Pursuant to LRCiv 7.1(d), Defendants are not filing copies of documents that have previously been filed with the Court; however, Defendants will provide hard copies of those materials in the courtesy copies they are submitting to the Court and to Plaintiffs' counsel.

required Company contributions with respect to Participants included in the Plan on such Benefit Accrual Date" is undisputed. (*Id.* at HW0000225; § 3.2 at HW0000243.) The Garrett Severance Plan provided that the amount of that contribution was to be "an amount equal to 2% of the Compensation received by the Participant during the six-month period ending on the Benefit Accrual Date." (*Id.* at § 3.2 at HW0000242.) Interest on the "Account of each Participant included in the Plan on each Benefit Accrual Date" was set to equal "1.75% (or such other rate as may be determined by the Severance Plan Committee from time to time) of the lowest balance in such account during the six-month period ending on the Benefit Accrual Date on which the interest credit is made." (*Id.* at § 4.3 at HW0000247.)

Defendants object and move to strike Plaintiffs' assertions regarding the allocation of "income, gains and losses, or forfeitures" to Participants' accounts. These assertions should be stricken pursuant to LRCiv 7.2(m) and 56.1(a), as they do not refer "to a specific admissible portion of the record where the fact finds support." Furthermore, because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 2 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. Whether allocations were made to the Garrett Severance Plan prior to the merger of the Garrett-Signal Plans is irrelevant to the resolution of the Two Remaining Claims, and is therefore not an issue of material fact for consideration on summary judgment. (*See, e.g.*, Fed. R. Civ. P. 56, LRCiv 56, Fed. R. Evid. 402.)  It is undisputed that, in early 1984, there was an allocation to participants in the Garrett Severance Plan, who were actively employed on December 31, 1983, of excess assets remaining in the Garrett Severance Plan as of December 31, 1983. (*See, e.g.*, May 22, 2010 Deposition Transcript of James McLeod,

1   attached hereto at Tab 93 ("McLeod Dep."),[3] at 54:4-20; McLeod Dep. Ex. 11, attached

2   hereto at Tab 85, at HW0041307.)

3       **PSOF 3 RESPONSE:** Defendants object and move to strike paragraph 3

4   pursuant to LRCiv 7.2(m) and 56.1(a), as it does not refer "to a specific admissible

5   portion of the record where the fact finds support."  Furthermore, because the Two

6   Remaining Claims are limited to and require proof that the amendment of the Signal

7   Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see*

8   DSAF ¶ 65), Defendants object and move to strike paragraph 3 pursuant to LRCiv

9   7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of

10  the Two Remaining Claims.  The previous existence and timing of any excess allocation

11  is irrelevant to the resolution of the Two Remaining Claims, and is therefore not an issue

12  of material fact for consideration on summary judgment.  *See, e.g.*, F.R.C.P. 56, LRCiv

13  56, F.R.E. 402.

14      To the extent the Court does not strike paragraph 3, it is disputed.  The exhibit

15  Plaintiffs generally cite to is the January 1984 brochure distributed to former Garrett

16  employees which, in part, simply explains that excess assets were allocated to their new

17  SBA accounts, which in turn were invested at an interest rate over 12%:

18      On January 1, 1984, your Severance Plan Account Balance, which now
        includes your share of the excess assets of the Severance Plan Trust, was
19      transferred to a new Garrett Secured Benefit Account in the Signal
        Companies, Inc. Savings & Stock Purchase Plan.  This action terminated
20      the Garrett Severance Plan.

21      This new account has a guaranteed annual interest rate in excess of 12%
        for the next 25 years, insured by Prudential Insurance Company of
22      America. . . .

23  (May 26, 2010 Deposition Transcript of Craig Chapman, attached to PSOF at Exh. F

24  ("Chapman Dep., PSOF Exh. F"), at Exh. 7, at HW0004355.)

25      **PSOF 4 RESPONSE:** Paragraph 4 is disputed in part.  That "Amendment IV

26  provided a 'final benefit accrual date' of December 31, 1983" is disputed.  Amendment

27  _____

28  [3] Where deposition testimony is being cited solely to authenticate a subsequently-cited
    exhibit, that testimony will only be referenced the first time the exhibit is cited.

4

IV provides that "[t]he December 31, 1983 Benefit Accrual Date shall be the last date on which Company contributions are credited to the Accounts of Participants under Section 4.2 of the Plan …." (Doc. 16, Ex. D, attached hereto at Tab 70 ("Garrett Severance Plan, Amendment IV"), at HW0000307.) Paragraph 4 is also disputed to the extent that it fails to explain that the surplus assets remaining in the Severance Plan would be allocated "to participants in the Plan on December 31, 1983, and entitled to an allocation pursuant to Section 4.3 on December 31, 1983." (*Id.* at HW0000307-308). Finally, the correct page citations to Doc. 16, Ex. D are HW0000307-308. (*Id.*)

**PSOF 5 RESPONSE:** Paragraph 5 is undisputed.

**PSOF 6 RESPONSE:** Paragraph 6 is undisputed.

**PSOF 7 RESPONSE:** Paragraph 7 is disputed in part. Plaintiffs have corrected some of the inaccuracies in the quotation they originally provided in paragraph 7, *see* Doc. 694, but some remain. For the sake of accuracy, the Garrett Plan § 4.1(b)(2) and (b)(3) provide (with the corrected language emphasized in italics):

> (b)  <u>Objective Retirement Income.</u>  A Participant's Objective Retirement Income shall be the greatest of his Career Average Benefits, Final Average Benefits, or Minimum Benefits, as those terms are defined immediately below:
>
> ***
>
> 2)  <u>Final Average Benefits</u>.  A Participant's Final Average Benefits shall be an annual income (payable in monthly installments of 1/12th of the total) equal to the Participants total Credited Service…*multiplied by the sum of:*
>
> > i.  1% of the Participant's Final Average Compensation *or* the average Social Security Maximum Amount for the five (5) consecutive complete calendar years immediately preceding the Participant's year of retirement, or, if earlier, the five (5) consecutive calendar years immediately preceding the year in which the Participant attains age 65, whichever is less, and

ii. *1-1/2%* of the excess of the Participant's Final Average Compensation over the average Social Security Maximum Amount for the five (5) consecutive calendar years immediately preceding the Participant's year of retirement, or, if earlier, the five (5) consecutive calendar years immediately preceding the year in which the Participant attains age 65.

\*\*\*

3) *Minimum* Benefits. …With regard to Participants retiring, terminating employment, or deemed to have retired on or after December 1, 1981, a Participant's minimum benefits shall be an annual income (payable in monthly  installments of 1/12th of the total) equal to $234 multiplied by the Participant's     Credited Service…

(Doc. 16, Ex. A, attached hereto at Tab 68 ("Garrett Retirement Plan"), at HW0000032-HW0000042)

**PSOF 8 RESPONSE:** Paragraph 8 is undisputed.

**PSOF 9  RESPONSE:** Paragraph 9 is disputed in part.   That the Garrett Retirement Plan provides that "[a] Participant's Potential Retirement Income from the [Garrett] Severance Plan shall be calculated pursuant to the tables set forth in Exhibit B (and any necessary interpolations or extrapolations from these tables)" is undisputed. (Garrett Retirement Plan, attached hereto at Tab 68, at HW0000038-39.)  That Exhibit B provided  for "Annual Interest Factors at 3.53% (1.75% each 6 months)" is also undisputed.  (*Id.* at HW0000147-148; *see also* DSOF ¶ 9.)

That "the offset" could be determined prior to the participant's date of termination is disputed.   As Plaintiffs' experts have agreed, under the express terms of the Garrett Retirement Plan, a participant's SBA offset could not be calculated until the date of his termination:

A Participant's Potential Retirement Income from the [Garrett] Severance Plan . . . shall be equal to the annual retirement income ***as of the Participant's Normal Retirement Date***, payable in the form of a single life

6

annuity payable in monthly installments which can be funded from the sum which could have been transferred to the Plan, pursuant to Article 3.2, from the Severance Plan ***at the Participant's retirement date or earlier date of termination of service, whichever is applicable***[.]"

(Garrett Retirement Plan, attached hereto at Tab 68, at HW0000038-39 (emphasis added); *see also* DSOF ¶ 11.)

**PSOF 10 RESPONSE:** Contrary to LRCiv 56.1(a), Plaintiffs assert multiple facts that purport to be material within this paragraph 10. Defendants respond to each purported "material fact" in turn.

That "Credited Interest," under the Garrett Retirement Plan, was defined as "interest computed at a rate of 3.5% per annum, compounded annually, or at such other rate as may be determined by the Committee from time to time" is not disputed.

Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) Plaintiffs' assertion that no other interest rate was ever determined by the Committee, as they do not refer "to a specific admissible portion of the record where the fact finds support." Furthermore, because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike the unsupported assertion in paragraph 10 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See* Fed. R. Civ. P. 56; LRCiv 56; Fed. R. Evid. 402.)

**PSOF 11 RESPONSE:** Contrary to LRCiv 56.1(a), paragraph 11 contains multiple "facts" which purport to be material, one of which is repeated in paragraph 12. Despite this failure, paragraph 11 is undisputed except to the extent it fails to acknowledge that the Garrett Retirement Plan also required the application of a "conversion factor" to calculate a participant's "Potential Retirement Income." (*See* DSOF ¶ 9.) Under the terms of Exhibit B, that factor was $153.31, which was the same conversion factor that applied under the Signal Retirement Plan. (*See id.*; *Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1166 (D. Ariz. 2005)).)

1    **PSOF 12 RESPONSE:** Paragraph 12 is undisputed.

2    **PSOF 13 RESPONSE:** Because the Two Remaining Claims are limited to and

3    require proof that the amendment of the Signal Retirement Plan violated ERISA §

4    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

5    move to strike paragraph 13 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

6    a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also*

7    Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Plaintiffs have settled and released any and all

8    claims relating to early retirement benefits under the Garrett, Signal, and/or successor

9    Plans. (*See* DSAF ¶¶ 59-70, 83-87; *see also* Defendants' Motion To Enforce The Partial

10   Settlement Agreement ("PSA Motion") at Section III.C.) Not only is an early retirement

11   benefits claim settled and released, but the Signal Retirement Plan provided for

12   unreduced early retirement benefits beginning at age 60—a benefits enhancement that

13   forecloses the possibility of a cutback in accrued benefits with respect to these benefits

14   terms. (*See* DSOF ¶ 65.)

15       Subject to and without waiving Defendants' objection, to the extent the Court

16   does not strike paragraph 13, it is undisputed.

17       **PSOF 14 RESPONSE:** Because the Two Remaining Claims are limited to and

18   require proof that the amendment of the Signal Retirement Plan violated ERISA §

19   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

20   move to strike paragraph 14 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

21   a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also*

22   Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Plaintiffs have settled and released any and all

23   claims relating to early retirement benefits under the Garrett, Signal, and/or successor

24   Plans. (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.) Not only is

25   an early retirement benefits claim settled and released, but the Signal Retirement Plan's

26   savings clause protected these early retirement benefits from being cut back. (*See* DSOF

27   ¶¶ 51-58; *see also* Defendants' Opposition to Plaintiffs' Motion For Summary Judgment,

28   Doc. 678 ("Opp. Brief") at Section II.A.1(iv).) Mr. Denlinger applied the early

1   commencement factors in effect under the Garrett Retirement Plan as of 12/31/83 in

2   calculating participants' Garrett accrued benefit.  (July 14, 2010 Deposition Transcript of

3   Kurt Denlinger, attached hereto at Tab 99 ("Jul. 14 2010 Denlinger Dep."), at 128:8-

4   131:23.)  That protection and practice foreclose the possibility of a cutback in accrued

5   benefits with respect to these benefits terms.

6        Subject to and without waiving Defendants' objection, to the extent the Court

7   does not strike paragraph 14, it is undisputed.

8        **PSOF 15 RESPONSE:** In response to paragraph 15, Defendants incorporate by

9   reference their response to paragraph 14.

10       **PSOF 16 RESPONSE:** Because the Two Remaining Claims are limited to and

11  require proof that the amendment of the Signal Retirement Plan violated ERISA §

12  204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

13  move to strike paragraph 16 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

14  a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

15  Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Plaintiffs have settled and released any and all

16  claims relating to early retirement benefits under the Garrett, Signal, and/or successor

17  Plans.  (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.)  Not only is

18  any early retirement benefits claim settled and released, but the Signal Retirement Plan's

19  savings clause protected these early retirement benefits from being cut back.  (*See* DSOF

20  ¶¶ 51-58; *see also* Opp. Brief at Section II.A.1(iv).)  Mr. Denlinger applied the early

21  commencement factors in effect under the Garrett Retirement Plan as of 12/31/83 in

22  calculating participants' Garrett accrued benefit.  (Jul. 14 2010 Denlinger Dep., attached

23  hereto at Tab 99, at 128:8-131:23.)  That protection and practice foreclose the possibility

24  of a cutback in accrued benefits with respect to these benefits terms.

25       Defendants also object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a)

26  paragraph 16 on the ground that Plaintiffs do not cite to a "specific admissible portion of

27  the record where the [purported] fact finds support."  The lone "Second Supplement to

28  Declaration and Rebuttal Report of James E. Holland" Plaintiffs cite is inadmissible

because it (a) was improperly submitted long after expert discovery closed; (b) relies on data that was available to Mr. Holland well before the extended July 23, 2010 deadline for Plaintiffs' rebuttal expert reports; (c) does not contain rebuttal testimony; (d) offers opinions on matters that are settled and barred; and (e) was submitted unsigned and without the supporting calculations.  (*See* DSAF ¶¶ 30-52; *see also* Opp. Br. at Section II.C.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 16, Defendants incorporate herein by reference their response to paragraph 14.

**PSOF 17 RESPONSE:** Paragraph 17 is disputed.  The benefit formula under the Garrett Retirement Plan provided for a monthly retirement annuity equal to one-twelfth of: (a) 1.0% of Final Average Compensation up to the Social Security Integration Level, plus (b) 1.5% of Final Average Compensation above the Social Security Integration Level, times (c) years of Credited Service.  (*See* DSOF ¶ 7.)  By using different accrual rates that were then applied to "final average compensation" below and above the "Social Security Integration Level," the Garrett Retirement Plan reduced the gross pension benefit it provided for to reflect Social Security income.  (*See* DSOF ¶ 12.)  In this regard, the Garrett Retirement Plan's benefit formula was "identical" to the minimum benefit formula provided for under the Signal Retirement Plan.  (*See* DSOF ¶ 33.)  The Garrett Retirement Plan's integration with Social Security, expressed as a "step-up," was also mathematically equivalent to the Social Security offset provided for under the Signal Retirement Plan.  (*See* DSOF ¶¶ 16-18, 29-30.)

**PSOF 18 RESPONSE:** Paragraph 18 is undisputed to the extent that Plaintiffs have correctly presented Q&A 16.

Paragraph 18 is disputed to the extent it purports to represent that the Garrett Retirement Plan's benefit formulas did not otherwise integrate with Social Security. Defendants incorporate herein by reference their response to paragraph 17.  In addition, the "booklet" that Plaintiffs cite makes clear that it is "intended to provide [participants]

with a convenient summary of your Retirement Plan.  Although it describes the more important features of this plan, if there is any conflict between this wording and the wording in the legal plan document, the legal plan document will govern."  (Doc. 679-2, attached to PSOF at Exh. D ("PSOF Exh. D"), at 4.)  The "booklet" Plaintiffs cite also explains that "[h]ow much" a participant will get upon retirement "will depend upon several variables," including "[w]hat is the AVERAGE MONTHLY SOCIAL SECURITY TAX BASE at the time of your termination[.]"  (*Id*. at 7.)  The "booklet" goes on to provide a "Worksheet For Calculating MAXIMUM ACCRUED RETIREMENT BENEFIT," which includes as step 3 the subtraction of "AVERAGE MONTHLY SOCIAL SECURITY TAX BASE (Divide total by 60 months)" from "Average monthly wages (Divide total by 60 months)."  (*Id.* at 18.)

**PSOF 19 RESPONSE:** Paragraph 19 is disputed in part.  That the Garrett Retirement Plan was amended to provide for its merger into the Signal Retirement Plan by an amendment entitled "Amendment IX," effective December 31, 1983, is undisputed.  (*See* DSOF ¶¶ 22-23.)  Paragraph 19 is disputed to the extent that it indicates that the effective date of the amended and restated Signal Retirement Plan was December 31, 1983.  The Signal Retirement Plan was amended and restated effective January 1, 1984 to (a) admit former participants in the Garrett Retirement Plan who continued in active employment as new participants in the Signal Retirement Pan and (b) grant them past service credit for their years of participation in the Garrett Retirement Plan.  (*See* DSOF ¶¶ 25-26; *see also* Opp. Brief at Section II.A.1(i).)

**PSOF 20 RESPONSE:** Paragraph 20 is undisputed.

**PSOF 21 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 21 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  The 1976 Signal Plan has never been at issue in

1  this case, and Plaintiffs have settled and released any claim relating to it.  (*See* DSAF ¶¶
2  59-70, 76-78; *see also* PSA Motion at Section III.A.)  Furthermore, the 1976 Signal Plan
3  has never previously been authenticated or subject to discovery, as evidenced by the fact
4  it has been submitted on summary judgment through an affidavit from Plaintiffs'
5  counsel.  (*See* Doc. 686, Ex. T, Ex. 2.)  The Signal Retirement Plan that admitted former
6  participants of the Garrett Retirement Plan was the amended and restated Signal
7  Retirement Plan, effective January 1, 1984.  (*See* DSOF ¶¶ 22-23, 25-26; DR-PSOF ¶
8  26; *see also* Opp. Brief at Sections II.A.1(i) and II.B.3.)

9       Subject to and without waiving Defendants' objection, to the extent the Court
10  does not strike paragraph 21, it is disputed in part.  It is undisputed that the Social
11  Security *offset formulas* in the "February 1985 Signal Plan," which was effective
12  January 1, 1984, and the May 1984 SPD are identical to the Social Security *offset
13  formula* in the 1976 Signal Plan.  Paragraph 21 is disputed to the extent that the *benefit
14  formulas* in the "February 1985 Signal Plan," effective January 1, 1984 and the May
15  1984 SPD were *not* identical to the *Social Security benefit formula* in the 1976 Signal
16  Plan.  Both the Signal Retirement Plan effective January 1, 1984 and the May 1984 SPD
17  provided for the same 1% minimum benefit formula (1% of final average compensation
18  times years of credited service).  (*See* DSOF ¶ 31; Hon. Ex. 218, attached to DSOF at
19  Tab 43, at 905-Bielert00173.)

20       Plaintiffs' expert has conceded that said 1% minimum benefit formula was
21  "identical" to the maximum Social Security deduction formula used in the Garrett
22  Retirement Plan.  (*See* DSOF ¶ 33.)  The 1% minimum benefit formula ensured that
23  lower-paid employees would receive the same 1% of compensation without any
24  reduction for Social Security as they had received under the Garrett Retirement Plan.
25  (*See* DSOF ¶ 32.)  The Signal Retirement Plan's Social Security offset formula yielded a
26  smaller reduction for Social Security for higher-paid employees.  (*See* DSOF ¶¶ 34-35.)
27  Furthermore, the Social Security formula contained in the "February 1985 Signal Plan,"
28  effective January 1, 1984 was also subject to the SBA offset.  (*See* DSOF ¶¶ 36-37.)

1    The 1976 Signal Plan's minimum benefit formula, on the other hand, was $5.00
2    times the participant's years of credited service not in excess of 10 years.  (Sept. 21,
3    2010 Declaration of Jennifer Kroll, attached to PSOF at Exh. T ("Sept. 2010 Kroll Decl.,
4    PSOF Exh. T"), at Exh. 2 at HW0025328.)

5    **PSOF 22 RESPONSE:** Because the Two Remaining Claims are limited to and
6    require proof that the amendment of the Signal Retirement Plan violated ERISA §
7    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and
8    move to strike paragraph 22 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth
9    a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*
10   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  The 1976 Signal Plan has never been at issue in
11   this case, and Plaintiffs have settled and released any claim relating to it.  (*See* DSAF ¶¶
12   59-70, 76-78; *see also* PSA Motion at Section III.A.)  Furthermore, the 1976 Signal Plan
13   has never previously been authenticated or subject to discovery, as evidenced by the fact
14   it has been submitted on summary judgment through an affidavit from Plaintiffs'
15   counsel.  (*See* Doc. 686, Ex. T, Ex. 2.)  The Signal Retirement Plan that admitted former
16   participants of the Garrett Retirement Plan was the amended and restated Signal
17   Retirement Plan, effective January 1, 1984.  (*See* DSOF ¶¶ 22-23, 25-26, DR-PSOF ¶
18   26; *see also* Opp. Brief at Sections II.A.1(i) and II.B.3.)

19   Subject to and without waiving Defendants' objection, to the extent the Court
20   does not strike paragraph 22, it is disputed in part.  The 1976 Signal Plan's minimum
21   benefit formula was $5.00 times the participant's credited service not in excess of 10
22   years.  (Sept. 2010 Kroll Decl., PSOF Exh. T, at Exh. 2 at HW0025328.)  The 1976
23   Signal Plan's minimum benefit formula was also amended from time to time.  (*See, e.g.*,
24   Hon. Ex. 606, attached to DSOF at Tab 19 ("Signal Retirement Plan"), at HW0000315.)
25   It is undisputed that paragraph 22 compares the minimum benefits formula of the 1976
26   Signal Plan against the Garrett Plan formula set forth in paragraph 7 of Plaintiffs'
27   Separate Statement of Facts.

28

1    **PSOF 23 RESPONSE:** Because the Two Remaining Claims are limited to and

2    require proof that the amendment of the Signal Retirement Plan violated ERISA §

3    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

4    move to strike paragraph 23 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

5    a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

6    Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  The 1976 Signal Plan has never been at issue in

7    this case, and Plaintiffs have settled and released any claim relating to it.  (*See* DSAF ¶¶

8    59-70, 76-78; *see also* PSA Motion at Section III.A.)  The 1976 Signal Plan has never

9    previously been authenticated or subject to discovery, as evidenced by the fact it has

10   been submitted on summary judgment through an affidavit from Plaintiffs' counsel.

11   (*See* Doc. 686 at Ex. T, Ex. 2.)  The Signal Retirement Plan that admitted former

12   participants of the Garrett Retirement Plan was the amended and restated Signal

13   Retirement Plan, effective January 1, 1984.  (*See* DSOF ¶¶ 22-23, 25-26, DR-PSOF ¶

14   26; *see also* Opp. Brief at Sections II.A.1(i) and II.B.3.)

15          Subject to and without waiving Defendants' objections, paragraph 23 is disputed.

16   The evidence Plaintiffs cite directly contradicts the statement set forth in paragraph 23.

17   (*See* July 2, 2010 Declaration of Lawrence Sher, attached to PSOF at Exh. N ("Sher

18   Decl., PSOF Exh. N"), at ¶ 21 ("This newly-added 1% minimum formula had the

19   (intentional) effect of limiting the Social Security offset in the Signal Plan to at most

20   0.5% of final average compensation per year of service—the same as the maximum

21   offset used in the Garrett Plan[.]").)  Plaintiffs' citation to Mr. Sher's paragraph 21 is a

22   concession, however, that the relevant Signal Retirement Plan at issue in this case is the

23   amended and restated Signal Retirement Plan effective January 1, 1984, as that is the

24   Signal Retirement Plan on which Mr. Sher's expert opinion is based.  (*See, e.g.*, July 2,

25   2010 Declaration of Lawrence Sher, attached to DSOF at Tab 1 ("Sher Decl."), at ¶ 19.)

26   Moreover, Plaintiffs' expert has conceded that lower-paid employees under the Signal

27   Retirement Plan would receive the same 1% of compensation without a reduction for

28   Social Security as they had received under the Garrett Retirement Plan, and that those

1  two formulas were "identical."  (*See* DSOF ¶¶ 32-33.)  Finally, the architect of the

2  amended and restated Signal Retirement Plan effective January 1, 1984 explained that

3  the Signal Retirement Plan's Social Security integration formula was designed to

4  achieve the same result as the Garrett Retirement Plan's Social Security integration

5  provision.  (*See* DSOF ¶ 30.)

6        **PSOF 24 RESPONSE:** Because the Two Remaining Claims are limited to and

7  require proof that the amendment of the Signal Retirement Plan violated ERISA §

8  204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

9  move to strike paragraph 24 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

10  a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

11  Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  The 1976 Signal Plan has never been at issue in

12  this case, and Plaintiffs have settled and released any claim relating to it.  (*See* DSAF ¶¶

13  59-70, 76-78; *see also* PSA Motion at Section III.A.)  The 1976 Signal Plan has never

14  previously been authenticated or subject to discovery, as evidenced by the fact it has

15  been submitted on summary judgment through an affidavit from Plaintiffs' counsel.

16  (*See* Doc. 686 at Ex. T, Ex. 2.)  The Signal Retirement Plan that admitted former

17  participants of the Garrett Retirement Plan was the amended and restated Signal

18  Retirement Plan, effective January 1, 1984.  (*See* DSOF ¶¶ 22-23, 25-26, DR-PSOF ¶

19  26; *see also* Opp. Brief at Sections II.A.1(i) and II.B.3.)

20        Moreover, there is no evidence of record, and Plaintiffs have cited none, that

21  indicates that the Garrett Corporation ever adopted the 1976 Signal Plan in the manner

22  provided by Section 6.7:  "Any Company or other corporation may, with the approval of

23  the Administrator, adopt the Plan…effective as of the first day of any Plan Year by

24  resolution of its own board of directors.  Such corporation shall give written notice of

25  such adoption to the Administrator and to the Trustee by its duly authorized officers."

26  (Sept. 2010 Kroll Decl., PSOF Exh. T, at Exh. 2, at § 6.7 at HW0025348.)

27        Subject to and without waiving Defendants' objection, to the extent the Court

28  does not strike paragraph 24, it is undisputed that Plaintiffs have correctly cited the

definition of "Company" or "Companies" set forth in the 1976 Signal Plan.

**PSOF 25 RESPONSE:** Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) paragraph 25 on numerous grounds:

- Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 25 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See* Fed. R. Civ. P. 56; Fed. R. Evid. 402)  The 1976 Signal Plan has never been at issue in this case, and Plaintiffs have settled and released any claim relating to it. (*See* DSAF ¶¶ 59-70, 76-78; *see also* PSA Motion at Section III.A.)  The 1976 Signal Plan has never previously been authenticated or subject to discovery, as evidenced by the fact it has been submitted on summary judgment through an affidavit from Plaintiffs' counsel. (*See* Doc. 686, Ex. T, Ex. 2.)  The Signal Retirement Plan that admitted former participants of the Garrett Retirement Plan was the amended and restated Signal Retirement Plan, effective January 1, 1984. (*See* DSOF ¶¶ 22-23, 25-26, DR-PSOF ¶ 26; *see also* Opp. Brief at Sections II.A.1(i) and II.B.3.)

- Paragraph 25 further fails to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims because Plaintiffs have settled and released any and all claims relating to early retirement benefits under the Garrett, Signal, and/or successor Plans. (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.); Fed. R. Civ. P. 56; Fed. R. Evid. 402.)

- Paragraph 25 should be stricken for the additional reason that it fails to cite to a "specific admissible portion of the record where the [purported] fact finds support."  The lone "Second Supplement to Declaration and Rebuttal Report of James E. Holland" Plaintiffs cite is inadmissible because it (a) was improperly submitted long after expert discovery closed; (b) relies on data that was available to Mr. Holland well before the extended July 23, 2010 deadline for Plaintiffs' rebuttal expert reports; (c) does not contain rebuttal testimony; (d) offers opinions on matters that are settled and barred; and (e) was submitted unsigned and without the supporting calculations. (*See* DSAF ¶¶ 30-52; *see also* Opp. Br. at Section II.C.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 25, it is disputed in part.  Paragraph 5 of Mr. Holland's purported Second Supplemental Declaration compares the "early retirement reduction factors for participants who terminate employment before age 55" under the "February 1985 Signal Plan" against the "Garrett Plan."  But the Signal Retirement Plan's savings clause protected these early retirement benefits from being cut back. (*See* DSOF ¶¶ 51-58; *see also* Opp. Brief at Section II.A.1(iv).)  And for early retirees who retired between ages 60-65, the Signal Retirement Plan effective January 1, 1984 provided more

16

1    generous early retirement factors.  (*See* DSOF ¶ 65.)  Mr. Denlinger also applied the

2    early commencement factors in effect under the Garrett Retirement Plan as of 12/31/83

3    in calculating participants' Garrett accrued benefit.  (Jul. 14 2010 Denlinger Dep.,

4    attached hereto at Tab 99, at 128:8-131:23.)  That protection, benefit enhancement, and

5    practice foreclose the possibility of a cutback in accrued benefits with respect to these

6    benefits terms.

7        **PSOF 26 RESPONSE:** Because the Two Remaining Claims are limited to and

8    require proof that the amendment of the Signal Retirement Plan violated ERISA §

9    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

10   move to strike paragraph 26 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

11   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

12   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  The 1976 Signal Plan (*i.e.*, "the existing Signal

13   Plan" as of December 5, 1983 that Plaintiffs appear to be referring to in paragraph 26)

14   has never been at issue in this case, and Plaintiffs have settled and released any claim

15   relating to it.  (*See* DSAF ¶¶ 59-70, 76-78; *see also* PSA Motion at Section III.A.)  The

16   1976 Signal Plan has never previously been authenticated or subject to discovery, as

17   evidenced by the fact it has been submitted on summary judgment through an affidavit

18   from Plaintiffs' counsel.  (*See* Doc. 686, Ex. T, Ex. 2.)  The Signal Retirement Plan that

19   admitted former participants of the Garrett Retirement Plan was the amended and

20   restated Signal Retirement Plan, effective January 1, 1984.  (*See* DSOF ¶¶ 22-23, 25-26;

21   *see also* Opp. Brief at Sections II.A.1(i) and II.B.3.)

22       Subject to and without waiving Defendants' objection, to the extent the Court

23   does not strike paragraph 26, it is undisputed that the Board of Directors of the Signal

24   Companies, Inc. held a meeting on December 5, 1983.  It is also undisputed that at this

25   meeting the Signal Board "resolved" to approve the merger of over twenty benefit plans

26   into The Signal Companies, Inc. Retirement Plan effective January 1, 1984.  (Sept. 2010

27   Kroll Decl., PSOF Exh. T, at Exh. 5 at HW0024882.)  That the Board "amended the

28   definition of 'Company' in the existing Signal Plan to include the Plan Sponsors of the

merging plans effective 1/1/84" is disputed.    The Signal Board "[r]esolved" to "***approve***[] the inclusion" of the sponsors of the merging plans, such as Garrett, "within the definition of the term 'Company' in Section 1.12 of the Signal Plan." (*Id*. (emphasis added.))    The Board's resolutions were not amendments.    Instead, the Signal Board instructed the officers of the Corporation to amend the 1976 Signal Plan.    Specifically, the Board provided the following:

> RESOLVED, that the officers of the Corporation [are] authorized to execute such amendments to or restatements of the Signal Plan to facilitate the mergers described in the foregoing resolutions, including amendments to the Signal Plan deemed appropriate to convert it into a company-wide plan covering the participants now covered by the plans being merged[.]

(*Id*.)    The Signal Plan was amended and restated by the officers of the Corporation effective January 1, 1984. (*See* DSOF ¶¶ 25-26.)    Due to the passage of time, to the best of Defendants' knowledge, the amended and restated Signal Retirement Plan was formally executed on February 4, 1985. (*See, e.g.*, DR-PSOF¶¶ 36, 37; DSAF ¶ 27.)

It is also disputed that Defendants never produced a list of the merging plans. Defendants produced a list of the plans that merged into the Signal Plan. (April 28, 2010 Deposition Transcript of William Coffey ("Apr. 28 2010 Coffey Dep."), attached hereto at Tab 88, at 48:5-16; Hon. Ex. 607, attached hereto at Tab 82, at HW0057023.)

**PSOF 27 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 27 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)    Any claims relating to whether the May 1984 SPD was the plan document after the merger were settled and released. (*See* DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 27, paragraph 27 is disputed. The May 1984 SPD was not a

1    governing plan document.  The May 1984 SPD itself made that clear.  (Doc. 16, Ex. H,

2    attached hereto at Tab 73 ("May 1984 SPD"), at HW0000431 ("This material is intended

3    to provide you with a convenient summary of your Retirement Plan by describing the

4    more important features of the Plan.  If there is any conflict between this wording and

5    the wording in the legal Plan Document, the legal Plan Document will govern.").)  Also,

6    the Signal Plan document could be amended only by the Board of Directors.  (*See* Doc.

7    16, Ex. E, attached hereto at Tab 71 ("Signal Retirement Plan"), at § 8.6 at HW0000373-

8    374 (providing that, other than an exception not applicable here, the Signal Retirement

9    Plan could only be "amended or otherwise modified . . . by the Board of Directors[.]");

10   Sept. 2010 Kroll Decl., PSOF Exh. T, Exh. 2, at § 6.6 at HW0025348 ("…the Plan may

11   be wholly or partially amended or otherwise modified, including retroactive amendments

12   to meet governmental requirements, from time to time by the Board of Directors.").)

13   The May 1984 SPD was not a plan amendment by the Board of Directors.

14           The amended and restated Signal Retirement Plan, effective January 1, 1984,

15   admitted former Garrett Retirement Plan participants who continued in active service.

16   (*See* DSOF ¶¶ 25-26.)  Even though the formal plan document was not executed until

17   February 1985, the core plan features were known by December 1983 at the latest, and

18   were communicated to plan administrators beginning at the time.  (DSAF ¶¶ 10-15.)  For

19   example, by January 1984 at the latest, the SBA Offset had already been communicated

20   to plan administrators, and was specifically explained as using a split 3.5%/7.5%

21   projection forward interest rate under the terms of the Signal Retirement Plan effective

22   January 1, 1984.  (*See* DSAF ¶ 13.)  Furthermore, the plan administrators were using a

23   memo prepared by the plan's actuary, Mr. Coffey, in January 1984 as a "uniform" tool

24   when "calculating benefits," including the SBA Offset.  (DSAF ¶ 14.)  The plan was

25   administered consistent with those terms from January 1, 1984 through the February 5,

26   1985 execution date.  (*See* DSAF ¶¶ 16-26.)

27           **PSOF 28 RESPONSE:** Because the Two Remaining Claims are limited to and

28   require proof that the amendment of the Signal Retirement Plan violated ERISA §

204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 28 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  Whether it was distributed in May or August of 1984 is not material to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   To the extent Plaintiffs are using this paragraph to establish that the May 1984 was the plan document, any claims relating to whether the May 1984 SPD was the plan document after the merger were settled and released.  (*See* DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 28, paragraph 28 is undisputed to the extent that the May 1984 SPD was distributed to employees in 1984.  (*See* DSOF ¶ 115.)

**PSOF 29 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 29 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402)  To the extent Plaintiffs are using this paragraph to establish that the May 1984 was the plan document, any claims relating to whether the May 1984 SPD was the plan document after the merger were settled and released.  (*See* DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 29, paragraph 29 is undisputed to the extent that Plaintiffs have provided part of the relevant sentence.  The full relevant citation is: "Q.  When do I become eligible to participate in the [Signal Companies, Inc.] Retirement Plan?  A.  If you were a participant in the Garrett Retirement Plan on December 31, 1983, you automatically began participating in this Plan on January 1, 1984."  (May 1984 SPD, attached hereto at Tab 73, at HW000431.)  "This Plan" refers to The Signal Companies,

1    Inc. Retirement Plan ("Retirement Plan") as amended and restated effective January 1,

2    1984. (*Id.*)

3         **PSOF 30 RESPONSE:** Because the Two Remaining Claims are limited to and

4    require proof that the amendment of the Signal Retirement Plan violated ERISA §

5    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

6    move to strike paragraph 30 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

7    a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also*

8    Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  To the extent Plaintiffs are using this paragraph

9    to establish that the May 1984 was the plan document, any claims relating to whether the

10   May 1984 SPD was the plan document after the merger were settled and released. (*See*

11   DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)

12        Subject to and without waiving Defendants' objections, to the extent the Court

13   does not strike paragraph 30, contrary to LRCiv 56.1(a), Plaintiffs assert multiple facts

14   that purport to be material within paragraph 30.  Defendants respond to each purported

15   "material fact" in turn.

16        That Plaintiffs correctly quote the fourteenth question and answer from the May

17   1984 SPD is not disputed.

18        That the flat dollar minimum formula was increased from $19.50 per year of

19   credited service under the Garrett Retirement Plan to $20.00 per year of credited service

20   under the Signal Retirement Plan is undisputed.

21        That the May 1984 SPD "added back in" the Garrett Plan's minimum benefit

22   formula is disputed.   A 1% minimum benefit formula was added to the Signal

23   Retirement Plan effective January 1, 1984 to achieve the same result as the Garrett

24   Retirement Plan's Social Security integration formula. (*See* DSOF ¶¶ 30-31.) The May

25   1984 SPD simply summarized that feature of the Signal Retirement Plan effective

26   January 1, 1984. (*See* DR-PSOF ¶ 27.)  The May 1984 SPD could not effect an

27   amendment of either the Signal Retirement Plan effective January 1, 1984 or, as

28   Plaintiffs' now try to argue, the 1976 Signal Plan. (Signal Retirement Plan, attached

                                          21

hereto at Tab 71, at § 8.6 at HW0000373-374 (providing that, other than an exception not applicable here, the Signal Retirement Plan could only be "amended or otherwise modified . . . by the Board of Directors[.]"); Sept. 2010 Kroll Decl., PSOF Exh. T, at Exh. 2, at § 6.6 at HW0025348 ("…the Plan may be wholly or partially amended or otherwise modified, including retroactive amendments to meet governmental requirements, from time to time by the Board of Directors."); *see also* DSAF ¶¶ 28-29.)

**PSOF 31 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 31 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  To the extent Plaintiffs are using this paragraph to establish that the May 1984 was the plan document, any claims relating to whether the May 1984 SPD was the plan document after the merger were settled and released.  (*See* DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 31, paragraph 31 is disputed to the extent Plaintiffs insinuate that the benefit enhancements were made effective through the May 1984 SPD.  Those benefit enhancements were included in the Signal Retirement Plan effective January 1, 1984, which plan also included the Social Security and SBA Offsets that form the basis of Plaintiffs' Two Remaining Claims.  (*See* DSOF ¶¶ 25-26, 28-29, 42-45, and 59-72.) The benefit enhancements included more generous early retirement reduction factors for employees who were eligible to retire early under the Signal Retirement Plan, (*see* DSOF ¶¶ 65), a more generous definition of final average compensation, (*see* DSOF ¶ 66), a smaller Social Security reduction for higher-paid employees, (*see* DSOF ¶ 67), no reduction for Social Security for lower-paid employees, (*see* DSOF ¶ 68), for many participants, an additional month of credited service, (*see* DSOF ¶ 69), an increased flat dollar minimum, (*see* DSOF ¶ 70), and a new benefit formula effective in July 2000 that

in many cases enhanced benefits and in no case lowered them.  (*See* DSOF ¶ 71.)  The May 1984 SPD simply summarized those features of the Signal Retirement Plan effective January 1, 1984.  (*See* DR-PSOF ¶ 27.)

Paragraph 31 is also disputed to the extent that, in addition to summarizing the Signal Retirement Plan's benefit enhancements effective January 1, 1984, the May 1984 SPD also summarized the Social Security and SBA Offsets effective January 1, 1984 under the Signal Retirement Plan.  For example, the May 1984 SPD set forth the Signal Retirement Plan's benefit formulas, including the Social Security Offset formula and the alternative minimum benefit formula, and provided an example of how a "Normal Retirement Benefit" would be calculated using both formulas.  (May 1984 SPD, attached hereto at Tab 73, at HW0000434-435.)  At the end of the example, the May 1984 SPD specifically noted that if the Social Security Offset formula provided a higher monthly benefit, the participant "also would receive a social security check each month . . . for a total [monthly benefit] from the Retirement Plan and social security."  (*Id*. at HW0000435.)  The May 1984 also disclosed the SBA Offset by explaining that if a participant does not transfer his or her SBA to the Retirement Plan, the "NORMAL RETIREMENT benefit will be somewhat reduced."  (*Id*.)  The Court has already held that the May 1984 SPD "adequately discloses" the new SBA Offset under the Signal Retirement Plan.  (*See Allen*, 382 F. Supp. 2d at 1170.)

Paragraph 31 is also disputed to the extent that the May 1984 SPD could not effect an amendment of either the Signal Retirement Plan effective January 1, 1984 or, as Plaintiffs' now try to argue, the 1976 Signal Plan.  (*See* Signal Retirement Plan, attached hereto at Tab 71, at § 8.6 at HW0000373-374 (providing that, other than an exception not applicable here, the Signal Retirement Plan could only be "amended or otherwise modified . . . by the Board of Directors[.]"); Sept. 2010 Kroll Decl., PSOF Exh. T, at Exh. 2, at § 6.6 at HW0025348 ("…the Plan may be wholly or partially amended or otherwise modified, including retroactive amendments to meet governmental requirements, from time to time by the Board of Directors."); *see also*

1    DSAF ¶¶ 28-29.)

2        **PSOF 32 RESPONSE:** Because the Two Remaining Claims are limited to and

3    require proof that the amendment of the Signal Retirement Plan violated ERISA §

4    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

5    move to strike paragraph 32 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

6    a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

7    Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  To the extent Plaintiffs are using this paragraph

8    to establish that the May 1984 was the plan document, any claims relating to whether the

9    May 1984 SPD was the plan document after the merger were settled and released.  (*See*

10   DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)  Subject to and without

11   waiving Defendants' objections, to the extent the Court does not strike paragraph 32,

12   paragraph 32 is undisputed.

13       **PSOF 33 RESPONSE:** Because the Two Remaining Claims are limited to and

14   require proof that the amendment of the Signal Retirement Plan violated ERISA §

15   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

16   move to strike paragraph 33 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

17   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

18   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  To the extent Plaintiffs are using this paragraph

19   to establish that the May 1984 was the plan document, Plaintiffs have settled and

20   released any claims relating to whether the May 1984 SPD was the plan document after

21   the merger.  (*See* DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)

22       Subject to and without waiving Defendants' objections, to the extent the Court

23   does not strike paragraph 33, contrary to LRCiv 56.1(a), Plaintiffs assert multiple facts

24   that purport to be material within paragraph 33.  Defendants respond to each purported

25   "material fact" in turn.

26       Paragraph 33 is disputed to the extent that Plaintiffs assert that the May 1984 SPD

27   "did not include any changes to the calculation" of the SBA offset.  The change to the

28   SBA Offset was set forth in the Signal Retirement Plan effective January 1, 1984.  (*See*

DSOF ¶¶ 42, 45.)  That offset was known by at least December 1983, and the Plan was administered with that new offset as of January 1, 1984 while the formal plan documents were finalized.  (DSAF ¶¶ 10-26.)  The May 1984 SPD could not effect an amendment of either the Signal Retirement Plan effective January 1, 1984 or, as Plaintiffs' now try to argue, the 1976 Signal Plan.  (*See* Signal Retirement Plan, attached hereto at Tab 71, at § 8.6 at HW0000373-374 (providing that, other than an exception not applicable here, the Signal Retirement Plan could only be "amended or otherwise modified . . . by the Board of Directors[.]"); Sept. 2010 Kroll Decl., PSOF Exh. T, at Exh. 2, at § 6.6 at HW0025348 ("…the Plan may be wholly or partially amended or otherwise modified, including retroactive amendments to meet governmental requirements, from time to time by the Board of Directors."); *see also* DSAF ¶¶ 28-29.)  The May 1984 also disclosed the SBA Offset by explaining that if a participant does not transfer his or her SBA to the Retirement Plan, the "NORMAL RETIREMENT benefit will be somewhat reduced." (May 1984 SPD, attached hereto at Tab 73, at HW0000435.)  The Court has already held that the May 1984 SPD "adequately discloses" the new SBA Offset under the Signal Retirement Plan.  (*See Allen*, 382 F. Supp. 2d at 1170.)

Defendants also object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) Plaintiffs' statement regarding "early retirement reduction factors" as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Plaintiffs have settled and released any and all claims relating to early retirement benefits under the Garrett, Signal, and/or successor Plans.  (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.)  Not only is an early retirement benefits claim settled and released, but the Signal Retirement Plan's savings clause protected these early retirement benefits from being cut back.  (*See* DSOF ¶¶ 51-58; *see also* Opp. Brief at Section II.A.1(iv).)  Mr. Denlinger applied the early commencement factors in effect under the Garrett Retirement Plan as of 12/31/83 in calculating participants' Garrett accrued benefit.  (Jul. 14 2010 Denlinger Dep., attached hereto at Tab 99, at 128:8-131:23.)  That protection and practice foreclose the possibility

of a cutback in accrued benefits with respect to these benefits terms.

**PSOF 34 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 34 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  To the extent Plaintiffs are using this paragraph to establish that the May 1984 was the plan document, Plaintiffs have settled and released any claims relating to whether the May 1984 SPD was the plan document after the merger.  (*See* DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)  Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 34, paragraph 34 is undisputed.

**PSOF 35 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 35 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  To the extent Plaintiffs are using this paragraph to establish that the May 1984 SPD was the plan document, Plaintiffs have settled and released any claims relating to whether the May 1984 SPD was the plan document after the merger.  (*See* DSAF ¶¶ 59-70, 88-97; *see also* PSA Motion at Section III.D.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 35, paragraph 35 is disputed in part.  That the May 1984 SPD defined "Accrued Retirement Benefits" as quoted is undisputed.  Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) the introductory sentence of paragraph 35 as improper legal argument and not a "material fact."  Subject to and without waiving its objections, to the extent the Court does not strike that sentence, it is disputed.  Directly above the definition of "Accrued Retirement Benefits" cited by

Plaintiffs, the May 1984 SPD states: "These definitions are general in nature and are not intended to be legal definitions to be applied to the formal text of the retirement plan." (May 1984 SPD, attached hereto at Tab 73, at HW0000443.)  Moreover, the May 1984 SPD also explains that, to the extent the wording of the May 1984 SPD conflicts with the Signal Plan's provisions protecting accrued benefits, the Plan Document governs.  (*Id.* at 0000431 ("This material is intended to provide you with a convenient summary of your Retirement Plan by describing the more important features of the Plan.  If there is a conflict between this wording and the wording in the legal Plan Document, the legal Plan Document will govern.").)  The governing definition of "Accrued Benefit" under the Signal Retirement Plan is set out at DSOF ¶¶ 51-58.

**PSOF 36 RESPONSE:** Paragraph 36 is undisputed to the extent that the Signal Retirement Plan was formally amended and restated effective January 1, 1984.  Due to the passage of time, to the best of Defendants' knowledge, the amended and restated Signal Retirement Plan was formally executed on February 4, 1985.  Based on the evidence available to Defendants by February 2009, the February 4, 1984 date appears to have been a mistake, input by a signatory who is now deceased, given that there are drafts of the plan that were exchanged through early 1985.  (Doc. 507, attached hereto at Tab 79, at 39.)  In addition, that signatory "did not have the vice president title that he signed under until . . . the end of 1984."  (May 25, 2010 Deposition Transcript of Kevin Covert, attached to PSOF at Exh. A ("Covert Dep, PSOF Exh. A"), at 15:10-21.)  Regardless, the core features of the amended and restated Plan were known by at least December 1983, and the Plan was administered consistent with those terms from January 1, 1984 through the date of the formal Plan execution.  (DSAF ¶¶ 10-26.)  For example, by January 1984 at the latest, the SBA Offset had already been communicated to plan administrators, and was specifically explained as using a split 3.5%/7.5% projection forward interest rate under the terms of the Signal Retirement Plan effective January 1, 1984.  (*See* DSAF ¶ 13.)  Furthermore, the plan administrators were using a memo prepared by the plan's actuary, Mr. Coffey, in January 1984 as a "uniform" tool when

"calculating benefits," including the SBA Offset.  (DSAF ¶ 14.)  The plan was administered consistent with those terms from January 1, 1984 through the February 5, 1985 execution date.  (*See* DSAF ¶¶ 16-26.)

   **PSOF 37 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 37 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  The date Defendants' learned that the Signal Retirement Plan, effective January 1, 1984, was signed in February 1985 is not a genuine issue of material fact that could prevent Plaintiffs' Two Remaining Claims from being decided by the Court as a matter of law.  (*See also* Fed. R. Evid. 56; LRCiv 56.1.)  Subject to and without waiving its objections, to the extent the Court does not strike paragraph 37, it is disputed in part.  As Defendants explained, the documents were "created more than 20 years ago and the person who signed the Plan…executed on 2/4/84, is deceased."  (Doc. 507, attached hereto at Tab 79, at 39.)  Defendants incorporate herein by reference their response to paragraph 36.

   **PSOF 38 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 38 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims to the extent it compares the "Signal Plan" to the "1976 Signal Plan," which is not at issue in this case.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  The 1976 Signal Plan has never been at issue in this case, and Plaintiffs have settled and released any claim relating to it.  (*See* DSAF ¶¶ 59-70, 76-78; *see also* PSA Motion at Section III.A.)  The 1976 Signal Plan has never previously been authenticated or subject to discovery, as evidenced by the fact it has been submitted on summary judgment through an affidavit from Plaintiffs' counsel.  (*See* Doc. 686, Ex. T, Ex. 2.)  The Signal Retirement Plan that admitted former

participants of the Garrett Retirement Plan was the amended and restated Signal Retirement Plan, effective January 1, 1984. (*See* DSOF ¶¶ 22-23, 25-26, DR-PSOF ¶ 26; *see also* Opp. Brief at Sections II.A.1(i) and II.B.3.)

Subject to and without waiving Defendants' objection, paragraph 38 is undisputed except to the extent it fails to recognize that the quoted formula was designed to achieve the same result as the Garrett Retirement Plan's Social Security integration provision, and that a 1% minimum benefits formula ensured that lower-paid employees would receive the same 1% of compensation without a reduction for Social Security as they had received under the Garrett Retirement Plan. (*See* DSOF ¶¶ 28-32.) Furthermore, the Social Security formula in the Signal Plan, effective January 1, 1984 was also subject to the SBA offset. (*See* DSOF ¶¶ 36-37.)

**PSOF 39 RESPONSE:** Paragraph 39 is undisputed. (*See* DSOF ¶ 31.) Plaintiffs' expert has explained that this 1% minimum benefit formula is "identical" to the maximum Social Security deduction formula in the Garrett Retirement Plan. (*See* DSOF ¶ 33.)

**PSOF 40 RESPONSE:** Paragraph 40 is disputed in part. The McLeod deposition testimony and exhibit cited by Plaintiffs refer to a draft version of the Signal Plan and negotiations between Signal and Garrett pertaining to the Plan's terms. The citation to Mr. Holland's Rebuttal Report is to a paragraph that argues about the potential impact of the plan merger on early retirement benefits, which is a settled and barred claim. (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.) Not only is an early retirement benefits claim settled and released, but the Signal Retirement Plan's savings clause protected these early retirement benefits from being cut back. (*See* DSOF ¶¶ 51-58; *see also* Opp. Brief at Section II.A.1(iv).) Mr. Denlinger applied the early commencement factors in effect under the Garrett Retirement Plan as of 12/31/83 in calculating participants' Garrett accrued benefit. (Jul. 14 2010 Denlinger Dep., attached hereto at Tab 99, at 128:8-131:23.) That protection and practice foreclose the possibility of a cutback in accrued benefits with respect to these benefits terms.

Plaintiffs' citation to Mr. Poulin's report is to a paragraph that ignores the impact of the 1% minimum benefit formula, which Mr. Poulin has explained was "identical" to the maximum Social Security deduction formula used in the Garrett Retirement Plan. (*See* DSOF ¶ 33.)

It is undisputed that the final plan terms ensured that Garrett employees would not receive lesser benefits under the Signal Retirement Plan than they received under the Garrett Retirement Plan. (*See* DSOF ¶¶ 59-62.) It is also undisputed that the Signal Plan's Social Security integration formula was designed to achieve the same result as the Garrett Retirement Plan's Social Security integration provision. (*See* DSOF ¶ 30.) Because the Signal Retirement Plan also provided for a 1% minimum benefit formula, lower-paid employees would receive the same 1% of compensation without reduction for Social Security as they had received under the Garrett Retirement Plan. (*See* DSOF ¶¶ 31-33.) For higher-paid employees, the Signal Retirement Plan's direct integration with Social Security, and its more generous definition of final average compensation, resulted in a smaller reduction for Social Security than under the Garrett Plan. (*See* DSOF ¶¶ 34-35.)

**PSOF 41 RESPONSE:** Paragraph 41 is disputed. The deposition testimony from Mr. Coffey that Plaintiffs cite makes clear that lower-paid Garrett employees never received reduced benefits under the Signal Plan. (April 28, 2010 Deposition Transcript of William Coffey, attached to PSOF at Exh. G ("Coffey Dep., PSOF Exh. G"), at 119:10-12 ("When you asked me about a lower paid participant receiving lesser benefits under the Signal Plan than the Garrett plan, it never occurred."); *see also* DSOF ¶¶ 28-33; 51-58.)

**PSOF 42 RESPONSE:** Paragraph 42 is disputed in part. It is undisputed that "Credited Service," as used in section 4.2(b) of the Signal Retirement Plan, (*see* DSOF ¶ 28), is defined as "the pre-January 1, 1984 Credited Service of an Employee who was a participant in a plan which merged with this [Signal Retirement] Plan effective January 1, 1984 shall equal the service credited to him for benefit accrual purposes as of

1    December 31, 1983 under the applicable provisions of the prior plan."    (Signal

2    Retirement Plan, DSOF Tab 19, at § 1.16(a) at HW0000320.)

3    　　　Paragraph 42 is disputed to the extent that "Credited Service" was not a factor in

4    the 1% minimum benefits formula contained in section 4.2(c) of the Signal Retirement

5    Plan, which qualifies the Normal Retirement Benefit formula set out in section 4.2(b) of

6    the Signal Retirement Plan.  (*Id*. at §§ 4.2(b)-(c) at HW0000336.)  Paragraph 42 is also

7    disputed because Section 4.2(b)(ii) of the Signal Retirement Plan provides that the Social

8    Security offset is "1.5% of [the participant's] Primary Social Security Benefit multiplied

9    by his Credited Service (not in excess of 33 1/3 years)…."    (*Id*. at § 4.2(b)(ii) at

10    HW0000336.)

11    　　　**PSOF 43 RESPONSE:** Contrary to LRCiv 56.1(a), Plaintiffs assert multiple

12    facts that purport to be material within paragraph 43.  Defendants respond to each

13    purported "material fact" in turn.

14    　　　The first sentence of paragraph 43 is disputed to the extent that the Signal

15    Retirement Plan was effective January 1, 1984, (*see* DSOF ¶¶ 26-26), and continued the

16    substantive Garrett methodology for calculating the offset, with one change in the

17    projection-forward interest rate from 3.5% to 7.5% for the "Remainder Amount," a

18    portion of the SBA balance.  (*See* DSOF ¶¶ 36-45.)  That change in the offset was

19    known by at least December 1983, and the Plan was administered consistent with that

20    change from January 1, 1984 through the date of the formal Plan execution.  (DSAF ¶¶

21    10-26.)

22    　　　That Plaintiffs quote the Signal Retirement Plan's § 4.2(e)(i) is undisputed.

23    　　　**PSOF 44 RESPONSE:** Contrary to LRCiv 56.1(a), Plaintiffs assert multiple

24    facts that purport to be material within paragraph 44.  Defendants respond to each

25    purported "material fact" in turn.

26    　　　Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a)

27    Plaintiffs' reference to "early retirement factors" on two grounds:

28

- Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 44 as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402) Plaintiffs have settled and released any and all claims relating to early retirement benefits under the Garrett, Signal, and/or successor Plans. (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.)

- The reference should be stricken for the additional reason that it fails to cite to a "specific admissible portion of the record where the [purported] fact finds support." The lone "Second Supplement to Declaration and Rebuttal Report of James E. Holland" Plaintiffs cite is inadmissible because it (a) was improperly submitted long after expert discovery closed; (b) relies on data that was available to Mr. Holland well before the extended July 23, 2010 deadline for Plaintiffs' rebuttal expert reports; (c) does not contain rebuttal testimony; (d) offers opinions on matters that are settled and barred; and (e) was submitted unsigned and without the supporting calculations. (*See* DSAF ¶¶ 30-52; *see also* Opp. Br. at Section II.C.)

Subject to and without waiving Defendants' objections, paragraph 44 is disputed in part.

Plaintiffs cite to Defendants' Response to Plaintiffs' Request for Admission 13, but do not provide the text of the Request itself. The Request stated: "The Signal Retirement Plan dated as of October 1985 was the first Plan adopted and effective to incorporate provisions governing the calculation of the SBA offset." (*See* Defendants' Responses & Objections to Plaintiffs' Request for Admissions, attached hereto at Tab 80, at No. 13.) Defendants' denied that Request and responded that "[t]he Signal Retirement Plan document dated February 4, 1984, effective January 1, 1984, was the first Signal Retirement Plan document to incorporate provisions governing the calculation of the SBA offset." (*Id.*) The Signal Retirement Plan continued the substantive Garrett methodology for calculating the offset, with one change in the projection forward interest rate from 3.5% to 7.5% for the "Remainder Amount," a portion of the SBA balance. (*See* DSOF ¶¶ 36-45.) That change in the offset was known by at least December 1983, and the Plan was administered consistent with that change from January 1, 1984 while the formal plan documents were finalized. (DSAF ¶¶ 10-26.) The May 1984 SPD simply summarized the features of the Signal Retirement Plan effective January 1, 1984. The Court has already held that the May 1984 SPD

"adequately discloses" the new SBA Offset under the Signal Retirement Plan.  (*See Allen*, 382 F. Supp. 2d at 1170.)

Not only is an early retirement benefits claim settled and released, but the Signal Retirement Plan's savings clause protected these early retirement benefits from being cut back.  (*See* DSOF ¶¶ 51-58; *see also* Opp. Brief at Section II.A.1(iv).)  Mr. Denlinger applied the early commencement factors in effect under the Garrett Retirement Plan as of 12/31/83 in calculating participants' Garrett accrued benefit.  (Jul. 14 2010 Denlinger Dep., attached hereto at Tab 99, at 128:8-131:23.)  That protection and practice foreclose the possibility of a cutback in accrued benefits with respect to these benefits terms.  There can therefore be no genuine dispute of material fact as to those factors that is relevant to summary judgment disposition of the Two Remaining Claims.

**PSOF 45 RESPONSE:** Defendants object and move to strike pursuant to LRCiv. 7.2(m) and 56.1(a) paragraph 45 as failing to set forth a "material fact" that refers to "a specific admissible portion of the record where the fact finds support" because paragraph 45  (1) offers legal conclusions; (2) is argumentative; (3) contains a series of facts; and is not supported by the record citation (which refers to the definition of defined benefit plans and defined contribution plans).

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 45, it is disputed in part.  The first two sentences of paragraph 45 are undisputed, except that the Signal Plan was amended January 1, 1984 for a variety of reasons, not just "to increase the projected earnings rate in the offset calculation from 3.5% to 7.5% for Remainder Amounts, which was the term applied to anything in the offset account above what was projected by applying 3.5% interest to the Severance Account as of 12/31/83 prior to the Garrett Severance Plan's allocation of the surplus assets existing in the Garrett Severance Plan on that date."  (*See, e.g.*, DSOF ¶¶ 25, 31, 59-71.)  The third sentence in paragraph 45 is disputed because (1) Mr. Sher has not "said" that the rules of the Garrett Plan as of 12/31/83 "should have been protected going forward" (*see* DSOF ¶ 58); and (2) this Court has already explained that the protected

1    "accrued benefit" under ERISA is the "dollar amount of the annuity at retirement—i.e.,

2    the product of the plan's benefit formula.  That is what the participant receives and what

3    he is concerned with when he attains normal retirement age—money, not intangible

4    components of a benefit formula like an interest rate or a fractional reduction in an

5    offset." (*Allen*, 382 F. Supp. 2d at 1151.)  The fourth sentence is disputed because the

6    Signal Retirement Plan effective January 1, 1984 did protect the accrued benefits under

7    the Garrett Plan.  (*See* DSOF ¶¶ 51-58.)   What is more, the Signal Retirement Plan

8    effective January 1, 1984 resulted in significant benefit increases to all participants

9    except those affected by an operational error, and those operational errors have been or

10   are in the process of being corrected.  (*See* DSOF ¶¶ 59-84.)

11       **PSOF 46 RESPONSE:** Contrary to LRCiv 56.1(a), Plaintiffs assert multiple

12   facts that purport to be material within paragraph 46.  Defendants respond to each

13   purported "material fact" in turn.

14       The first sentence of paragraph 46 is disputed.   Contrary to LRCiv 56.1(a),

15   Plaintiffs have failed to "refer to a specific admissible portion of the record where the

16   fact finds support."  Section 4.10(c)(ii) of the Signal Retirement Plan effective January 1,

17   1984 protects the "Accrued Benefit" of any former Garrett employee whose employment

18   continued after January 1, 1984.  (*See* DSOF ¶ 54.)   There is no limitation on the

19   temporal scope of that section's protection of accrued benefits.  (*See* DSOF ¶¶ 51-58; *see*

20   *also* ¶ 214.)

21       The second sentence of paragraph 46 is undisputed.

22       The last sentence of paragraph 46 is disputed as to the word "however" because

23   the Garrett Plan provision described does not conflict with the provisions of the Signal

24   Plan previously cited.

25       **PSOF 47 RESPONSE:** Paragraph 47 is undisputed.

26       **PSOF 48 RESPONSE:** Defendants object and move to strike pursuant to LRCiv

27   7.2(m) and 56.1(a) paragraph 48 on numerous grounds:

28

- Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 48 as failing to set forth a "material fact" that is relevant of resolution to the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Plaintiffs have settled and released any and all claims relating to early retirement benefits under the Garrett, Signal, and/or successor Plans. (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.)

- Paragraph 48 should be stricken for the additional reason that it fails to cite to a "specific admissible portion of the record where the [purported] fact finds support."  The lone "Second Supplement to Declaration and Rebuttal Report of James E. Holland" Plaintiffs cite is inadmissible because it (a) was improperly submitted long after expert discovery closed; (b) relies on data that was available to Mr. Holland well before the extended July 23, 2010 deadline for Plaintiffs' rebuttal expert reports; (c) does not contain rebuttal testimony; (d) offers opinions on matters that are settled and barred; and (e) was submitted unsigned and without the supporting calculations. (*See* DSAF ¶¶ 30-52; *see also* Opp. Br. at Section II.C.)

Subject to and without waiving Defendants' objections, to the extent the Court does not strike paragraph 48, it is disputed in part.  The Signal Retirement Plan, effective January 1, 1984, included a savings clause that protected these early retirement benefits from being cut back.  (*See* DSOF ¶¶ 51-58; *see also* Opp. Brief at Section II.A.1(iv).) Mr. Denlinger applied the early commencement factors in effect under the Garrett Retirement Plan as of 12/31/83 in calculating participants' Garrett accrued benefit.  (Jul. 14 2010 Denlinger Dep., attached hereto at Tab 99, at 128:8-131:23.)  That protection and practice foreclose the possibility of a cutback in accrued benefits with respect to these benefits terms.  By Plaintiffs' own calculations, only 260 of the approximately 13,000 participants they considered when doing their calculations received an actual benefit at retirement that was purportedly less than their Garrett accrued benefit.  (*See* DSOF ¶¶ 76-78.)  The correct figure is 115 (*See* DSOF ¶ 79), and benefits for those participants affected by an administrative error have already been corrected, or are in the process of being corrected.  (*See* DSOF ¶¶ 80-84.)

**PSOF 49 RESPONSE:** Paragraph 49 is disputed.  Plaintiffs' expert, Claude Poulin, admitted that a participant's gross benefit under the Garrett Retirement Plan could not be greater than his or her gross benefit under the Signal Retirement Plan. (June 18, 2010 Deposition Transcript of Claude Poulin Dep., attached to DSOF at Tab

10 ("Jun. 2010 Poulin Dep."), at 520:13-18 ("Q. Is it mathematically possible for the gross benefit under Garrett to be better than the gross benefit under Signal? A. If there is no minimum benefit offset, probably not.") (objection omitted).) Defendants also incorporate herein by reference their response to paragraph 48, above.

**PSOF 50 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 50 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 50, it is undisputed.

**PSOF 51 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 51 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) The "typical language" of a savings clause is not at issue.

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 51, it is disputed. Mr. Holland conceded that it was "reasonable" to interpret the Signal Retirement Plan as protecting accrued benefits without limitation on the temporal scope of that protection—the operative interpretation of Defendants. (*See* DSOF ¶¶ 51-58; 214.)

**PSOF 52 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 52 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) A participant's ability to transfer his SBA to the Signal Retirement Plan is not part of the SBA Offset Claim. (*See* DSAF ¶ 65; *see also* PSA Motion at Sections II & III.)

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 52, it is disputed. The deposition testimony cited contradicts Plaintiffs' allegation and refers to periods prior to July 1987. (*See* May 22, 2010 Deposition Transcript of James McLeod, attached hereto at Tab 93 ("McLeod Dep."), at 160:12-161:2 (referring to Question and Answer 17 in the May 1984 SPD).) By July 1, 1987, an employee could transfer his SBA balances to the Retirement Plan, leave the SBA balance in earning 12.3% interest, or withdraw it upon termination. (May 28, 2010 Deposition Transcript of Jean Payne, attached hereto at Tab 97 ("Payne Dep."), at 39:22-40:16.)

**PSOF 53 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 53 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Plaintiffs have settled and released any and all claims relating to the Signal Savings Plan as amended through December 23, 1988, and a participant's ability to transfer his SBA to the Signal Retirement Plan is not part of the SBA Offset Claim. (*See* DSAF ¶¶ 65-66; *see also* PSA Motion at Sections II & III.)

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 53, it is disputed in part. That Section 16.6 of the Eighth Amendment to the Signal Savings Plan, executed December 31, 1983, provided for a transfer of the SBA account to the Signal Retirement Plan is undisputed. The Signal Retirement Plan, effective January 1, 1984, provided that a plan participant with an SBA could elect to transfer his or her SBA into the Signal Retirement Plan. (Signal

1    Retirement Plan, DSOF Tab 19, at § 4.2(e)(i); July 2, 2010 Declaration of Kurt

2    Denlinger, attached to DSOF at Tab 8 ("Jul. 2010 Denlinger Decl."), at ¶ 8.)

3         **PSOF 54 RESPONSE:**  Paragraph 54 is disputed in part.  It is undisputed that

4    Mr. Poulin's cited paragraph 18 reports that he "recomputed and compared normal

5    retirement benefits, *i.e.*, the accrued benefits payable at the normal retirement age of 65

6    under the Garrett Retirement Plan benefits formulas as if each participant had terminated

7    employment on December 31, 1983, and the normal retirement benefits, *i.e.*, the accrued

8    benefits payable at the normal retirement age of 65 under the Signal Plan benefits

9    formulas as if each participant had terminated employment on January 1, 1984," and that

10   "[b]ased on this calculation," he calculated that 71% "of all Garrett Retirement Plan

11   participants experienced a reduction in their accrued benefits as of January 1, 1984 under

12   the Signal Plan compared to their accrued benefits under the Garrett Retirement Plan as

13   of December 31, 1983." (*See* DSOF ¶¶ 85-86.)

14        Paragraph 54 is disputed to the extent that Mr. Poulin's methodology for

15   performing that calculation is flawed, as it depends upon his ignoring the Signal

16   Retirement Plan's savings clause protections, assumes a uniform hypothetical

17   termination date of January 1, 1984 for the more than 13,000 evaluated participants

18   when only one participant in fact terminated on that date (and his benefits improved

19   under the Signal Retirement Plan), and ignores whether a participant elected to transfer

20   his or her SBA to the Signal Retirement Plan.  (*See* DSOF ¶¶ 86-88.)  As Mr. Poulin has

21   acknowledged, the offset under the Signal Retirement Plan cannot be calculated until the

22   date of the employee's termination.  (*See* DSOF ¶ 43; *see also* DSOF ¶¶ 38-42.)

23        Paragraph 54 is further disputed to the extent that Mr. Holland's cited paragraph

24   31 assumes the Signal Retirement Plan did not have a 1% minimum benefits formula and

25   evaluates the SBA and Social Security Offsets on a stand-alone basis, without applying a

26   net effects analysis.  It is further disputed to the extent that Mr. Altman's cited

27   deposition testimony is caveated by Mr. Altman as assuming that the savings clause

28   protection afforded  under the Signal Retirement Plan was disregarded.  (*See also* August

38

24, 2010 Deposition Transcript of Ian Altman, attached hereto at Tab 102 ("Altman Dep."), at 292:8-15.)  Mr. Altman further testified that he did not independently review Mr. Poulin's calculations.  (*Id.* at 291:25-292:7.)

**PSOF 55 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 55 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Mr. Poulin's cited paragraph 24 relates to his argument on liability under Plaintiffs' Minimum Benefits Claim, on which the Court granted summary judgment in favor of Defendants.  (Doc. 555; *see also* June 4, 2010 Declaration of Claude Poulin, attached to DSOF at Tab 6 ("Jun. 2010 Poulin Decl."), at ¶ 23.)  Mr. Poulin acknowledged that his June 4, 2010 Report failed to account for the Court's minimum benefits ruling.  (*See* Jun. 2010 Poulin Dep., attached hereto at Tab 98, at 405:8-11 ("Q.  Is it fair to say that your June 4, 2010 report makes no alteration to account for the October 9, 2009 [minimum benefits] ruling from Judge Silver?  A. That's correct.").)

Subject to and without waiving Defendants' objection, to the extent that the Court does not strike paragraph 55, it is disputed.  Mr. Poulin has otherwise acknowledged that the 1% minimum benefit formula in the Signal Retirement Plan was "identical" to the maximum Social Security deduction formula used in the Garrett Retirement Plan," and that any difference between the two formulas worked to the advantage of participants under the Signal Retirement Plan.  (*See* DSOF ¶¶ 33-35.)  By Plaintiffs' own calculations, only 260 of the approximately 13,000 participants they considered when doing their calculations received an actual benefit at retirement that was purportedly less than their Garrett accrued benefit.  (*See* DSOF ¶¶ 76-78.)  The correct figure is 115 (*see* DSOF ¶ 79), and benefits for those participants affected by an administrative error have already been corrected, or are in the process of being corrected.  (*See* DSOF ¶¶ 80-84.)

1    Plaintiffs have also conceded in paragraph 55 that the 1% minimum benefits

2  formula applied as of January 1, 1984.

3    **PSOF 56 RESPONSE:** To the extent Plaintiffs rely on the same record citations

4  in paragraph 56 as those set forth in paragraph 54, Defendants incorporate herein by

5  reference their response to paragraph 54. To the extent that in paragraph 56 Plaintiffs

6  added a citation to Mr. Holland's Second Supplemental Report, Defendants object and

7  move to move to strike pursuant to LRCiv. 7.2(m) and 56.1(a) paragraph 56 as failing to

8  cite to a "specific admissible portion of the record where the [purported] fact finds

9  support." Mr. Holland's purported Second Supplemental Report is inadmissible because

10  it (a) was improperly submitted long after expert discovery closed; (b) relies on data that

11  was available to Mr. Holland well before the extended July 23, 2010 deadline for

12  Plaintiffs' rebuttal expert reports; (c) does not contain rebuttal testimony; (d) offers

13  opinions on matters that are settled and barred; and (e) was submitted unsigned and

14  without the supporting calculations. (*See* DSAF ¶¶ 30-52; *see also* Opp. Br. at Section

15  II.C.)

16    Subject to and without waiving Defendants' objection, to the extent the Court

17  does not strike Mr. Holland's purported Second Supplemental Report, Defendants

18  further dispute paragraph 56. In his paragraphs 2-4, Mr. Holland explains that he was

19  "asked to review and compare the accrued benefits of some participants under the

20  Garrett Plan as of December 31, 1983 with the benefits under the Signal Plan as

21  amended in February 1985 and taking into account service through January 1, 1985,"

22  which resulted in his finding that "some" of those participants experienced a reduction in

23  their already-accrued benefits. (September 17, 2010 Second Supplemental Declaration

24  of James Holland, attached to PSOF at Exh. C ("Sept. 2010 Holland Supp. Decl."), at ¶¶

25  2-4.) This "hypothetical termination" theory fails for the same reasons that Mr. Poulin's

26  hypothetical termination calculations were flawed, and Defendants incorporate herein by

27  reference their response to paragraph 54, above. Mr. Holland's hypothetical termination

28  theory is further flawed to the extent it fails to acknowledge that the amended and

1   restated Signal Retirement Plan was effective as of January 1, 1984. (*See* DSOF ¶¶ 25-

2   26.)    Mr. Holland failed to provide the calculations for any of the unidentified

3   participants who purportedly showed a reduction in already-accrued benefits as a result

4   of these "hypothetical termination" calculations.    Finally, paragraph 56 is disputed

5   because there was no net reduction in the Garrett 12/31/83 accrued benefit by virtue of

6   the Signal Retirement Plan's savings clause provisions and the overall benefit

7   improvements afforded to former Garrett Retirement Plan participants under the Signal

8   Retirement Plan. (*See* DSOF ¶¶ 51-58; 65-73).

9      **PSOF 57 RESPONSE:** Contrary to LRCiv 56.1(a), Plaintiffs assert multiple

10   facts that purport to be material within paragraph 57.    Defendants respond to each

11   purported "material fact" in turn.

12      Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) the

13   first sentence in paragraph 57 for failing to cite to a "specific admissible portion of the

14   record where the [purported] fact finds support."    Subject to and without waiving

15   Defendants' objection, to the extent the Court does not strike that sentence, it is disputed.

16   By Plaintiffs' own calculations, only 260 of the approximately 13,000 participants they

17   considered when doing their calculations received an actual benefit at retirement that

18   was purportedly less than their Garrett accrued benefit, none of which included a named

19   Plaintiff. (*See* DSOF ¶¶ 76, 78.)    By that same calculation, approximately 98% of the

20   class received benefits under the Signal Retirement Plan at their actual date of retirement

21   that were greater than their accrued benefit as of December 31, 1983 under the Garrett

22   Retirement Plan. (*See* DSOF ¶ 77.)    The correct figure is not 260, but 115 (*see* DSOF ¶

23   79), and benefits for those participants affected by an administrative error have already

24   been corrected, or are in the process of being corrected. (*See* DSOF ¶¶ 80-84.)

25      Defendants dispute the second sentence of paragraph 57.    Mr. Poulin's cited

26   paragraph 54 is either referring to the 260 figure discussed above, or is referring to the

27   analysis contained in Exhibit N to his June 4, 2010 Report.    That analysis purports to

28   determine "whether the Signal Plan provided higher or lower retirement benefits than the

Garrett Retirement Plan by comparing benefits under the two plans for each participant had each plan been in effect." (*See* DSOF ¶¶ 94-97.)  Mr. Poulin engaged in this "going forward" analysis even though he acknowledged that the Garrett plans ceased accruing benefits as of December 31, 1983 and that the SBA earned 12.3% after December 31, 1983.  (*See* DSOF ¶¶ 99-100.)  Thus, Exhibit N evidences a fundamental conceptual error that results in a substantially-understated SBA balance that Mr. Poulin uses as an offset and a correspondingly overstated "damages" amount. (*See* DSOF ¶ 98.)  The page from Mr. Sher's expert report that Plaintiffs cite addresses the significant computational errors that infected Mr. Poulin's Exhibit N analysis, separate and apart from the fundamental conceptual error discussed above and at DSOF ¶ 98.  Those computational errors are described in greater detail at Appendix II to Mr. Sher's expert report, attached at Tab 1 to the DSOF.

To the extent the second sentence of paragraph 57 argues that there was a cutback in accrued benefits on January 1, 1984 as determined under Plaintiffs' "hypothetical termination" theory, Defendants dispute paragraph 57 for the same reasons set forth in their response to paragraphs 54 and 56, above.

**PSOF 58 RESPONSE:**  Contrary to LRCiv 56.1(a), Plaintiffs assert multiple facts that purport to be material within paragraph 58.  Defendants respond to each purported "material fact" in turn.

Regarding the first sentence of paragraph 58, Defendants incorporate by reference their response to paragraph 57, above.

The second and third sentences of paragraph 58 are further disputed to the extent that, in his Exhibit N analysis, Mr. Poulin calculated a hypothetical Garrett SBA balance on an ongoing basis, even though (1) he acknowledged that the Garrett Severance Plan was terminated as of December 31, 1983 and that (2) the actual SBA balance at termination was known.  (Jun. 2010 Poulin Dep., DSOF Tab 10, at 497:6-498:24.)  Moreover, Mr. Poulin acknowledged that his calculations, based on ongoing contributions to the "Garrett Severance Plan," were off by a factor of six, because he

allocated the 2% pay contribution based on one month's pay and not six month's pay, as had been provided for under the terms of the Garrett Severance Plan.  (June 18, 2010 Deposition Transcript of Claude Poulin, attached hereto at Tab 98 ("Jun. 2010 Poulin Dep."), at 580:3-586:3.)   Mr. Poulin also made other conceptual and computational errors in performing his "Exhibit N" analysis.  (*See* DSOF ¶¶ 96-100; *see also* Sher Decl., DSOF at Tab 1, at Appendix II.)

**PSOF 59 RESPONSE:**   Paragraph 59 is undisputed to the extent that, by Plaintiffs' own calculations, only 260 of the approximately 13,000 participants they considered when doing their calculations received an actual Signal benefit at retirement that was purportedly less than their Garrett accrued benefit, none of which included a named Plaintiff.  (*See* DSOF ¶¶ 76, 78.)  By that same calculation, approximately 98% of the class received benefits under the Signal Retirement Plan at their actual date of retirement that were greater than their accrued benefit as of December 31, 1983 under the Garrett Retirement Plan.  (*See* DSOF ¶ 77.)  Paragraph 59 is disputed to the extent the correct figure is not 260, but 115 (*see* DSOF ¶ 79), and benefits for those participants affected by an administrative error have already been corrected, or are in the process of being corrected.  (*See* DSOF ¶¶ 80-84.)  Paragraph 59 is further disputed to the extent that Plaintiffs insinuate some irregularity with the clause "sometimes decades after the merger."  It is undisputed that the SBA offset under the Signal Retirement Plan could not be calculated until the participant's date of termination.  (*See* DSOF ¶ 43; *see also* DSOF ¶¶ 38-42.)  Finally, paragraph 59 is disputed to the extent that Mr. Poulin's July 23, 2010 Rebuttal Declaration is not provided at Plaintiffs' "Exh. L."

**PSOF 60 RESPONSE:**  Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) paragraph 60 on numerous grounds.  First, it contains legal argument, not a "material fact."  Second, it contains multiple purported "material facts."  Third, it fails refer to "a specific admissible portion of the record where the fact finds support" for any one of those purported "material facts."  The cited "July 23, 2010 Rebuttal Report of Holland" does not support the legal argument set forth in paragraph 60.  Instead, that

1    legal argument is set forth in Mr. Holland's purported Second Supplemental Declaration,

2    at pages 4-5, ¶ 6.  Mr. Holland's purported Second Supplemental Report is inadmissible

3    because it (a) was improperly submitted long after expert discovery closed; (b) relies on

4    data that was available to Mr. Holland well before the extended July 23, 2010 deadline

5    for Plaintiffs' rebuttal expert reports; (c) does not contain rebuttal testimony; (d) offers

6    opinions on matters that are settled and barred; and (e) was submitted unsigned and

7    without the supporting calculations.  (*See* DSAF ¶¶ 30-52; *see also* Opp. Br. at Section

8    II.C.)

9         Subject to and without waiving Defendants' objection, to the extent the Court

10   does not strike Mr. Holland's purported Second Supplemental Declaration, it is disputed.

11   The July 2000 plan amendments in many cases enhanced, but it no cases reduced,

12   participants' benefits.  (*See* DSOF ¶ 71.)  Moreover, by Plaintiffs' own calculations, only

13   260 of the approximately 13,000 participants they considered when doing their

14   calculations received an actual benefit at retirement that was purportedly less than their

15   Garrett accrued benefit, none of which included a named Plaintiff.  (*See* DSOF ¶¶ 76,

16   78.)  By that same calculation, approximately 98% of the class received benefits under

17   the Signal Retirement Plan at their actual date of retirement that were greater than their

18   accrued benefit as of December 31, 1983 under the Garrett Retirement Plan.  (*See* DSOF

19   ¶ 77.)  The correct figure is not 260, but 115 (*see* DSOF ¶ 79), and benefits for those

20   participants affected by an administrative error have already been corrected, or are in the

21   process of being corrected.  (*See* DSOF ¶¶ 80-84.)

22   **PSOF 61 RESPONSE:**  Paragraph 61 is disputed.  Mr. Poulin's cited paragraph

23   35 reports the damages calculations he performed for the Social Security Offset Claim as

24   a stand-alone claim.    Mr. Poulin has admitted that he performed that stand-alone

25   damages calculations in 2008, before the Court's August 2008 ruling on the net effects

26   analysis.  (*See* Jun. 2010 Poulin Dep., attached hereto at Tab 98, at 434:14-436:9; *see*

27   *also* Doc. 481.)  Mr. Poulin has also admitted that he made no changes to his 2008 stand-

28   alone damages calculations in light of the court's net effects ruling.  (*See* Jun. 2010

1    Poulin Dep., attached hereto at Tab 98, at 436:10-23.)  Paragraph 61 is further disputed

2    to the extent Mr. Poulin's analysis was based on a counter-factual hypothetical.  It is

3    undisputed that the Signal Retirement Plan's Social Security Offset applied to "Credited

4    Service" under the Garrett Retirement Plan.  (Signal Retirement Plan, DSOF Tab 19, at §

5    1.16(a) at HW0000320.)    Moreover, "Credited Service" included service under the

6    Garrett Retirement Plan was communicated to former Garrett employees as early as the

7    January 1984 brochure and the May 1984 SPD, (*see* DSOF ¶¶ 111, 116), so any claim

8    relating to this fact is time-barred.  (*See* Doc. 676 at 17-22.)  Finally, paragraph 61 is

9    disputed to the extent that the Garrett Retirement Plan was uniformly recognized, even

10   by Plaintiffs' experts, to integrate with Social Security, (*see* DSOF ¶¶ 12-18), and

11   Plaintiff's expert has further explained that the 1% minimum benefit formula under the

12   Signal Retirement plan was "identical" to the maximum Social Security deduction under

13   the Garrett Retirement Plan.  (*See* DSOF ¶ 33.)

14         **PSOF 62 RESPONSE:** Paragraph 62 is disputed.  Page 3, paragraph 7 of Mr.

15   Poulin's June 16, 2008 declaration summarizes the Garrett Retirement Plan's floor-offset

16   arrangement, and does not support the "material fact" paragraph 62 purports to present.

17   Mr. Poulin has also admitted that the cited exhibits L & M analyzed damages under the

18   SBA Offset Claim as a stand-alone claim, which analysis he performed in 2008 before

19   the Court's net effects ruling, and which he has not changed to account for the Court's

20   net effects ruling. (*See* Jun. 2010 Poulin Dep., attached hereto at Tab 98, at 436:1-23.)

21         **PSOF 63 RESPONSE:** Paragraph 63 is disputed in part.  It is undisputed that, as

22   a result of an operational error, a small number of participants initially received benefits

23   that were less than they should have received if the savings clause had been applied

24   properly, and that certain terminated participants with vested deferred benefits needed to

25   have their benefit records corrected to reflect the benefits they are due under the terms of

26   the Signal Retirement Plan, including the savings clause.  (*See* DSOF ¶¶ 80-83.)

27         Paragraph 63 is disputed to the extent that Plaintiffs claim there were "numerous"

28   participants affected by this administrative calculation error.  There were a total of 115

participants: 23 in pay status, 2 deceased, and 90 who were not yet in pay status.  (*See* DSOF ¶¶ 80, 82-83.)  Those who were not yet in pay status had not yet received <u>any</u> retirement benefit, and those records were easily corrected without any "harm" to the affected participant.  (*See* DSOF ¶ 83.)  Even under Plaintiffs' own, over-stated calculations, this error affected only 260 participants, meaning approximately 98% of the class received equal or better benefits under the Signal Retirement Plan as of their actual retirement date as compared to their accrued benefits under the Garrett Retirement Plan. (*See* DSOF ¶¶ 76-77, 79.)

   **PSOF 64 RESPONSE:**  Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) paragraph 64 as failing to state a "material fact."  Whether Mr. Gates has been informed of any adjustment in his pension benefits does not create a genuine dispute as to whether Honeywell has corrected its benefit records to reflect the benefits he is due under the terms of the Signal Plan, including the savings clause.  (*See* DSOF ¶¶ 80-83.)

   Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 64, it is disputed to the extent that Mr. Gates is a terminated participant with vested deferred benefits (*i.e.*, a participant who has terminated employment with the company but is not yet in pay status).  (*See* July 23, 2010 Declaration of Claude Poulin, attached to PSOF at Exh. O ("Jul. 2010 Poulin Decl., PSOF Exh. O"), at Exh. 1, Tab "Poulin DVested"; *see also* Jul. 2010 Denlinger Decl., DSOF Tab 8, at ¶ 17.)  Because he was not yet in pay status at the time the administrative records were corrected, he did not receive a distribution that was less than he was entitled to under the Signal Retirement Plan, including the savings clause.  (Jul. 2010 Denlinger Decl., DSOF Tab 8, at ¶ 18.)

   **PSOF 65 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 64 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 65, it is disputed to the extent that Mr. McLeod, the Director of Compensation and Benefits at Garrett in 1984, (*see* DSOF ¶ 14), testified that "the Signal Company" was "the holding company" in the context of responding to Plaintiffs' counsel's question about whether "the Signal Company was somewhat in charge of the merger issues."  (McLeod Dep., PSOF Exh. H, at 34:17-25 ("Q.  Is it fair to say that during this period of time the Signal Company was somewhat in charge of the merger issues? A.  I don't really know the answer to that.  Signal companies was the Company that owned the Garrett Corporation."). (objection and instruction omitted).)

**PSOF 66 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 66 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  The Garrett-Signal merger was not prompted by the existence of a retirement plan surplus, (*see* DSOF ¶¶ 19-20), and any general motivations for the corporate merger are not at issue in this lawsuit.  Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 66, it is disputed to the extent that Mr. Coffey testified that he "analyzed the employee benefit plans of the Signal Companies Inc. and compared them with the employee benefit plans of Wheelabrator-Frye" and came to the conclusion that "the employee benefit plans of the Signal Companies were overfunded and had surplus assets that might be reverted in the event of a merger between Wheelabrator-Frye and Signal Companies." (April 28, 2010 Deposition Transcript of William Coffey, attached to PSOF at Exh. G ("Coffey Dep., PSOF Exh. G"), at 95:10-25.)

1    **PSOF 67 RESPONSE:**  Because the Two Remaining Claims are limited to and

2    require proof that the amendment of the Signal Retirement Plan violated ERISA §

3    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

4    move to strike paragraph 67 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

5    a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

6    Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   Subject to and without waiving Defendants'

7    objection, to the extent the Court does not strike paragraph 67, it is undisputed.

8    **PSOF 68 RESPONSE:**  Because the Two Remaining Claims are limited to and

9    require proof that the amendment of the Signal Retirement Plan violated ERISA §

10   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

11   move to strike paragraph 68 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

12   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

13   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   Defendants further object and move to strike on

14   the grounds that the cited testimony does not support the purported "material fact" set

15   forth in paragraph 68.   Subject to and without waiving Defendants' objection, to the

16   extent that the Court does not strike paragraph 68, it is undisputed that Mr. Coffey

17   explored the possibility of recapturing the surplus assets in the Signal employee benefits

18   plans, which possibility then evolved into several different alternatives.  (Coffey Dep.,

19   PSOF Exh. G, at 97:21-99:24.)   The asset surplus was never actually reverted to the

20   company.  (*See, e.g.*, PSOF ¶ 69, DR-PSOF ¶ 69.)

21   **PSOF 69 RESPONSE:**  Because the Two Remaining Claims are limited to and

22   require proof that the amendment of the Signal Retirement Plan violated ERISA §

23   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

24   move to strike paragraph 69 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

25   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

26   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   Defendants further object and move to strike to

27   the extent that there is no "Exh. '8'" to Plaintiffs' Separate Statement of Facts and that

28   there is no record support for the proposition that "Signal abandoned its plan to revert

1    surplus assets to itself  . . . because it meant companies were not using plan assets solely
2    for the benefit of plan participants."

3         Subject to and without waiving Defendants' objection, to the extent the Court
4    does not strike paragraph 69, it is disputed to the extent that Plaintiffs failed to include
5    falling annuity purchase rates and the positive implications for plan participants that
6    would result from a merger with the Garrett Retirement Plan, which also factored in to
7    Signal's decision not to proceed with the so-called "termination/reversion" plans.  (*See,*
8    *e.g.*, Coffey Dep., PSOF Exh. G, at 204:11-23, 207:12-213:13; PSOF Exh. G at Ex.
9    602.)

10        **PSOF 70 RESPONSE:**  Paragraph 70 is undisputed.  (*See* DSOF ¶¶ 25-26.)

11        **PSOF 71 RESPONSE:**  Because the Two Remaining Claims are limited to and
12    require proof that the amendment of the Signal Retirement Plan violated ERISA §
13    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and
14    move to strike paragraph 71 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth
15    a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*
16    Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Subject to and without waiving Defendants'
17    objection, to the extent the Court does not strike paragraph 71, it is disputed to the extent
18    that Mr. Coffey's cited deposition testimony does not support the proposition that "the
19    Plan sponsor has never had to put any money into the Plan," and as Mr. Covert explained
20    in his cited deposition testimony:  "I joined the company in 1998.  There have been no
21    required minimum contributions since that time, but I can't speak to between 1984, I
22    believe your question was, and 1998."  (*See* Coffey Dep., PSOF Exh. G, at 29:18-30:1;
23    *see also* Covert Dep., PSOF Exh. A, at 102:2-10.)

24        **PSOF 72 RESPONSE:**  Because the Two Remaining Claims are limited to and
25    require proof that the amendment of the Signal Retirement Plan violated ERISA §
26    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and
27    move to strike paragraph 72 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth
28    a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Defendants further object and move to strike on the grounds that Plaintiffs have not provided the deposition testimony purportedly authenticating "Exh. 19."

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 72, it is disputed to the extent that Plaintiffs selectively quote from the document.  For example, the full statement Plaintiffs' selectively quote first reads: "The projection to age 65 using a 7.5% interest assumption *on earnings in excess of 3.5% on the basic account* is a sharing of benefit improvements between the company and the employee and the projection to age 65 using a 7.5% interest assumption on the excess assets balance is also a sharing of benefit improvement between the company and employee."  (McLeod Dep., PSOF Exh. H, at Exh. 19 at HW0041574-41575 (emphasis added).)  In two sentences following that statement, Mr. McLeod explained that: "Using the 3.5% (153.31 factor) offset is a maintenance of what our employees had with the old Severance Plan.  *What this all means is that retiring employees will have a larger amount of cash at their disposal if they so desire*."  (*Id*. at HW0041575 (emphasis added).)  The full statement Plaintiffs selectively cite second reads: "Bill Coffey has informed me that our actuaries have estimated that for each $1.00 of surplus SBA balance: between 40 cents and 50 cents will benefit the Company, and between 50 cents and 60 cents will benefit the employee."  (*Id*. at HW0041575.)  Mr. McLeod elsewhere explained that in calculating the SBA offset, "we tried to achieve three dis[tinct] goals.  One, maintain our employees [*sic*] vested and ongoing benefit derived from the basic balance at 12/31/83; two, increase our employees [*sic*] future benefit from the allocation of excess assets; and three, achieve some amount of financial benefit for the corporation."  (*Id*. at HW0041574.)  Mr. McLeod summarized that the new offset calculation methodology "actually improved the employees [*sic*] benefit." (*Id*. at HW0041576.)  Moreover, Mr. McLeod confirmed that "the benefits and the overall features of the new Signal Plan would be equal to or exceed the former Garrett Plan."  (*See* DSOF ¶ 62.)

**PSOF 73 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 73 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 73, it is undisputed that this was Mr. Donovan's testimony.

**PSOF 74 RESPONSE:**  Paragraph 74 is disputed in part.  The deposition cited does not support Plaintiffs' assertion in paragraph 74.  That in late 1983, as the cited deposition testimony explains, Tom Donovan advised 15 Garrett employees that the Signal Plan changes enhanced their benefits and suggested they put off retirement until 1984 is undisputed. (April 20, 2010 Deposition Transcript of Tom Donovan, attached hereto at Tab 87 ("Donovan Dep."), at 63:10-64:5; *see also* DSOF ¶ 63.)  It is further undisputed that, beginning in late 1983, employees were generally advised that the total benefits and overall features of the new Signal Retirement Plan, effective January 1, 1984, were better than or equal to the benefits and overall features of the Garrett Retirement Plan.  (*See, e.g.*, DSOF ¶¶ 62, 64, 108.)

**PSOF 75 RESPONSE:**  Contrary to LRCiv 56.1(a), Plaintiffs assert multiple facts that purport to be material within paragraph 75.  Defendants respond to each purported "material fact" in turn.

The first two sentences of paragraph 75 are disputed in part.  The cited January 1984 Garrett Retirement Brochure does not support Plaintiffs' assertion in paragraph 75. The Garrett Retirement brochure did not advise participants that at the time of retirement both the Garrett Plan and Signal Plan formulas would be "continued" under the new Signal Plan.  Rather, and as the first quoted excerpt makes clear, the brochure advised employees that their benefits would be calculated in two ways under the Signal Plan to "ensure that [the participant] will not receive a lesser pension benefit under the new

51

Signal Plan than [the participant] would have received from the Garrett Retirement Plan." As the example on the following page of the brochure then demonstrates, the dual calculation confirms that the participant will receive the higher benefit under the "New Signal Benefit Calculation" as opposed to the lower benefit the "Old Garrett Benefit Calculation" would have provided. (Chapman Dep., PSOF Exh. F, at Ex. 7 at HW004355.)

The third sentence of paragraph 75 is undisputed. (*See* DSOF ¶ 110.)

The fourth sentence of paragraph 75 is disputed in part. That the comparison provided as an example in the January 1984 brochure used the same numbers for final average compensation and credited service is undisputed. The fourth sentence is disputed, however, to the extent that the definition of final average compensation and credited service under the governing terms of the Signal Retirement Plan were more generous than the definitions of those terms under the Garrett Retirement Plan. (*See* DSOF ¶¶ 66, 69.) The fourth sentence is further disputed to the extent that the Signal Retirement Plan provided for a new benefit formula as compared to the formula set forth under the Garrett Retirement Plan, (*see* DSOF ¶¶ 7, 28), and that the Signal Retirement Plan included a savings clause to protect against a cutback of a participant's accrued benefit under the Garrett Retirement Plan that required a computation of the participant's "Accrued Benefit" as of December 31, 1983 determined under the terms of the Garrett Retirement Plan. (*See* DSOF ¶¶ 54, 58.)

It is undisputed that the second quotation is an excerpt from page HW004355 of Plaintiffs' Exh. F, at Exh. 7.

**PSOF 76 RESPONSE:** Paragraph 76 is disputed in part. That the December 19, 1983 letter is accurately quoted is undisputed. That Plaintiffs' "Exh. 608," a letter printed on Signal letterhead, was sent to Garrett employees is disputed. (Hon. Ex. 699, attached to DSOF at Tab 40 (schedule of communications with Garrett employees pertaining to the plan merger did not include the December 19, 1983 letter); McLeod Dep., attached hereto at Tab 93, at 26:12-27:12 (explaining that communications to

Garrett employees would go out under Garrett corporation letterhead), 43:2-10 ("This memo is not really clear if this would have gone to just the H.R. departments of the Signal Company subsidiaries.   Although, it does say the employees of the Signal Companies.   The last paragraph, it would be very unusual for a Garrett employee to be talking to Todd Wilburton about a retirement merger.").)   Paragraph 76 is undisputed to the extent that the Signal Retirement Plan included a savings clause to protect against a cutback of a participant's accrued benefit under the Garrett Retirement Plan that required a computation of the participant's "Accrued Benefit" as of December 31, 1983 determined under the terms of the Garrett Retirement Plan.   (*See* DSOF ¶¶ 54, 58.)

      **PSOF 77 RESPONSE:**   Paragraph 77 is disputed in part.   That Mr. McLeod testified, in his individual capacity, that this was his understanding is undisputed.   That this understanding can be imputed to "Garrett" is disputed.

      **PSOF 78 RESPONSE:**   Paragraph 78 is undisputed.   (*See* DSOF ¶ 62.)

      **PSOF 79 RESPONSE:**   Paragraph 79 is disputed in part.   That a handout from the Retirement Plan Merger Orientation Meeting for Garrett benefits personnel included a side-by-side comparison of the old Garrett benefit formula and the new Signal formula is undisputed.   That the presentation stated that employees will get the greater of the benefits under the Garrett Formula or the Signal Formula at the time of retirement is disputed.   In referring to the use of "two formulas" to "insure that Garrett employees will not receive a lesser benefit than they would have under the Garrett Plan," the presentation advised benefits personnel that employee benefits would be calculated in two ways *under the Signal Plan*—one being the $20 minimum benefit formula, the other being the Social Security offset formula, as set forth in the comparison Plaintiffs set forth in paragraph 73.   In its entirety the section of the presentation referred to by Plaintiffs states:

      1.   THE USE OF TWO FORMULAS WILL INSURE THAT GARRETT EMPLOYEES WILL NOT RECEIVE A LESSER BENEFIT THAN THEY WOULD HAVE UNDER THE GARRETT PLAN.

2. *GARRETT EMPLOYEES WILL RECEIVE THE GREATER OF THE TWO SIGNAL FORMULAS.*

3. BASICALLY A PROTECTION FOR THE EMPLOYEE THAT WOULD HAVE RECEIVED THE OLD $19.50 MINIMUM BENEFIT UNDER THE GARRETT PLAN.

(Hon. Ex. 580, attached to PSOF at Exh. S, at HW0032117 (emphasis added).)

**PSOF 80 RESPONSE:**  Paragraph 80 is undisputed.

**PSOF 81 RESPONSE:**  Paragraph 81 is disputed in part.  That in September 1995 benefits administrator Jean Payne gave at least four separate presentations in Phoenix explaining the SBA offset to employees is undisputed.  (*See* DSOF ¶¶ 163-185.) That Plaintiffs accurately quote from the 1995 presentation speaker notes is disputed. The correct notation in the 1995 presentation speaker notes was that "the plan has not changed."  (May 28, 2010 Deposition Transcript of Jean Payne, attached to PSOF at Exh. K ("Payne Dep., PSOF Exh. K"), at Exh. 1 at HW0023065.)  As Ms. Payne explained at her deposition, which testimony Plaintiffs did not cite, the notation in the speaker notes referred to the fact that under both the Garrett and Signal Retirement Plans, there was an offset to the normal retirement benefit that accounted for the participant's SBA if it was not transferred to the defined benefit plan.  (Payne Dep., attached hereto at Tab 97, at 67:16-69:2.)

That at these presentations employees were not informed of changes related to the SBA offset is disputed.  At each presentation, Ms. Payne explained that the SBA offset was calculated differently depending on (1) whether an employee retired before or after December 31, 1983, and (2) whether the employee transferred his SBA balance to the Signal Retirement Plan or withdrew it.  (*See* DSOF ¶ 173.)  At each presentation, Ms. Payne also specifically noted the change in the projection-forward interest from 3.5% to 7.5% for the "surplus" SBA balance.  (*See* DSOF ¶¶ 176-177.)  Ms. Payne also informed participants of the change in the projection-forward interest rate at individual and group counseling sessions.  (*See* DSOF ¶ 148, 154.)

**PSOF 82 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA §

204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 82 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 82, it is disputed.  The cited exhibit does not support Plaintiffs' assertion in paragraph 82.  Plaintiffs "Exh. 19" does not include a page bates stamped HW0045175.  According to the memo cited, both the participant and the company benefit if the participant does not transfer his funds to the Retirement Plan.   (McLeod Dep., PSOF Exh. H, at Exh. 19, at HW0041574-76 (explaining that the new Secured Benefit Account offset accomplished three goals:  it (1) preserved an employee's original benefit, (2) provided the employee with an enhanced benefit, and (3) benefited the corporation financially by requiring a lesser contribution to the retirement plan trust.)  Defendants incorporate herein by reference their response to paragraph 72, above.

**PSOF 83 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 83 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 83, it is disputed.  Plaintiffs' assertion in paragraph 83 is vague and ambiguous, and is not supported by the exhibits cited.

None of the citations provide any support for Plaintiffs' argument that "the Company recognized they could be worse off."

Moreover, in each of the exhibits cited in paragraph 83, participants were informed that they ***could elect to transfer*** their SBA account balance to the Signal Plan. (Chapman Dep., PSOF Exh. F, at Ex. 8 at HW000435 ("17 Q. What happens if I have a

Garrett Secured Benefit Account?  A. You can transfer your Garrett Secured Benefit Account (SBA) to the Retirement Plan, withdraw your SBA balance and invest it in an annuity or withdraw your SBA balance and spend it."); *Id.* at Exh. 9 at HW0001214 ("You can transfer your Allied-Signal Secured Benefit Account (SBA) to the Retirement Plan, withdraw your SBA balance and invest it in an annuity, or withdraw your SBA balance and spend it, or defer distribution until a later date or elect annual installments."); Doc. 16, Ex. G, attached hereto at Tab 72 ("Garrett Brochure"), at HW0000426 ("Again, as has been the case with the Garrett Severance and Retirement Plans, the participant may elect to transfer the Garrett Secured Benefit Account Balance to the new Signal Retirement Plan and receive the maximum benefit accrued under the Retirement Plan.").)  The cited exhibits also confirm that participants were told: "If you don't make this transfer, your Normal Retirement benefit will be somewhat reduced." (Chapman Dep., PSOF Exh. F, at Exh. 8 at HW000435; *Id.* at Exh. 9 at HW0001215; *see also* Garrett Brochure, attached hereto at Tab 72, at HW0000426 ("The participant may elect to withdraw part or all of the Secured Benefit Account Balance.  The amount withdrawn will reduce the monthly benefit payable from the Retirement Plan…").)

Finally, the deposition testimony Plaintiffs cite in paragraph 83 does not indicate that participants were advised ***not*** to transfer their SBA accounts to the Signal Plan. (May 26, 2010 Deposition Transcript of Craig Chapman, attached hereto at Tab 95 ("Chapman Dep."), at 117:20-118:20 (explaining that the May 1984 SPD's statement that ". . . if you withdraw your SBA in cash and invest it in annuity, you can more than make up for the reduction" was merely "providing information to [employees] that was true at that point in time.").)

**PSOF 84 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 84 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

1    Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   Subject to and without waiving Defendants'

2    objection, to the extent the Court does not strike paragraph 84, it is disputed.

3            Defendants incorporate herein by reference their response to paragraph 83, above.

4    Defendants further dispute paragraph 84 to the extent that employees were informed that

5    *under certain circumstances* it was more advantageous to withdraw their accounts than

6    to transfer them to the Retirement Plan.   (*See, e.g.,* (Chapman Dep., PSOF Exh. F, at

7    Exh. 8 at HW000435; *Id.* at Exh. 9 at HW0001215; *see also* Garrett Brochure, attached

8    hereto at Tab 72, at HW0000426 (introducing the options a participant has with respect

9    to his SBA by noting "Let's look at the choices available and their effect on a retiring

10   employee.  When a participant retires, he or she will have the following choices with

11   regard to his or her new Garrett [SBA].").)

12           Defendants further dispute paragraph 84 because they ***did not*** recognize that

13   employees "may be worse off financially by withdrawing the SBA because of the

14   increased SBA offset."   For example, the exhibit Plaintiffs cite in paragraph 84

15   demonstrates that, in early 1984, actuary Loong Kong told David Gordon that, according

16   to his calculations, under certain hypothetical circumstances (*i.e.*, using a ***9.5% interest***

17   ***rate***), "as years go by and the new portion [the portion of the SBA compounded at 7.5%]

18   comes to predominate the account, we ***could*** reach a stage where from 55-58 you are

19   worse off withdrawing the entire amount rather than leaving it in."   (McLeod Dep.,

20   PSOF Exh. H, at Exh. 14 at HW0062075-76 (emphasis added).)[4]  In a subsequent letter,

21   Mr. Gordon noted that a ***different conclusion would likely be reached if the***

22   ***calculations were run using the current interest rate of 12.5%, rather than the 9.5%***

23   ***applied by Kong***.  (*See id.*)

24           **PSOF 85 RESPONSE:**  Because the Two Remaining Claims are limited to and

25   require proof that the amendment of the Signal Retirement Plan violated ERISA §

26

27   _____
     [4] Defendants maintain their position that this document is privileged.  Defendants do not
28   waive their objection to the compelled production of this document by disputing its
     meaning in response to Plaintiffs' assertions regarding the document.

204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 85 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Plaintiffs have settled and released any and all claims relating to early retirement benefits under the Garrett, Signal, and/or successor Plans.  (*See* DSAF ¶¶ 59-70, 83-87; *see also* PSA Motion at Section III.C.)  Defendants also object and move to strike pursuant to LRCiv 7.2(m) and LRCiv 56.1(a) paragraph 85, because it fails to "refer to a specific admissible portion of the record where the fact finds support."  The cited deposition testimony does not support Plaintiffs' argument that "that Defendants did not know early retirement benefits were protected by ERISA § 204(g) when the Plan was amended, admitted that the February 1985 Plan made no specific provision to protect them."

Subject to and without waiving its objection, to the extent the Court does not strike paragraph 85, it is disputed.  In deposition testimony previously cited by Plaintiffs, Mr. Covert explained that he did not join Honeywell until 1998, such that he could not speak to the events at the company from 1984 through 1998.  (Covert Dep., PSOF Exh. A, at 102:2-10; *see also* DR-PSOF ¶ 71.)  Mr. Covert further explained that the Signal Retirement Plan protected "Accrued Benefits," (*Id.* at 78:25-79:24), and Mr. Denlinger applied the early commencement factors in effect under the Garrett Retirement Plan as of 12/31/83 in calculating participants' Garrett accrued benefit.  (Jul. 14 2010 Denlinger Dep., attached hereto at Tab 99, at 128:8-131:23; *see also* DSOF ¶¶ 51-58.)

The Court has already explained that "ERISA's anti-cutback rule . . . applies to accrued early retirement benefits, retirement-type subsidies, and optional forms of benefits," and that "§1054(g)(2) does not single out early retirement benefits for special treatment; rather, it provides that they shall be protected to the same extent as other benefits."  (*Allen*, 382 F. Supp. 2d at 1149-50, 1156.).  The Signal Plan, as amended and restated effective January 1, 1984, protected early retirement benefits.  (*See* DSOF ¶¶ 51-58; *see also* Opp. Brief at Section II.A.1(iv).)

58

**PSOF 86 RESPONSE:**  Paragraph 86 is undisputed to the extent that Plaintiffs have, with the exception of immaterial typographical errors, correctly cited to Mr. Denlinger's explanation that the administrative calculation error, which resulted in 115 participants being paid or scheduled to have been paid less than their Garrett accrued benefit because of a misapplication of the Signal Retirement Plan's savings clause, was due to a comparison of the Garrett accrued benefit to the benefit under the Signal Retirement Plan on a gross basis as opposed to a net basis (*i.e.*, with the SBA offset). (*See* DSOF ¶¶ 80-84; *see also* DR-PSOF ¶ 75.)  Paragraph 86 is disputed to the extent that a participant who retired under the Garrett Retirement Plan prior to December 31, 1983 had his or her net benefit, with the SBA Offset, calculated under the Garrett Retirement Plan.  (*See* DSOF ¶¶ 4-6, 9-11.)

**PSOF 87 RESPONSE:**  Paragraph 87 is disputed.  Exhibit A to Mr. Denlinger's July 2010 Declaration contains a list of 42 plan participants for whom Johnson & Higgins, the Garrett Plan actuary, computed the Garrett accrued benefit.  (Jul. 14 2010 Denlinger Dep., attached hereto at Tab 99, at 82:6-84:15.)  Mr. Denlinger further explained in his July 2010 Declaration, and as Plaintiffs have presented in paragraph 86 of their SOF, the administrative calculation error was in part the result of the fact that there was "a plan-wide calculation of the Garrett Plan accrued benefit at the gross level for all participants as of December 31, 1983. . . . Because, as noted, the Signal Plan gross benefit was better than the Garrett Plan gross benefit, it appears it was determined that there was no need to continue to do this Signal Plan to Garrett Plan comparison once the initial calculations confirmed this fact."  Finally, in the deposition testimony Plaintiffs' cite in paragraph 87, Mr. Denlinger only testified, in response to questions from Plaintiffs' counsel, that he was unaware that ***Hewitt*** had performed a ***systematic comparison*** of "the Garrett employees 12/31/83 benefits performed at the time of retirement" from 1984 to 2000.  (July 14, 2010 Deposition Transcript of Kurt Denlinger, attached to PSOF at Exh. U ("Denlinger Dep., PSOF Exh. U"), at 93:15-94:4.)  Mr. Denlinger further explained that "there was not a failure to calculate the accrued benefit.

1    It was done.  The benefit was calculated, as I've stated here in my record.  And the

2    comparison was done to a point where, in my belief, they were satisfied that the gross

3    comparison was the right comparison."  (Denlinger Dep., PSOF Exh. U, at 97:14-20.)

4    Defendants incorporate herein by reference their response to paragraph 86, above.

5         Paragraph 87 is further disputed to the extent that the cited paragraph from Mr.

6    Altman's report does not support the "material fact" Plaintiffs purport to present in

7    paragraph 87.  Mr. Altman's cited paragraph 16 is also contradicted by the testimony of

8    another one of Plaintiffs' rebuttal experts, James Holland.  (*See* DSOF ¶ 84; *see also*

9    PSOF ¶ 50.)

10        **PSOF 88 RESPONSE:**  Because the Two Remaining Claims are limited to and

11   require proof that the amendment of the Signal Retirement Plan violated ERISA §

12   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

13   move to strike paragraph 88 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

14   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

15   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Any claim by Plaintiffs relating to an alleged

16   failure by the plan administrator to timely respond to requests for documents has been

17   settled and released.  *See, e.g.*, *Allen*, 382 F. Supp. 2d at 1167-69 (ruling on whether

18   Plaintiffs had stated a valid claim for relief on such a claim); *see also* DSAF ¶¶ 59-70;

19   PSA Motion at Sections II & III.)

20        Subject to and without waiving Defendants' objection, to the extent the Court

21   does not strike paragraph 88, it is disputed.  As Mr. Denlinger testified in the cited

22   deposition testimony, when the participants filed their administrative claim, Mr.

23   Denlinger had tables that appeared to be "Exhibit B," they simply were not labeled as

24   such.  Defendants were also able to locate the formal Exhibit B.  (May 11, 2010

25   Deposition Transcript of Richard Shea, attached hereto at Tab 90 ("Shea Dep."), at

26   17:14-20.)  Mr. O'Neill's cited deposition testimony relates where and when the

27   document labeled as "Exhibit B" was found.

28

1    **PSOF 89 RESPONSE:**    Defendants incorporate herein by reference their

2    response to paragraph 88, above.  Subject to and without waiving its objection, to the

3    extent the Court does not strike paragraph 89, it is disputed.  In addition to the reasons

4    set forth in their response to paragraph 88, above, Defendants dispute paragraph 89

5    because the cited exhibit does not support Plaintiffs' argument that "Defendants' Plan

6    actuary did not know how to calculate the Garrett accrued benefits after the claims were

7    submitted."  Moreover, Mr. Denlinger, the Defendants' Plan actuary, did know how to

8    calculate the Garrett accrued benefit.  (*See, e.g.*, DSOF ¶ 58.)  Mr. Denlinger further

9    explained his calculation of the Garrett accrued benefit at his deposition, which

10   calculation included using the early commencement factors in effect under the Garrett

11   Retirement Plan as of 12/31/83 and applying them at the date of commencement.  (Jul.

12   14 2010 Denlinger Dep., attached hereto at Tab 99, at 128:8-131:23.)

13       **PSOF 90 RESPONSE:**  Because the Two Remaining Claims are limited to and

14   require proof that the amendment of the Signal Retirement Plan violated ERISA §

15   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

16   move to strike paragraph 90 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

17   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

18   Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Subject to and without waiving their objection, to

19   the extent the Court does not strike paragraph 90, it is undisputed that there was an

20   operational error, which resulted in 115 participants being paid or scheduled to have

21   been paid less than their Garrett accrued benefit because of a misapplication of the

22   Signal Retirement Plan's savings clause, based on a comparison of the Garrett accrued

23   benefit to the benefit under the Signal Retirement Plan on a gross basis as opposed to a

24   net basis (*i.e.*, with the SBA offset).  (*See* DSOF ¶¶ 80-84; *see also* DR-PSOF ¶ 75.)

25       **PSOF 91 RESPONSE:** Defendants incorporate herein by reference their

26   responses to paragraphs 86-87 and 90, above.  Defendants dispute paragraph 91 to the

27   extent that Mr. Poulin's cited paragraph does not support the "material fact" Plaintiffs

28   purport to set forth in paragraph 91.  "Mr. Poulin admitted that over the six-year course

of this litigation that he had looked at only 50 benefit files out of the thousands provided, and he does not recall whether he looked at any benefit statements for those retiring in January or February 1984, when it would have been most likely that this calculation would have to be done.  In fact, . . . the actuary for the Garrett Plan, Johnson & Higgins, performed this calculation for participants who retired shortly after the merger of the Garrett Plan into the Signal Plan. . . .  In addition, a plan-wide calculation of the gross accrued benefit under the Garrett Plan for all participants as of December 31, 1983, was calculated and communicated to participants as part of the 1983 benefits statements provided to participants in mid-1984."  (Jul. 2010 Denlinger Decl., DSOF Tab 8, at ¶ 15 (internal citation omitted); *see also* Jun. 2010 Poulin Dep., attached hereto at Tab 98, at 443:5-16.)

     **PSOF 92 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 92 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Subject to and without waiving their objection, to the extent the Court does not strike paragraph 92, it is disputed.  Ms. Mathis did refer to section 4.10(c)(ii) of the Signal Retirement Plan in her January 24, 2003 letter, as Ms. Mathis made clear both in the letter itself and at her deposition.  As stated in that letter: "For Garrett employees, the 1985 Signal Retirement Plan retained the benefits accrued under the prior Garrett Retirement Plan, including the offset for Secured Benefit Account assets."  (Doc. 16, Ex. K, attached hereto at Tab 75, at HW0000465.)  As further stated in the letter: "Because participants' accrued benefits did not decrease as a result of the modification to the projected interest rate, the modification to the offset formula did not violate the anti-cutback rule."  (*Id.* at HW0000467.)  Ms. Mathis explained at her deposition that the plan provision she was relying on in making that statement was the Signal Retirement Plan's "provision that says a participant's protected

accrued benefit is never less than the benefit earned under the predecessor plan through the date that that predecessor plan was in operation" (May 14, 2010 Deposition Transcript of Kathleen Mathis Dep., attached hereto at Tab 92 ("May 14 Mathis Dep."), at 41:11-42:13)—in other words, the savings clause provision.  (*See* DSOF ¶¶ 51-57.) Ms. Mathis also explained at her deposition that she may not have always cited a specific plan provision that she relied on in the January 24, 2003 letter.  (May 14 Mathis Dep., attached hereto at Tab 92, at 44:1-13.)  In denying Plaintiffs' administrative appeal on all but one claim, Mr. Marcotte did specifically cite to section 4.10(c)(ii).  (*See* DSOF ¶ 214.)

**PSOF 93 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 93 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims, and as setting forth multiple "facts" that purport to be "material."  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   The issue of whether the application of the rehire provisions was a cutback is not relevant to the Two Remaining Claims and has been released.  (*See* DSAF ¶¶ 59-70; *see also* PSA Motion at Sections II & III.)

Subject to and without waiving their objection, to the extent the Court does not strike paragraph 93, it is disputed.  The "Exh. 14" Plaintiffs have supplied was not introduced at the May 14, 2010 Deposition of Kathleen Mathis, the cover and certificate pages of which Plaintiffs have provided at "Exh. W."  Moreover, when Plaintiffs attempted to introduce "Exh. 14" at Ms. Mathis' May 27, 2010 deposition, Ms. Mathis was unable to authenticate the document and could not recall any piece of information set forth therein.  (May 27, 2010 Deposition Transcript of Kathleen Mathis, attached hereto at Tab 96 ("May 27 Mathis Dep."), at 34:10-41:14.)  The cited "Exh. 11" from Mr. Denlinger's deposition contains a list of the 180 people who had an SBA account, took a distribution and were rehired.  (July 15, 2010 Deposition Transcript of Kurt

Denlinger, attached hereto at Tab 100 ("Jul. 15 2010 Denlinger Dep."), at 91:1-8; 95:19-96:6.)

**PSOF 94 RESPONSE:**    Defendants incorporate herein by reference their response to paragraph 93.  Mr. Amend is not one of the 260 participants that Plaintiffs have calculated as receiving lesser benefits under the Signal Retirement Plan at actual retirement as compared to his accrued benefit under the Garrett Retirement Plan.  (*See* DSOF ¶ 78 at n.7.)  Subject to and without waiving their objection, to the extent the court does not strike paragraph 94, it is undisputed that Mr. Amend's "Garrett Plan Benefit" is listed as $69 in the "Actives" tab at Column AW of the cited calculation file. Defendants dispute that Plaintiffs have correctly calculated that amount.   (Jul. 2010 Denlinger Decl., DSOF Tab 8, at ¶¶ 10, 22.)

**PSOF 95 RESPONSE:**    Defendants incorporate herein by reference their response to paragraph 93.  Mr. Amend is not one of the 260 participants that Plaintiffs have calculated as receiving lesser benefits under the Signal Retirement Plan at actual retirement as compared to his accrued benefit under the Garrett Retirement Plan.  (*See* DSOF ¶ 78 at n.7.)  Subject to and without waiving their objection, to the extent the court does not strike paragraph 95, it is undisputed.

**PSOF 96 RESPONSE:**  Defendants incorporate herein by reference their response to paragraph 93.  Mr. Amend is not one of the 260 participants that Plaintiffs have calculated as receiving lesser benefits under the Signal Retirement Plan at actual retirement as compared to his accrued benefit under the Garrett Retirement Plan.  (*See* DSOF ¶ 78 at n.7.)  Subject to and without waiving their objection, to the extent the court does not strike paragraph 96, it is undisputed.

**PSOF 97 RESPONSE:**    Defendants incorporate herein by reference their responses to paragraphs 86 and 93.  Mr. Amend is not one of the 260 participants that Plaintiffs have calculated as receiving lesser benefits under the Signal Retirement Plan at actual retirement as compared to his accrued benefit under the Garrett Retirement Plan. (*See* DSOF ¶ 78 at n.7.)  Subject to and without waiving their objection, to the extent the

court does not strike paragraph 97, it is disputed.  Defendants' dispute Plaintiffs' characterization of the savings clause as "purported."  The Signal Retirement Plan did contain savings-clause protections, and it has been administered consistent with that interpretation.  (*See* DSOF ¶¶ 47-48, 51-58, 214.)  "Mention" of that savings-clause protection was made in, for example, the January 1984 brochure's dual-calculation provisions that Plaintiffs have elsewhere referenced.  (*See, e.g.*, DR-PSOF ¶ 75.)  That brochure was distributed in or around mid January of 1984 to all employees, which would have included Mr. Amend.  (*See* DSOF ¶ 108.)  Having withdrawn his SBA in or around May 1993, Mr. Amend was able to enjoy those funds for many years, and could have invested that money at rates comparable to the 12.3% rates the SBA was invested in under the Signal Retirement Plan.  (*See, e.g.*, Jun. 2010 Poulin Dep., attached hereto at Tab 98, at 502:3-503:1.)

**PSOF 98 RESPONSE:**    Defendants incorporate herein by reference their responses to paragraphs 86 and 93.  Mr. Amend is not one of the 260 participants that Plaintiffs have calculated as receiving lesser benefits under the Signal Retirement Plan at actual retirement as compared to his accrued benefit under the Garrett Retirement Plan. (*See* DSOF ¶ 78 at n.7.)  Subject to and without waiving their objection, to the extent the court does not strike paragraph 98, it is undisputed.

**PSOF 99 RESPONSE:**  Defendants object and move to strike pursuant to LRCiv 7.2(m) and 56.1(a) paragraph 99 as failing to state a "material fact" and instead making a legal argument unsuccessfully disguised as an "actuarial practice."   Subject to and without waiving its objection, to the extent the Court does not strike paragraph 99, it is disputed.

Mr. Holland's cited paragraph 31 does not refer to any authority for the proposition that Plaintiffs' legal argument that an accrued benefit can be "calculated . . . at any point in time."  To the contrary, Mr. Holland acknowledged that he was aware of no authority on "[h]ow you calculate protected accrued benefits in the floor offset situation."  (August 3, 2010 Deposition Transcript of James Holland, attached hereto at

Tab 101 ("Holland Dep."), at 156:3-14.)    The only authorities Messrs. Poulin and Altman identified to support Plaintiffs' legal argument are (1) a Q&A from the 2005 ASPPA Pension Actuaries and Consultants Annual Conference; and (2) Question 9 from the 2001 PBGC Blue Book.  (Jul. 2010 Poulin Decl., PSOF Exh. O, at ¶ 6; July 23, 2010 Rebuttal Report of James Holland, attached to PSOF at Exh. E ("Holland Rebuttal Report, PSOF Exh. E"), at ¶ 8.)  As the ASPPA Q&A itself makes clear, however, it is not binding authority:

> The purpose of the meeting and calls was to provide the IRS officials with questions which were submitted by members of ASPPA.  It is intended that the responses or deferrals to the questions provide the basis for discussion at the 2005 Pension Actuaries and Consultants Conference during the IRS Question and Answer session.  ***The answers reflected in this presentation are the ASPPA representatives' interpretation of the IRS officials [sic] responses, and not direct quotes.***  They are intended to reflect as accurately as possible the statements made by the government representatives.  ***This material does not represent the official position of the Internal Revenue Service, the Treasury Department, or any other government agency, nor has it been reviewed or approved by the Service or Treasury.***

(Jul. 2010 Poulin Decl., PSOF Exh. O, at Exh. 3 (emphasis added).)  Mr. Holland was one of the presenters at the 2005 ASPPA meeting, and he did not cite the Q&A in his report because it is not "official guidance" of the Internal Revenue Service.  (Holland Dep., attached hereto at Tab 101, at 188:6-18.)  Mr. Holland further noted that he would not cite the Q&A as "authority for anything.  They can get it wrong and there's, I would not rely on those kinds of statements for this kind of report."  (*Id*. at 190:10-191:1.)  Mr. Altman also acknowledged that the PBGC "has no authority over the 411(d)(6) [anti-cutback] rules or regulations."  (Altman Dep., attached hereto at Tab 102, at 212:18-213:4.)  The PBGC Blue Book also contains a disclaimer similar to the one from the ASPPA Q&A:

> [*The government representatives'] responses* are merely the current views of the individuals and do not represent the position of the Pension Benefit Guarantee Corporation or any other governmental agency, and ***cannot be relied upon by any person for any purpose.  Moreover, the PBGC has not in any way approved this booklet or reviewed it to determine whether the statements herein are accurate or complete.***

1    (*Id.* at 214:4-215:6 (emphasis added).)

2        Defendants contend that the proper calculation of an accrued benefit in a floor-

3    offset arrangement requires adherence to (1) the definition of "accrued benefit" in both a

4    defined benefit plan and a defined contribution plan, as set forth in ERISA; and (2) the

5    terms of the governing plan.  While the gross benefit may be calculated on the day of the

6    plan amendment, the offset under the defined contribution plan, by statutory definition,

7    can move up or down until the day it is withdrawn or the employee terminates

8    employment.  Here, then, a participant's accrued benefit under the Garrett Retirement

9    Plan cannot be determined until the participant's date of termination, as that is the first

10   day on which the participant's SBA Offset, if any, can be calculated.  (*See* Doc. 676

11   (Defendant's Motion for Summary Judgment on All Remaining Claims) at 13-14; *see*

12   *also Allen* 382 F. Supp. 2d at 1151; Opp. Brief at Section II.B.2.)

13       **PSOF 100 RESPONSE:**    Defendants incorporate herein by reference their

14   response to paragraph 99, above.  Subject to and without waiving their objection, to the

15   extent the Court does not strike paragraph 100, it is disputed.  In addition to the reasons

16   set forth in Defendants' response to paragraph 99, Mr. Holland's cited paragraph does

17   not support the "material fact" Plaintiffs purport to assert.  If the Court does consider Mr.

18   Holland's cited paragraph 17 in this context, Defendants dispute that a hypothetical

19   termination analysis is an appropriate alternative to Plaintiffs' flawed "freeze theory" for

20   calculating an accrued benefit on any given "determination date."  (*See* DSOF ¶¶ 85-88;

21   Doc. 676 at 12-13; *Allen*, 382 F. Supp. 2d at 1151 ("A participant's 'annual benefit

22   commencing at normal retirement age,' . . . can mean nothing other than the *dollar*

23   *amount* of the annuity at retirement-i.e., the product of the plan's benefit formula.  That

24   is what the participant receives and what he is concerned with when he retains normal

25   retirement age-money[.]") (emphasis in original); *see also* Opp. Brief at Section

26   II.B.2.).)

27       **PSOF 101 RESPONSE:**  Because the Two Remaining Claims are limited to and

28   require proof that the amendment of the Signal Retirement Plan violated ERISA §

204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 101 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Subject to and without waiving their objection, to the extent the Court does not strike paragraph 101, it is disputed. Mr. Denlinger has explained that the "December 31, 1983 Garrett Plan accrued benefit is properly calculated using (i) pay and service as of December 31, 1983 and (ii) the SBA balance as of the date of termination, projected to Normal Retirement Date using the Garrett Plan's projection methodology—1.75% compounded semiannually. (*See* Garrett Plan, attached hereto at Tab 68, at § 4.1(c); Jul. Denlinger Decl., DSOF Tab 8, at ¶ 10; *see also* DSOF ¶ 58.) In the cited deposition testimony, Mr. Denlinger explained that before February 5, 2003, when he wrote the email reflected in "Exh. 6," he "wasn't in the practice of calculating accrued benefits for floor offset plans, hence" the questions he raised in "Exh. 6." (Denlinger Dep., PSOF Exh. U, at 127:4-13; 128:2-7 ("we were used to calculating accrued benefits, assuming a pay and service, which were the only two elements that we needed to worry about, were frozen on the termination date -- or frozen as if it were a termination date.").) Mr. Denlinger went on to explain that "assuming the employee terminations on the calculation date was clearly shorthand[.]" (Denlinger Dep., PSOF Exh. U, at 127:14-16.)

**PSOF 102 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 102 pursuant to LRCiv 7.2(m) and 56.1(a) as setting forth legal argument and failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Whether a plan amendment violates ERISA is a question for the Court to decide, and Mr. Denlinger's "understanding, as an actuary" is irrelevant to that inquiry. Paragraph 102 is irrelevant because the amendments to the Signal Retirement Plan effective January 1,

1984 did not cutback the accrued benefit of a single plan participant. Doc. 676 at 2-12. Subject to and without waiving their objection, to the extent the Court does not strike paragraph 102, it is disputed. (*See* Opp. Brief at Sections II.D & E.)

**PSOF 103 RESPONSE:** In response to paragraph 103, Defendants incorporate herein by reference their responses to paragraphs 99 and 100, above. Defendants further object and move to strike paragraph 103 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims because those claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways. (*See* DSAF ¶¶ 98-101; *see also* PSA Motion at Section III.E.)

**PSOF 104 RESPONSE:** Defendants incorporate herein by reference their responses to paragraphs 99 and 100, above. Subject to and without waiving their objection, to the extent the Court does not strike paragraph 104, it is disputed in addition to the reasons set forth in Defendants' response to paragraphs 99 and 100 because there is no "Rebuttal Report of Holland" provided at "Exh. O." Moreover, by Plaintiffs' own calculations, only 260 of the approximately 13,000 participants they considered when doing their calculations received an actual benefit at retirement that was purportedly less than their Garrett accrued benefit, none of which included a named Plaintiff. (*See* DSOF ¶¶ 76, 78.) By that same calculation, approximately 98% of the class received benefits under the Signal Retirement Plan at their actual date of retirement that were greater than their accrued benefit as of December 31, 1983 under the Garrett Retirement Plan. (*See* DSOF ¶ 77.) The correct figure is not 260, but 115 (*see* DSOF ¶ 79), and benefits for those participants affected by an administrative error have already been corrected, or are in the process of being corrected. (*See* DSOF ¶¶ 80-84.) Paragraph 104 is further disputed to the extent it rests on an improper understanding of how to calculate an accrued benefit. (*See* Opp. Br. at Section II.B.)

**PSOF 105 RESPONSE:** Paragraph 105 is disputed to the extent that Plaintiffs' administrative claim alleged numerous violations of numerous plans, and of ERISA.

1    (*See, e.g.*, Doc. 16, Ex. I, attached hereto at Tab 74, at HW0000446-447; DSOF ¶¶ 208,

2    210.)

3         **PSOF 106 RESPONSE:**  Paragraph 106 is undisputed.  (*See* DSOF ¶¶ 209, 211.)

4         **PSOF 107 RESPONSE:**  Paragraph 107 is undisputed.  (*See* DSOF ¶ 212.)

5         **PSOF 108 RESPONSE:**  Paragraph 108 is undisputed.  (*See* DSOF ¶¶ 209, 213-

6    215.)

7         **PSOF 109 RESPONSE:**  Paragraph 109 is disputed to the extent that Mr.

8    Marcotte did not merely "describe himself" as the Plan Administrator, he was the Plan

9    Administrator at the time he signed the "administrative denial letter" dated October 29,

10   2003.  (*See* Doc. 16, Ex. O, attached hereto at Tab 77; DSOF ¶ 209.)

11        **PSOF 110 RESPONSE:**  Contrary to LRCiv 56.1(a), Plaintiffs assert multiple

12   facts that purport to be material within paragraph 110.  Defendants respond to each

13   purported "material fact" in turn.

14        The first sentence is undisputed except as to the following:  First, that Plaintiffs'

15   argumentative reference to the "so-called 'fail-safe, that protects all participants, not

16   only [*sic*]['] is improper.  The Signal Retirement Plan contained a savings clause

17   provision that prevented a cutback in the accrued benefits of employees who were

18   merged into the Signal Retirement Plan effective January 1, 1984.  (*See* DSOF¶¶ 51-58.)

19   Mr. Marcotte referenced that provision at his deposition.  (May 12, 2010 Deposition

20   Transcript of Brian Marcotte, attached to PSOF at Exh. Z ("Marcotte Dep., PSOF Exh.

21   Z"), at 24:24-25:5.)  Second, Mr. Marcotte testified that he could not recall the actual

22   number of sample calculations Mr. Denlinger provided, but Mr. Marcotte estimated that

23   it was "[p]robably in the five, five to ten ballpark."  (Marcotte Dep., PSOF Exh. Z, at

24   21:19-22:1.)

25        Because the Two Remaining Claims are limited to and require proof that the

26   amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two

27   precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike the

28   second sentence in paragraph 110 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set

forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Subject to and without waiving its objection, to the extent the Court does not strike the second sentence of paragraph 110, it is disputed. Plaintiffs' record citation does not support the "material fact" Plaintiffs purport to present in the second sentence of paragraph 110. Mr. Marcotte testified that he believed that "part of the comparison" was "comparing the benefits that people received when they actually retired to the benefits they . . . had on 12/31/83. (Marcotte Dep., PSOF Exh. Z ,at 21:8-13.) Mr. Marcotte further testified that he had the calculations from Mr. Denlinger in front of him when they spoke (Marcotte Dep., PSOF Exh. Z, at 21:14-18), and that Mr. Denlinger walked Mr. Marcotte "through the calculations so that [Mr. Marcotte] had a clear understanding of the calculations. But [Mr. Marcotte] also asked for [Mr. Denlinger's] assurances that no Garrett participant who were [*sic*] now in the Signal plans received an accrued benefit less than the accrued benefit as of December 31, 1983 under the Garrett plans." (Marcotte Dep., PSOF Exh. Z, at 22:7-22.)

**PSOF 111 RESPONSE:** Contrary to LRCiv 56.1(a), Plaintiffs assert multiple facts that purport to be material within paragraph 111. Defendants respond to each purported "material fact" in turn.

Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 111's reference to the July 29, 2002 delegation of authority to Mr. Marcotte memorialized at "Doc. 225, Exh. B, at Ex. 2" as being "the same day Plaintiffs [*sic*] claims were received by Defendants" pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Subject to and without waiving its objection, to the extent the Court does not strike that reference in paragraph 111, it is undisputed. (*See* DSOF ¶ 209.)

Plaintiffs' statement that Defendants "made a delegation to Mr. Marcotte that permitted the sharing of the Company's pre-existing fiduciary responsibilities," as set forth in "Doc. 225, Exh. B, at Ex. 2," is undisputed.  (*See* DSOF ¶ 209.)

Plaintiffs' statement that said authorization emphasized that "the authorization to act was expressly *without limitation to any previously granted authority*" is disputed.  That purported quotation does not appear at the cited page, or anywhere in the cited document.

**PSOF 112 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 112 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   Mr. Marcotte testified that he did not even recall "when [he] found out what the impact of the costs of the claims would be. . . if it was during the appeal review or after discussions once the suit was filed[.]"   (May 12, 2010 Deposition Transcript of Brian Marcotte, attached hereto at Tab 91 ("Marcotte Dep."), at 64:7-11.)   Thus, even viewing cost or liability considerations in a vacuum, paragraph 112 has no bearing on Mr. Marcotte's decision of the administrative appeal.

Subject to and without waiving its objection, to the extent the Court does not strike that reference in paragraph 112, it is disputed.  The delegation of authority to Mr. Marcotte was an actual authorization, not a "purported authorization."  (*See* DSOF ¶ 209.)  Moreover, the delegation of authority specifically gave Mr. Marcotte the authority to "administer and interpret any Pension Benefit Plan."  (Doc. 225, Exh. B, at Exh. 2 at HW0012270.)

**PSOF 113 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 113 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Subject to and without waiving its objection, to the extent the Court does not strike the second sentence of paragraph 113, it is disputed. Defendants cannot guess which portions of the 2007 Form 10-Q Plaintiffs deem "relevant," and "Doc. 366" is a notice of errata that Plaintiffs filed on January 8, 2007, which does not contain an "Exh. A."  The cited deposition testimony of Mr. Marcotte does not support the "material fact" Plaintiffs purport to assert in paragraph 113; Mr. Marcotte simply explains that he "knew based on the basis of the claims that if the claims were granted it would be expensive and in hundreds of millions potentially of dollars." (Marcotte Dep., PSOF Exh. Z, at 65:11-14.)  Mr. Marcotte further testified that he did not even recall "when [he] found out what the impact of the costs of the claims would be. . . if it was during the appeal review or after discussions once the suit was filed[.]"  (Marcotte Dep., attached hereto at Tab 91, at 64:7-11.)

**PSOF 114 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 114 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Any claim by Plaintiffs relating to an alleged failure by the plan administrator to timely respond to requests for documents has been settled and released.  *See, e.g.*, *Allen*, 382 F. Supp. 2d at 1167-69 (ruling on whether Plaintiffs had stated a valid claim for relief on such a claim); *see also* DSAF ¶¶ 59-70; PSA Motion at Sections II & III.)

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 114, it is undisputed to the extent "Retirees" as used in paragraph 114 is intended to refer to those former participants under the Garrett Retirement Plan on whose behalf Martin & Bonnett filed the administrative claim discussed in paragraphs 105-110, above.

1    **PSOF 115 RESPONSE:**  Because the Two Remaining Claims are limited to and

2    require proof that the amendment of the Signal Retirement Plan violated ERISA §

3    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

4    move to strike paragraph 115 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

5    a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

6    Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Any claim by Plaintiffs relating to an alleged

7    failure by the plan administrator to timely respond to requests for documents has been

8    settled and released.  *See, e.g.*, *Allen*, 382 F. Supp. 2d at 1167-69 (ruling on whether

9    Plaintiffs had stated a valid claim for relief on such a claim); *see also* DSAF ¶¶ 59-70;

10   PSA Motion at Sections II & III.)

11       Subject to and without waiving Defendants' objection, to the extent the Court

12   does not strike paragraph 115, it is undisputed that Plaintiffs' correctly summarize Mr.

13   O'Neill's letter of November 19, 2002, to the extent "the plan" Plaintiffs refer to in

14   paragraph 115 is the "Garrett Retirement Plan as of January 1, 1976."  Paragraph 115 is

15   disputed to the extent that Mr. Denlinger had tables that appeared to be "Exhibit B," they

16   simply were not labeled as such.  (Denlinger Dep., PSOF Exh. U, at 147:3-17.)

17       **PSOF 116 RESPONSE:**  Because the Two Remaining Claims are limited to and

18   require proof that the amendment of the Signal Retirement Plan violated ERISA §

19   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

20   move to strike paragraph 116 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

21   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

22   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Any claim by Plaintiffs relating to an alleged

23   failure by the plan administrator to timely respond to requests for documents has been

24   settled and released.  *See, e.g.*, *Allen*, 382 F. Supp. 2d at 1167-69 (ruling on whether

25   Plaintiffs had stated a valid claim for relief on such a claim); *see also* DSAF ¶¶ 59-70;

26   PSA Motion at Sections II & III.)

27       Subject to and without waiving Defendants' objection, to the extent the Court

28   does not strike paragraph 116, it is disputed.  Mr. Denlinger had tables that appeared to

1   be "Exhibit B," they simply were not labeled as such.  (Denlinger Dep, PSOF Exh. U, at
2   147:3-17.)    The cited deposition testimony of Mr. Shea explains that he received a
3   document labeled "Exhibit B" from either David Gordon, who "represented one of the
4   entities," or from "the other law firm that had represented one of the companies, which
5   [Mr. Shea thought] was Debevoise[.]"  (May 11, 2010 Deposition Transcript of Richard
6   Shea, attached to PSOF at Exh. BB ("May 11 Denlinger Dep., PSOF Exh. BB"), at
7   16:12-17:20.)  The cited Rule 30(b)(6) Written Question Response simply sets forth the
8   date on which Defendants received a copy of a document labeled "Exhibit B."

9       **PSOF 117 RESPONSE:**  Because the Two Remaining Claims are limited to and
10  require  proof  that  the  amendment  of  the  Signal  Retirement  Plan  violated  ERISA  §
11  204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and
12  move to strike paragraph 117 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth
13  a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*
14  Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Plaintiffs themselves stated that the discovery of
15  a "document entitled Signal Retirement Plan bearing a signature page with a handwritten
16  notation  of  February  4,  1984 . . . does  not  alter  our  conclusion  that  the  Plan  raised
17  benefits ***as of January 1, 1984*** through a Plan description dated and distributed at that
18  time."  (Doc. 16, Ex. N, attached hereto at Tab 76, at HW0000512.)   Subject to and
19  without waiving Defendants' objection, to the extent the Court does not strike paragraph
20  117, it is disputed to the extent that Plaintiffs administrative claim letter, which pre-dated
21  Defendants' decision on Plaintiffs' administrative claim, argued that "[t]he first Signal
22  Retirement Plan in which Garrett employees were referenced is dated October, 1985."
23  (Doc. 16, Ex. I, attached hereto at Tab 74, at HW0000449.)

24      **PSOF 118 RESPONSE:**  Because the Two Remaining Claims are limited to and
25  require  proof  that  the  amendment  of  the  Signal  Retirement  Plan  violated  ERISA  §
26  204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and
27  move to strike paragraph 118 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth
28  a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Plaintiffs themselves stated that the discovery of a "document entitled Signal Retirement Plan bearing a signature page with a handwritten notation of February 4, 1984 . . . does not alter our conclusion that the Plan raised benefits *as of January 1, 1984* through a Plan description dated and distributed at that time."  (Doc. 16, Ex. N, attached hereto at Tab 76, at HW0000512.)  Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 118, it is disputed to the extent that the document Plaintiffs cite to in support of paragraph 118 is the appeal denial letter.  Defendants advised Plaintiffs of the plan document dated February 4, 1984 on October 1, 2003, before the appeal denial letter was issued.  (*Id*.)

**PSOF 119 RESPONSE:**  Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 119 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)  Plaintiffs themselves stated that the discovery of a "document entitled Signal Retirement Plan bearing a signature page with a handwritten notation of February 4, 1984 . . . does not alter our conclusion that the Plan raised benefits *as of January 1, 1984* through a Plan description dated and distributed at that time."  (Doc. 16, Ex. N, attached hereto at Tab 76, at HW0000512.)  Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 119, it is undisputed.

**PSOF 120 RESPONSE:** Because the Two Remaining Claims are limited to and require proof that the amendment of the Signal Retirement Plan violated ERISA § 204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and move to strike paragraph 120 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   Any claim by Plaintiffs relating to an alleged

1    failure by the plan administrator to timely respond to requests for documents has been

2    settled and released.  *See, e.g.*, *Allen*, 382 F. Supp. 2d at 1167-69 (ruling on whether

3    Plaintiffs had stated a valid claim for relief on such a claim); *see also* DSAF ¶¶ 59-70;

4    PSA Motion at Sections II & III.)

5         Subject to and without waiving Defendants' objection, to the extent the Court

6    does not strike paragraph 120, it is undisputed.

7         **PSOF 121 RESPONSE:**  Because the Two Remaining Claims are limited to and

8    require proof that the amendment of the Signal Retirement Plan violated ERISA §

9    204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

10   move to strike paragraph 121 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

11   a "material fact" that is relevant to resolution of the Two Remaining Claims.  (*See also*

12   Fed. R. Civ. P. 56; Fed. R. Evid. 402.)   Any claim by Plaintiffs relating to an alleged

13   failure by the plan administrator to timely respond to requests for documents has been

14   settled and released.  *See, e.g.*, *Allen*, 382 F. Supp. 2d at 1167-69 (ruling on whether

15   Plaintiffs had stated a valid claim for relief on such a claim); *see also* DSAF ¶¶ 59-70;

16   PSA Motion at Sections II & III.)

17        Subject to and without waiving Defendants' objection, to the extent the Court

18   does not strike paragraph 121, it is disputed to the extent that the cited deposition

19   testimony of Mr. Duff does not support the purported "material fact" set forth in

20   paragraph 121.  Mr. Duff testified that he did not know whether "the drafts of the Signal

21   Retirement Plan that were being circulated in the 1984 and 1985 time frame [were]

22   among the documents that were furnished to Honeywell in 2007."  (May 19, 2010

23   Deposition Transcript of David Duff, attached to PSOF at Exh. EE ("Duff Dep., PSOF

24   Exh. EE"), at 17:4-10.)

25        **PSOF 122 RESPONSE:**  Because the Two Remaining Claims are limited to and

26   require proof that the amendment of the Signal Retirement Plan violated ERISA §

27   204(g) in one of two precisely defined ways, (*see* DSAF ¶ 65), Defendants object and

28   move to strike paragraph 122 pursuant to LRCiv 7.2(m) and 56.1(a) as failing to set forth

a "material fact" that is relevant to resolution of the Two Remaining Claims. (*See also* Fed. R. Civ. P. 56; Fed. R. Evid. 402.) Any claim by Plaintiffs relating to an alleged failure by the plan administrator to timely respond to requests for documents has been settled and released. *See, e.g.*, *Allen*, 382 F. Supp. 2d at 1167-69 (ruling on whether Plaintiffs had stated a valid claim for relief on such a claim); *see also* DSAF ¶¶ 59-70; PSA Motion at Sections II & III.)

Subject to and without waiving Defendants' objection, to the extent the Court does not strike paragraph 122, it is undisputed.

## II.    Defendants' Statement Of Additional Facts Precluding Judgment For Plaintiffs

1.    When tax-qualified defined benefit plans merge, the common practice is to describe when one plan ceases to have a separate existence and when the survivor plan commences to cover the former participants in the combined plan. (June 21, 2010 Supplemental Declaration of Pam Baker, attached to DSOF at Tab 21 ("Baker Supp. Decl."), at 3.)

2.    No plan participant may be simultaneously covered in both the merging plan and the surviving plan, as it would lead to ambiguities as to which plan's terms apply to the affected participants. (Baker Suppl. Decl., DSOF Tab 21, at 4.)

3.    It is common practice for the plan being merged out of existence to describe the merger as occurring on a date (e.g., December 31), which is the last day of the independent existence of that plan, and for the survivor plan to describe the merger as taking effect the next day (e.g., January 1), which is the first day the survivor plan is made effective to cover b oth groups of employees. (Baker Suppl. Decl., DSOF Tab 21, at 5.)

4.    The merger dates described in the Garrett Plan and the Signal Plan (December 31, 1983 and January 1, 1984, respectively) are consistent with the practice described above. (Baker Suppl. Decl., DSOF Tab 21, at 5.)

5.     Plaintiffs' expert agreed that, to the extent the Signal Plan amendments were formally adopted after the effective date of the Retirement Equity Act, those amendments "would have to protect" early retirement benefits and optional forms of benefits.  (Holland Dep., attached hereto at Tab 101, at 203:16-205:4.)

6.     Section 4.10(c)(iii) of the Signal Plan provided that "the 'Accrued Benefit' as of December 31, 1983 of any Employee or Former Employee who was a participant in the Equity Plan prior to January 1, 1984 shall not be less than the amount of such 'Accrued Benefit' as of December 31, 1983 determined under the terms of the Equity Plan."  (Signal Retirement Plan, DSOF Tab 19, at HW0000352.)

7.     The Allied-Signal Retirement Program, amended and restated as of January 1, 1993, provided that "in no event shall a monthly normal retirement benefit determined under . . . section 5.1 be less than . . . the Member's Accrued Benefit determined as of December 31, 1992."  (Doc. 16, Ex. Q, attached hereto at Tab 78, at HW0000683, § 5.1(f)(2).)

8.     Defendants challenged Plaintiffs' "hypothetical termination" cutback theory at the deposition of each of Plaintiffs' expert witnesses.  (*See, e.g.*, Jun. 2008 Poulin Dep., attached hereto at Tab 86, at 161:12-171:1; Holland Dep., attached hereto at Tab 101, at 181:1-184:18; Altman Dep., attached hereto at Tab 102, at 194:11-199:25.)

9.     Defendants' experts disputed and did not adopt Plaintiffs' "hypothetical termination" analysis.  (*See, e.g.*, Sher Decl., DSOF Tab 1, at ¶ 31; Jul. 2010 Denlinger Decl., DSOF Tab 8, at ¶¶ 8, 10.)

10.     By December 1983 at the latest, the core features of what would become the amended and restated Signal Retirement Plan were known.  (Apr. 28 2010 Coffey Dep., attached hereto at Tab 88, at 53:9-12; 63:6-16.)

11.     The core plan features, including the formulas for calculating benefits, were communicated to the plan actuaries and administrators, and were reinforced through "various meetings, memorandums, administration forms and factors[.]"  (Apr. 28 2010 Coffey Dep., attached hereto at Tab 88, at 52:24-53:8; 55:19-56:2; 85:20-86:5.)

12.    The Social Security Offset was set forth in a January 1984 brochure, which included multiple references to, and sample calculations based on, a benefit formula that accounted for Social Security by deducting that amount from the final retirement benefit. (*See* DSOF ¶¶ 109-110.)

13.    The SBA Offset was communicated to plan administrators by at least January 1984, and was specifically explained as using a split 3.5%/7.5% projection forward interest rate under the terms of the Signal Retirement Plan effective January 1, 1984.  (McLeod Dep., attached hereto at Tab 93, at 135:10-137:16; Hon. Ex. 684, attached hereto at Tab 83, at HW0038262, ¶ 15.)

14.    James McLeod of Garrett Industrial Relations confirmed that Mr. Coffey's January 1984 memo (Hon. Ex. 684, *see* DSAF ¶ 13) served the "purpose of aiding [plan administrators] in having a uniform basis for calculating benefits" under the Signal Retirement Plan effective January 1, 1984.  (McLeod Dep., attached hereto at Tab 93, at 135:18-140:10.)

15.    Tom Donovan also confirmed that Signal benefits administrators received a draft of the amended and restated Signal Plan document in early 1984.  (Donovan Dep., attached hereto at Tab 87, at 262:4-263:12.)

16.    In early 1984, Mr. Donovan answered employees' questions about their benefits under the amended and restated Signal Plan by referring to those plan drafts. (Donovan Dep., attached hereto at Tab 87, at 264:9-13.)

17.    Mr. Donovan received a copy of the final amended and restated Signal Plan document in the second half of 1984.  (Donovan Dep., attached hereto at Tab 87, at 263:18-21.)

18.    There were not any instructions or information that Mr. Donovan gave employees based on the draft plan documents that he later found out were "wrong" under the final plan documents.  (Donovan Dep., attached hereto at Tab 87, at 265:4-8.)

19.    The amended and restated plan terms of the Signal Retirement Plan also went into effect on January 1, 1984. (Apr. 28 2010 Coffey Dep., attached hereto at Tab 88, at 54:11-15.)

20.    Any plan participant who retired after January 1, 1984 was "treated as if that plan was already adopted and in effect." (Covert Dep., attached hereto at Tab 94, at 17:7-19:17; *see also* April 29, 2010 Deposition of William Coffey, attached hereto at Tab 89, at 241:8-12.)

21.    For example, when Lyle Six retired in January 1984, his SBA offset was calculated at a rate "nearly double" that of the 3.5% rate used under the Garrett Plan. (Donovan Dep., attached hereto at Tab 87, at 176:6-181:22; Hon. Ex. 532, attached hereto at Tab 81, at HW0039789.)

22.    In June 1984, in response to questions Mr. Six raised about his benefit calculations, a Garrett benefits administrator explained that "the answer to your questions is found in the terms of the Signal Retirement Plan," and referred Mr. Six to that plan's provision, set forth in section 4.2(e)(i), that the "New Portion" (i.e., the post-surplus allocation portion) of a participant's SBA "is increased by compound interest at a 7.5% annual rate." (Hon. Ex. 532, attached hereto at Tab 81, at 0039792-793.)

23.    The Garrett-specific plan terms received "special attention" as the new plan was formally papered. (Apr. 28 2010 Coffey Dep., attached hereto at Tab 88, at 52:24-53:8; 86:11-19 (explaining that, because "Garrett was the largest subsidiary in the organization" and because Garrett "had plan features that were relatively unique," that "special attention was paid to be sure that their benefits were improved following the merger.").)

24.    There was no change to the Signal Plan's terms governing the calculation of benefits from January 1, 1984 through the February 5, 1985 execution of the plan document. (Apr. 28 2010 Coffey Dep., attached hereto at Tab 88, at 53:23-54:1; 86:6-10.)

25.     Simultaneously with the changes to the offset calculation formulas, the benefit enhancements under the amended and restated Signal Retirement Plan were also effective as of January 1, 1984.  (*See* DSOF ¶ 64; *see also* May 1984 SPD, attached hereto at Tab 73, at HW0000431 ("summariz[ing] the Retirement Plan's main features" for all former Garrett Plan participants who "automatically began participating in this [Signal] Plan on January 1, 1984.").)

26.     The benefit enhancement features referred to in the May 1984 brochure included the benefit improvements in, for example, (a) the definition of "final average compensation"; (b) the early retirement reduction factors; and (c) the 1% minimum benefits formula.   (May 1984 SPD, attached hereto at Tab 73, at HW0000434 & HW0000436.)

27.     The only Signal Plan that Plaintiffs' expert relied on to calculate damages was "[t]he Signal Companies, Inc. Retirement Plan dated February 4, 1984, which . . . Defendants . . . now . . . believe to have been executed on or about February 4, 1985 ('Signal Plan')[.]"  (Jun. 2010 Poulin Decl., attached at Tab 6 to the DSOF, at ¶ 6(c); *see also* Jun. 2010 Poulin Dep., attached hereto at Tab 98, at 386:8-387:24.)

28.     The 1976 Signal Plan could only be "wholly or partially amended or otherwise modified, including retroactive amendments to meet governmental requirements, from time to time by the Board of Directors."  (Sept. 2010 Kroll Decl., PSOF Exh. T, at Exh. 2 at HW0025348, ¶ 6.6.)

29.     The Signal Plan effective January 1, 1984 provided in relevant part that it could only be "wholly or partially amended or otherwise modified, including retroactive amendments to meet governmental requirements, from time to time by the Board of Directors[.]" (Signal Retirement Plan, attached hereto at Tab 71, at HW0000373, § 8.6.)

///

///

///

///

1

2

### III.    Defendants' Arguments In Support Of Their Request To Strike Certain Of Plaintiffs' Submissions Pursuant To LRCiv 7.2(m)(2)

3

**Mr. Holland's Untimely and Improper "Supplemental Report"**

4

5

6

7

30.    Pursuant to LRCiv 7.2(m)(2), Defendants move to strike Mr. Holland's purported Second Supplemental Report as untimely and improper.  Plaintiffs' summary judgment positions that rely on that "report" should be disregarded.  (*See, e.g.*, Doc. 678 at 3-4, 6; Doc. 679 at ¶¶ 16, 25, 44, 48, 56 & 60.)

8

9

10

31.    An expert witness must timely submit a report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." (Fed. R. Civ. P. 26(a)(2)(B)(i).)

11

12

13

32.    The Court's Seventh Revised Scheduling Order specifically instructed the parties that any expert disclosures had to be made on a timely basis consistent with the Federal Rules.  (Doc. 484 at ¶ E.)

14

15

16

33.    The Court's Seventh Revised Scheduling Order also provided all expert discovery had to be completed within 111 days of the close of fact discovery.  (Doc. 484 at ¶ F.)

17

18

34.    The Court subsequently ordered Plaintiffs to submit all rebuttal expert reports on July 23, 2010.  (Doc. 656.)

19

20

35.    The Court also ordered that, with one limited exception not applicable to Mr. Holland, expert discovery closed on August 4, 2010.  (Docs. 656, 666.)

21

22

23

24

36.    On July 23, 2010, Mr. Holland submitted an expert report on behalf of Plaintiffs.  (*See* Doc. 677 (Defendants' Statement of Facts in Support of Their Motion for Summary Judgment on All Remaining Claims ("DSOF")), at Tab 14.)  Defendants took his deposition on August 3, 2010.  (*See id.* at Tab 15.)

25

26

27

37.    On the evening of Friday, September 17, 2010—one business day before summary judgment motions were due—Plaintiffs forwarded a new, unsigned report from Mr. Holland that was labeled a supplemental report.  (*See* Doc. 679-2 at Ex. C.)

28

38.    Mr. Holland's "supplemental report" does not rebut the opinions expressed by either of Defendants' experts.  Instead, Mr. Holland's "supplement" states that he was asked to "review and compare the accrued benefits under the Signal Plan as amended in February 1985 taking into account service through January 1, 1985." (Doc. 679-2 at Ex. C, at ¶ 2.)

39.    No expert in this case has previously submitted any analysis based on Mr. Holland's newly-tendered January 1, 1985 date.

40.    In the unsigned report, Mr. Holland referred to several actuarial calculations he claims to have performed in support of this analysis.  (*See, e.g.*, Doc. 679-2 at Ex. C, at ¶¶ 3-4.)

41.    Neither Plaintiffs nor Mr. Holland have ever provided those calculation spreadsheets to Defendants.

42.    Mr. Holland explains that to perform this new comparison, he "utilized the exhibits to the report of Defendants' actuary Lawrence Sher," as well as files from the Data Stipulation that Defendants provided to Plaintiffs in 2008.  (*See* Doc. 679-2 at Ex. C, at ¶ 3.)

43.    Those materials were available to Mr. Holland well in advance of the July 23, 2010 deadline for his rebuttal report.  (*See* July 2, 2010 Declaration of Lawrence Sher, attached at Tab 1 to the DSOF; *see also* June 16, 2008 Declaration of Claude Poulin, attached at Tab 30 to the DSOF, at ¶ 16 (referencing the Data Stipulation and his use of those materials to perform his "calculations and analysis" on behalf of Plaintiffs).)

44.    Mr. Holland also states that he was asked to "review the early retirement reduction factors for participants who terminate employment before age 55." (Doc. 679-2 at Ex. C, at ¶ 5.)

45.    Even if early retirement reduction factors remained at issue in this case, which they do not, (*see* DSAF ¶¶ 59-70, 83-87, PSA Motion at III.C.), Mr. Holland states that he relied on Exhibit B to the Garrett Retirement Plan to identify those factors. (*See id.*)

84

1    46.    Exhibit B to the Garrett Retirement Plan was available to Mr. Holland well

2    before the July 23, 2010 deadline for his rebuttal expert report.  (*See, e.g.*, Doc. 679 at ¶

3    114 (Plaintiffs stating that they received a copy of Exhibit B in June 2003).)

4    47.    Finally, Mr. Holland states that he was "asked to determine if participants

5    who terminated employment after July 1, 2000 would have received a benefit greater

6    than the benefit determined using an amendment applied to participants who retired on

7    and after July 1, 2000[.]"  (Doc. 679-2 at Ex. C, at ¶ 6.)

8    48.    To perform this calculation, Mr. Holland states that he relied on a

9    spreadsheet that was part of Mr. Sher's July 2, 2010 declaration.  (Doc. 679-2 at Ex. C,

10    at ¶ 6.)

11    49.    Again, Mr. Sher's July 2, 2010 declaration was available to Mr. Holland

12    well in advance of the July 23, 2010 deadline for his rebuttal report.

13    50.    An expert must supplement his opinions, but may do so after court-

14    imposed deadlines only where the supplemental opinion contains new information that

15    was not known by the expert at the time of his original report.  (*See* Fed. R. Civ. P.

16    26(e); *Toomey v. Nextel Comms., Inc.*, 2004 WL 5512967, at *4-5 (N.D. Cal. Sept. 23,

17    2004) (explaining that the supplementation requirement is not intended to "permit parties

18    to add new opinions to an expert report based on evidence that was available to them at

19    the time the initial expert report was due.").)

20    51.    If a party fails to comply with these rules, that party is "not allowed to use

21    that information or witness," *unless* the failure was "substantially justified" or

22    "harmless."  (Fed. R. Civ. P. 37(c)(1).)

23    52.    Thus, a "supplemental report" will be deemed untimely and excluded

24    pursuant to the Federal Rules if it attempts to permit new expert testimony without

25    permission or justification.  (*See, e.g. Evanston Ins. Co. v. Hearthstone of Sun City LLC*,

26    2010 WL 396366 at * 2 (D. Ariz. Jan. 29, 2010) (striking untimely attempt to add a

27    rebuttal expert); *Benjamin v. Coker*, 2008 WL 2163911 at *2 (D. Ariz. May 22, 2008)

28    (striking untimely expert report and refusing to consider it in deciding summary

judgment motion); *see also Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058-60 (9th Cir. 2005) (holding that lower court did not abuse its discretion when it excluded, in connection with a summary judgment motion, untimely disclosed expert opinions and related evidence).)

**Plaintiffs' Violation of the Partial Settlement Agreement ("PSA")**

53.     Defendants are separately moving to enforce the PSA in view of Plaintiffs' repeated violations of that agreement through their assertion of released claims that they have improperly revived, *inter alia*, in their motion for summary judgment.   Under LRCiv 7.2(m)(2), the Court should strike barred arguments and evidence Plaintiffs purport to assert on summary judgment, as specifically detailed below.

54.     Plaintiffs commenced this class action lawsuit on March 1, 2004, filing a 25 page, 91 paragraph Complaint.  (Doc. 1.)

55.     Plaintiffs then filed a 28 page, 102 paragraph Amended Complaint asserting additional claims against Defendants.  (Doc. 47.)

56.     In the Amended Complaint, Plaintiffs asserted multiple claims against Defendants for purported violations of ERISA and the terms of the Garrett Retirement and Severance Plans (and the applicable successor plans).  (Doc. 47 at ¶¶ 73-102 (setting forth five counts that allege violations of, for example, ERISA's vesting, nonforfeitability, and accruing provisions and disclosure requirements, and various plan terms).)

57.     On July 19, 2005, the Court granted partial summary judgment for Plaintiffs on some of their claims, and dismissed with prejudice many others.  (*Allen v. Honeywell Retirement Earnings Plan*, 382 F. Supp. 2d 1139, 1172-73 (D. Ariz. 2005).)

58.     The dismissed claims included, for example, Plaintiffs' claims that Defendants "violated the terms of the Signal Retirement Plan . . . by failing to apply a 3.5% projection rate to Garrett participants eligible to commence benefits as of December 31, 1983," and that Defendants failed to "adequately disclose certain

information in their SPDs." (*Allen v. Honeywell Retirement Earnings Plan*, 382 F. Supp. 2d 1139, 1172-73 (D. Ariz. 2005).)

59.    After subsequent discovery and extensive negotiations and mediation sessions, the parties agreed to the PSA in October 2007. (*See* Doc. 312-2.)

60.    As part of the PSA, Plaintiffs released:

> ***any and all actions, causes of action, claims, demands, liability, obligations, promises, rights and suits whatsoever,*** . . . whether known or unknown, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, ***that were asserted or could have been asserted . . . that arise out of or relate to the Garrett Retirement Plan, the Signal Retirement Plan, the Allied Signal Retirement Program, the Retirement Plan, the Garrett Severance Plan, the Garrett Secured Benefit Account and/or the Secured Benefit Plan*** (said plans as amended and in effect from time to time up through and including October 1, 2007, without regard to any amendment adopted thereafter), ***with the sole exception of the Three Remaining Claims***. (Doc. 312-2 at § 4.01 (emphasis added).)

61.    The parties reserved their right to prosecute and defend the remaining claims "in any manner they see fit; provided, however . . . that the maximum amount of Subsequent Recovery . . . shall not exceed" $500 million," (Doc. 312-2 at § 2.10), and Plaintiffs specifically covenanted not to prosecute, assert or maintain a released claim in any action or proceeding, including the instant litigation. (*Id*.at § 4.02.)

62.    In return, Defendants paid Plaintiffs in excess of $35 million, and agreed to stop charging administrative fees to the Secured Benefit Accounts. (Doc. 312-2 at §§ 3.03(b), 3.09.)

63.    The Three Remaining Claims under the PSA were defined as the SBA Offset Claim, the Social Security Offset Claim and the Minimum Benefits Claim. (Doc. 312-2 at 18.)

64.    Since the PSA, the Court has entered summary judgment in Defendants' favor on the Minimum Benefits Claim. (Doc. 555.)

65.    As a result, only two claims remain in this case. Those Two Remaining Claims are defined as follows:

1

2

**"SBA Offset Claim"** means the claims, purported to be brought under ERISA §§ 502(a)(1)(B) and 502(a)(3), that Defendants violated ERISA § 204(g) by increasing from 3.5% to 7.5% the interest rate used to project forward a portion of Secured Benefit Account balances from termination of employment to age 65 for purposes of calculating the SBA Offset following the merger of the Garrett Retirement Plan into the Signal Retirement Plan. (Doc. 312-2 at 15-16.)

3

4

5

6

7

**"Social Security Offset Claim"** means the claims, purported to be brought under ERISA §§ 502(a)(1)(B) and 502(a)(3), that Defendants violated ERISA § 204(g) by applying the Social Security offset formula contained in Section 4.2(b) of the Signal Retirement Plan to service credited before January 1, 1984. (*Id.*)

8

9

10

11

12

13

66.    The PSA further defined the "Garrett Retirement Plan" as "The Garrett Corporation Retirement Plan for Employees of The Garrett Corporation and Its Participating Subsidiary Companies in effect on December 31, 1983" and the "Signal Retirement Plan" as "The Signal Companies, Inc. Retirement Plan, as amended and restated effective January 1, 1984 with amendments adopted or effective before January 1, 1993." (Doc. 312-2 at 9, 16.)

14

15

16

67.    The PSA provides that the Court may enforce it through "specific performance and/or compensatory damages and/or such other legal and/or equitable relief for the breach as may be available under applicable law." (Doc. 312-2 at § 5.11.)

17

18

19

20

68.    The Court approved the PSA on February 8, 2008, dismissing with prejudice all claims asserted in the litigation (except the now two narrowly-defined remaining claims), and releasing all "Released Claims" as set forth in the PSA. (Doc. 402 at ¶¶ 8, 11 & 13.)

21

22

69.    The Court's Order permanently bars and enjoins Plaintiffs from prosecuting "any such Released Claim against any Released Party." (Doc. 402 at ¶ 11.)

23

24

70.    The Court also maintained jurisdiction to interpret and enforce the PSA. (Doc. 402 at ¶ 20.)

25

26

27

28

71.    Class action settlements are favored, *see, e.g., In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008), and Courts enforce those agreements by giving the terms of broad releases their plain and ordinary meaning. *See, e.g., Howard v. Am. Online Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (holding that, where settlement barred

88

claims that "arise out of or are related to the matters referred to" in the complaint, plaintiffs could not "repackage the claims asserted and settled" in a subsequent litigation).

72.    A court's approval of a PSA constitutes a final judgment on the merits of the underlying claims.  *See, e.g., Reyn's Pasta Bella, LLC. v. VISA USA. Inc.*, 442 F.3d 741, 746 (9th Cir. 2006).

73.    A class PSA bars not just the claims alleged in the complaint, but also any claims arising out of or related to the factual predicate alleged in the complaint.  *See, e.g., Reyn's Pasta*, 422 F.3d at 748-49 (barring claims that "arise from an identical factual predicate" as the released claims); *Howard*, 208 F.3d 741 at 747 (same).

74.    Likewise, a plaintiff is barred from seeking any form of relief that was released under a PSA agreement.  *See, e.g.*, *Mayfield v. United States*, 599 F.3d 964, 968 & 972 (9th Cir. 2010) (dismissing case where only form of relief plaintiff sought had been previously "bargained away").

75.    Plaintiffs have violated the terms of the PSA and this Court's February 8, 2008 Order by, *inter alia*, asserting Released Claims in their Motion for Summary Judgment.  (*See* Doc. 678.)

76.    In moving for summary judgment on the Social Security Offset Claim, Plaintiffs claim that class members "experienced an immediate reduction in their accrued benefits under the 1976 Plan's SSI offset formula."  (Doc. 678 at 5.)

77.    The PSA limits the Social Security Offset Claim to a cutback caused by the Social Security formula set forth in the Signal Plan that was effective January 1, 1984, which is, by definition, not the 1976 Signal Plan.  (*See* Doc. 312-2 at 16; *see also* DSAF ¶ 65.)

78.    Because any claim for a reduction in benefits under the 1976 Signal Plan is not one of the two remaining claims, it is expressly released and barred by the PSA. (Doc. 312-2 at §§ 4.01-02.)

79.     The Court should enforce the PSA by excluding Plaintiffs' evidence and argument regarding the 1976 Signal Retirement Plan.  (*See, e.g.*, Doc. 678 at 5; Doc. 679 at ¶¶ 18, 21-26.)

80.     Plaintiffs also now claim that "from 1993 forward there was absolutely no plan provision protecting employees' accrued benefits as of 12/31/83 under the Garrett Plan."  (Doc. 678 at 14.)

81.     Plaintiffs' assertion regarding the 1993 Signal Plan is beyond the scope of the narrowly defined remaining claims.  (DSAF ¶ 65.)

82.     The Court should enforce the PSA by excluding Plaintiffs' evidence and argument regarding the 1993 Signal Plan.  (*See, e.g.*, Doc. 678 at 14.)

83.     Plaintiffs claim that the Signal Plan failed to protect early retirement benefits, early commencement factors and actuarial conversion actors used to calculate benefits.  (Doc. 678 at 10-13.)

84.     The remaining claims pertain only to Normal Retirement Benefits, which are calculated under Section 4.2 of the Signal Plan:  the SBA Offset Claim pertains to the projected interest rate in Section 4.2(e), and the Social Security Offset Claim pertains to the benefit formula "contained in Section 4.2(b)."  (*See* DSAF ¶ 65; *see also* Doc. 16, Ex. E at § 4.2.)

85.     Early retirement factors are set forth in section ***4.4*** of the Signal Plan, a separate section that addresses Early Retirement Benefits.  (Doc. 16, Ex. E at § 4.4.)

86.     Plaintiffs' claims for early retirement benefits and early commencement and actuarial conversion factors are not encompassed in the two remaining claims.  (*See* DSAF ¶ 65.)

87.     The Court should enforce the PSA by excluding Plaintiffs' evidence and argument regarding early retirement benefits.  (*See, e.g.*, Doc. 678 at 4, 6, 10-15; Doc. 679 at ¶¶ 16, 33, 35, 48, 85.)

88.     Plaintiffs further claim that the May 1984 SPD was the governing plan document until the Signal Plan was formally executed on February 4, 1985, and that the

1    May 1984 SPD was deficient because it did not expressly disclose the interest rate used

2    to project the SBA offset or the "wear away" impact caused by the SBA Offset changes.

3    (Doc. 678 at 6, 16 & 23.)

4            89.    In Count V of the Amended Complaint, Plaintiffs alleged that Defendants

5    violated ERISA because certain SPDs allegedly failed to disclose, or were misleading

6    about, the changes to the SBA offset rate.  (*See* Doc. 47 at ¶ 101.)

7            90.    Plaintiffs further alleged:

8            Pursuant to §§ 502(a)(1)(B) and (a)(3) of ERISA, Plaintiffs and Class
             Members are entitled to declaratory, injunctive and equitable relief, *inter*
9            *alia*, declaring that Defendants violated the disclosure provisions of
             ERISA and enjoining Defendants from applying changes to the SBA
10           Offset provisions of the Garrett Retirement Plan . . . that were not
             disclosed in the summary plan descriptions and granting Plaintiffs other
11           relief including, *inter alia*, all benefits due under the terms of the Plans . . .
             (Doc. 47 at ¶ 102.)
12

13           91.    In their opposition to Defendants' Motion to Dismiss, Plaintiffs argued that

14   the SPDs were deficient because they allegedly (i) failed to disclose the interest rates

15   used to calculate the SBA offset; and (ii) included misleading statements regarding that

16   offset.  (Doc. 68 at 4, 7-9.)

17           92.    Plaintiffs further asserted that the claim in Count V arose under ERISA

18   § 502(a)(1)(B) as a claim for benefits under the terms of the plan "because **the SPD is**

19   **the Plan**, if with respect to disclosure of the offset, it is the more favorable of the two

20   documents."  (Doc. 68 at 14) (emphasis added).)

21           93.    The Court disagreed with Plaintiffs, and specifically held that their

22   "argument has no merit.  No case has ever held that a mere failure to include the specific

23   methodology used to calculate a benefit is an ERISA violation. . . . An SPD is a

24   summary, and is not required to answer every conceivable question that a participant

25   may have."  (*Allen*, 382 F. Supp. 2d at 1170 (internal quotations and citation omitted).)

26           94.    The Court dismissed Count V with prejudice, holding that the 1984 SPD

27   satisfied ERISA's disclosure requirements and was not misleading.  (*Allen*, 382 F. Supp.

28   2d at 1169-73.)

95.    Although they litigated and lost this very claim, Plaintiffs are now again arguing that the May 1984 SPD constituted "the plan." (*See, e.g.*, Doc. 678 at 5-6, 23.)

96.    Plaintiffs are specifically barred from asserting all claims dismissed by this Court under the PSA. (*See* Doc. 402 at ¶¶ 8, 15; *see also* Doc. 386 at 12 (nothing that "[t]he Partial Settlement resolves all of the claims that were dismissed by the Court . . .").)

97.    The Court should enforce the PSA by excluding Plaintiffs' evidence and argument regarding the May 1984 SPD. (*See, e.g.*, Doc. 678 at 5-6, 13, 16, 23; Doc. 679 at ¶¶ 27-35.)

98.    Plaintiffs claim that Defendants miscalculated participants' December 31, 1983 accrued benefit under the Garrett Plan. (Doc. 678 at 18-19.)

99.    Neither of the two remaining claims preserve a claim challenging the method for calculating the accrued benefit under the Garrett Plan ***prior to the merger*** of the Garrett and Signal Plans (i.e., prior to January 1, 1984). (*See* DSAF ¶ 65.)

100.    Plaintiffs have also released any challenge to the method of calculating the SBA Offset ***prior*** to termination of employment. (*See* DSAF ¶¶ 65-69.)

101.    The Court should enforce the PSA by excluding Plaintiffs' evidence and argument regarding the calculation of Garrett Plan participants' accrued benefits as of December 31, 1983. (*See, e.g.*, Doc. 678 at 18-19; Doc. 679 at ¶ 103.)

Respectfully submitted this 5th day of November, 2010.

OSBORN MALEDON

By:    /s/David B. Rosenbaum.

David B. Rosenbaum
Dawn L. Dauphine
Osborn Maledon, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, AZ  85012-2794

Michael L. Banks
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

Howard Shapiro
Robert Rachal
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130

Amy Covert
PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, NJ 07102-5211

Christopher Landau, P.C.
Craig S. Primis, P.C.
Abigail Diaz-Pedrosa
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I do certify that on November 5th, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


/s/ Kelly Dourlein