**SUSAN MARTIN (AZ#014226)**
**DANIEL L. BONNETT (AZ#014127)**
**JENNIFER KROLL (AZ#019859)**
**MARTIN & BONNETT, P.L.L.C.**
1850 N. Central Ave. Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com

**PETER K. STRIS**, *Pro Hac Vice*
**STRIS & MAHER, LLP**
1920 Abrams Parkway, Suite 430
Dallas, TX 75214
Telephone: (214) 224-0091
Peter.stris@strismaher.com

**SHAUN P. MARTIN,** *Pro Hac Vice*
**UNIVERSITY OF SAN DIEGO**
**SCHOOL OF LAW**
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
smartin@sandiego.edu

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barbara Allen; Richard Dippold; Melvin Jones; Donald McCarty; Richard Scates and Walter G. West, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Honeywell Retirement Earnings Plan; Honeywell Secured Benefit Plan; Plan Administrator of Honeywell Retirement Earnings Plan; and Plan Administrator of Honeywell Secured Benefit Plan, <br><br> Defendants. | No. CV04-0424 PHX ROS <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br> **(Oral Argument Requested)** |

Plaintiffs hereby oppose Defendants' motion for summary judgment. This opposition is supported by Plaintiffs' Separate Statement of Facts (Doc. 679; herein "S:") and exhibits thereto, Plaintiffs' Response to Defendants' Statement of Facts (herein "R:") and Plaintiffs' Additional Controverting Statements of Fact and exhibits thereto (herein "A:") and the record before this Court.

### INTRODUCTION

Following the Signal Plan amendments, many Garrett employees worked, sometimes for decades, only to wind up with no pension benefits at all, benefits that were less than their 12/31/83 Garrett Plan benefits or benefits only minimally improved over the benefits already earned through 12/31/83.[1] While the so-called "wear-away" of pension benefits might have passed muster before adoption of the Pension Protection Act in 2006, (which outlawed it),[2] the cases upholding wear-away did so *only* where the language of the amended plan unconditionally promised the "greater of" the "actuarial equivalent" of all benefits accrued under the prior plan up to the date of the amendment or the benefits under the new plan *and* where the plan language was consistent with the justified expectations of the employees based on the disclosures made at the time of the amendments. Nothing even remotely resembling the "greater of" plan language in those wear-away cases is present here and Defendants' disclosures to Garrett employees were the polar opposite of the disclosures found to satisfy ERISA requirements in those cases. (*See*, e.g., S:74-81, R:148.)

It is undisputed that Garrett employees were never told that their Garrett Plan benefits were reduced or, at best, frozen and that they would only receive the greater of their Garrett benefits computed as of 12/31/83 or their Signal benefits at the time of retirement. To the contrary, Garrett employees were led to believe that both formulas would continue in tandem until retirement, and they were expressly advised in 1984 that upon retirement, their benefits would be computed under both formulas and they would receive the higher of their benefits

---

[1] See, e.g., S:57-64, 82-84, 93-97; A:9, 10, 13-16.

[2] 29 U.S.C. §1054(b)(5)(B)(iii) (2006).

under the Garrett formulas or the Signal formulas.  (S:75-79, 81.)  Before the merger Defendants had intended to capture the surplus in the Severance Plan had they found a legal and politically acceptable way to do so.  (S:65-69.)  When Defendants were forced to abandon their direct surplus recapture strategy based on concerns over legality, employee morale and bad press, they devised an indirect way to recapture the surplus:  changing the interest rate used to calculate the SBA offset, which, they determined, would revert between 40 and 50 cents on every dollar back to the company.  (S:65-72.)  Garrett employees, (who were never advised about the interest rate changes), were told that the company was being very generous in allocating the surplus assets in the Severance Plan to them, (S:74-79; R:148) despite the fact that it was a fundamental legal requirement for claiming the favorable tax advantages of a defined contribution plan. *See generally,* John H. Langbein & Bruce A. Wolk, *Pension and Employee Benefit Law* 222 (3d ed. 2000).  Having been told that their benefits would be at least as good under the Signal formulas as they were under the Garrett formulas calculated at the time of retirement, and not knowing that the surplus was being reverted back to the company by changes to the interest rates that inflated the SBA offset and reduced their benefits, Garrett employees were hoodwinked.  (See, e.g., S:77.)

The law does not sanction Defendants' proposed retrospective determination of whether the amendments reduced accrued benefits at the time they were adopted.  Something illegal *ab initio* cannot be made legal through "actuarial sleight of hand."  *Miller v. Xerox Ret. Income Guar. Plan*, 464 F.3d 871, 876 n.5 (9th Cir. 2006).  "When Congress enacted ERISA, it 'wanted to...make sure that if a worker has been promised a defined benefit pension upon retirement – and if he has fulfilled whatever conditions are required to obtain it – he actually will receive it.'" *Allen v. Honeywell Ret. Earning Plan*, 382 F.Supp.2d 1139, 1150 (D. Ariz. 2005)  (*quoting Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) (*quoting Nachman Corp. v. Pension Benefit Guaranty Corporation,* 446 U.S. 359, 375, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980)). *See also Central Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 743 (2004) ("There is no doubt about the centrality of ERISA's object of protecting employees' justified expectations of receiving the benefits their employers promise them.").

There is no genuine issue of material fact that 71% of all class members suffered a

reduction in their accrued benefits as of January 1, 1984. (S:54.) Because the Signal Plan changes reduced Garrett employees' accrued benefits in violation of ERISA §204(g), Defendants' motion for summary judgment should be denied and Plaintiffs' motion for summary judgment should be granted.[3]

**ARGUMENT**

### I.    71% OF CLASS MEMBERS WERE INJURED BY THE UNLAWFUL CUTBACK IN THEIR ACCRUED BENEFITS ON JANUARY 1, 1984 AND PLAINTIFFS HAVE PRESENTED ADMISSIBLE EVIDENCE OF THEIR INJURIES

In discussing Plaintiffs' experts' findings on this subject, Defendants do not and cannot dispute that measured on the day after the effective date of the amendment, 71% of participants' accrued benefits were reduced by the net effect of the amendments of the Plan made applicable on that date. (S:54; R:85.) The only issues are questions of law regarding 1) whether plaintiffs' calculations utilizing the date immediately before and immediately after the plan amendments is proper and 2) whether the so-called savings clause somehow shielded Defendants from a violation of the statute.[4] (See DSOF ¶¶ 11, 43, 85, 87, 88.) Defendants' claim that Plaintiffs' calculation of the net effect of the reduction in accrued benefits on the day before and after the amendment has "no grounding in law or fact" is wishful thinking. Against a backdrop of settled and dispositive law and regulations, it is Defendants who fail to cite a single authority in support of their already rejected claim that the reduction in accrued benefits cannot or should not be measured as of the applicable amendment date. In asking the Court to ignore the reduction in benefits effectuated at the

---

[3]Given that Defendants expressly excluded the SBA offset, non-vested benefits and early retirement benefits from the definition of accrued benefits and said so both in the Plan and the May 1984 SPD, (S:35), their claim that the Plan nevertheless promised to protect those benefits is based on language that would be at best accidental. Had Garrett employees known the truth, they could have made appropriate decisions regarding remaining with the company, negotiating for higher compensation or planning and saving differently for retirement.

[4]While Defendants' statute of limitations argument also fails as a matter of law and summary judgment dismissing that defense is proper, there are genuine factual issues that would, in any event, preclude summary judgment. Defendants' argument regarding damages is likewise without merit.

moment the Plan was amended, Defendants totally abandon the same Treasury regulations on which they relied in asking the Court to vacate its summary judgment.

**A.    Under ERISA §204(g), the Legality of an Amendment Must Be Determined as of the Applicable Amendment Date**. Defendants' reduction of accrued benefits on Day 1 cannot be lessened or be made to disappear by retrospectively determining illegality and damages at actual retirement.  This retrospective review is not sanctioned under any legal authority.  Even under a valid "greater of" provision, the lawfulness of a plan amendment must be determined as of the later of the adoption or the effective date using the formulas and language in the Plans.  Determining compliance with the anti-cutback rule is not some "wait and see" game of chance.

Recognizing that the "greater of" defense can't fly, Defendants now ignore the 1977, 1988 and 2005 regulations and a wealth of case law defining how an accrued benefit is determined and mandating that the effect of a plan amendment be determined  immediately before and immediately after the applicable amendment date. Instead, Defendants argue that a reduction in accrued benefits under these plans "can't" be determined until actual retirement and that their version of the Garrett 12/31/83 "protected" benefit can be reduced by offsetting Garrett Severance Plan benefits both actually (and hypothetically) accrued between 12/31/83 and date of retirement.  Defendants' wholly unsupported arguments are simply an attempted "end run" around the failure of their "greater of" defense, this time entirely divorced from any claim of "greater of" language in the Signal Plan.  Defendants' arguments are also a misguided attempt to reduce Defendants' liability by improperly purporting to reduce the dollar value of 12/31/83 Garrett Plan benefits by factoring in future accruals in the SBA accounts.  Defendants' arguments about §204(g) and their attempt to conflate *actual* retirement benefits with *accrued* benefits are contrary to the statute, regulations and dispositive authority.

While Defendants cite no authority to support determining the legality of a plan amendment at any point in time other than the dates immediately before and immediately after the amendment, each of the §411(d)(6) regulations explicitly peg the determination to the later of the adoption or the effective date of the plan amendment.  Indeed, the so-called

"simultaneous amendment rule" in the 2005 regulations upon which Defendants asked this Court to vacate summary judgment clearly requires a determination on the day immediately before and the day immediately after the later of the adoption or the effective date of the plan amendment. 26 C.F.R. §1.411(d)-3 (b)(1)(iii) (noting as an example with respect to a decrease in early retirement factors, that two amendments, one of which increases benefits and one of which decreases benefits "only violate §411(d)(6) if, after the two amendments, the net dollar amount of any early retirement annuity with respect to the accrued benefit of *any participant as of the applicable amendment date* is lower than it would have been without the two amendments.") (emphasis supplied); *Id.*, at (a)(2)(ii)(2005) (finding a violation of 411(d)(6) if for any participant, "the net effect is to decrease participants' accrued benefit as of that applicable amendment date."); 26 C.F.R. §1.411(d)-3(b) (1977) ("For purposes of determining whether or not any participant's accrued benefit is decreased, all the provisions of a plan affecting directly or indirectly the computation of accrued benefits which are amended with the same adoption and effective dates shall be treated as one plan amendment."). *See also* examples in 26 C.F.R. §1.411(d)-3 (2005)(concluding that: "While the plan amendment increases the accrued benefit of Participant M, the plan amendment fails to satisfy the requirements of section 411(d)(6)(A) because the amendment decreases the accrued benefit of Participant N below the level of the accrued benefit of Participant N immediately before the applicable amendment date."). The Supreme Court has likewise recognized that the operative moment for assessing a reduction in accrued benefits is when the new condition is imposed, whether or not it is ever invoked. *Central Laborers' Pension Fund v. Heinz,* 541 U.S. 739, 746 (2005) ("In a given case, the new condition may or may not be invoked to justify an actual suspension of benefits, but at the moment the new condition is imposed, the accrued benefit becomes less valuable, irrespective of any actual suspension.").[5]  **B. Defendants' Accrued Benefits Calculations Are Incorrect**.  A

---

[5]Defendants' argument that because a participant does not determine whether to transfer their SBA account to the Signal Plan until termination of employment (in which event there would be no SBA offset), a determination of the lawfulness of a plan amendment must await actual retirement is equally without merit. All sorts of choices and elections are made at retirement under every pension plan including spousal options, benefit forms, etc.

determination of whether the plan reduced accrued benefits as of 1/1/84 is not only legally required, it yields the only fair and logical result. As set forth in Plaintiffs' motion for summary judgment, (Doc. 678, at pp.17-23), Defendants' assertion that a determination of whether accrued benefits were reduced must wait until retirement, yet be compared with Garrett Plan benefits that freeze age and service on 12/31/83 (while increasing the offset until termination of employment using actual investment performance) violates the definitions of accrued benefits for defined contribution and defined benefit plans and is contrary to dispositive law. See cases and discussion at Doc. 678 at 18-22.

Defendants' effort to grow the offset until termination of employment and incorporate it as part of the Garrett Plan protected benefit is also unfair. The Court's initial ruling made clear that future accrued benefits are not protected by the anti-cutback rule. *Allen*, 382 F.Supp.2d at 1151. Yet, Defendants would have the Court subtract future benefit accruals under the Garrett Severance Plan in calculating Garrett 12/31/83 protected benefits. Just as the Court has held that employees can claim no entitlement to future benefit accruals as part of their protected benefits, so too Defendants, who never contributed a dime to the frozen Garrett Severance Plan, have no right to offset Garrett 12/31/83 protected benefits by future hypothetical earnings in the SBA accounts. As the IRS has indicated and the statute contemplates, applying the net effect of the Signal Plan amendments utilizing the accepted definitions of accrued benefits on the date before and after the Plan changes is not only legally correct, it is the only fair and logical way to determine whether Garrett Plan protected benefits have been reduced. Protected Garrett Plan benefits may not reflect future investment performance of the SBA accounts. Surely if ERISA does not provide a right to future benefit accruals, it likewise does not permit a protected benefit determined on the day before an amendment is adopted to include an offset for hypothetical future accruals under an entirely different plan.

---

This argument is akin to saying that the legality of a wholesale reduction of early retirement benefits cannot be determined on the adoption date because someone could choose not to retire until age 65 or that the elimination of a spousal option would have to await a determination of whether someone was still married on the date they retired. Clearly this is nonsensical and finds no support in the law.

**C.    Defendants' Additional Distortions of the Signal Plan Changes Should Be Disregarded**. Defendants' alleged aggregate present value of purported Signal Plan improvements and their inclusion of the Plan 2000 change in calculating the net effect of the challenged Signal Plan amendments are irrelevant and should be disregarded. Defendants' claim that "overall" benefits improved under the Signal Plan (Defs br., p. 6) is based on the purported present value of Signal Plan benefits in 2009 that is irrelevant to a §204(g) determination.[6]  Plaintiffs do not dispute that some participants fared better.  Plaintiffs' expert determined that 29% of Garrett employees did not experience a cutback. (S:54.)  But contrary to Defendants' experts, §204(g) does not focus on the present value of plan changes in the aggregate.  Rather, §204(g) examines whether the accrued benefit of *any* participant has been cutback and if there has been a cutback with respect to even one participant, the amendment never takes effect. An amendment that reduces the accrued benefits of any participant "remains inoperative to all participants." *Meagher v. Int'l Ass'n of Machinists and Aerospace Workers Pension Plan*, 856 F.2d 1418, 1423 (9th Cir. 1988). The statute itself dictates that "the accrued benefit of *a* participant may not be decreased by an amendment of the plan" ERISA §204(g). *See also* 26 C.F.R. §1.411(d)-3(b) (1977) ("Under section 411(d)(6) a plan is not a qualified plan (and a trust forming a part of such plan is not a qualified trust) if a plan amendment decreases the accrued benefit of *any plan participant*, unless the plan amendment satisfies the requirements of section 412(c)(8) (relating to certain retroactive amendments) and the regulations thereunder.") (emphasis supplied). *See also* 26 C.F.R. §1.411(d)-3(a)(1) (2005) ("Under section 411(d)(6)(A), a plan is not a qualified plan (and a trust forming a part of such plan is not a qualified trust) if a plan amendment decreases the accrued benefit of *any plan participant*...") (emphasis supplied). *See also* 26 C.F.R. §1.411(d)-3 (2005) Example.

    Equally specious is Defendants' argument that the minimum benefit formula somehow

---

[6]Defendants' argument that benefits were not reduced as a result of the overall aggregate present value calculations performed as of 2009 is akin to saying that because income increased for the top 1% of the population, wages for those at the bottom have also increased.

defeats Plaintiffs' Social Security offset claim. That argument once again ignores the applicable amendment date of the Social Security offset, which became effective when the existing Signal Plan was amended to apply to Garrett employees on 1/1/84. See Discussion Doc. 678 at 4-7. The regulations make clear that an amendment for purposes of the statute includes any changes to the terms of the plan, including changes resulting from a merger. 26 C.F.R. §1.411(d)-3(a)(1). A plan cannot avoid a §204(g) violation by *post hoc* amendments seeking to legitimize a prior unlawful offset. The subsequent introduction of a minimum benefit formula in the May 1984 SPD did not undo the illegality *ab initio* of the Social Security offset. Thus, as Plaintiffs pointed out on their motion for summary judgment, the Signal Plan amendment incorporating Garrett employees into the existing Signal Plan as of 1/1/84, reduced accrued benefits in violation of ERISA §204(g). (S:23, 26, 41.)

**D.     Defendants' Conceded Payment of Less Than 12/31/83 Garrett Benefits Violates Section 204(g)**. Defendants cite no authority for the proposition that their admitted application of the Signal Plan amendments to reduce accrued benefits somehow escapes the reach of §204(g) because it was a so-called "operational error" in allegedly failing to apply §4.10(c)(ii). Defendants admit application of the Signal Plan terms reduced the net accrued benefits of some participants. (S:63, 80.) ERISA does not insulate the application of a plan amendment to reduce accrued benefits just because another plan provision says not to do it. *Helms v. Local 705 Intern. Broth. of Teamsters Pension Plan*, 1999 WL 965230, at *16 (N.D.Ill. Sept. 30,1999) ("And while a safe harbor provision would ideally prevent any illegal amendments from being adopted and applied, its mere existence cannot serve as an absolute defense to a charge of an illegal amendment, any more than a statement in the Plan's preamble that "This Plan complies with ERISA" would bar a challenge to any particular provision."); *Devito v. Pension of Local 819 IBT Pension Fund*, 975 F.Supp. 258, 269-70 (S.D.N.Y. 1997) ("Although Defendants downplay any violation of these accrual requirements as 'purely academic' the Court does not take Congress' efforts to prevent "backloading" of pension benefits lightly" and directing reformation of the plan and recalculation of plaintiffs' benefits ). Defendants' citation of cases that hold that §204(g) does not apply to the interpretation or application of pre-existing plan terms -- not the

application of indisputably amended plan terms - are inapposite.[7]   In this case, there is no dispute that the formulas applied to reduce accrued benefits were part of the Signal Plan amendments.  (S:23, 26, 45, 48, 54-59, 61-62.)   By application of those amendments including the Plan provisions challenged herein, many Garrett Plan participants received lower benefits than they had accrued as of 12/31/83.  Defendants never calculated, tracked, compared or even knew how to compute Garrett Plan benefits and they failed to do so for virtually all of the  15,000 - 20,000 Garrett Plan employees employed in 1984.[8]  (S:85-94; R:80; A:2, 3, 12, 14-16.)  To suggest that this was some minor "operational error" because only 260 of the still living class members received or were scheduled to receive benefits below their 12/31/83 Garrett Plan benefits – rather than the reduction of accrued benefits resulting from the application of the amended Signal Plan provisions – would completely eviscerate the protections afforded by §204(g).  Defendants' argument, if credited, would encourage other plans to hide  unlawful plan changes or pay mere lip service to genuine protective clauses and sit back in the hope they never get caught.  With respect to the 260 retirees paid or to be paid less than they had accrued on 12/31/83 just as with respect to all 71% of Garrett employees whose accrued and protected benefits were reduced on January 1, 1984, their benefits were reduced "by an amendment of the plan." It makes no legal difference if Defendants' allegedly protective language was drafted and ignored, as Defendants assert, or whether nothing in the plan  purported to insulate the unlawful benefit reductions in the first place. In either case, accrued benefits were reduced by application of the Signal Plan amendments  including  application  of  the  SBA  offset  changes  and

---

[7]*McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1121 (9th Cir. 2000) (interpretation of existing actuarial table); *Richardson v. Pension Plan of Bethlehem Steel Corp.,* 112 F.3d 982, 987 (9th Cir. 1997) (interpretation of agreement to provide shutdown benefits) (cited by Defs at Doc. 676 at p. 3).

[8]Not only could Defendants not find Garrett Plan Exhibit B (containing interest rates and actuarial assumptions used to calculate benefits), they suggested it might never have existed.  (S:115) Defendants' actuary in advising the Plan Administrator during the claims process provided five to ten alleged comparisons of Garrett to Signal benefits that used the wrong minimum benefit formula, multiplying Garrett employees' years of service by $7.50 instead of the actual formula on 12/31/83, which was $19.50 per year of service.  (A:2.)

introduction of a Social Security offset to benefits attributable to years of service prior to 1/1/84.  (*See* Denlinger Decl. DSOF Tab 8 ¶13 agreeing that participants "experienced a reduction in 'net' benefits...")

**E. Defendants' Challenges to Damages Models Are Without Merit**

Defendants' claims that Plaintiffs did not suffer a cutback, that their overall benefits improved or that Plaintiffs' damages models are not relevant are without merit. Although some participants did have increased benefits, 71% of them suffered reductions in then accrued benefits on January 1, 1984.  As Plaintiffs' experts have shown, not only did 71% of employees experience a reduction in their benefits on the applicable amendment date, 61% of retirees and 80% of the deferred vested employees would have fared much better if the Garrett Plan had continued unchanged.  (S:58.)  The combined losses of class members in failing to be paid what they were promised at time of retirement was $175 million not an increase of $369 million.  (*Id.*)  These are real losses to real employees whose benefits were reduced and who were deprived of their rights to take alternative or defensive measures.  See, Edward A. Zelinski, *The Cash Balance Controversy*, 19 Va. Tax Rev. 683, 757 (Spring 2000) ("Wear-away arrangements run contrary to many employees' general beliefs that the pension status quo will continue indefinitely, and their particular expectations that they will continue to earn additional pension benefits during each year of future employment."). The case law abounds with the centrality of the principle under ERISA to protect the reasonable expectations of employees.  Since the legal remedy for an amendment adopted in violation of ERISA §204(g) is that the amendment never becomes effective and the Garrett Plan formulas would continue unchanged, and because employees were told they would get the better of the two plan's formulas at retirement, the equitable goal of validating employees' justified expectations is consistent with established remedies for ERISA violations of this kind.  The Court may properly consider these factors and exercise its discretion to remedy these ERISA violations in accordance with Plaintiffs' damage calculations.

Plaintiffs' experts' additional damages models present equally viable alternatives for the Court to consider and are consistent with the law.  As Plaintiffs explained in their motion for summary judgment, both the net effects of the Social Security offset and the introduction

1   of the February 1985 SBA offset change (together with the reduction to the early retirement

2   benefits for pre-age 55 retirees) were adopted independently and were not simultaneous with

3   all the other changes incorporated in the 1984 SPD.  The net effects of these changes

4   independently reduced benefits. (S:27-45, 48, 54-59, 61-63.)

5   **F. Defendants' Standing Argument Has No Merit.** In the three paragraphs (Doc. 676, p.

6   12-13) that Defendants devote to Plaintiffs' finding of a net reduction of accrued benefits as

7   of 1/1/84, the only case Defendants cite is a standing decision that has nothing to do with

8   ERISA §204(g). Defendants erroneously assert that Plaintiffs were not injured, when each

9   of them indisputably has been injured by the unlawful amendments reducing benefits. (R:74;

10  S:54-57.) Contrary to Defendants' claims, Plaintiff Allen's benefits were reduced on January

11  1, 1984.  All of the named Plaintiffs, like all the class members were harmed by application

12  of unlawful amendments that could not become effective if the benefits of any participants

13  were reduced as a result of the amendments. (S:45, 48, 54-59, 61-62, 64.) All of the Plaintiffs

14  have standing to seek declaratory and injunctive relief and the damages they suffered by

15  having the unlawful amendments applied to them.  Depending on the relief the Court chooses

16  to fashion, each of the named Plaintiffs will be entitled to a remedy which, in addition to

17  enjoining application of the unlawful amendments and directing that benefits be recalculated,

18  may include relief making Plaintiffs whole for the difference between what their benefits

19  would have been had the Plan continued without the amendment and their benefits under the

20  Signal Plan or the difference in their benefits with and without application of the Social

21  Security offset to years of service before the amendments and without application of the

22  changes in  the SBA offset interest rate.

           The fact that Defendants have first asserted standing six years after this case was filed

23  merely highlights the weakness of their defense against the reduction of accrued benefits.

24  Regardless, Defendants' challenges to standing were long ago waived by the partial

25  settlement and their joint request to certify the class and appoint Plaintiffs class

26  representatives and by their failure to raise with specificity any challenge to Plaintiffs'

27  authority to sue as representatives under Fed. R. Civ. P. 9(a)(2).  Not only is standing law of

28  the case by virtue of the Court's granting of Plaintiffs' and Defendants' joint motion for class

certification, finding that Plaintiffs were appropriate class representatives and that they satisfy the commonality and typicality requirements of the class, Defendants also waived their right to decertify the class, and their standing argument violates the Partial Settlement agreement. (Doc. 312, Ex. A, at §2.07, pp. 24-25.) Even in the absence of waiver, Defendants' standing argument would have no merit. Plaintiff Allen's benefits were reduced on January 1, 1984 and all of the Plaintiffs have the right to challenge application of the increased SBA interest projection rate and SSI offset in the determination of their benefits. Likewise, they all have standing to seek injunctive and equitable relief. *Helms*, 1999 WL 965230, at *16 ("Thus, even if the elimination of the Vesting Service for Related Employment had not reduced Helms's own award, he nevertheless has standing to challenge it as a violation of ERISA as a Plan participant."). In any event, where a class representative subsequently becomes inadequate or atypical, the remedy is to substitute a different named representative. *See* 3 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §7.24, at p. 79 (4th ed. 2002) ("If there are any doubts about adequate representation or potential conflicts, they should be resolved in favor of upholding the class....").

## II.    BENEFITS WERE CUTBACK UNDER ANY STANDARD OF REVIEW

### A.    Section 4.10(c)(ii) Fails the Test Under Rev. Rul. 81-12. The Standard of Review Does Not Change this Result

Congress has now declared that on a going-forward basis, plans may not "wear-away" accrued benefits without violating ERISA.[9]  While Congress did not take a position on whether those provisions were lawful before the Pension Protection Act of 2006, permitting decades of Class Members' benefits to be wiped out on the basis of the plan provision relied on by Defendants here should be rejected.  Section 4.10(c)(ii) provides:

> (ii) the "Accrued Benefit" as of December 31, 1983 of any Employee or Former Employee who was a participant in any plan which merged with this plan as of January 1, 1984 shall not be less than his Accrued Benefit as of December 31, 1983 determined under the terms of such other plan and, for Participants eligible to commence benefits on December 31, 1983, further determined by reference to the actuarial equivalence tables or interest assumption [sic] actually specified in such other plan on December 31, 1983[]

---

[9]29 U.S.C. §1054(b)(5)(B)(iii) (2006).

As explained more fully by Plaintiffs, (Doc. 678, pp. 10-14), the language of §4.10(c)(ii) in no way complies with the only permissible method stated by the IRS to permit wear-away – where the plan provides and ensures that participants will receive: The greater of 1) the actuarial equivalent of the accrued benefit as of the date of the change computed on the old basis or 2) the actuarial equivalent of the total accrued benefit computed on the new basis. *See also* 26 C.F.R. §1.411(d)-4.  26 C.F.R. §1.411(d)-4, at Q&A 4 ("A plan provision that makes a §411(d)(6) protected benefit available only to those employees as the employer may designate is within the scope of this prohibition.").

The Signal Plan language falls far short of the guaranteed protection the IRS regulations require and that plan provisions the courts in other cases, including the cases cited by Defendants, (Doc. 676, at pp. 3-4), have held do not violate the anti-cutback rule. *Sunder v. U.S. Bancorp Pension Plan*, 586 F.3d 593 (8th Cir. 2009), found at Doc. 18-1, at Plan Section 2.1(a), Plan p. 3, available at Doc. 4:05-cv-01153 (E.D. Mo.) (Exhibit 1 hereto); *Brody v. Enhance Reinsurance Co. Pension Plan,* 2003 WL 1213084, at *8 (S.D.N.Y. Mar. 17, 2003); *Campbell v. BankBoston, N.A.*, 327 F.3d 1 (1st Cir. 2003); *See also* the plan language in *Michael v.Riverside Cement*, which provided that the pension "shall never be reduced below the amount of pension previously payable to the employee."  *Michael*, 266 F.3d at 1025 n.3; *Hurlic v. Southern Calif. Gas Co.*, 539 F.3d 1024, 1027(9th Cir. 2008). The *Hurlic* plan used the same language used by Rev. Rul. 81-12.  This language simply does not exist in the Signal Plan.  It is hard to imagine a clearer violation of Rev. Rul 81-12's command that the plan guarantee the greater of 1) the actuarial equivalent of the accrued benefit as of the date of the change computed on the old basis or 2) the actuarial equivalent of the total accrued benefit computed on the new basis than the Signal Plan's directive to use the "actuarial equivalence tables or interest assumption [sic] actually specified in such other plan" only for "Participants eligible to commence benefits on December 31, 1983[.]" (S:47)

In *Humphrey v. United Way of Texas Gulf Coast*, 590 F.Supp.2d 837, 846 & 847 (S.D.Tex. 2008), the court rejected the defendant's construction of the plan because in order to do so:  "The court must effectively disregard the second paragraph of section 6.5 to support the plan's 'greater of' methodology" and "would require the court to read the

unambiguous language out of the 1996 plan...").  The court also held that the defendants'

conduct belied its interpretation:

> Moreover, Defendants' conduct has been less than transparent. Although they now claim it was an integral part of the plan, Defendants chose not to disclose the wear away provision in the SPD. They also chose to mislead Blackmer during his administrative claim and have never issued a notice to the Plan's participants regarding their amendments to the plan. The court finds that the use of the "greater of" methodology was an abuse of discretion.

*Id*. at 847.  *See also French v. BP Corp. North America, Inc.,* 2010 WL 2219337, at *14

(E.D.Ky. May 28, 2010)(discussed and at Doc. 678 p. 11).  *In re National Gypsum Co*., 219

F.3d 478, 493 (5th Cir. 2000) ("… the express terms of the Plan compel the opposite

conclusion…We see no reason to ignore the plain meaning of these Plan documents.").

Defendants concede that the language of §4.10(c)(ii) is clear and unambiguous, but

never even mention, much less explain how their claims can be reconciled with the second

half of the sentence which is nowhere referenced in their brief. (S:47) Defendants even

omitted the second half of the sentence in their briefing on this motion.  Even Defendants'

experts, who purport to render opinions about the meaning of the so-called savings clause

<u>never</u> quote or make the slightest reference to the second half of the section.  This is not

surprising because the second half defeats their claim.  Not only does 4.10(c)(ii) not

guarantee the "actuarial equivalent" of the Garrett Plan benefits determined under the Garrett

Plan as of 12/31/83 or Signal benefits, it does the opposite.  Any other construction ignores

the plain meaning of the Plan and completely reads out half of the plan provision.  *See Gross

v. Federal Exp. Corp. Long Term Disability Plan,*  707 F.Supp.2d 67, 73 (D. Mass., 2010)

("Such an interpretation entirely ignores half of the definition of "totally disabled," and is

"unreasonable".)  *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992) ("the

specific governs the general…").

**B.    Defendants' Newly Referenced Plan Provisions Do Not Transform An Illegal**

**Amendment Into a Lawful One**. Defendants ask the Court to defer to the Plan

Administrator's interpretation but the Plan Administrator merely cited §4.10(c)(ii) in the

appeal denial letter without explanation and never referenced any other plan provisions as

supporting his interpretation.  Thus, all the arguments made now about the meaning of §4.10(c)(ii) are merely the *post-hoc* arguments of defense counsel.  In any event, §8.13 of the Plan does not transform illegal amendments into lawful ones.  Interpreting the Plan in conformity with ERISA mandates a finding that the Plan violates ERISA §204(g).  The law does not countenance such a feeble excuse for the alleged protection of accrued benefits to trump the explicit protections of the statute.  Nor does the law allow plan administrators under the guise of interpretation to rewrite ERISA plans during litigation.  *See Frye v. Thompson Steel Co., Inc*., 2010 WL 1032428, at *3-4  (N.D.Ill. Mar. 15, 2010). Likewise, Defendants' reliance on the cross reference in §4.2 (the Benefit Formula Section) and the definition section add nothing to the analysis.  Section 4.2(a) (which merely refers to §4.10(c)) does not cure or even address §4.10(c)(ii)'s defects.  *See also Helms*, 1999 WL 965230, at *16.

## C.    Deference Is Inappropriate

As the Ninth Circuit has explained:

> [P]lan administrators abuse their discretion when they "render decisions without any explanation, or construe provisions of the plan in a way that conflicts with the plain language of the plan." Similarly we have held that an abuse of discretion occurs when a plan administrator fails to develop facts necessary to make its determination[]

*Schikore v. BankAmerica Supplemental Retirement Plan,*  269 F.3d 956, 960 (9th Cir. 2001) (quoting *Eley v. Boeing Co.,* 945 F.2d 276, 279 (9th Cir.1991)) (internal quotations omitted). *See also  Sluimer v. Verity, Inc*., 606 F.3d 584, 590 (9th Cir. 2010) ("The reviewing court must look to the plain language of the plan to determine whether the administrator's interpretation of the plan is "arbitrary and capricious." An error of the law also constitutes an abuse of discretion.") (citing *Schikore*, 269 F.3d at 960).

The Court does not defer to Defendants' determination on questions of law.  Saying that a plan protects accrued benefits under the guise of interpretation doesn't make it so. If it did, no employer would ever be found in violation of ERISA because each would claim that the plan (as interpreted by the employer) conforms to the law. But the proposition that Defendants have anything special to say about the meaning of the plan in a context of a claim for a statutory violation of ERISA makes no sense.  The Court has already held, whether the

1   Plan in form and operation violated §204(g) is a question of law and is entitled to no

2   deference. *Allen*, 382 F.Supp.2d at 1149.  Plaintiffs' voluntary presentation to the Plan

3   Administrator of Plaintiffs' claims for statutory violations did not alter the standard of

4   review.  (R:210.)

5       Defendants' other claims for deference also fail as there was no grant of discretion to

6   the Plan Administrator's delegates.  (S:111-113)  As Magistrate Judge Duncan held, the

7   delegation of authority to Mr. Marcotte to decide Plaintiffs' administrative claims "was

8   expressly limited to actions that 'do not materially increase the cost to or liability of the

9   Corporation'" and Plaintiffs' claims "would materially increase the cost to or liability of the

10  company." (Doc. 527 p. 3.)  The sole decisionmakers on Plaintiffs' claims and appeal were

11  only empowered to *deny* Plaintiffs' claims but not to *grant* them.  Because Mr. Marcotte had

12  no discretion to interpret the plan in a manner favorable to Plaintiffs, there was no exercise

13  of discretionary authority by the Plan Administrator here and there is nothing to defer to. *De*

14  *novo* review must apply.  *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th

15  Cir. 2006); *Jebian v. Hewlett Packard Co. Employee Benefits Org. Income Protection Plan*,

16  349 F.3d 1098, 1106 (9th Cir. 2003).

17      Second, Defendants' conflict of interest requires heightened scrutiny.  *See*

18  *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *Montour v. Hartford Life & Acc.*

19  *Ins. Co.* 588 F.3d 623, 631 (9th Cir. 2009); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d

20  955 (9th Cir. 2006.) (*en banc*); *Muniz v. Amec. Const. Mgt, Inc.*, __ F.3d ___, 2010 WL

21  4227877(9th Cir. Oct. 27, 2010).  *See also Sluimer v. Verity, Inc.*, 606 F.3d 584, 588 (9th Cir.

22  2010).  There is ample evidence that the Plan Administrator was influenced by his conflict.

23  (S:112-113; A:11.)  Mr. Marcotte's delegation required him to subordinate the interests of

24  the participants to serve the interests of the company.  He considered the costs of the claims

25  and knew that granting them would have an impact, potentially, of hundreds of millions of

26  dollars.  (*Id*.)

27      Third, deference is also inappropriate as a result of Defendants' inadequate claims

28  process, incompetence and/or bad faith.  "Under trust law, a trustee may be stripped of

    deference when he does not exercise his discretion  'honestly and fairly.'"  *Conkright v.*

*Frommert*, ___U.S.___, 130 S.Ct. 1640, 1651 (2010); *Abatie v. Alta Health & Life Ins. Co.* 458 F.3d 955, 973 (9th Cir. 2006). Defendants' failure to provide a full and fair review mandates that *de novo* review apply. (S:113-133; A:2-7, 31; R:208-215.) Defendants made decisions about the claim without plan documents and in conflict with records in their own possession. (*Id.*) As a result of incompetence or simply bad faith, Defendants failed to obtain relevant documents and failed to verify their accuracy or authenticity. (*Id.*) In either event, *de novo* review is appropriate. *See Conkright*, 130 S.Ct. at 1657. Defendants' failure to consider relevant documents and reliance on documents that were contradicted by other documents in their files renders *de novo* review appropriate. (S:114-122; A:1-2.)

Fourth, Defendants' *post-hoc* arguments make deference inappropriate. In addition to arguments about plan provisions never discussed in the administrative process, (S:113-122; R:214-215), Defendants now claim that the benefit reductions they concede occurred were the result of so-called "administrative" or "operational" errors, and not the result of Plan violations. Defendants never made this claim in the administrative review process. (R:214-215; A:1.) They cannot do so now. See 29 C.F.R. §2560.503-1(f). *Booton*, 110 F.3d at 1463; *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002); *Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001); *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998).

Mr. Marcotte claimed to have reviewed every single retiree's calculation; however, Mr. Marcotte testified that his review consisted of spending six hours considering the claim based on 5-10 example calculations that he could not recall and a call with actuary who said there was a "failsafe" that somehow guaranteed people were not paid less. (Doc. 16, Ex. O, at HW0000525; S:110; A:2-6.) The calculations Mr. Marcotte reviewed included the wrong multiplier for the Garrett Minimum Benefits. (A:2.) *See Conkright,* 130 S.Ct. at 1651 (deference may be inappropriate where "plan administrator is too incompetent to exercise his discretion fairly"). The calculations also never considered the impact of participants' early retirement benefits for participants who terminated employment before age 55 and commenced receiving benefits before age 65, factors that greatly reduced benefits for many early retirees. (A:2-3.) Defendants now admit that some participants were actually paid less

and that rather than the "generous" improvement in benefits cited in the appeal denial, participants' benefits were actually less than their 12/31/83 Garrett accrued benefits. (S:63; R:80.) During the claims process, Defendants also misrepresented the plan by referring to "more generous early retirement subsidies." (Doc. 16, Ex. O, at HW0000528.)  In fact, early retirement benefits for participants who left employment before age 55 and retired before age 65 were reduced.  (R:34.) *Booton v. Lockheed Medical Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("Lacking necessary-and easily obtainable-information, Aetna made its decision blindfolded..."  and further stating "to deny the claim without explanation and without obtaining relevant information is an abuse of discretion").

## III.    PLAINTIFFS' CLAIMS ARE TIMELY

Defendants' statute of limitations defense is in conflict with their savings clause argument and the net effect argument on which they asked the Court to vacate its original summary judgment ruling.  Plaintiffs were told in 1984 that they would get the better of their benefits calculated at time of retirement under the Garrett Plan and Signal Plan formulas. (S:75-79, 81; R:159.)  At no time prior to this lawsuit did Defendants ever disabuse Plaintiffs of that notion or disclose the net effect of the plan changes or the fact that the net effect reduced accrued benefits.[10]  (See, e.g., R:122; S:81; A:17-29.) Contrary to their litigating position in this case, Defendants' statute of limitations argument never even addresses the net effect issue at all and instead focuses solely on discrete portions of the plan changes, which they otherwise claim are merely factors to be weighed in the net effect analysis.[11] Given that Defendants make no claim that they ever disclosed, much less repudiated, the net effect of the Signal Plan changes, Defendants' statute of limitations defense should be

---

[10]Defendants admit that they never calculated or compared Plaintiffs' 12/31/83 Garrett Plan accrued benefits with their benefits under the Signal Plan.

[11]It is Defendants' burden to establish a statute of limitations defense.  See Fed. R.Civ. P. 8.  *See also Jones v. Wal-Mart Stores, Inc.,* 2009 WL 2382435, 3 (D.Ariz. Aug. 3, 2009) (quoting *Payan v. Aramark Mgmt. Servs. Ltd. P'ship,* 495 F.3d 1119, 1122 (9th Cir.2007) ; *Fruit and Vegetable Packers and Warehousemen Local 760 v. Morley,* 378 F.2d 738, 746 (9th Cir. 1967).

rejected.

Defendants' brief also fails to cite controlling Ninth Circuit authority which disposes of their claims that anything other than Arizona's statute of limitations on written contracts controls. *See Wise v.Verizon Communications, Inc.*, 600 F.3d 1180, 1187 (9th Cir. 2010) (only one statute of limitations per state governs ERISA benefits claims – the statute of limitations on written contracts). Arizona's statute of limitations for written contracts is six years.  Ariz. Rev. Stat. §12-548.  The Ninth Circuit looks to the most analogous statute of limitations where the claim for benefits arose. *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program,* 222 F.3d 643, 646-47 (9th Cir. 2000) (en banc); *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1170 (9th Cir. 1999) ("The statute of limitations for an ERISA benefits action is based on the applicable statute of limitations for a contract claim in the forum state. Arizona, the forum state, has a six year statute of limitations.").  The same rule applies to Plaintiffs' remaining claims, which are brought under both ERISA §502(a)(1)(B) and (a)(3), 29 U.S.C. §1132(a)(1)(B), (a)(3).  *See, e.g., Hakim v. Accenture United States Pension Plan,* 656 F.Supp.2d 801, 819 (N.D.Ill. 2009) (applying Illinois contract statute of limitations to ERISA §204(h) claims); *Bilello v. JPMorgan Chase Retirement Plan,* 607 F.Supp.2d 586, 592 (S.D.N.Y.2009) (applying New York contract statute of limitations to §502(a)(1)(B) and ERISA §204(h) claims); *Hirt v. Equitable Retirement Plan for Employees, Managers and Agents,* 450 F.Supp.2d 331, 333 (S.D.N.Y.2006) (applying New York contract statute of limitations to §204(h) claims), *aff'd,* 285 Fed.Appx. 802 (2d Cir.2008)); *Laurenzano v. Blue Cross Blue Shield of Mass., Inc. Ret. Income Trust*, 134 F.Supp.2d 189, 206 (D. Mass. 2001) (applying written contract statute of limitations to ERISA §502(a)(3) claim).[12]

**A.   Arizona Law Applies**      Defendants' choice of law argument has been rejected time

[12]Defendants' contention that Ariz. Rev. Stat. §12-541(3) applies instead is in direct conflict with *Wise, Wetzel* and *McElwaine*. Ariz. Rev. Stat. §12-541(3) could not be applicable – each of the plan documents expressly provide that they are not contracts of employment.  (Doc. 16, Exhibit P, at HW0000610 Section 16.06, Exh. Q, at HW000732; Exh. E, at HW0000372-73.)

and again; the law of Arizona, the forum state, applies.  There is no basis to apply any law other than Arizona in this case.  Defendants' claim that a Delaware choice of law provision first inserted in a plan document in the year 2000, which makes no reference to a statute of limitations, which Defendants never disclosed or claimed they ever distributed to employees and which selects Delaware, where Defendants never identified a single class member that ever worked in that state or any other connection to Delaware must be rejected.[13]  While these facts would preclude consideration of Delaware under federal choice of law rules, Defendants have only asserted that the contractual choice of law provision should govern and that claim has no merit because the choice of law provision never mentions the statute of limitations.  *See Des Brisay v. Goldfield Corp.,* 637 F.2d 680, 682 (9th Cir. 1981) ("we believe the intention of the parties to contractually agree upon a limitations period should be clearly expressed before we will consider whether it is permissible to do so in a federal securities case").  *See also Berger v. AXA Network LLC,* 459 F.3d 804, 814 n.2 (7th Cir. 2006)*; Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992) ("Choice of law provisions in contracts do not apply to statutes of limitations, unless the reference is express."); *Trustees of Operative Plasterers' and Cement Masons' Local Union Officers & Employees Pension Fund v. Journeyman Plasterers' Protective*, 794 F.2d 1217, 1221 n. 8 (8th Cir. 1986); *Kerry v. Southwire Co. & Affiliates Employee Benefit Plan*, 324 F.Supp.2d 1225 (D. Utah 2004); *Jackson v. Chevron Corp. Long-Term Disability Organization, Inc.*, 2006 WL 231595, at *4(D.N.J. Jan. 30, 2006).

---

[13]Moreover, all class members' rights to benefits vested long before the year 2000 and so that plan has no bearing on this case.  *See Allen*, 382 F.Supp.2d at 1161 (noting that "Defendants do not contest that Plaintiffs' benefits vested under prior iterations of the Plan....).  Defendants' purported choice of law provision is also completely inapplicable by its terms. Compare the provisions in *Wang Labs v. Kagan*, 990 F.2d 1126, 1128 (9th Cir. 1993) *Wang*'s choice law provision broadly covering the substantive "rights and obligations of the parties," and "all questions pertaining thereto," 990 F.2d at 1128, with the year 2000 Plan provision, which merely states that Delaware law applies to determinations of questions "arising with respect to the provisions of this Plan, except to the extent Federal statute [sic] supersedes Delaware law." (Doc. 16, Exh. P, at HW0000611.)  Here, there is no state law applicable to any questions with respect to the provisions of the Signal Plan.  Federal law is exclusive.  29 U.S.C. §1144.

In *Wang*, cited by Defendants, the parties never argued whether a clearly different choice of law provision applied to the statute of limitations. 990 F.2d at 1129.  In fact, given the absence of any asserted connection in this case to the State of Delaware, under *Wang*, the choice of law provision here would be rejected as unreasonable and fundamentally unfair. *Id.* at 1128 (most employees covered by plan were in Mass.). Here, Defendants do not contend that any of the thousands of class members worked in Delaware.  The named Plaintiffs all worked in Arizona as did many class members. (Doc. 344, ¶ 13; A:13, 19-22, 26-27.) Arizona law therefore supplies the appropriate statute of limitations, which is six years. In any event, Defendants' failure to disclose the choice of law provision, which they claim governs the statute of limitations would be fatal.  *See also Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 906 (9th Cir. 2009).

**B.    There Was No Repudiation.**  Under the "federal discovery rule," a cause of action does not accrue and the statute of limitations does not begin to run in an ERISA case until there has been a clear and unequivocal denial and repudiation of the plaintiff's claims. *Chuck v. Hewlett Packard*,  455 F.3d 1026 (9th Cir. 2006).  In this case, no repudiation occurred until October 2003 when the Plan denied the appeal.  *See Martin v. Constr. Laborers Pension Trust for S. Cal.*, 947 F.2d 1381,1384 (9th Cir. 1991); *Wetzel*, 222 F. 3d at 648.  As the Court stated, under the federal discovery rule:

> Defendants must show Plaintiffs had knowledge of the injury, i.e., that their benefits were reduced by Plan amendments.  Thus, a plaintiff cannot be charged with knowledge, actual or constructive, until the defendant shows that it *clearly repudiated* the plaintiffs' claims.

(Order on class certification, Doc. 226, p. 11.) The Court also ruled that in order to trigger the running of the statute of limitations, the repudiation of the plaintiffs' claims  "must be 'clear' and 'unmistakable.'" (*Id.*, p. 15, citing slip. op. in *Chuck v. Hewlett Packard*,  455 F.3d 1026 (9th Cir. 2006)).

There are no clear and compelling facts here.  Instead, aside from the testimony about alleged explanations in exit interviews or group meetings, by witnesses who themselves acknowledged they did not know the interest rates used to calculate SBA offsets had been changed after the merger, (S:148, 176), Defendants' motion relies on the same documentary evidence that the Court already reviewed and found unpersuasive, (Doc. 226, at pp. 10-17),

and as failing to establish even a "threshold that the documents presented triggered the statute of limitations." (Doc. 226, p. 15.) Defendants never repudiated Plaintiffs' claims before determining Plaintiffs' administrative appeal in October 2003.[14]  *See Johnson v. Georgia-Pacific Corp.,* 2007 WL 4533476, at *2 (9th Cir. 2007).  *See also Wise, 600 F.3d 1180; Wetzel, 222 F.3d 643, 650.*

Here, it is undisputed that prior to Plaintiffs' submission of claims to the Plan Administrator, Defendants never calculated or compared the net Garrett accrued benefits with the Signal benefits and did not even know how to do so. (S:63-64, 84-94; A:2-3, 14-16, 31; R:80.) It is also undisputed that Defendants never disclosed, even during this litigation, that the early retirement reduction factors for employees terminating before age 55 were reduced, making early retirement benefits for those employees less favorable than the benefits under the Garrett Plan. (A:6; S:33.) Given Defendants' assurances in 1984 that at the time of retirement, a net benefit comparison under both Plan's formulas would be performed and that Plaintiffs would receive the better of the two and given Defendants' failure to ever disclose that such comparisons were not performed, (S:74-8), coupled with Defendants' assertions that with respect to the SBA offset that "nothing has changed," (S:81; R:160, 173; A:23, 28), and their claims that there was a substantial increase in benefits for most employees under the Signal Plan, (S:71, 74-80; R:148), there is simply no basis to find that Defendants repudiated Plaintiffs' claims.[15]  *See Young v. Verizon's Bell Atlantic Cash Balance Plan,* 615 F.3d 808, 817 (7th Cir. 2010) (rejecting the claim that cause of action could have accrued upon plaintiffs' receipt of benefits and finding  claims timely where,

---

[14]In addition, there was a tolling agreement in effect after the initial denial of the claims in January 2003. (R:216-217.)

[15]Further, Defendants are estopped to claim that the statute of limitations ran given their repeated assurances to participants that their benefits were the same or better.  "As a general rule, a defendant will be estopped from setting up a statute-of-limitations defense when its own prior representations or conduct have caused the plaintiff to run afoul of the statute and it is equitable to hold the defendant responsible for that result." *Lamantia, v.Voluntary Plan Administrators, Inc.,*401 F.3d 1114 (9th Cir. 2005) (quoting *Allen v. A.H. Robins Co., Inc.,* 752 F.2d 1365, 1371-72 (9th Cir.1985)).

communications did not accurately disclose plan terms or how benefits were calculated); *Brasley v. Fearless Farris Service Stations, Inc*,. 2009 WL 631460, 9 (D.Id  Mar. 9, 2009). *See also Price v. Provident Life and Acc. Ins. Co.,* 2 F.3d 986, 988 (9th Cir. 1993); *Menhorn v. Firestone Tire & Rubber Co*., 738 F.2d 1496, 1501 (9th Cir.1984);  *Romero v. Allstate Corp.*, 404 F.3d 212, 224 (3d Cir. 2005);  *Schultz v. Stoner*,308 F.Supp.2d 289, 298-99 (S.D.N.Y. 2004).[16]

Defendants' out of circuit authority is inapposite. In *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 521-22 (3d Cir. 2007), the court held that a receipt of benefits "based on a simple calculation of sixty percent of his salary should have alerted him that he was being underpaid" and that the plaintiff had provided no basis for the court to infer that the repudiation was unclear to him at that time.  Here, the exact opposite is true.  At the time of retirement, if benefit calculations were provided, they were approximately 17-20 pages  in length and made reference to tables and lookup factors that were not provided and would have been unintelligible even if the information necessary to understand them had been furnished.  (R:148-150, 152; A:17, 22, 23, 28.)  The benefit calculations were also internally inconsistent.  (R:149-152.)  For example, they often stated in the first few pages that there were  $0.00 for offsets yet contained an offset result without disclosure of the interest rates used to arrive at the result more than a dozen pages later.  (R:152.)  Even Defendants' own Rule 30(b)(6) witness testified:  "To be honest with you, if you gave this document to any employee and asked them to read it and understand it, they wouldn't be able to do it without somebody walking through what these factors all meant and how they came together." (R:149.) After reviewing all of the identical documentary evidence offered once again on this motion, (see Doc. 226. pp. 9-11), the Court earlier observed in commenting on Plaintiffs' opposition to Defendants' claimed statute of limitations defense as a bar to class certification: "In view of the complexity of the calculations showing the 'error' by Defendants, it seems

---

[16]Given the abundance of ERISA cases in the Ninth Circuit, Defendants' reliance on *Davel Communications, Inc. v. Qwest Corp.,* 460 F.3d 1075 (9th Cir. 2006), an inapposite case under the Federal Telecommunications Act, reveals the weakness of the defense in this context.

unreasonable to assume that Plaintiffs might have been able to figure out that they had claims and what they were by reviewing, 'a complex thicket of obscure mathematical formulations, footnotes and calculations with cross references to nonexistent tables in the 17-20 page benefit calculation worksheet.'" (Doc. 226, p. 2, quoting Doc. 168)  Although Defendants attempt now to buttress their deficient arguments by relying on one benefits counselor's counseling sessions, Ms. Payne testified that she had no idea that the Plan was retroactively amended after the merger to change the interest rates and the claim that she provided detailed benefit explanations is a contested fact.[17]  (R:148-150; A:14-27.)  In any event, an oral counseling session by a low level benefits counselor would not be the kind of repudiation required to start the running of the statute.  Defendants knew they needed something to cover their "backside."  (A:29.  See also S:73; R:177-179.)  Yet, they chose to keep the changes to the Plan a secret and when employees did try to request information, or asked if their benefits had changed, they were misled and told that their benefits were not changed.  (S:74-81; R:160, 173; A:23, 28.)  Under *Miller* and all other authority, this is far short of a repudiation that could trigger the running of the statute of limitations.[18]

**C.    Neither Remaining Claim is Time Barred**. With respect to the SBA offset claim, Defendants confuse alleged knowledge that some participants understood that parts of their

---

[17]Defendants, citing Ms. Payne's testimony that she believed she met with 8,000 employees, never attempt to identify which employees those might have been, a vast number of whom, like Ms. Payne, were hired after 1984 and had no Garrett Plan benefits. (R:151.) Nor do they even attempt to address the fact that in 1984, there were 15,000-20,000 Garrett employees.  (A:12.) There were other benefits counselors working in Phoenix and multiple locations around the country and some employees attended no such sessions. (R:17-18, 21-22, 25-27, 148.)  Defendants do not even attempt to show any linkage between Ms. Payne and the named Plaintiffs.

[18]In any event, the Third Circuit noted  in *Miller* that its approach "diverges from that of other courts confronting the same issue" 475 F.3d at 523.  Following *Miller*, other courts have refused to oust the clear repudiation standard and have continued to hold that a cause of action accrues when a claim for benefits is denied.  *See e.g., Young v. Verizon's Bell Atlantic Cash Balance Plan* , 667 F.Supp.2d 850, 888 (N.D.Ill. 2009), aff'd 615 F.3d 808 (7th Cir. 2010); *Cohen v. Local 338-RWDSU/UFCW*,  2010 WL 3199695, at *10 n.17  (S.D.N.Y.  Aug. 12, 2010).

benefits were offset using a higher rate and anger over the SBA offset in general with repudiation following knowledge that it was the Signal Plan amendments adopted in 1985 that changed the interest projection rate used to calculate the offset following termination of employment.  The interest rate changes were never disclosed.  Defendants' assertion that the letter from the Company to ten focus group employees who were the only employees identified as having received it somehow constituted repudiation to unidentified others is frivolous. (R:205-206.) Defendants have cited no authority for this "trickle down" repudiation defense and Plaintiffs know of no authority recognizing repudiation by proxy. As this Court stated:  "A plaintiff cannot be charged with knowledge, actual or constructive, until the defendant shows that it *clearly repudiated* the plaintiff's claims."  (Doc.226, p. 11.)

Given the assurances of lack of harm and that benefits would be calculated under the Garrett formulas, (which contained no Social Security offset) and the Signal formulas, (which did), and that Plaintiffs would receive the higher of the two, (S:74-84; R:148, 159) there is no possible  way that the net effect of the introduction of the Social Security offset formula was made known to any participants at any point prior to the denial of the claims. Like the balance of the calculations given at retirement, the sections addressing Social Security calculations specifically referred to lookup tables, which despite multiple requests for documents, Plaintiffs' counsel never received until this lawsuit was commenced. Plaintiffs claims are timely.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion be denied.  Plaintiffs request such other and further relief as the Court deems just and proper. Respectfully submitted this 8th day of November, 2010.

**MARTIN & BONNETT, P.L.L.C.**

By:   s/Susan Martin
    Susan Martin
    Daniel L. Bonnett
    Jennifer L. Kroll

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

 1850 N. Central Ave. Suite 2010
Phoenix, AZ 85004
(602) 240-6900
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2010, I electronically filed the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David B. Rosenbaum
Dawn L. Dauphine
Osborn Maledon, P.A.
2929 North Central Ave., Suite 2100
Phoenix, AZ 85012-2794

Michael Banks
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Howard Shapiro
Robert W. Rachal
Stacey Cerrone
Bridgit DePietto
Proskauer Rose LLP
650 Poydras Street, Suite 1800
New Orleans, LA  70112-4017

Amy Covert
Proskauer Rose LLP
One Newark Center, 18th Floor
Newark , NJ 07102-5211

Craig Primis
Michael Williams
Abigail Diaz-Pedrosa
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Attorneys for the Defendants

s/T.Mahabir